1 | Lauren Hansen (CA BAR NO. 268417)
2 | Melissa A. Morris (CA BAR NO. 233393)
PUBLIC INTEREST LAW PROJECT
3 | 449 15th St., Suite 301
Oakland, CA 94612-06001
4 | Tel: (510) 891-9794
Fax: (510) 891-9727
5 | Email: lhansen@pilpca.org

6
ATTORNEYS FOR PROPOSED INTERVENORS
7 | HOSPITALITY HOUSE; COALITION ON
HOMELESSNESS; AND FAITHFUL FOOLS
8

9 | Lili V. Graham (CA BAR NO. 284264)          Michael David Keys
Tiffany L. Nocon (CA BAR NO. 301547)        (CA BAR NO. 133815)
10 | DISABILITY RIGHTS CALIFORNIA             Jessica Berger (CA BAR NO. 319114)
350 S Bixel Street, Ste 290                  BAY AREA LEGAL AID
11 | Los Angeles, CA 90017-1418               1454 43rd Avenue
Tel: (213) 213-8000                          San Francisco, CA 94122
12 | Fax: (213) 213-8001                      Tel: (415) 982-1300
Email: Lili.Graham@disabilityrightsca.org    Fax: (415) 982-4243
13 |                                          Email:   mkeys@baylegal.org

14 | ATTORNEYS FOR PROPOSED INTERVENORS
HOSPITALITY HOUSE; COALITION ON              ATTORNEYS FOR PROPOSED
15 | HOMELESSNESS; AND FAITHFUL FOOLS         INTERVENORS COALITION ON
                                             HOMELESSNESS
16

17 |                        UNITED STATES DISTRICT COURT

                          NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 18 · HASTINGS COLLEGE OF THE LAW, a public trust and institution of higher education duly organized under the laws and the Constitution of the State of California; FALLON VICTORIA, an individual; RENE DENIS, an individual; TENDERLOIN MERCHANTS AND PROPERTY ASSOCIATION, a business association; RANDY HUGHES, an individual; and KRISTEN VILLALOBOS, an individual, | **Case No. 4:20-cv-3033-JST** **NOTICE OF MOTION AND MOTION FOR INTERVENTION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PROPOSED INTERVENORS' MOTION FOR INTERVENTION** |
| Plaintiffs, | Date: July 22, 2020 |
| v. | Time: 2:00 P.M. Place: Courtroom 6, Second Floor Judge: Hon. Jon S. Tigar |
| CITY AND COUNTY OF SAN FRANCISCO, a municipal entity, | |
| Defendant. | Complaint Filed: May 4, 2020 Trial Date: None Set |

28

*Hastings College of the Law v. City and County of San Francisco;* Case No. 4:20-cv-3033-JST
MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES ISO PROPOSED INTERVENORS'
MOTION FOR INTERVENTION

# TABLE OF CONTENTS

Pages

NOTICE OF MOTION AND MOTION ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 2

I.      INTRODUCTION ..................................................................................................... 2

II.     PROPOSED INTERVENORS' INTEREST IN THE ACTION ....................................... 3

III.    STATEMENT OF FACTS AND PROCEDURAL BACKGROUND ............................. 5

        A.      HOMELESSNESS IN THE TENDERLOIN NEIGHBORHOOD ........................... 5

        B.      COVID-19 AND ITS IMPACT ON THE HOMELESS
                COMMUNITY ......................................................................................... 6

        C.      THE EXISTING PARTIES AND STATUS OF LITIGATION ............................. 7

IV.     PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS A
        MATTER OF RIGHT ............................................................................................... 9

        A.      STANDARD OF MANDATORY INTERVENTION ........................................... 9

                1.      This Request to Intervene Is Timely. ........................................ 10

                2.      Proposed Intervenors Have Significant Protectable Interest
                        in This Litigation .................................................................... 12

                3.      A Decision in This Action May Impair Intervenors' Ability
                        to Protect Their Interests. ........................................................ 14

                4.      The Existing Parties Will Not Adequately Represent the
                        Interests of Proposed Intervenors ............................................ 15

                        (a)     The interests of present parties are vastly different
                                than those of Proposed Intervenors and the
                                unsheltered persons whom they represent and serve ................... 16

                        (b)     The present parties are unable, and likely unwilling,
                                to raise all of Proposed Intervenors' arguments ......................... 17

                        (c)     Proposed Intervenors offer experience, expertise,
                                and perspective that relate to necessary elements
                                pending before this Court .............................................................. 18

V.      INTERVENORS SHOULD BE ALLOWED PERMISSIVE
        INTERVENTION ................................................................................................... 19

VI.     CONCLUSION ...................................................................................................... 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Pages

## <u>CASES</u>

*Am. Horse Prot. Ass'n v. Veneman*
   200 F.R.D 153 (D.D.C. 2001) ............................................................17

*Arakaki v. Cayetano*
   324 F.3d 1078 (9th Cir. 2003) ...................................................10,15,16

*California ex rel. Lockyer v. United States*
   450 F.3d 436 (9th Cir. 2006) ........................................................12,14

*Cf. Smith v. Marsh*
   194 F.3d 1045 (9th Cir. 1999) .............................................................11

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*
   647 F.3d 893 (9th Cir. 2011) ...............................................................11

*City of Fresno v. Andrus*
   622 F.2d 436 (9th Cir. 1980) ...............................................................12

*Coal. of Arizona/New Mexico Counties for Stable Economic Growth v. Dept. of Interior*
   100 F.3d 837 (10th Cir. 1996) ........................................................15,16

*Donnelly v. Glickman*
   159 F.3d 405 (9th Cir. 1998) ...............................................................12

*Freedom from Religion Found, Inc. v. Geithner*
   644 F.3d 836 (9th Cir. 2011) ...............................................................19

*Grutter v. Bollinger*
   188 F.3d 394 (6th Cir. 1999) ...............................................................17

*Hatton v. County Bd. of Education*
   422 F.2d 457 (6th Cir. 1970) ...............................................................14

*Idaho Farm Bureau Fed. v. Babbitt*
   58 F.3d 1392 (9th Cir. 1995) ...............................................................10

*Lavan v. City of Los Angeles*
   693 F.3d 1022 (9th Cir. 2012) .............................................................13

*League of United Latin Am. Citizens v. Wilson*
   131 F.3d 1297 (9th Cir. 1997) ........................................................19,20

*Martin v. City of Boise*
   920 F.3d 584 (9th Cir. 2019) ..........................................................2,9,13

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*
   934 F.2d 1092 (9th Cir. 1991) ........................................................10,11

*Sagebrush Rebellion, Inc. v. Watt*
   713 F.2d 525 (9th Cir.1983) ........................................................15,18,19

*Smith v. Los Angeles Unified School District*
    830 F.3d 843 (9th Cir. 2016) ............................................................................10,11

*Spangler v. Pasadena City Bd. of Education*
    552 F.2d 1326 (9th Cir. 1977) ...................................................................................19

*Sw. Ctr. for Biological Diversity v. Berg*
    268 F.3d 810 (9th Cir. 2001) .....................................................................................14

*Trbovich v. United Mine Workers of America*
    404 U.S. 528 (1972)....................................................................................................15

*United States v. Alisal Water Corp.*
    370 F.3d 915 (9th Cir. 2004) .....................................................................................10

*United States v. City of Los Angeles*
    288 F.3d 391 (9th Cir. 2002) ..........................................................................10,12,20

*United States v. Oregon*
    745 F.2d 550 (9th Cir. 1984) .....................................................................................11

*Utah Ass'n of Counties v. Clinton*
    255 F.3d 1246 (10th Cir. 2001) .................................................................................17

## **OTHER AUTHORITIES**

Federal Rules of Civil Procedure

Rule 24 .................................................................................................................... *passim*

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on July 22, 2020 at 2:00 p.m, or as soon thereafter as counsel may be heard by the Honorable Jon S. Tigar, Judge of the United States District Court for the Northern District of California, 1301 Clay Street, Courtroom 6, 2nd Floor, Oakland, California 94612, Proposed Intervenors HOSPITALITY HOUSE, the COALITION ON HOMELESSNESS, and FAITHFUL FOOLS (collectively, "Intervenors") will, and hereby do move the Court, pursuant to Rule 24 of the Federal Rules of Civil Procedure for an order granting intervention in this action.

Proposed Intervenors so move on the ground that they are entitled to mandatory intervention pursuant to Federal Rule of Civil Procedure 24(a) and permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).  This motion is supported by the accompanying Memorandum of Points and Authorities, *infra*; [Proposed] Complaint in Intervention for Declaratory and Injunctive Relief; the Declarations of Joe Wilson, Sarah Matthias Dennison, and Jennifer Friedenbach, Exhibits A through D, and any oral argument this Court may allow, and any other matter of which this Court takes notice.

DATED:  June 8, 2020                    Respectfully submitted,

                                        PUBLIC INTEREST LAW PROJECT
                                        DISABILITY RIGHTS CALIFORNIA
                                        BAY AREA LEGAL AID


                        By:     _____
                                        LAUREN HANSEN
                                        Attorneys for Proposed Intervenors

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiffs' UC Hastings' *et al.*, lawsuit seeks the removal of unsheltered Tenderloin residents from the sidewalks of that neighborhood, but it fails to include representation of unsheltered persons' interests in the lawsuit's framing and requested relief.  Instead the Plaintiffs are limited to a law school located in the Tenderloin, three housed individuals who live in the Tenderloin, an individual who owns a business in the Tenderloin, and the Tenderloin Merchants and Property Association, a business association.  Collectively, they allege economic loss, occurrence of drug use or criminal activities near their residences and businesses, and obstruction of Tenderloin District sidewalks as their interests underlying the lawsuit.  Nowhere in the Complaint is there mention of the rights or interests of unsheltered residents of the Tenderloin, nor any claim which seeks to protect those rights and interests, even though the suit's primary complaint is about the presence and property of unhoused people and their property.  The Complaint seeks only to protect the Plaintiffs' legal rights, however, the relief sought would directly affect unsheltered Tenderloin residents.  See Plaintiffs' Complaint (Pl. Compl.), ¶59 ("Defendant is legally obligated to act quickly to protect Plaintiffs' legal rights . . . as well as their health and lives.")

While unsheltered Tenderloin residents—and organizations that serve and advocate on behalf of those residents—share the goals of improving  public health and safety in the Tenderloin and of securing housing for those living on sidewalks, not all resolutions of these issues will adequately protect unsheltered residents' interests.  In the absence of safe and appropriate shelter or housing ("housing"), these residents have a constitutional right to be free from criminalization if they are residing outside with no available shelter options. *Martin v. City of Boise*, 920 F.3d 584, 616-17 (9th Cir. 2019).

Nor do Plaintiffs include any claim that alternative housing for unsheltered Tenderloin residents must be legally compliant with federal disability laws, or ensuring social distancing during the ongoing pandemic.  The disability claims in the lawsuit seek to only protect the Plaintiffs' rights, none of whom are experiencing unsheltered homelessness during a health

1  pandemic.  Likewise, the lawsuit does not seek to ensure that any resolution protects residents

2  who need to remain in the Tenderloin to access needed supportive services or to maintain contact

3  with family and friends until safe and appropriate housing is available.  Without residents'

4  representation these important issues will not be adequately protected.  Three non-profit

5  homeless advocacy organizations—Hospitality House, Coalition on Homelessness, and Faithful

6  Fools—file this motion for intervention to ensure that unsheltered Tenderloin residents have a

7  voice in this lawsuit and that their legal interests are fully protected.

8      This Court should grant intervention pursuant to Rule of Civil Proc. 24(a) and (b).

9  Proposed Intervenors are entitled to intervene as a matter of right because they meet the

10  requirements of the four-prong test:  (1) Proposed Intervenors promptly file this motion one

11  month after Plaintiffs' filed their complaint, before Defendant has filed a response, and within a

12  week of learning that Plaintiff UC Hastings refuses to sign a pledge to protect the human rights

13  of homeless people in this specific litigation; (2) Plaintiffs' claims directly implicate unsheltered

14  people's rights and interests; (3) Any decision or settlement in this case will greatly impair

15  unsheltered individuals' ability to protect their interests; and (4) The existing parties do not

16  adequately represent the interests of unsheltered Tenderloin residents.

17      Alternately, permissive intervention is appropriate because this motion is timely, the

18  claims involve common issues of fact and law, and intervention will not prejudice the existing

19  parties or delay this litigation.

20  **II.   PROPOSED INTERVENORS' INTEREST IN THE ACTION**

21      Proposed Intervenors Hospitality House, Coalition on Homelessness, and Faithful Fools

22  are integral parts of the Tenderloin and homeless community.  Friedenbach Decl., ¶¶3, 6-13;

23  Wilson Decl., ¶¶3, 6-15; Dennison Decl. ¶¶3-4, 6.

24      Hospitality House has been a staple in the Tenderloin District since its founding in 1967,

25  when it was established in response to a large influx of homeless LGBT youth in the

26  neighborhood.  Wilson Decl., ¶¶3, 6-15.  Its Executive Director, Joe Wilson, was formerly

27  homeless and came to Hospitality House, desperately needing shelter in the early 1980s.  *Id.*,

28  ¶¶4-5.  Hospitality House serves homeless individuals in the Tenderloin through its self-help

1   center, shelters, employment program and other social and cultural programs. *Id.* at ¶¶6-15.  It

2   focuses on the problem of economic inequality in San Francisco and the threat that inequality

3   poses to people's dignity, self-determination and shared humanity, particularly for low-income

4   and homeless individuals in the Tenderloin, Sixth Street Corridor, and Mid-market

5   neighborhoods. *Id.* at ¶¶3, 6-15.

6       Coalition on Homelessness ("Coalition") is a non-profit organization that organizes

7   unhoused people and front-line service providers to create permanent solutions to homelessness

8   while working to protect the human rights of those forced to remain on the streets.  Friedenbach

9   Decl., *Id.* at ¶¶3.  Over 50% of the Coalition's staff and board are currently or formerly

10  homeless.  *Id.* at ¶¶4.  The Coalition owns and operates a street newspaper entitled "Street

11  Sheet"*,* the longest continuously running street newspaper in the country.  *Id.* at ¶¶8.  Street

12  Sheet's content is primarily written and produced by unhoused persons and includes articles,

13  poetry and artwork.  *Id.*  Unhoused vendors sell the newspaper for $2.00 and keep the profits.  *Id.*

14      The Coalition has been representing the interests of San Francisco's unhoused residents

15  for over 30 years, including during the COVID-19 pandemic.  It has documented and challenged

16  the City's unlawful seizure of homeless people's belongings through its Stolen Belongings

17  Project.  *Id.* at ¶¶12-13.  The Coalition is also deeply concerned by the increasingly crowded

18  nature of shelters and homeless encampments in the City during the COVID-19 pandemic and

19  the risk of ongoing community spread of the virus among unhoused San Franciscans who do not

20  have access to safe indoor, individual housing units where they can shelter in place.  *Id.* at ¶¶29-

21  30, 34-35.

22      Faithful Fools was established in 1998 by a Unitarian Universalist Minister and a

23  Franciscan who founded a community dedicated to deep personal change in the service of deep

24  social change.  Dennison Decl., ¶¶3-4, 6.  Its mission is to foster awareness and analysis of

25  deteriorating social conditions in the United States and the world at large, seen from the level of

26  the streets, and to facilitate individual and collective responses thereto.  *Id.* at ¶4.  The

27  organization meets people where they are— whether housed or unhoused— through arts,

28  education, advocacy, and accompaniment.  *Id.*  They strive to raise awareness of the needs of

unsheltered San Franciscans and to address racism and fundamental human rights of people experiencing homelessness. *Id.* Its co-director, Sarah Matthias Dennison ("Sam Dennison") brings her personal experiences to the organization as she was formerly homeless in the Tenderloin. *Id.* at ¶5.

All three organizations serve persons with disabilities and provide critical services to homeless Tenderloin residents, including shelter, survival gear, personal protective equipment, and assistance with handling citations they receive as a result of being homeless. Wilson Decl., ¶¶6-17, 20-21; Friedenbach Decl., ¶¶6-13, 29; Dennison Decl., ¶¶9-12.

## III.    STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

### A.  HOMELESSNESS IN THE TENDERLOIN NEIGHBORHOOD

There are over 8,000 unhoused people in San Francisco, including 5,180 who are unsheltered, according to the 2019 point-in-time street and shelter count. Proposed Complaint in Intervention (Intervenors' Compl.) at ¶77. Approximately 3,656 unhoused people live in District 6, which contains the Tenderloin Neighborhood. *Id.* at ¶78. Over the last several years, the number of unsheltered individuals has steadily increased, due in part to the lack of emergency shelters and permanent affordable housing available in the City's housing market. *Id.* at ¶79-80. Shelters and other essential services have become even scarcer since January causing the number of tents that unhoused people have no choice but to live in to increase by 285%, according to a city report. *Id.* at ¶80.

A disproportionate number of these individuals have disabilities. The City's most recent 2019 Homeless Count and Survey found:

> Seventy-four percent (74%) of respondents reported living with one or more health conditions, compared to 68% in 2017. These conditions included chronic physical illnesses, physical disabilities, chronic substance use, and severe mental health conditions. Sixty-nine percent (69%) of respondents reported their condition limited their ability to hold a job, live in stable housing, or take care of themselves, compared to 53% in 2017.

Intervenors' Compl. at ¶81. In contrast, Census data indicate that only 5.9% of San Francisco residents under age 65 identify as having a disability. *Id.* at ¶82.

1    Unsheltered persons have resided in the Tenderloin Neighborhood, and other

2    neighborhoods in the City, for many years.  *Id.* at ¶83.  These individuals struggle to meet the

3    basic necessities of life and often experience mental illness, substance abuse issues, physical

4    disabilities, or any combination of these impairments.  *Id.* at ¶84.  Many persons experiencing

5    homelessness have close ties with other unsheltered persons as well as a sense of community in

6    the neighborhood where they live.  *Id.* at ¶85; Dennison Decl. at ¶12-13.

7              **B.  COVID-19 AND ITS IMPACT ON THE HOMELESS COMMUNITY**

8    The outbreak of novel coronavirus COVID-19 has only exacerbated the plight of

9    unsheltered San Franciscans.  The unhoused population is particularly vulnerable to the spread of

10   and infection by the virus.  Intervenors' Compl., ¶112-113.  They lack safe spaces to self-isolate

11   and adequate access to hygiene facilities and medical care.  *Id.* at ¶110.  These risk factors have a

12   particularly devastating impact on people of color, who are far more likely to be homeless than

13   white people in San Francisco.  *Id.* at ¶114.  The limited housing resources available to

14   unsheltered persons are in congregate settings, where infectious diseases can spread quickly.  Id.

15   at ¶136.  For example, nearly 100 residents tested positive for COVID at Multi-Service Center

16   South ("MSC South") and as of April 10, 2020, there were 179 confirmed COVID cases in at

17   least 60 Single Residency Occupancy Hotels.  *Id.* at ¶111.

18   In response to COVID-19, the City announced an Executive Order C19-07 on March 16,

19   2020, which has been extended several times and requires San Francisco residents to shelter in

20   place.  *Id.* at ¶103.  The Executive Orders have exempted unhoused persons, who lack housing

21   where they can shelter in place.  *Id.*  During the pandemic, shelters and temporary housing have

22   been either full or unable to take new referrals.  *Id.* at ¶104; Wilson Decl. at ¶7.  Currently, San

23   Francisco is not even allowing unsheltered individuals to add their names to shelter waitlists.

24   Intervenors' Compl. at ¶104; Wilson Decl. at ¶7.

25   In light of COVID-19, U.S. Centers for Disease Control and Prevention (CDC) issued

26   interim guidance that identifies people experiencing homelessness as a particularly vulnerable

27   group.  *See* Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19):

28   Homelessness (Apr. 13, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

1   precautions/homelessness.html.  The CDC also issued guidance for local and state health

2   departments regarding encampments, writing: "if individual housing options are not available,

3   allow people who are living unsheltered or in encampments to remain where they are.  Clearing

4   encampments can cause people to disperse throughout the community and break connections

5   with service providers.  This increases the potential for infectious disease spread."  *See* Centers

6   for Disease Control and Prevention, Coronavirus Disease 2019: Interim Guidance on People

7   Experiencing Unsheltered Homelessness (rev. May 13, 2020),

8   https://www.cdc.gov/coronavirus/2019-ncov/community/homeless-shelters/unsheltered-

9   homelessness.html#isolation.

10          Consistent with this guidance, and in response to advocacy by the Coalition on

11   Homelessness, the City has stopped sweeping encampments and committed to not confiscating

12   homeless people's tents during the COVID-19 pandemic.  *See* City and County of San Francisco,

13   Homelessness and COVID-19 (May 12, 2020), https://sf.gov/information/homelessness-and-

14   covid-19.  As a consequence, the Tenderloin neighborhood had become even more impacted, and

15   the City has not adequately responded to alleviate the harm to both unhoused and housed persons

16   alike. Friedenbach Decl., ¶¶25-29, 34-35; Dennison Decl., ¶7-8.

17          In light of the lack of availability of hotel rooms and other housing for unhoused

18   individuals during the pandemic, advocacy organizations, including Proposed Intervenors, have

19   provided tents and other Personal Protective Equipment to people experiencing homelessness, so

20   that unhoused persons have shelter from the elements and the ability to self-quarantine during the

21   spread of COVID-19.  Wilson Decl., ¶¶17, 20; Friedenbach Decl., ¶¶29, 31; Dennison Decl.,

22   ¶¶9-11.  Consequentially, homelessness has become more visible in San Francisco, including in

23   the Tenderloin.  Dennison Decl., ¶7; Friedenbach Decl., ¶13.  Plaintiffs cite increase in tents in

24   the Tenderloin as a reason for this lawsuit.  Pl. Compl., ¶4, 30-33.

25                     **C.  THE EXISTING PARTIES AND STATUS OF LITIGATION**

26          Plaintiffs UC Hastings, Fallon Victoria, Rene Denis, Randy Hughes, Kristen Villalobos,

27   and Tenderloin Merchants and Property Association filed this lawsuit on May 4, 2020.

28   Defendant City and County of San Francisco has not filed a response and plans to do so by June

1  23, 2020.  Joint Case Management Statement, filed May 21, 2020, p. 3.  The Court docket

2  reflects there have been no substantive hearings to date but that the parties have met in settlement

3  conferences. See Docket Entries 22-23, 35-36, 41.  The parties have a further case management

4  conference scheduled for June 19, 2020.  *Id.* at (Docket Entry 40).

5       Plaintiffs pled fourteen causes of action against the City, the Plaintiffs' stated interests

6  underlying the claims are distinct from the interests of Proposed. Plaintiff UC Hastings School of

7  Law cites its interests as increased cleaning costs, decline in student admissions, and decline in

8  business, and presence of neighborhood drug use which by implication places blame on

9  unhoused persons.  Pl. Compl. at ¶¶37-42.  Plaintiffs Victoria, Hughes and Villalobos identify

10  their interests as wanting not to have to walk in the streets to get around tents, as well as other

11  objections to the presence and alleged behavior of unhoused persons, including alleged drug use.

12  *Id.* at ¶¶43-45; ¶¶49-51.  Plaintiff Denis and Plaintiff Tenderloin Merchants and Property

13  Association list their interests as financial losses from alleged safety concerns and alleged drug

14  use.  *Id.* at ¶¶46-48.

15       The common thread that ties these Plaintiffs together is their complaints regarding the

16  real subjects of this litigation, the Tenderloin's unsheltered residents, along with their personal

17  possessions and the tents they use for shelter.  Plaintiff Villalobos describes unhoused persons as

18  drug dealers and "filthy people" that she must walk around to enter her home.  Pl. Compl. at ¶50.

19  Often, Plaintiffs complain about homelessness without naming it explicitly, writing that the

20  Tenderloin "faces a desperate crisis", Pl. Compl. at ¶1, that residents live in "deplorable

21  conditions", Pl. Comp. at ¶3, that the neighborhood has become "blighted", (Pl. Compl. at ¶4),

22  and has become a "horror show".  Pl. Compl., ¶32 at 12:1-22 (picture), ¶33 at 13:4-22 (picture).

23       Plaintiffs fault the Defendant City and County of San Francisco ("City") for failing to

24  police the presence of homeless people and their property in public spaces.  Pl. Compl. at ¶31

25  ("the San Francisco Police Department has been directed not to disturb those tents, despite the

26  fact that they block the sidewalks and shield criminals and despite the health risks that they pose

27  to permanent residents, business owners, pedestrians, and homeless people themselves.").

28  Plaintiffs further allege that the presence of homeless individuals and their property implicate

1   housed residents' access to public sidewalks and creates a nuisance for housed residents and

2   local businesses.  Pl. Compl. at ¶94-103.  In their prayer for relief, Plaintiffs ask generally for

3   injunctive/equitable relief; costs and attorneys' fees; and such other and further relief as this

4   Court deems just and proper.  See Pl. Comp. at p. 35:21-36:3.

5          In an attempt to receive reassurance from Plaintiff UC Hastings that it would not seek or

6   agree to any remedy that violated the rights of or otherwise harmed unhoused people, 28

7   homelessness advocacy  and service organizations contacted UC Hastings directly regarding this

8   issue. The advocacy organizations asked UC Hastings to sign a pledge to protect the human

9   rights of homeless individuals in this current litigation. Friedenbach Decl., at ¶18-19, Exhibit A.

10  More specifically, the pledge asked UC Hastings to promise to (1) not sign a settlement

11  agreement or advocate for a legal outcome that negatively impacts or criminalizes unhoused

12  Tenderloin residents based on their economic status, (2) respect the self determination of

13  unhoused Tenderloin residents in legal proceedings, (3) respect the CDC recommendations

14  regarding tent encampments, (4) ensure legal proceedings are in compliance with *Martin v.*

15  *Boise*, and (5) promise to work hard during legal proceedings to ensure that illegal property

16  confiscation is not the result of the lawsuit.  *Id.*  Proposed Intervenors were three of the

17  organizations seeking the pledge from UC Hastings.  Friedenbach Decl., at ¶18, Exhibit A;

18  Wilson Decl. at ¶22-25, Dennison Decl. at ¶11.

19         On June 1, 2020, David Faigman, Chancellor and Dean UC Hastings, issued a response

20  where he refused to commit to the human rights pledge.  Friedenbach Decl., at ¶21, Exhibit C.

21  Subsequent attempts to persuade Mr. Faigman to sign the pledge were unsuccessful.

22  Friedenbach Decl., at ¶¶22-23, Exhibit D.

23  **IV.     PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS A MATTER**

24  **OF RIGHT**

25          **A.  STANDARD OF MANDATORY INTERVENTION**

26  Rule 24(a) provides that:

27  "[T]he court must permit anyone to intervene who…claims an interest relating to

28          the property or transaction that is the subject of the action, and is so situated that

1   disposing of the action may as a practical matter impair or impede the movant's

2   ability to protect its interest, unless existing parties adequately represent that

3   interest."

4   Fed. R. of Civ. Proc. 24(a)(2).

5         The Ninth Circuit applies a four-part test for determining whether intervention must be

6   permitted as a matter of right:  (1) the applicant timely moved to intervene; (2) the applicant has

7   a significantly protectable interest relating to the property or transaction that is the subject of the

8   action; (3) the applicant is situated such that the disposition of the action may impair or impede

9   the party's ability to protect that interest; and (4) the applicant's interest will not be adequately

10   represented by existing parties. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003), *as*

11   *amended* (May 13, 2003). "Though the applicant bears the burden of establishing these

12   elements…'the requirements for intervention are [to be] broadly interpreted in favor of

13   intervention.'"  *Smith v. Los Angeles Unified School District*, 830 F.3d 843, 853 (9th Cir. 2016)

14   (quoting *United States v. Alisal Water Corp*., 370 F.3d 915, 919 (9th Cir. 2004)).  "A liberal

15   policy in favor of intervention serves both efficient resolution of issues and broadened access to

16   the courts. By allowing parties with a practical interest in the outcome of a particular case to

17   intervene, we often prevent or simplify future litigation involving related issues…[and] allow an

18   additional interested party to express its views before the court." *United States v. City of Los*

19   *Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (internal quotations and citations omitted).

20         Proposed Intervenors satisfy each of these prongs and should be granted intervention.

21   **1.  This Request to Intervene Is Timely.**

22         The timeliness of intervention depends on three factors: the stage of the proceedings, the

23   prejudice to other parties, and the reason for and length of the delay.  *Idaho Farm Bureau Fed. v.*

24   *Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995).  It is well-established that timeliness is not

25   measured from lapse of time since the commencement of the legal action but rather how much

26   time has passed since the intervenor knew or should have known her interests would not be

27   protected without intervention.  *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San*

28   *Francisco*, 934 F.2d 1092, 1095 (9th Cir. 1991) (holding lower court improperly denied

1    intervention because even though motion was filed 16 years after the complaint was filed, court

2    must focus on the date the party knew interests wouldn't be protected); *Smith v. L.A. Unified Sch.*

3    *Dist.*, 830 F.3d at 854 (holding timeliness depends on the totality of the circumstances and that

4    the "stage of proceedings factor should be analyzed by reference to the change in circumstances,

5    and not the commencement of the litigation").

6          A motion made "at an early stage of the proceedings" will generally satisfy the timeliness

7    requirement.  *See Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th

8    Cir. 2011) (motion to intervene was timely when it was filed less than three months after the

9    filing of the complaint and less than two weeks after the Defendants filed an answer); *Cf. Smith*

10   *v. Marsh,* 194 F.3d 1045, 1051-52 (9th Cir. 1999) (affirming denial of intervention when motion

11   was filed 15 months after commencement of action, the existing parties had already filed several

12   motions, the court heard oral arguments, discovery deadlines were set, and intervenors failed to

13   provide a satisfactory explanation for their delay).

14         Further, while the presence of protracted negotiations may weigh against granting

15   intervention, the fact that existing parties have engaged in settlement negotiations does not

16   automatically preclude intervention. *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d at 857. "[T]he

17   only 'prejudice' that is relevant under this factor is that which flows from a prospective

18   intervenor's failure to intervene after he knew, or reasonably should have known, that his

19   interests were not being adequately represented—and not from the fact that including another

20   party in the case might make resolution more "difficult[]." *Id.* (quoting *United States v. Oregon*,

21   745 F.2d 550, 552-53 (9th Cir. 1984)).

22         Here, Proposed Intervenors have acted with all reasonable haste.  Proposed Intervenors

23   file this Motion only one month and a few days after Plaintiffs filed their complaint, and the

24   Defendant has yet to file its initial responsive pleading.  Although the parties have appeared for

25   settlement conferences, they have not yet resolved the litigation, and no substantive hearings

26   have taken place.  As such, these proceedings are in the earliest of stages of litigation.

27         Further, this Court looks at the date that proposed intervenors knew their interests would

28   not be adequately represented, not the date of commencement of proceedings.  Here, Proposed

1   Intervenors, along with 25 other homeless advocacy organizations, contacted UC Hastings

2   directly to seek clarification of UC Hastings' interests in this lawsuit and to confirm whether the

3   interests of unsheltered Tenderloin residents would be adequately protected by Plaintiffs.

4   Specifically, UC Hastings was asked to pledge to protect the most basic of human rights for

5   homeless people.  On June 1, 2020, UC Hastings refused to sign advocacy organizations' pledge

6   to protect the rights of unhoused Tenderloin residents in the litigation, and Proposed Intervenors

7   promptly filed this motion.

8       The parties will suffer little to no prejudice from the timing of this intervention.

9   Proposed Intervenors' motion is therefore timely.

10      **2.  Proposed Intervenors Have Significant Protectable Interest in This Litigation.**

11      "[A] party has a sufficient interest for intervention purposes if it will suffer a practical

12  impairment of its interests as a result for the pending litigation." *California ex rel. Lockyer v.*

13  *United States*, 450 F.3d 436, 441 (9th Cir. 2006).  Rule 24(a) does not require that the protectable

14  interest at stake in the litigation be a specific legal or equitable interest. *Id.* The question is

15  whether the intervenor (1) "asserts an interest that is protected under some law, and (2) whether

16  there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Donnelly*

17  *v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). "[T]he 'interest' test is primarily a practical

18  guide to disposing of lawsuits by involving as many apparently concerned persons as is

19  compatible with efficiency and due process." *City of Fresno v. Andrus*, 622 F.2d 436, 438 (9th

20  Cir. 1980) (internal citation omitted).  An interest is sufficient "if the resolution of plaintiff's

21  claims actually will affect the applicant." *United States v. City of L.A.*, 288 F.3d at 398-99

22  (quoting *Donnelly*, 159 F.3d at 410).

23      Proposed Intervenors are intervening to protect the interests of unhoused Tenderloin

24  residents, a population they have worked on behalf of for over 100 years collectively.  Central to

25  the issues of this lawsuit is the demand for alternative accommodations for people who are

26  currently forced to live on the street and in public spaces. The three non-profit organizations who

27  move to intervene have protectable interests in this action; they have unhoused persons on their

28  staff and boards and directly provide services to homeless individuals.

1    The Complaint is unambiguous that the lawsuit seeks to advance the interest of

2  Plaintiffs—a law school, a business association, a business owner, and housed individuals.

3  Paragraph 59 asserts:  "Defendant is legally obligated to protect Plaintiffs' rights (as articulated

4  in their claims below) as well as their health and safety."  Plaintiffs do not state any specific

5  relief they seek in their prayer for relief, the Complaint is a collection of legal claims and

6  assertions whose primary aim is to remove unhoused residents, their tents, and other personal

7  property from the Tenderloin neighborhood.  Instead, they declare the presence of unhoused

8  people and their property creates a nuisance and state-created danger.  Plaintiffs further fault the

9  City for failing to police homeless people and their property in public spaces.  Essentially, each

10 of Plaintiffs' causes of action complains of and relates to the presence of impoverished

11 individuals who have no choice but to live and sleep outside.

12    Proposed Intervenors assert interests that are protected by law and relate to Plaintiffs'

13 claims. Plaintiffs allege alleges ADA claims, but treats unhoused persons as obstructions,

14 without acknowledging that people who are homeless are disproportionately living with

15 disabilities and that they are also entitled to the ADA's protections.  Plaintiffs' Complaint

16 contains no mention of protecting these rights as part of any resolution.

17    It is also settled law that homeless people have a constitutional right to be free from

18 criminalization if they are sleeping outside where there is no alternative and adequate shelter.

19 *Martin v. City of Boise*, 920 F.3d 584, 617 (9th Cir. 2019) (holding that "as long as there is no

20 option of sleeping indoors, the government cannot criminalize indigent, homeless people for

21 sleeping outdoors, on public property, on the false premise they had a choice in the matter.").

22 Unsheltered individuals also have a constitutionally protected property interest in their personal

23 belongings, even those left temporarily unattended in public spaces. *See Lavan v. City of Los

24 Angeles*, 693 F.3d 1022, 1031 (9th Cir. 2012).  Nevertheless, Plaintiffs label Tenderloin residents

25 sleeping outside as "harm[ing] its permanent residents."  Pl. Compl. at §55:17.

26    The City currently lacks sufficient alternate housing to house all of its 5,180 unsheltered

27 residents and their property.  As such, unhoused San Franciscans, including those in the

28 Tenderloin, have no choice but to live and sleep outdoors.  Insofar as Plaintiffs seek to remove

1    unsheltered Tenderloin residents and their property from the Tenderloin, unsheltered Tenderloin

2    residents have protectable legal interest in protecting themselves and their property rights.

3          Proposed Intervenors' also have interests related to the pandemic.  The CDC issued

4    guidance stating that "the planning and response to COVID-19 transmission among people

5    experiencing homelessness requires a whole community approach, which means that you are

6    involving partners" and that "continuing homeless services during community spread of COVID-

7    19 is critical…"[1]  Intervenors should be represented in any settlement or order that addresses the

8    response to providing shelter during a time of a pandemic.

9    **3.  A Decision in This Action May Impair Intervenors' Ability to Protect Their**

10   **Interests.**

11         In the third prong to intervene as a matter of right, courts ask whether "the disposition of

12   this case may, as a practical matter, affect" the interest at stake.  *California ex rel Lockyer*, 450

13   F.3d at 442. "[I]f an absentee would be substantially affected in a practical sense by the

14   determination made in an action, he should, as a general rule, be entitled to intervene." *Sw. Ctr.*

15   *for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (quoting Fed. R. Civ. P. 24,

16   Advisory Committee Notes).  "Intervention is concerned with something more than standing to

17   sue. It is concerned with protecting an interest which can only be protected through intervention

18   in the current proceeding." *Hatton v. County Bd. of Education*, 422 F.2d 457, 461 (6th Cir.

19   1970)(denying intervention even though applicants had standing to sue because they failed to

20   show interests would not be adequately represented by defendants).

21          Plaintiffs allege that the presence of tents, encampments, and homeless individuals in the

22   Tenderloin constitute a "horror show" and they seek the removal of unsheltered people and their

23   property from the neighborhood.  Pl. Compl. at ¶33.  The Complaint sets no bounds on what

24   remedies they will pursue or are willing to accept in order to be rid of the "horror show", but it is

---

[1] *See* Centers for Disease Control and Prevention, *Coronavirus Disease 2019 (COVID-19):
Interim Guidance for Homeless Service Providers* (Apr. 21, 2020),
https://www.cdc.gov/coronavirus/2019-ncov/community/homeless-shelters/plan-prepare-
respond.html; Centers for Disease Control and Prevention, *Coronavirus Disease 2019 (COVID-
19): People Who Are At Higher Risk* (Apr. 15, 2020), https://www.cdc.gov/coronavirus/2019-
ncov/need-extra-precautions/people-at-higher-risk.html.

1   clear that the litigation's goals is to clear the Tenderloin's streets and doorways of homeless

2   people and their belongings.  *See* Friedenbach Decl., ¶¶15, 24, Exh. C at 3.

3          Any decision or resolution of the Complaint's claims will necessarily implicate the

4   interests of unhoused persons as a practical matter. *See e.g. Sagebrush Rebellion, Inc. v. Watt*,

5   713 F.2d 525, 526-27 (9th Cir.1983) (finding a right to intervene when an adverse decision in the

6   suit would impair the intervenor's interest in the preservation of birds and their habitats). Here,

7   unsheltered Tenderloin residents are the underlying subjects of Plaintiffs' suit.  Those

8   experiencing homelessness in the Tenderloin would most directly bear the effects of an adverse

9   decision or settlement adverse to their interests.  See Wilson Decl., ¶¶26-28.  Allowing Proposed

10  Intervenors' to intervene will help to ensure that the rights and interests of these individuals are

11  given adequate consideration at all stages of litigation.

12      **4.  The Existing Parties Will Not Adequately Represent the Interests of Proposed**

13          **Intervenors.**

14          Finally, the existing parties will not adequately represent the interests of unhoused

15  persons.  Whether another party can adequately represent the intervenors' interests depends on

16  "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed

17  intervenor's arguments; (2) whether the present party is capable and willing to make such

18  arguments; and (3) whether a proposed intervenor would offer any necessary elements to the

19  proceeding that other parties would neglect." *Arakaki*, 324 F.3d at 1086. "The requirement of the

20  [r]ule is satisfied if the applicant shows that representation of his interest 'may be' inadequate;

21  and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine*

22  *Workers of America*, 404 U.S. 528, 538, n.10 (1972).

23          Adequate representation is presumed when the government and the applicant are on the

24  same side. *See Arakaki*, 324 F.3d at 1086.  Intervenors can show the government does not

25  adequately represent their interests when the government has a prior history of hostility and

26  neglect to the proposed intervenors or proposed intervenors have a discrete and particularized

27  interest. *See e.g. Coal. of Arizona/New Mexico Counties for Stable Economic Growth v. Dept. of*

28  *Interior*, 100 F.3d 837, 844–45 (10th Cir. 1996) (writing that the burden can be met by showing

1  collusion or "that the representative has an interest adverse to the applicant, or that the

2  representative failed in fulfilling his duty to represent the applicant's interest").

3      In this case, neither Plaintiffs nor Defendants adequately represent Proposed Intervenors

4  interests.

5      **(a) <u>The interests of present parties are vastly different than those of Proposed</u>**

6          **<u>Intervenors and the unsheltered persons whom they represent and serve</u>**

7      "The most important factor in determining the adequacy of representation is how the

8  interest compares with the interests of existing parties." *Arakaki*, 324 F.3d at 1086.  Plaintiffs

9  bring this lawsuit to advance their own interests, which are distinct from the Proposed

10  Intervenors interests. Plaintiffs' financial and other interests, are materially different than those

11  of unhoused persons.  *See* section IV.A.2, *supra*.  In articulating the Plaintiffs' individual and

12  collective interests in the litigation, the Complaint describes unhoused people living in the

13  Tenderloin's public spaces as a nuisance, as an obstruction, or as a danger.  Pl. Compl., ¶¶94-

14  103.  Far from seeking to advance the rights and interests of unhoused individuals, the Complaint

15  paints unsheltered Tenderloin residents in broad brush and treats those individuals' presence as

16  only harmful for which it seeks redress.

17      In contrast, Proposed Intervenors have an interest in asserting homeless individuals'

18  statutory or constitutional rights, and to ensuring and that any resolution of Plaintiffs' claims

19  does not violate those rights.  Because of Plaintiffs' drastically different interests from Proposed

20  Intervenors, Proposed Intervenors cannot reasonably rely on Plaintiffs to raise all arguments on

21  their behalf.

22      Proposed Intervenors also cannot rely on the City for representation of unhoused persons'

23  interests.  First, Proposed Intervenors also have claims against the City.  Specifically, they raise

24  the failure of the City to comply with federal disability law to ensure that unhoused residents

25  have access to all City programs, and to prevent discrimination against this population.

26  Intervenors' Compl., ¶¶163-180.  Proposed Intervenors also request declaratory judgment that

27  the City must not engage in seizure of unhoused persons' property that violates their Fourth or

28  Fourteenth Amendment Rights and that the City must not violate unhoused persons' Eighth

1  Amendment rights by taking action that criminalizes their homeless status.  See Intervenors'

2  request for relief at ¶¶ e, f.

3      Second, as a government entity, the City is subject to conflicting and shifting constituent

4  pressures, which render its representation of the proposed intervener's particular interests

5  inadequate.  *See Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1254-55 (10th Cir. 2001)

6  (intervener's interests not adequately represented by a government entity that must represent

7  broader public interest, which in turn may not be coextensive with intervener's particular

8  interest); *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999) (allowing student group to

9  intervene to in school affirmative action case when University was "subject to internal and

10  external institutional pressures that may prevent it from articulating some of the defenses of the

11  policies that the proposed interveners intend to present"); *Am. Horse Prot. Ass'n v. Veneman*,

12  200 F.R.D 153, 159 (D.D.C. 2001) (finding that, while the United States Department of

13  Agriculture and a show horse group shared "identical interests in asserting that the Operating

14  Plan [preventing the soring of horses] is lawful," the USDA's obligations to "interests other than

15  those represented by the [intervenor] render its representation of the intervener show horse

16  groups inadequate").

17      The potential for conflicting interests on the part of the government is particularly true

18  here, given that the lawsuit pits a law school, neighborhood association, and some constituents

19  with disabilities in the Tenderloin against the interests of homeless individuals, many of whom

20  also have disabilities.  Further, one of the Proposed Intervenors, Coalition on Homelessness, has

21  a history of documenting the City's unlawful seizure of homeless people's property through its

22  Stolen Belongings project. Given the different interests of the City and Proposed Intervenors, it

23  cannot be presumed that the City will make all of Proposed Intervenors' arguments in this

24  lawsuit.

25  **(b)  The present parties are unable, and likely unwilling, to raise all of Proposed**

26  **Intervenors' arguments**

27      Even a cursory glance at the current lawsuit demonstrates that the present Plaintiffs are

28  not raising arguments representing the interests of unhoused persons because of the negative way

1   they describe people experiencing homelessness. Plaintiffs refer to homeless people as "filthy"

2   and that the neighborhood has become "blighted" with their presence.  Plaintiffs tie the presence

3   of unhoused residents to "rampant drug users" and "criminals" without any explanation or

4   citation to actual evidence.  They complain that the City does not sufficiently police the

5   unhoused population in the Tenderloin and call for increased police activity and criminalization.

6          Further, Proposed Intervenors Hospitality House, Coalition on Homelessness, and

7   Faithful Fools recently asked Plaintiff Hastings School of Law to promise to protect the interests

8   of homeless individuals in this specific litigation by signing a pledge declaring to protect the

9   most basic of human rights. On June 1, Chancellor and Dean of UC Hastings refused to sign

10   such a pledge. Understandably, homeless advocates are deeply concerned that current Plaintiffs

11   are unlikely to raise arguments on behalf of unsheltered residents.  See Friedenbach Decl., ¶¶18-

12   23.

13          The City is also unable to raise claims on their behalf because the claims Proposed

14   Intervenors assert are against the government.

15   **(c)**   **Proposed Intervenors offer experience, expertise, and perspective that relate to**

16          **necessary elements pending before this Court**

17          Unlike the present parties in this case, Proposed Intervenors Hospitality House, Coalition

18   on Homelessness, and Faithful Fools have missions that are germane to the interests of

19   unsheltered population.  The organizations also provide services and assistance to unhoused

20   persons and engage in policy and advocacy work with unsheltered Tenderloin residents, many of

21   whom have disabilities.  Wilson Decl.,¶¶3, 6-15; Friedenbach Decl., ¶¶6-13, 17; Dennison Decl.,

22   ¶¶3-4, 6, 12. All three organizations have many years of experience working to secure safe,

23   appropriate housing for unhoused people in the Tenderloin.  Wilson Decl., ¶¶3, 6-15;

24   Friedenbach Decl., ¶3, 11, 29; Dennison Decl., ¶3-4, 6, 12.  The Executive Director at

25   Hospitality House and Co-Director at Faithful Fools were both formerly homeless, and have

26   first-hand experience with the devastating effects of being homeless.  Wilson Decl., ¶¶4-5;

27   Dennison Decl., ¶5.  Over 50% of the staff and board at the Coalition are currently or formerly

28   homeless.  Friedenbach Decl., ¶4.  Thus, Proposed Intervenors have personal knowledge about

1   necessary elements to this proceeding, in particular the ADA and Rehabilitation Act, which other

2   parties may neglect to raise.  They offer the necessary experience, expertise, and perspective to

3   the proceeding that other parties lack. *See Sagebrush Rebellion, Inc.,* 713 F.2d at 528 (finding

4   inadequate representation when "the intervenor offers a perspective which differs materially

5   from that of the present parties to the litigation" and that the intervenor had expertise distinct

6   from that of the government).

7       For these reasons, Proposed Intervenors cannot rely on the present parties to adequately

8   represent their interests in this litigation and are entitled to intervene as a matter of right.

9       **V.      INTERVENORS SHOULD BE ALLOWED PERMISSIVE INTERVENTION**

10      Even if this Court denies intervention as a matter of right, it should grant permissive

11   intervention pursuant to Rule 24(b).  Proposed intervenors must show that (1) independent

12   grounds for jurisdiction exist; (2) the motion is timely; and (3) the applicant's claim or defense

13   shares a common question of law or fact with the main action. Fed. R. Civ. P. 24(b)(2); *League*

14   *of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997). Trial courts have

15   broad discretion in granting permissive intervention; they can consider numerous other factors in

16   making that determination. *Spangler v. Pasadena City Bd. of Education*, 552 F.2d 1326, 1329

17   (9th Cir. 1977) (writing that once Rule 24(b) conditions are met, the trial court can consider the

18   "nature and extent of the intervenors' interests…the legal position they seek to advance…its

19   probable relation to the merits of the case" and other factors). Finally, the Court must also

20   consider whether intervention will "unduly delay or prejudice the adjudication of the original

21   parties' rights." Fed. R. Civ. P. 24(b)(3).

22      Rule 24(b)'s jurisdictional requirement prevents destroying diversity jurisdiction and "the

23   enlargement of federal jurisdiction in such cases only where a proposed intervenor seeks to bring

24   new state-law claims." *Freedom from Religion Found, Inc. v. Geithner,* 644 F.3d 836, 843-44

25   (9th Cir. 2011). Here, Proposed Intervenors do not bring any new state law claims, they raise

26   only federal claims and the same state law claims that Plaintiffs already raised, as well as provide

27   a response to Plaintiffs claims, which this Court already has jurisdiction. As such, jurisdictional

28   requirements are met.

1       Further, Proposed Intervenors' claims have common questions of fact and law with

2   Plaintiffs' Complaint, namely disability claims raised by both Intervenors and Plaintiffs and the

3   factual circumstances regarding the presence of unsheltered Tenderloin residents. Proposed

4   Intervenors provide crucial services to those who live on the streets and to individuals with

5   disabilities. They can provide key factual information in light of their extensive outreach and

6   work on the ground.  These perspectives are critical to a case that seeks as broad of remedies as

7   Plaintiffs purport to seek.

8       The same three timeliness factors that are weighed under Rule 24(a) apply to permissive

9   intervention, however Rule 24(b) is less lenient than Rule 24(a) in terms of timeliness. *League of*

10  *United Latin Am. Citizens*, 131 F.3d at 1308. Here, Intervenors are still timely because they filed

11  this motion shortly after learning that Plaintiffs would not represent their interest. Thus, there is

12  little to no prejudice and no undue delay.

13      The present parties may argue that this motion is untimely because they have already

14  begun settlement negotiations.  However, "the idea of 'streamlining' the litigation…should not

15  be accomplished at the risk of marginalizing those…who have some of the strongest interests in

16  the outcome." *United States v. City of L.A.,* 288 F.3d at 404 (rejecting existing parties' argument

17  that intervention was untimely even when difficult and complex negotiations already took place

18  and a consent decree already filed with the court).

19      Finally, equitable factors also weigh in favor of granting permissive intervention. It is

20  inconceivable how the case could go forward without the participation of *any* unhoused person

21  or organization to represent their interests. Proposed Intervenors have the strongest interest in the

22  outcome of this litigation; they employ staff who are currently and formerly homeless and

23  represent some of the most vulnerable community members. Homeless people's lives and

24  property will be directly affected by this case's outcome. Because Proposed Intervenors assert

25  claims that share common questions of law and fact with the claims raised in this litigation, and

26  unhoused persons have some of the strongest interests in the outcome of this case, this Court

27  should grant permissive intervention.

28  **VI.    CONCLUSION**

1    For the foregoing reasons, Proposed Intervenors Hospitality House, Coalition on

2  Homelessness, and Faithful Fools request that this Court grant intervention pursuant to Rule

3  24(a) and Rule 24(b).

4

5  DATED:  June 8, 2020                          Respectfully submitted,

6

7                                               PUBLIC INTEREST LAW PROJECT
                                                DISABILITY RIGHTS CALIFORNIA
8                                               BAY AREA LEGAL AID

9

10

11                                              By: _____
                                                LAUREN HANSEN
12                                              Public Interest Law Project
                                                Attorneys for Proposed Intervenors Hospitality
13                                              House; Coalition on Homelessness; and Faithful
                                                Fools
14

15

16                                              By: _____
                                                LILI V. GRAHAM
17                                              Disability Rights California
                                                Attorneys for Proposed Intervenors Hospitality
18                                              House; Coalition on Homelessness; and Faithful
                                                Fools
19

20                                              By: _____
                                                JESSICA BERGER
21                                              Bay Area Legal Aid
22                                              Attorneys for Proposed Intervenors Coalition on
                                                Homelessness
23

24

25

26

27

28