# **EXHIBIT B**

# **EXHIBIT B**

## UC Hastings Community Open Letter Concerning
## Hastings et. al. v. City and County of San Francisco

May 28, 2020

**Dear Chancellor and Dean Faigman,**

We are students and alumni of UC Hastings. We write to express our concerns about the lawsuit filed by our school and five co-plaintiffs.[1] We believe this suit will displace the Tenderloin's houseless population and distribute it throughout San Francisco, limiting these individuals' ability to organize and support one another. We also believe the City will use this suit to justify increased police repression of our unhoused neighbors, many of whom are people with disabilities, African American, and Latinx people displaced from their homes by economic and political violence.[2]

We urge UC Hastings to stop advocating for increased police presence in our community, which will displace people experiencing homelessness ("PEH") into San Francisco jails. Instead, we encourage UC Hastings to use its resources and expertise to support our houseless neighbors and their organizations in demanding dignified housing and services while not criminalizing those who chose to remain in their community.

The COVID-19 pandemic and resultant Shelter-in-Place Order has caused the concentration of PEH in the Tenderloin to increase significantly. The number of tents in the Tenderloin has risen by over 300%, as homeless shelters in the City stopped accepting new residents and decreased available beds.[3] As the Tenderloin is a historically low-income community, the unprecedented crisis has had a dramatic effect.

On May 4, 2020, UC Hastings filed its federal lawsuit seeking to rid the Tenderloin of encampments and "open-air drug sales."[4] The suit alleges that encampments increase the parties' risk of COVID-19 infection, and infringe upon a litany of state and federal Constitutional rights.[5] The complaint does not name any unhoused person nor any organization advocating for PEH's rights as a party.[6] Instead, the complaint defines the community in a way that implicitly excludes our unhoused neighbors.[7]

The complaint also omits any reference to San Francisco Ordinance 069-20, passed unanimously by the San Francisco Board of Supervisors on April 24, 2020.[8] Amongst other things, the ordinance requires the City to obtain hotel rooms for PEH. Most PEH and their organizations advocated for this temporary solution.[9] Mayor London Breed, whom UC Hastings is at pains to avoid criticizing, returned Ordinance 069-20 unsigned and flatly refused to implement it.[10]

Later in May, the City unveiled the "Tenderloin Plan," which calls for more police in the neighborhood.[11] Increased police presence will only exacerbate the criminalization of PEH and evade the public health crisis UC Hastings allegedly seeks to address. The City has utterly failed its most vulnerable residents, and UC Hastings could better serve its community by suing to force the City to provide shelter and care.[12]

While ostensibly addressing a public health crisis, UC Hastings' lawsuit focuses heavily on criminal activity. The suit includes lurid descriptions of "tent-blocked sidewalks, groups of addicts injecting themselves, the odors of smoked crystal methamphetamine and human waste, and open-air drug dealing" that "cause residents to fear" going outside at night.[13] The complaint makes Hastings' position clear. These tent-dwellers, addicts, and producers of human waste are not considered "residents" by the complainants, who call their presence a "horror show."[14] The complaint accuses PEH in the Tenderloin of "act[ing] hostilely and … threaten[ing] violence."[15] It even cites the Trump Administration's debunked claim that San Francisco's PEH are a significant source of water pollution[16] —a claim that City Attorney Dennis Herrera accurately described as a "politically motivated ploy" to "misuse the EPA to attack people it disagrees with."[17] While students and residents of the Tenderloin may have valid health, safety, and access concerns, this hyperbolic language dehumanizes PEH and perpetuates the systems of oppression we as students and alumni oppose.

By failing to include members of the unhoused community or advocates of PEH as plaintiffs, UC Hastings invites the City to increase policing and criminalization of that community. This lack of engagement with unhoused Tenderloin residents is not new. While students, staff, and faculty are involved in countless progressive projects, Hastings, as an institution, has consistently turned to policing as its primary method of engagement with its unhoused neighbors. In 2016, UC Hastings introduced armed police to the campus.[18] Recently, UC Hastings announced that it received a grant to expand its video surveillance network and hoped to introduce an "autonomous security robot" to the campus.[19]

The Chancellor and Dean's message to UC Hastings community members on May 4, 2020, claimed that the school sought humanitarian responses to the COVID-19 crisis.[20] Yet its complaint primarily alleges that the unfolding humanitarian crisis is actionable insofar as it restricts sidewalk access for others.[21]  Recognizing UC Hastings' historical tendency to turn to law enforcement to engage with Tenderloin community members, we demand that it look beyond policing as a remedy for the current health crisis.

As UC Hastings students and alumni invested in an equitable future for all Tenderloin residents, we believe our school should meaningfully challenge the social, economic, and political conditions that create and perpetuate homelessness. Doing so requires breaking the cycle of the failed "war on drugs"[22] and the gentrification that has forced so many of our houseless neighbors onto the streets. As such, UC Hastings should explicitly and intentionally reject law-enforcement approaches to public health issues.[23] We expect nothing less from a school that takes pride in its social justice values.[24]

As law students and alumni, most of us do not have the expertise or experience required to protect our neighbors from COVID-19. Therefore, we ask UC Hastings to look to plans created by our medical colleagues and organizations that serve PEH. We recommend the Do No Harm Coalition's Covid-19 Plan for Unhoused People as a blueprint.[25] This plan, unlike UC Hastings' civil action, demands that the City provide adequate shelter for our unhoused neighbors by using the thousands of hotel rooms presently vacant, consistent with San Francisco Ordinance 069-20.[26] Also, unlike UC Hastings,[27] the Do No Harm Coalition Plan does not request the City deploy the police against our unhoused neighbors who cannot currently access safe shelter.[28]

The unfortunate truth for many of our Tenderloin neighbors is that living on the street is their only option. As one of our neighbors, Abdull Best, recently said, "I tried to get into the men's shelter but they said the corona had came out. You can't get into a new shelter while it's quarantined. No new residents during the quarantine."[29]  If the City complies with the University's demands, we believe PEH will be punished for "an involuntary act or condition [that] is the unavoidable consequence of one's status or being"[30] As the Ninth Circuit has held, homelessness is not a crime.[31]

For the sake of all members of our Tenderloin Community, we ask UC Hastings to follow the leadership of our unhoused neighbors and their allies in demanding housing, healthcare, harm reduction, and drug treatment services for all San Franciscans. UC Hastings can start by urging that PEH be housed in hotel rooms, as the Board of Supervisors demands. However, UC Hastings must refrain from policing PEH who decline City services. UC Hastings must realize that the relief sought from the lawsuit will have lasting effects on the Tenderloin community if PEH are displaced to the City's jails. By not criminalizing our unhoused neighbors, UC Hastings may begin to live up to its social justice values.

**Signed,**

**A Group of Students and Alumni, Classes 1989-2022; 129 total as of May 28, 2020.**

## Endnotes

1   Complaint, Hastings College of the Law, Fallon Victoria, Rene Denis, Tenderloin Merchants and Property Association, Randy Hughes, and Kristen Villalobos v. City and County of San Francisco, No. 3:20-cv-03033 (N.D. Cal. May 4, 2020).
2   Applied Survey Research, San Francisco Homeless Count & Survey, Comprehensive Report 2019, Dept. of Homelessness and Supportive Housing, 22-23 (2019), http://hsh.sfgov.org/wp-content/uploads/FINAL-PIT-Report-2019-San-Francisco.pdf. The survey cites job loss and eviction as a major cause of homelessness. The survey also analyzed the respondents' top barriers to escaping homelessness. 63% responded that affording rent was one of their biggest obstacles while 37% cited insufficient income, 19% cited lack of moving funds, 18% cited the administrative difficulties, and 15% asserted no housing was available. Id.
3   Aja Seldon, San Francisco Unveils COVID-19 Safety Plan for Tenderloin, Sees Near 300% Increase in Tents, Fox KTVU 2 (May 6, 2020), https://www.ktvu.com/news/san-francisco-unveils-covid-19-safety-plan-for-tenderloin-sees-near-300-increase-in-tents; Bigad Shaban, Michael Bott, and Anthony Rutanashoodech, San Francisco Struggles to Spread Out Homeless Amid First COVID-19 Case Inside Shelter, NBC Bay Area (Apr. 2, 2020), https://www.nbcbayarea.com/news/coronavirus/sf-scrambles-to-address-overcrowding-after-covid-19-case-at-homeless-shelter/2266437/.
4   Compl., supra note 1, at ¶¶ 4, 30-33.
5   Compl., supra note 1, at ¶¶ 3, 4.
6   Compl., supra note 1, at ¶¶ 13-18.
7   Compl., supra note 1, at ¶ 4.
8   San Francisco, Cal., Ordinance 069-20 (Apr. 24, 2020), https://sfgov.legistar.com/LegislationDetail.aspx?ID=4414886&GUID=A35F4B98-84FD-4229-A9EE-A529DC300124.
9   Letter from Coalition on Homelessness, Lawyer's Committee for Civil Rights, ACLU, Public Interest Law Project, and National Law Center on Homelessness & Poverty, to Mayor London Breed (May 5, 20202), https://www.scribd.com/document/460039740/Demand-Letter-Re-Unhoused-Community-and-COVID19.
10  Id. (noting that "The city's refusal to comply with ordinance No. 69-20 sets a dangerous precedent of illegality and defiance of the legislative branch that endangers the entire community.").
11  Vivian Ho, "A True Emergency:" Covid-19 Pushes Homeless Crisis in San Francisco's Tenderloin to the Brink, The Guardian (May 19, 2020), https://www.theguardian.com/world/2020/may/19/a-true-emergency-covid-19-pushes-homeless-crisis-in-san-franciscos-tenderloin-to-the-brink.
12  UC Hastings' eleventh cause of action in its lawsuit against the City requests basic shelter for our unhoused Tenderloin neighbors; the thirteen other claims do not mention this relief. Compl. supra note 1, at ¶¶ 105-11. We encourage UC Hastings to prioritize this cause of action and fight for housing as a human right.
13  Compl., supra note 1, at ¶ 37.
14  Compl., supra note 1, at ¶ 33.
15  Compl., supra note 1, at ¶ 46.
16  Compl., supra note 1, at ¶ 35.
17  Vivian Ho, EPA Cites San Francisco for "Water Pollution," Fulfilling Trump's Treat, The Guardian (Oct. 2, 2019), https://www.theguardian.com/environment/2019/oct/02/san-francisco-epa-water-pollution-trump.
18  See Michael Barba, UC Hastings Considers Replacing Unarmed Security Force, SF Examiner (Mar. 29, 2016), https://www.sfexaminer.com/news/uc-hastings-considers-replacing-unarmed-security-force/.
19  E-mail from David Faigman, Chancellor and Dean, UC Hastings Coll. of the Law, to UC Hastings Community (Feb. 28, 2020, 11:51 PST) (on file with authors).
20  E-mail from David Faigman, Chancellor and Dean, UC Hastings Coll. of the Law, to UC Hastings Community (May 4, 2020, 9:21 PST) (on file with authors)
21  Compl., supra note 1, at ¶¶ 61, 70, 77-82, 90-92, 97-99, 101-02, 118, 122.
22  See generally Michelle Alexander, The New Jim Crow (2010).
23  See Steven Jonas, Ending the "Drug War:" The Public Health Approach to the Drug Problem, 1 J. Prev. Med. 2:8 (May 12, 2016), https://preventive-medicine.imedpub.com/ending-the-drug-war-the-public-health-approach-to-the-drug-problem.pdf; Addressing Law Enforcement Violence as a Public Health Issue, American Public Health Association (Nov. 13, 2018), https://www.apha.org/policies-and-advocacy/public-health-policy-statements/policy-database/2019/01/29/law-enforcement-violence.
24  This is Why We Work for Justice, UC Hastings (Jun. 26, 2017), https://www.uchastings.edu/2017/06/26/this-is-why-we-work-for-justice/.
25  COVID-19 Plan for Unhoused People: A Medically Indicated Plan to Prevent Spread of Covid-19 Among Unhoused People, Do No Harm Coalition (April 7, 2020), https://www.donoharmcoalition.org/uploads/1/2/3/8/123860160/covid19_unhoused_plan__1_.pdf. Coalition on Homelessness, GLIDE, SF Rising (all organizations that served unhoused individuals in the Tenderloin Community) are the three organizations that published this plan. Id. Several members of the UCSF medical community signed on in support of this plan including: Charles Chiu, MD, PhD (Director of the UCSF-Abbott Viral Diagnostics and Discovery Center and the Associate Director of the UCSF Clinical Microbiology Laboratory); Deborah Cohan, MD (Professor in the UCSF Department of Obstetrics, Gynecology and Reproductive Sciences); Madhavi Dandu, MD, MPH (Professor of Medicine at UCSF and Director of the Master of Science in Global Health); Paula Feisher, MA (Associate Director of the Center for Community Engagement at UCSF); Erica Lawson, MD (Associate Professor of Pediatrics at UCSF); Rupa Mayra, MD (Associate Professor of Medicine at the UCSF Division of Internal Medicine and Faculty Director of the Do No Harm Coalition); Nancy Miliken, MD (Director of the National Center of Excellence in Women's Health Professor Emerita of Obstetrics, Gynecology and Reproductive Sciences at UCSF); Juliana E. Morris, MD, EdM (Clinical Instructor in Family and Community Medicine at UCSF); Olivia Park, MPH, MD Candidate (Class of 2020 at the UCSF School of Medicine PRIME-US (Program in Medical Education for Urban Underserved)); Ramona Tascoe, MD (President of the UCSF Alumni Association); Roberto Ariel Vargas, MPH (Associate Director of the UCSF Center for Community Engagement, Clinical & Translational Science Institute (CTSI)); Judy Young, MPH (Co-Director of the UCSF Black Women's Health & Livelihood Initiative and Executive Director of the UCSF National Center of Excellence in Women's Health). Id at 1.
26  Id. at 2.
27  See compl., supra note 1, at ¶ 32. (alleging that "The San Francisco Police Department has been directed not to remove or disturb those tents, despite the facts that they block the sidewalks and shield criminals"); compl., supra note 1, at ¶ 44 (alleging that the San Francisco Police "simply look away when people on the streets and sidewalks of the Tenderloin commit crimes"); compl., supra note 1, at ¶ 46 (alleging that "drug dealing and usage is rampant and conducted in plain view of even the SFPD").
28  Do No Harm Coalition, supra note 26, at 1-6.
29  Vivian Ho, 'A true emergency:' Covid-19 pushes homeless crisis in San Francisco's Tenderloin to the brink, The Guardian, (May 29, 2020 4:00 AM), https://www.theguardian.com/world/2020/may/19/a-true-emergency-covid-19-pushes-homeless-crisis-in-san-franciscos-tenderloin-to-the-brink.
30  Jones v. City of L.A., 444 F.3d 1118, 1135 (9th Cir. 2006).
31  Martin v. City of Boise, 920 F.3d 584,617 (9th Cir. 2019) (citing Jones, 444 F.3d at 1138) (affirming that "'so long as there is a greater number of homeless individuals in [a jurisdiction] than the number of available beds [in shelters],' the jurisdiction cannot prosecute homeless individuals for 'involuntarily sitting, lying, and sleeping in public.'").