# EXHIBIT C

# EXHIBIT C



David L. Faigman
Chancellor & Dean
John F. Digardi Distinguished Professor of Law
Professor, UCSF School of Medicine, Dept. of Psychiatry
University of California Hastings College of the Law | 200 McAllister Street | San Francisco, CA 94102
Phone: 415-565-4700 | faigmand@uchastings.edu | www.uchastings.edu

June 1, 2020

To Members of the Hastings and Tenderloin Communities:

This past week, I received two letters expressing concern regarding the lawsuit Hastings filed jointly with five co-plaintiffs against the City and County of San Francisco. One came from a group of Hastings students and alumni (about 125 signatories, mostly students) ("Student Letter") and the other from organizations that advocate on behalf of homeless people ("Advocate Letter"). Since both express substantially similar sentiments, I will respond to them together. And since both letters were addressed to me individually, my response is limited to my own views and should not be attributed to the other plaintiffs in the suit.

Both letters begin with the same premise, that the lawsuit fails to take sufficiently into account the rights of the unhoused population in the Tenderloin. This is not true. If successful, the lawsuit, though framed in terms of the rights under state and federal law of housed Tenderloin residents and businesses, will benefit both the housed and unhoused.

It is true, of course, as the Student Letter points out, that "the complaint does not name any unhoused person nor any organization advocating for PEH's [People Experiencing Homelessness] rights as a party." This does not mean, however, that our interests are adverse to the homeless. In fact, I agree with the Advocate Letter that controlling law – and basic humanity – require that sleeping in public places not be criminalized if the unhoused have nowhere else to go. People living on the street should not be forced to move if there is no alternative available. To that end, as stated plainly in the Complaint, the litigation supports the use of hotel rooms, safe encampments, or other shelters for those required to move from the sidewalks.  Our lawsuit seeks to pressure the City to provide better options for unhoused persons. There is neither dignity nor safety in living on the sidewalks of the Tenderloin.

The two letters represent the perspective of the Tenderloin's homeless residents—one that is important and worthy of great respect. The Hastings litigation represents the perspective of the housed residents, merchants (and their customers), and in my view, the vast majority of the Hastings community. These people merit respect too. The Tenderloin is a culturally diverse community populated overwhelmingly by low-income and working-class people, including many seniors, people with disabilities, people of color, LGBTQ people, and immigrants. It is home to more children, per capita, than any other district of the city (3,000 among some 20,000 residents).

As reflected by the many signatures on the Advocate Letter, the Tenderloin's unhoused residents have an assemblage of champions advancing their cause. The housed residents, by contrast, have long been disregarded; they have endured dangerous and dirty streets for decades, conditions that would never be tolerated in more privileged neighborhoods. The situation they suffer today has been magnified by COVID-19, but it is one that has long existed.

The histories of housed people in the Tenderloin are no less heartbreaking than those of the unhoused. I have received dozens of emails since the litigation began relating these distressing stories. A couple, in particular, stand out, but are in no way unusual.

Shortly after the lawsuit was filed, I received an email from a self-described "young single mother of a 1 and 3 yr old." I have omitted her name and address to protect her privacy, but otherwise share her message verbatim:

> Mr. Faigmand my name is XXXX I'm a young single mother of a 1 and 3 yr old. I reside at XXX Taylor st. San Francisco the tenderloin area not too far from UC Hastings. I seen you on the news today speaking on the lack of the city and county's acknowledgment of the homeless in tents on the sidewalks in the tenderloin. shortly after you were done talking I seen  MY APARTMENT it was on the news along with the homeless people and tents that reside underneath my windows. I thought I was the only one but I've realized it's bigger than me. I've Complained to my property manager called the police numerous of times Spoke with the Sargent of tenderloin police department And they have done nothing  I have pictures, videos of what goes on under my window I can not sleep at night it has effected me and my children I often get woken up in the middle of the night around 3am and am not able to go back to sleep I'm sleep deprived I am tired me and my children shouldn't have to go through this and no one cares they  tell me that's because I live in the tenderloin my property manager even said the same! I pay rent and I feel I should have rights and I feel so helpless! I've done all I can to protect my children And continue todo so.but even when my windows and blinds are closed I can still hear them and it's scary especially during this time of the pandemic I'm scared I breath in all the air that comes up from those tents and it stinks multiple people have died below my window or if not been stabbed or worse i have numerous videos and pictures of all the things that happen I can go on but I need help and I don't know what next steps to take so I hope this finds you well if you are able to help!?

And in a second email, she wrote:

> And also my biggest fear is that it's only a matter of time before I get covid19 from being exposed to all the 30 plus people living under my window and in my community please help me or continue what your doing because it will make a world of a difference and possibly save lives.

Another parent similarly voiced concern for her children's safety:

> It's getting out of control and my kids are seeing them do drugs it smells like piss and poop. I couldn't even bring my laundry to the laundry mat because they were blocking the streets. I smell everything and so can my kids which is extremely unhealthy.

I respect the views of those who signed the two letters on behalf of the homeless people sleeping on the sidewalks and in the doorways of the Tenderloin. The Student Letter asserts that their school should "challenge the social, economic, and political conditions that create and perpetuate

homelessness." Of course, it is possible to do this and also pursue a concrete strategy to require the City to protect the civil liberties of Tenderloin residents. They have the right not to have tents, drug dealers, discarded needles, and human excrement interfering with their daily lives. Our wheelchair-bound neighbors have the right under federal and state law to go out for food without having to venture into street traffic to get to a local store. And they have the right to the equal protection of the laws to receive the same amount of City services as members of other San Francisco neighborhoods.

I believe that the interests of the housed and unhoused in the Tenderloin are fundamentally aligned. The community must be allowed space to succeed, which means that the sidewalks and doorways must be cleared, and that drug dealing must be stopped. The current situation is strangling a great community that could otherwise thrive—one in which small businesses can flourish and residents, merchants, school children, and law students need not fear for their health or safety when they walk down the street.

Our lawsuit was born of frustration. Frustration with the City's long disregard of our neighborhood and its fine residents and businesses; frustration with the same-old sloganeering for solutions that ignore the needs of those living in apartments, working in businesses, and going to school in the Tenderloin; and frustration in the knowledge that only a dramatic move, like suing the City in federal court, is the neighborhood's sole remaining hope for change.

I am willing to be judged by our results. We know that the strategies of the past have failed. *Hastings v. City and County of San Francisco* has the virtue of trying something new when something new is desperately needed. It might just provide a path forward for all the parties involved: The Tenderloin's housed and unhoused people and the City and County of San Francisco.

Sincerely,

David Faigman