Lauren Hansen (CA BAR NO. 268417)
Melissa A. Morris (CA BAR NO. 233393)
PUBLIC INTEREST LAW PROJECT
449 15th St., Suite 301
Oakland, CA 94612-06001
Tel: (510) 891-9794
Fax: (510) 891-9727
Email: lhansen@pilpca.org

ATTORNEYS FOR PROPOSED INTERVENORS
HOSPITALITY HOUSE; COALITION ON
HOMELESSNESS; AND FAITHFUL FOOLS

Lili V. Graham (CA BAR NO. 284264)
Tiffany L. Nocon (CA BAR NO. 301547)
DISABILITY RIGHTS CALIFORNIA
350 S Bixel Street, Ste 290
Los Angeles, CA 90017-1418
Tel: (213) 213-8000
Fax: (213) 213-8001
Email: Lili.Graham@disabilityrightsca.org

ATTORNEYS FOR PROPOSED INTERVENORS
HOSPITALITY HOUSE; COALITION ON
HOMELESSNESS; AND FAITHFUL FOOLS

Michael David Keys
(CA BAR NO. 133815)
Jessica Berger (CA BAR NO. 319114)
BAY AREA LEGAL AID
1454 43rd Avenue
San Francisco, CA 94122
Tel: (415) 982-1300
Fax: (415) 982-4243
Email:   mkeys@baylegal.org

ATTORNEYS FOR PROPOSED
INTERVENORS COALITION ON
HOMELESSNESS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

HASTINGS COLLEGE OF THE LAW, a public trust and institution of higher education duly organized under the laws and the Constitution of the State of California; FALLON VICTORIA, an individual; RENE DENIS, an individual; TENDERLOIN MERCHANTS AND PROPERTY ASSOCIATION, a business association; RANDY HUGHES, an individual; and KRISTEN VILLALOBOS, an individual,

Plaintiffs,

v.

CITY AND COUNTY OF SAN FRANCISCO, a municipal entity,

Defendant.

Case No. 4:20-cv-3033-JST

**PROPOSED INTERVENORS' SUPPLEMENTAL BRIEF IN SUPPORT OF THE MOTION FOR INTERVENTION**

Date:
Time:
Place: Courtroom 6, Second Floor
Judge: Hon. Jon S. Tigar

Complaint Filed: May 4, 2020
Trial Date: None Set

1

**TABLE OF CONTENTS**

2

**Page**

3
I.      INTRODUCTION ................................................................................................................. 1

4
II.     ARGUMENT ....................................................................................................................... 1

5
        A.      The Motion for Intervention Remains Timely ........................................................ 1

6
        B.      Unsheltered People Continue to Have a Protectable Interest in the
7               Outcome of This Litigation ..................................................................................... 5

8
        C.      The Stipulated Injunction Impairs Unsheltered Individuals' Ability
                to Protect Their Interests, and the Parties Do Not Adequately
9               Represent These Interests. ....................................................................................... 6

10
                1.      The Stipulated Injunction will likely result in citations and
                        arrests of homeless people. ......................................................................... 7

11
                2.      The Stipulated Injunction does not protect the legal
12                      interests of persons with disabilities. .......................................................... 9

13
III.    CONCLUSION .................................................................................................................. 11

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Pages**

## CASES

*Alaniz v. Tillie Lewis Foods*
572 F.2d 657 (9th Cir. 1978) ...........................................................................................1,2,3,4

*County of Orange v. Air California*
799 F.2d 535 (9th Cir. 1986) .......................................................................................................2,3

*Jones v. City of Los Angeles*
444 F.3d 1118 (9th Cir. 2006), 505 F.3d 1006 (9th Cir. 2007) .................................7

*Justin v. City of Los Angeles*
Case No. 00-CV-12352, 2000 WL 1808426 (C.D. Cal. Dec. 5, 2000) ..................7,8

*Lavan v. City of Los Angeles*
693 F.3d 1022 (9th Cir. 2012) .............................................................................................7

*Martin v. City of Boise*
920 F.3d 584 (9th Cir. 2019) .........................................................................................4,5,7

*Pellegrino v. Nesbit*
203 F.2d 463 (9th Cir. 1953) ...........................................................................................1,2

*Smith v. L.A. Unified Sch. Dist.*
830 F.3d 843 (9th Cir. 2016) ..........................................................................................2,3,4

*U.S. v. Blue Chip Stamp Co.*
272 F. Supp. 432 (C.D. Cal. 1967), aff'd. 389 U.S. 580 (1968) ...............................3

*U.S. v. City of Los Angeles*
288 F.3d 391, 396-97 (9th Cir. 2002) .........................................................................2,3,4

## OTHER AUTHORITIES

Federal Rules of Civil Procedure
Rule 24 ...........................................................................................................................................2

I.      INTRODUCTION

Proposed Intervenors Hospitality House, Coalition on Homelessness, and Faithful Fools hereby file this supplemental brief in support of their Motion for Intervention, pursuant to this Court's June 16 Order.  ECF No. 55.  Proposed Intervenors also file this brief to provide notice to the Court of their opposition to the proposed Stipulated Injunction as it is currently written, filed with the Court on June 12, 2020. ECF No. 51 ("Stipulated Injunction").

The parties' settlement agreement in its current form raises serious questions about the City's plans to remove unhoused person and their property from the Tenderloin's public spaces. The proposed Stipulated Injunction demonstrates not only the propriety of but also the need for Proposed Intervenors' intervention in this lawsuit so that the Intervenors can add their expertise and years of experience to the Stipulated Injunction and any negotiated settlement.

On its face, the Stipulated Injunction's primary goal is to reduce the number of tents in the Tenderloin by declaring quotas—a 70% reduction by July 20, 2020, with an end goal of zero tents in the Tenderloin. Proposed Intervenors are particularly concerned about the Stipulated Injunction's lack of adequate safeguards to protect the civil and constitutional rights of the people who are to be relocated in pursuit of the Stipulated Injunction's zero-tents goal—in particular the lack of plans or procedures for addressing the needs of unhoused persons with disabilities in placing individuals in temporary shelter and the agreement's commitment to using criminal enforcement to achieve its goals.  Proposed Intervenors continue to meet the standard for intervention, in that their Motion is timely; the lawsuit and Stipulated Injunction directly implicate unsheltered people's rights and interests; the Stipulated Injunction will greatly impair unsheltered individuals' ability to protect their interests; and the existing parties do not adequately represent the interests of unsheltered Tenderloin residents, as demonstrated by the current proposed Stipulated Injunction.

II.      ARGUMENT

A. The Motion for Intervention Remains Timely

The fact that existing parties have reached an agreement prior to intervention is not dispositive of whether intervention is timely.  *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659

1   (9th Cir. 1978) (describing how intervention can be granted even after the entry of consent

2   decree in exceptional cases); *Pellegrino v. Nesbit*, 203 F.2d 463, 465 (9th Cir. 1953)

3   ("Intervention should be allowed even after a final judgment where it is necessary to preserve

4   some right which cannot otherwise be protected.").  Intervention has been found timely and

5   granted even after existing parties have reached an agreement.  *See e.g.  Smith v. L.A. Unified*

6   *Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (holding district court abused its discretion by

7   finding intervention was untimely when proposed intervenors filed to intervene after existing

8   parties reached a settlement agreement and intervention was sought more than 70 days after

9   intervenors learned that their interests were not being represented).

10          For example, in *U.S. v. City of Los Angeles*, 288 F.3d 391, the Ninth Circuit examined

11   two appeals of denials of intervention in the same case—one by a police league and another by

12   community groups. Both intervention motions were filed after the existing parties filed a consent

13   decree, but the agreement was not yet entered or approved by the court. *U.S. v. City of Los*

14   *Angeles*, 288 F.3d 391, 396-97 (9th Cir. 2002). In the case of the police league, the Court

15   reversed the district court's denial of intervention as a matter of right even though intervention

16   was sought after existing parties engaged in "difficult and complex negotiations" before filing

17   the consent decree. *Id.* at 404. The Court also reversed the lower court's holding that permissive

18   intervention is prohibited as a matter of law in cases involving enforcement of a proposed

19   government consent decree, and it remanded the community intervenors' permissive intervention

20   motion to be analyzed under the Rule 24(b) factors. *Id.  City of Los Angeles* demonstrates that

21   intervention under Rule 24(a) and Rule 24(b) can still be timely, even in light of a proposed

22   stipulated agreement by existing parties.

23          In weighing timeliness, this Court must look at the totality of the circumstances facing

24   proposed intervenors, focusing on three factors (1) the stage of proceeding; (2) prejudice to

25   existing parties; and (3) reason for and length of delay.  *Smith, supra* at 854 (9th Cir. 2016).

26   Consideration of each of these factors supports Proposed Intervenors' intervention.

27          As discussed above, the existence of a settlement does not, by itself, make intervention

28   untimely.  And, unlike cases that have found post-settlement intervention attempts to be

1   untimely, Proposed Intervenors have not delayed in seeking intervention; Proposed Intervenors

2   intervened as quickly as possible to ensure that their and unhoused Tenderloin residents'

3   interests were represented in the case. *See e.g. County of Orange v. Air California*, 799 F.2d 535,

4   538 (9th Cir. 1986) (holding lower court did not abuse its discretion by finding intervention was

5   untimely when filed after existing parties had been in protracted litigation for five years with

6   publicized negotiations); *Alaniz*, *supra* at 659 (affirming denial of intervention where intervenors

7   moved to intervene two and a half years after suit commenced, where intervenors received notice

8   of class action, and where "extensive, well-publicized" negotiations" had occurred prior to the

9   consent decree); *U.S. v. Blue Chip Stamp Co*., 272 F. Supp. 432, 435-38

10  (C.D.Cal.1967), *aff'd*. 389 U.S. 580, 88 S. Ct. 693, 19 L. Ed. 2d 781 (1968) (denying

11  intervention as untimely when filed after consent decree was entered, when negotiations had

12  been ongoing for two years, where existing parties "afforded an opportunity to all defendants and

13  to all other parties expressing an interest in the case to be heard" in the negotiation process, and

14  where intervenors had initially filed as *amici curiae* opposing proposed consent decree rather

15  than filing motion to intervene).

16        Here, in contrast, Proposed Intervenors promptly moved to intervene. They filed for

17  intervention just over one month after the case commenced, before Defendants appeared in the

18  case, and before the parties reached an agreement.  Proposed Intervenors did not wait months or

19  years, or to see whether a negotiated outcome would be averse to their interests.  Rather, the

20  existing parties reached a negotiated settlement at a highly expedited pace. That settlement was

21  entered only after Proposed Intervenors filed their motion, but without their input.

22        The existing parties in the litigation will not be prejudiced by Proposed Intervenors' entry

23  into the litigation, and the necessity of Proposed Intervenors' interests being represented and

24  heard outweighs any potential prejudice. Existing parties to a litigation may argue that they will

25  be prejudiced if intervention is granted because intervention might upset the delicate balance of

26  negotiations. *See e.g. Smith, supra* at 858. However, the Ninth Circuit has already made clear

27  that such arguments must fail when intervention is sought at an early stage of a case.  *See e.g. id.*;

28  *U.S. v. City of L.A.*, 288 F.3d 391, 404 (9th Cir. 2002).  Even if allowing Proposed Intervenors

1  "to participate in . . . negotiation and implementation would make achieving resolution more

2  difficult, given the parties' competing interests . . . this would be true regardless of when the

3  intervention occurred, it is unrelated to timeliness, and cannot support a finding of prejudice."

4  *Smith, supra* at 858.

5          Here, Proposed Intervenors do not seek to make achieving a resolution more difficult.

6  They believe the Stipulated Injunction can be amended and strengthened to protect the rights of

7  unhoused people to achieve the mutual goal of "improving living conditions in the Tenderloin

8  neighborhood, and of making the streets and sidewalks clear and safe for the use of persons in

9  the Tenderloin, including residents, the unhoused, visitors, employees, employers, shoppers, and

10  persons with disabilities" while ensuring that implementation of the settlement does not result in

11  the unconstitutional violations of unhoused persons' rights.  Stipulated Injunction at 1:22-25.

12  Wilson Decl., ¶¶11-12; Friedenbach Decl., ¶¶3, 6-10, 14; Dennison Decl., ¶¶4, 11-13; Evans

13  Decl. ¶29.

14          Finally, the Ninth Circuit has stated that, even when a consent decree has been already

15  entered, which is not the case here, there are exceptional cases where a court may still grant

16  intervention. *See Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978). Such

17  exceptional circumstances exist here, where the people most affected by the proposed Stipulated

18  Injunction are represented by Proposed Intervenors but not by the existing parties to the case.

19  According to the proposed Stipulated Injunction, the City will reduce the presence of unhoused

20  Tenderloin residents' tents and other property by 70% by July 20, 2020 and will use "all

21  reasonable efforts" to get the number of tents and personal property of unhoused persons to zero

22  after July 20, 2020. Stipulated Judgment at 7:18-25.  Yet, while the Stipulated Injunction

23  mentions some existing and potential shelter resources, including temporary hotel stays and

24  short-term outdoor sites, it does not include the following important information to ensure that

25  unhoused persons rights will be protected. The agreement as it is currently written lacks

26  standards or process: for ensuring shelter placements are safe, appropriate, and adequate; for

27  providing reasonable accommodations to people with disabilities; for protecting against the

28  seizure or destruction of unhoused people's tents and other personal property; or for

1   guaranteeing that the planned "enforcement measures" do not result in the unconstitutional

2   criminalization of homelessness. Stipulated Injunction at 2-3; see also *Martin v. City of* Boise,

3   920 F.3d 584, 617 (9th Cir. 2019) (holding that "as long as there is no option of sleeping indoors,

4   the government cannot criminalize indigent, homeless people for sleeping outdoors, on public

5   property, on the false premise they had a choice in the matter.").

6   **B. Unsheltered People Continue to Have a Protectable Interest in the Outcome of This**

7       **Litigation**

8       Proposed Intervenors continue to have protectable legal rights even though the parties

9   have entered into a Stipulated Injunction, and the Stipulated Injunction's own terms reinforce the

10  necessity of protecting those rights.  *See* MPAs ISO Intervention at 16:10-18:8.  The Stipulated

11  Injunction's stated goal is to rapidly remove all unhoused persons from the Tenderloin District's

12  public spaces, but the Stipulated Injunction does not include adequate plans, procedures, or

13  protections for unhoused residents, especially those with disabilities.  The City commits to

14  reducing tents and unhoused residents' personal belongings in the Tenderloin by 70% by July 20,

15  2020, with a "shared goal" of achieving zero tents in the Tenderloin.  Stipulated Injunction at

16  7:18-25.  The proposed Stipulated Injunction states that the City "will employ enforcement

17  measures for those who do not accept an offer of shelter or safe sleeping site to prevent re-

18  encampment."  Stipulated Injunction at 7:14-17.  The City's commitment to employ enforcement

19  measures for those who do not accept a shelter offer, without any explicit language that the

20  shelter offered must be actually available, appropriate for a people's individual needs, and

21  accessible to people with disabilities, is harmful to unhoused persons' interests, particularly those

22  with disabilities.

23      Although the proposed Stipulated Injunction does contain blanket language that the

24  parties "shall respect" the rights of unhoused people, it fails to enumerate what those rights are,

25  and it does not contain the specificity required to ensure those rights are protected.  *See*

26  Stipulated Injunction at 7:26-27. The agreement does not identify the number of hotel rooms or

27  safe sleeping site placements that exist now, how many will be created, or what the duration of

28  those placements will be.  It identifies only 50 to 70 spots for tents in the Tenderloin, without a

1    concrete plan to identify additional housing and shelter options, the process of making placement

2    is accessible to people with disabilities.  The City has never had sufficient shelter or affordable

3    housing stock to meet the community's needs, and there are 1,990 unsheltered residents of

4    District 6.  Intervenors' Compl. at ¶¶77-79, 91, 98, 102, 171, 179; Friedenbach Decl., ¶4.

5           Further, the proposed Stipulated Injunction contains numerous references to reducing the

6    number of tents and property, yet no provision for treating unhoused individuals' personal

7    belongings in accordance with the requirements of law, nor for ensuring that unhoused

8    individuals are not required to abandon their personal property in order to accept a shelter

9    placement. It does not require the City to ensure that unhoused residents who are displaced from

10   the Tenderloin maintain access to critical services, such as mental health treatment. In other

11   words, the agreement contemplates criminal enforcement without clear plans to identify

12   appropriate shelter or reasonable accommodations for unhoused persons with disabilities. See

13   Evans Decl., ¶¶9-12; 14; 21-27.  The proposed Stipulated Injunction only seeks to advance

14   Plaintiffs' interests of eliminating tents in the Tenderloin without adequate provisions to protect

15   the rights and property of the people who are living in those tents.

16          Finally, the Stipulated Injunction, as proposed by Plaintiffs, does not provide Proposed

17   Intervenors or unhoused individuals with the ability to enforce their rights with respect to this

18   agreement, thus making intervention even more urgent under these circumstances. While there is

19   always an option to file a new lawsuit if the City violates unhoused persons constitutional or

20   statutory rights, the Proposed Intervenors want to avoid litigation by improving the current

21   proposed Stipulated Injunction, rather than start a new lawsuit. The rights of unhoused persons

22   are directly implicated but not protected by the proposed Stipulated Injunction as it is currently

23   written. Proposed Intervenors' urge the Court to grant Intervenors' Motion for Intervention so

24   that they can participate in the negotiation process and improve the current proposed Stipulated

25   Injunction to ensure all people directly affected by the proposed agreement are protected.

26   **C.  The Stipulated Injunction Impairs Unsheltered Individuals' Ability to Protect Their**

27         **Interests, and the Parties Do Not Adequately Represent These Interests.**

28

1    **1.   The Stipulated Injunction will likely result in citations and arrests of**

2    **homeless people.**

3         The proposed Stipulated Injunction commits to using police enforcement against

4    homeless people, including those with disabilities and a population of disproportionately Black

5    Tenderloin residents, despite an acknowledged lack of available, adequate shelter.  For

6    agreement's current language reads, the City "will increase its enforcement efforts," if people do

7    not move their tents on the Stipulated Injunction's timeline.  Stipulated Injunction at 8:13-16.

8    These enforcement measures are not new to the City of San Francisco, the City has a history of

9    criminalizing homelessness.  *See* Intervenors' Complaint (Intervenors' Compl.) at ¶¶92-102.

10        Homeless people have a constitutional right to be free from criminalization if they are

11   sleeping outside where there is no alternative and adequate shelter.  *Martin, supra,* 920 F.3d 584.

12   The proposed Stipulated Judgment does not make clear that the City cannot cite, arrest, or take

13   other enforcement action against someone if there is no appropriate and available shelter.  As the

14   Stipulated Injunction clock winds down, the City will likely face increased pressure to reduce the

15   number of tents and people, and it will respond by engaging in sweeps, issuing citations,

16   arresting people, and instructing people to move along, out of the Tenderloin, under the threat of

17   issuing criminal citations or arrests if people fail to do so.  *See* Wilson Decl., ¶¶6, 10-11;

18   Friedenbach Decl., ¶¶5, 8-13; Evans Decl., ¶¶7, 9-10, 19; *See* Dennison Decl., ¶5.

19        Further, the proposed Stipulated Injunction encourages the unlawful seizure and

20   destruction of people's property because the parties commit to reducing the number of tents,

21   along with all other encamping materials and related personal property, in the Tenderloin to zero,

22   without any language describing how the City will reach this number.  Stipulated Injunction at

23   7:22-25.  The Ninth Circuit has made clear that the Fourth and Fourteenth Amendments to the

24   United States Constitution prohibit unreasonable seizure of private property, and that these

25   protections apply to homeless people's private property, even when that property is located in or

26   on a public space.  *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1030 (9th Cir. 2012); *See also*

27   *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006), vacated due to settlement, 505 F.3d

28   1006 (9th Cir. 2007); *Justin v. City of Los Angeles*, No. 00-CV-12352, 2000 WL 1808426, at *13

---

1    (C.D. Cal. Dec. 5, 2000) (granting a temporary restraining order barring the City from, among

2    other things, "[c]onfiscating the personal property of the homeless when it has not been

3    abandoned and destroying it without notice").

4         The City has a history of unlawfully seizing and destroying unhoused persons' property,

5    and the proposed Stipulated Injunction in its current form incentivizes the City to engage in more

6    such seizure and destruction.  *See* Intervenors' Compl., ¶¶92-102. If property is not moved on the

7    Stipulated Injunction's hurried timeline, the City "will increase its enforcement efforts."

8    Injunction at 4:13-16.  Although the proposed Stipulated Injunction does not specify what

9    enforcement efforts it will employ, such efforts in the past have included taking property in

10   violation of the Fourth and Fourteenth Amendments, failing to properly store property that was

11   taken in the manner required by law and the City's own policies, and illegally destroying

12   homeless people's property.  *See* Intervenors' Compl., ¶¶92-102; Evans Decl., ¶7.

13        Since the parties filed their proposed Stipulated Injunction, the City has already started to

14   implement its terms and appears to be moving more people into hotel rooms. Evans Decl., ¶¶6,9-

15   11. Proposed Intervenors have received reports that the City is not allowing individuals who are

16   placed in hotels to take more than two bags' worth of personal property with them, and that they

17   have to leave everything else behind.  Evans Decl., ¶¶21-22, 27; Friedenbach Decl., ¶13. Further,

18   evidence indicates individuals must forfeit their tents to the City as a condition of being placed in

19   a hotel room. Evans Decl., ¶¶10-12; Friedenbach Decl., ¶¶9-11, 13.  The proposed Stipulated

20   Injunction's focus on removal of unhoused individuals' personal property from sidewalks and

21   other public spaces, without provisions to prevent the unlawful seizure and destruction of that

22   property, or to ensure that unsheltered Tenderloin residents are not forced to abandon their

23   belongings in order to accept shelter, significantly increases the risk that the City will violate

24   unsheltered people's constitutional rights.  *See* Evans Decl., ¶¶10,14, 17-18, 21-27 (describing

25   incidents she witnessed on June 13, 15, 16, and 17 where City workers violated their own

26   property confiscation procedures regarding notice and storage requirements, confiscated a

27   wheelchair, confiscated unabandoned tents and property, failed to provide appropriate shelter

28   placements based on people's disabilities, and failed to provide reasonable accommodations

1   during property confiscation based on people's mental health conditions); Friedenbach Decl., ¶9

2   (describing in one instance on or around June 16, 2020, City workers told unhoused individuals

3   to give up their tents to be placed in hotel rooms, a few people gave up their tents to the City but

4   were not placed in hotel rooms and the City did not return their tents).

5      During the COVID-19 pandemic, the forced relocation of unsheltered individuals without

6   provision of adequate shelter, and the loss of their tents and other safety gear, significantly

7   increases health risks to displaced individuals, as well as the risk of disease spread within the

8   community.  These actions will disproportionately affect homeless people with disabilities, as

9   those who are Black and/or Latinx.  Recent Centers for Disease Control and Prevention (CDC)

10  data show an "overrepresentation of blacks among hospitalized patients", and "death rates

11  among black/African American persons (92.3 deaths per 100,000 population) and

12  Hispanic/Latinx persons (74.3) that were substantially higher than that of white (45.2) or Asian

13  (34.5) persons."[1]  Further, the proposed Stipulated Injunction's emphasis on enforcement will

14  increase the City's use of its police force to respond to homelessness and will increase the City's

15  policing of its unhoused Black and Latinx residents during a time when the City—like other

16  cities throughout the nation—is evaluating potential reforms to the use and funding of its police

17  department in response to the Black Lives Matter movement. Allowing Proposed Intervenors as

18  parties is necessary to address these concerns, and to ensure that the interests of unhoused

19  Tenderloin residents are adequately represented in any resolution of the case.

20      **2.   The Stipulated Injunction does not protect the legal interests of persons with**

21       **disabilities.**

22     The proposed Stipulated Injunction does not include any requirement or process to ensure

23  that shelter placements are appropriate for and accessible to persons with disabilities, nor to

24  provide reasonable accommodations to persons with disabilities in implementing the agreement.

25  A person may decline an offer of shelter for a number of reasons related to having a disability.

26   

27  [1] *Coronavirus Disease 2019 (COVID-19) Racial & Ethnic Minority Groups* (June 4, 2020),
    CDC. Available online at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

28  precautions/racial-ethnic-minorities.html.

*Hastings College of the Law v. City and County of San Francisco;* **Case No. 4:20-cv-3033-JST**
**PROPOSED INTERVENORS' SUPPLEMENTAL BRIEF IN SUPPORT OF THE MOTION FOR**
**INTERVENTION**                    **9**

1    An offer of shelter that is not accessible to the person for reasons related to their disability is in

2    that instance, at best, illusory.  Chrisman Decl., ¶¶11-18; see also Evans Decl., ¶¶14, 17-18  For

3    example, a person with a physical disability might not be able to lie down at a safe sleeping site

4    placement if the beds or cots are not physically accessible or are too close together to navigate

5    with a wheelchair or walker.  A person with complicated health needs might not be able to move

6    to a hotel room or safe sleeping site outside the Tenderloin immediately without a health-

7    conscious process that ensures undisrupted care from health providers, located in the

8    neighborhood. *See* Chrisman Decl., ¶¶10, 16-17, 19.  A crowded congregate setting may not be

9    accessible to a person who has mental health symptoms that are triggered by being in a large,

10   crowded space, nor to someone who is at high-risk for contracting COVID-19 due to underlying

11   health conditions.  *See* Chrisman Decl., ¶¶10-11, 14-17.

12          The proposed Stipulated Injunction contains no policies or procedures for determining

13   appropriate placements.  Proposed Intervenors understand that these placements are temporary.

14   But, even temporary placements must be appropriate placements for individuals with disabilities.

15   Appropriate placement needs to include assessment for medical needs, social needs, and access

16   to continuation of services.  Chrisman Decl., ¶11.  Forcing individuals with disabilities to accept

17   shelter placements that are not accessible or taking enforcement action against someone who

18   rejects a shelter placement because it does not meet their disability-related needs, would violate

19   those individuals' rights under the ADA and other civil rights statutes.

20          Proposed Intervenors' have received reports, that in the past few days, the City has not

21   been able to provide hotels or other accommodations with adequate accessibility and support for

22   people who use wheelchairs, on several occasions delaying placement for people who use

23   wheelchairs and passing over those who are unable to transfer from their wheelchair

24   independently.  Evans Decl., ¶18; Friedenbach Decl., ¶6 (describing prior hotel placement was

25   based on City's list of vulnerable unhoused persons based on health conditions, and that

26   Stipulated Injunction "has no such list or prioritization"…and in practice is "instead only

27   offering hotel rooms to unhoused individuals who have tents").

28

1    These facts, coupled with the plain language of the proposed Stipulated Injunction,

2  demonstrates that none of the existing parties adequately represents the interests of homeless

3  Tenderloin residents, who are the people most affected by both litigation and the proposed

4  Stipulated Injunction.  The proposed Stipulated Injunction as it is currently written lacks the

5  necessary language and procedures to safeguard the rights of unhoused persons with disabilities.

6  Proposed Intervenors have experience and expertise in working with unhoused people, as well as

7  lived experience of homelessness. *See* Wilson Decl., ¶¶8, 11-12. Their inclusion will help

8  improve the parties' current agreement and ensure that any negotiated settlement reflects the

9  perspectives and protects the rights of unhoused persons, including unhoused persons with

10  disabilities.

11    **III.    CONCLUSION**

12    Proposed Intervenors are committed to participating in a solution that will accommodate

13  all of the people in the Tenderloin.  For the foregoing reasons, Proposed Intervenors respectfully

14  request that this Court to grant Proposed Intervenors' Motion to Intervene, so that they may

15  negotiate a resolution that will protect the constitutional and statutory rights of homeless people

16  with disabilities.

17

18  DATED:  June 18, 2020            Respectfully submitted,

19
20                                   Lauren Hansen
                                     PUBLIC INTEREST LAW PROJECT
21                                   Tiffany Nocon
22                                   DISABILITY RIGHTS CALIFORNIA
23                                   Mike Keys
24                                   BAY AREA LEGAL AID
25                                   By:    */s/ Lauren Hansen*
                                            Attorneys for Proposed Intervenors
26
27
28