Lauren Hansen (CA BAR NO. 268417)
Melissa A. Morris (CA BAR NO. 233393)
PUBLIC INTEREST LAW PROJECT
449 15th St., Suite 301
Oakland, CA 94612-06001
Tel: (510) 891-9794
Fax: (510) 891-9727
Email: lhansen@pilpca.org

ATTORNEYS FOR PROPOSED INTERVENORS
HOSPITALITY HOUSE; COALITION ON
HOMELESSNESS; AND FAITHFUL FOOLS

Lili V. Graham (CA BAR NO. 284264)
Tiffany L. Nocon (CA BAR NO. 301547)
DISABILITY RIGHTS CALIFORNIA
350 S Bixel Street, Ste 290
Los Angeles, CA 90017-1418
Tel: (213) 213-8000
Fax: (213) 213-8001
Email: Lili.Graham@disabilityrightsca.org

ATTORNEYS FOR PROPOSED INTERVENORS
HOSPITALITY HOUSE; COALITION ON
HOMELESSNESS; AND FAITHFUL FOOLS

Michael David Keys
(CA BAR NO. 133815)
Jessica Berger (CA BAR NO. 319114)
BAY AREA LEGAL AID
1454 43rd Avenue
San Francisco, CA 94122
Tel: (415) 982-1300
Fax: (415) 982-4243
Email:   mkeys@baylegal.org

ATTORNEYS FOR PROPOSED
INTERVENORS COALITION ON
HOMELESSNESS

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HASTINGS COLLEGE OF THE LAW, a public trust and institution of higher education duly organized under the laws and the Constitution of the State of California; FALLON VICTORIA, an individual; RENE DENIS, an individual; TENDERLOIN MERCHANTS AND PROPERTY ASSOCIATION, a business association; RANDY HUGHES, an individual; and KRISTEN VILLALOBOS, an individual,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a municipal entity,<br><br>    Defendant. | Case No. 4:20-cv-3033-JST<br><br>**DECLARATION OF JOE WILSON IN SUPPORT OF PROPOSED INTERVENORS' SUPPLEMENTAL BRIEF IN SUPPORT OF THE MOTION FOR INTERVENTION**<br><br>Date:<br>Time:<br>Place: Courtroom 6, Second Floor<br>Judge: Hon. Jon S. Tigar<br><br>Complaint Filed: May 4, 2020<br>Trial Date: None Set |

I, JOE WILSON, declare:

1.    I am Executive Director of Hospitality House, a Proposed Intervenor in *Hastings College of the Law, et al. v. City & County of San Francisco*:  Case No.: 4:20-cv-03033-JST.  I submit this Declaration in support of Proposed Intervenors' Supplemental Brief in support of Proposed Intervenors' Motion for Intervention.

2.    The facts set forth below are known to me personally and are also based upon my review of the files of the proposed Intervenors in this case.  I have first-hand knowledge of these facts.  If called as a witness, I could and would testify competently, under oath, to such facts.

3.    I provided a declaration in support of Intervenors' Motion to Intervene, filed on June 9, 2020.  I understand the Court is asking for supplemental briefing for our motion.  Since our filing, I learned that the City and County of San Francisco has entered into a proposed "stipulated injunction" to settle the case.  I have reviewed the stipulated injunction filed with the Court.

4.    I have a number of concerns about the stipulated injunction agreement.

5.    First, the people who are the subject of the suit are noticeably absent in this agreement, because they were not part of the negotiations.  The enforcement requires the removal of tents with the eventual reduction of tents to zero in the Tenderloin.  The use of tents by homeless individuals, especially those with disabilities, is critical for every individual's health.  The tent allows people to shelter from the elements and to be able to care for themselves.  During the COVID-19 pandemic, the tent allows people to socially distance to protect themselves and the public.

6.    Second, two days after this agreement was entered into, bearing in mind the agreement has yet to receive Board of Supervisors' approval, the presence of City officials and law enforcement increased significantly on the streets of the Tenderloin.  Just a block away from our offices, police and City officials demanded that homeless individuals dismantle and pack their tents immediately.  No one told me where they would go or where they would stay.  In place of the tents where these people had been living, the police officers put up metal barricades

to mark the clearance of the tents and the inability for someone to return to that location.  I have not been told of any alternative locations that would substitute a safe place for people to go.

7.     The increased presence of the police force is also extremely triggering and traumatic for many homeless individuals in the Tenderloin, who have experienced traumatic encounters with the police.  Many homeless individuals are Black people.  The current climate has escalated the fear and trauma for homeless individuals.

8.     Based on information provided to my staff and me, we learned that homeless individuals, who use and need our services, are being cleared.  As a long-time service provider, we know that any break in services is detrimental to our clients' recovery and stability.  The ability to maintain stability will be very difficult for services, such as mental health treatment, health treatment, continuation of medication, access to mail, access to service providers, service to caregivers, service to food banks, service to essential needs donations, such as soap, clothing, shoes, and blankets, will all be terminated.  In addition, the fear of police officers' presence will only intensify.

9.     Third, the City states that it estimates that only 30% of the people in the Tenderloin would be eligible for a hotel room.  That leaves at least a thousand people without adequate shelter.  What will happen to the other 70% of people, especially with the zero-tent policy that the City and the Plaintiffs agreed upon?  People need tents to survive, and especially to survive COVID-19.

10.     The overwhelming action by the City in implement this agreement so far points to the allowance of law enforcement to flood the Tenderloin, to start citing and arresting people, and to take their possessions.  The provision that unwilling individuals would be cited or arrested walks back many years of progressive advocacy.  Homeless people in the Tenderloin, many with disabilities, need to be given options that they can utilize.  When what is being offered is to be taken to an unknown location with unknown services and for an unknown amount of time, people are hesitant and even unwilling to go where offered.  No one should have to decide between an arrest or uncertainty.

11.     The City is not committing to additional shelter beds, shelter spaces, or the creation of more deeply affordable housing.  Currently the shelter bed waitlists remain closed and housing waitlists remain frozen.  Prior to the pandemic, the waitlists stood at over 1,000 people on any given night.  To ensure the health of unhoused people and to further the goal getting people to shelter require an approach that focuses on the public health crisis that is homelessness, not an approach that focuses on how a tent makes a neighborhood look bad.  It looks like the agreement is meant to be a short term solution to address the circumstances that have come up because of COVID-19.  The Injunction could be improved to clearly state that, as well as include provisions that will ensure the protection of unhoused persons' rights.  This could include the requirements around property seizures, as well as ensuring that persons with disabilities are offered appropriate placements and accommodated during the moving process.

12.     The parties would benefit from hearing from the advocates who work day in and day out with homeless individuals.  We know the everyday harm that is happening to the people. We are committed to being a part of the solution, and we have the expertise necessary to improve the stipulated injunction if allowed into the case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.  Executed on June 18, 2020 in San Francisco, California.

_____
JOE WILSON