Lauren Hansen (CA BAR NO. 268417)
Melissa A. Morris (CA BAR NO. 233393)
PUBLIC INTEREST LAW PROJECT
449 15th St., Suite 301
Oakland, CA 94612-06001
Tel: (510) 891-9794
Fax: (510) 891-9727
Email: lhansen@pilpca.org

ATTORNEYS FOR PROPOSED INTERVENORS
HOSPITALITY HOUSE; COALITION ON
HOMELESSNESS; AND FAITHFUL FOOLS

Lili V. Graham (CA BAR NO. 284264)
Tiffany L. Nocon (CA BAR NO. 301547)
DISABILITY RIGHTS CALIFORNIA
350 S Bixel Street, Ste 290
Los Angeles, CA 90017-1418
Tel: (213) 213-8000
Fax: (213) 213-8001
Email: Lili.Graham@disabilityrightsca.org

ATTORNEYS FOR PROPOSED INTERVENORS
HOSPITALITY HOUSE; COALITION ON
HOMELESSNESS; AND FAITHFUL FOOLS

Michael David Keys
(CA BAR NO. 133815)
Jessica Berger (CA BAR NO. 319114)
BAY AREA LEGAL AID
1454 43rd Avenue
San Francisco, CA 94122
Tel: (415) 982-1300
Fax: (415) 982-4243
Email:   mkeys@baylegal.org

ATTORNEYS FOR PROPOSED
INTERVENORS COALITION ON
HOMELESSNESS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HASTINGS COLLEGE OF THE LAW, a public trust and institution of higher education duly organized under the laws and the Constitution of the State of California; FALLON VICTORIA, an individual; RENE DENIS, an individual; TENDERLOIN MERCHANTS AND PROPERTY ASSOCIATION, a business association; RANDY HUGHES, an individual; and KRISTEN VILLALOBOS, an individual,<br><br>            Plaintiffs,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a municipal entity,<br><br>            Defendant. | **Case No. 4:20-cv-3033-JST**<br><br>**DECLARATION OF JENNIFER FRIEDENBACH IN SUPPORT OF PROPOSED INTERVENORS' SUPPLEMENTAL BRIEF IN SUPPORT OF THE MOTION FOR INTERVENTION**<br><br>Date:<br>Time:<br>Place: Courtroom 6, Second Floor<br>Judge: Hon. Jon S. Tigar<br><br>Complaint Filed: May 4, 2020<br>Trial Date: None Set |

*Hastings College of the Law v. City and County of San Francisco;* **Case No. 4:20-cv-3033-JST**
**DECLARATION OF FRIEDENBACH ISO PROPOSED INTERVENORS' SUPPLEMENTAL BRIEF ISO THE MOTION FOR INTERVENTION**

I, JENNIFER FRIEDENBACH, declare:

1. I am the Executive Director of the Coalition on Homelessness ("Coalition"). The Coalition is a Proposed Intervenor in *Hastings College of the Law, et al. v. City & County of San Francisco*: Case No.: 4:20-cv-03033-JST. I make this Declaration in support of Proposed Intervenors' supplemental brief in support of the Motion for Intervention.

2. The facts set forth below are known to me personally, and I have first-hand knowledge of these facts. If called as a witness, I could and would testify competently, under oath, to such facts.

3. The Coalition is a Tenderloin-based organization that organizes unhoused people and front-line service providers to create permanent solutions to homelessness while working to protect the human rights of those forced to remain on the streets of San Francisco. The Coalition was founded over thirty years ago when people experiencing homelessness joined with frontline service providers in response to the lack of systemic solutions to homeless and the exclusion of homeless people in crafting city policy that affects unhoused persons.

4. The Stipulated Injunction requires the City to provide some form of alternative shelter to 70% of all homeless Tenderloin residents by July 20, 2020. This means that the City is promising to make approximately 1,393 placements out of the currently 1,990 unsheltered residents of District 6. This could be a good solution, if the Stipulated Injunction also included provisions regarding the protection of unhoused people's personal property and connection to important services in the Tenderloin.

5. However, the Stipulated Injunction rejects a health-based approach to improve the Tenderloin and replaces it with a hostile law enforcement model that focuses on tent and property confiscation and other enforcement measures, without adequate planning or procedures in place. Tenderloin residents are connected to many important services, many of them health-related. But there is nothing in the Injunction that describes how the City will meet the health needs of Tenderloin residences when they are moved into a hotel or camp site outside of the Tenderloin. And, all of these placements will be under threat of criminal enforcement. The sole focus of the Stipulated Injunction is to remove tents and personal belongings from the

1  Tenderloin's public spaces, under the threat of criminal citations and increased enforcement
2  measures.

3      6.    During this pandemic, the Coalition facilitated a health-based approach in
4  response to COVID-19 and in coordination with the City of San Francisco's Department of
5  Public Health, Street Medicine Team, and Homeless Outreach Team. Together, we built trust to
6  offer care to unhoused residents that not only kept them safe, but mitigated the spread of
7  COVID-19 to other residents. For example, we conducted outreach to ensure unhoused members
8  were tested, walked them to testing sites, and assisted with contact-tracing. The Department of
9  Public Health created a list prioritizing older individuals vulnerable to COVID-19, for which we
10 provided names. This allowed us to focus resources efficiently. The Stipulated Injunction has no
11 such list or prioritization, much less consideration of the existing health-based approach that has
12 worked. In practice, since the Stipulated Injunction was filed, the City is no longer using the
13 priority list, but instead only offering hotel rooms to unhoused individuals who have tents.

14     7.    In addition, the Coalition on Homelessness collaborated with residents to
15 coordinate special trash pick-up, make room for strollers and wheelchairs, and to provide
16 unsheltered residents with tents. These tents served as a barrier of protection against the virus
17 that enabled people to shelter-in-place, just as the government recommended all residents to do if
18 possible.

19     8.    Instead of including health-driven approaches to homelessness, the Stipulated
20 Injunction focuses on criminal enforcement and property confiscation. The Injunction doesn't
21 make clear that the City isn't legally allowed to issue citations unless it first offers a real shelter
22 option, especially one that is appropriate for persons with disabilities. Instead, this law
23 enforcement model threatens individuals with "enforcement." The City has failed to provide
24 adequate affordable housing to meet community needs. That law enforcement effort takes away
25 from other important services that could be provided to unhoused residents such as COVID-19
26 testing, contact-tracing, and healthcare workers.

27     9.    Further, the Stipulated Injunction requires people to give up tents. This has
28 already proven disastrous. For example, on or around June 16, 2020, the City of San Francisco's

Department of Public Works came to an encampment in the Tenderloin and told a group of unhoused individuals that they had to give their tents to the City in to be placed in a hotel room. Unhoused people agreed to do so, likely because they would have given anything to get into a hotel room. However, after giving up their tents, several of those people were not placed in hotel rooms. The City did not return their tents. Now these individuals have no choice but to sleep on the concrete. The City's confiscation of their tents means that these individuals lack any barrier to protect them against COVID-19 spread. They now are even more impoverished than they were before their encounter with the City.

10. These are just a few examples of how the Stipulated Injunction, as it is currently written, affects the health and safety of unhoused persons. Focusing on law enforcement rather than health strategies results in people being torn away from their service providers and having their property, like tents, confiscated without access to alternative shelter.

11. Law enforcement is not a solution, especially against individuals who are both Black and experiencing homelessness. A disproportionate share of the Tenderloin's unhoused residents are Black. The Black community's relationship with police has been complicated and has reached a boiling point in the past few weeks. Since last Thursday, there has been an increased presence of police overseeing the removal of unhoused people and their tents from the Tenderloin. This is consistent with the Stipulated Injunction's zero-tents goal—unhoused Black Tenderloin residents are to be eliminated by police force.

12. Police hostility against Tenderloin unhoused residents, particularly against Black residents, never resolved anything. United States' leaders and our mayor have recognized this and called for police to stop responding to homelessness, instead leaving that to other specialists like the Coalition and our healthcare collaborators. We were achieving balance in implementing health-centered services to the Tenderloin's unhoused residents. The Stipulated Injunction supplants that balance with police hostility, a proposed non-solution that is out of touch with the local and national consensus that police lack tools for addressing homelessness.

13. When the City places people in hotels, it requires them to give up their tents and belongings as a condition of the placement. People can only take two bags' worth of their

1  personal property with them. This means that after people are pressured to give up their tents and
2  the few belongings that they have to obtain a hotel room, they will be eventually be forced to
3  leave and then have no choice but to sleep on the concrete.

4     14.   The Coalition understands that the current lawsuit likely cannot create long-term
5  *permanent* housing for all unhoused Tenderloin residents. However, the Stipulated Injunction as
6  it is currently written is missing crucial information to adequately protect the legal interests of
7  unhoused residents. The Stipulated Injunction threatens unhoused Tenderloin residents with
8  criminal enforcement if they do not accept shelter. At the same time, it lacks any requirements to
9  connect people with important services that they may lose access to by accepting placement, like
10 mental health treatment, and forces individuals to forfeit what little belongings they have and
11 tents to receive shelter. This case needs the input and expertise of the Coalition to address the
12 gaps in the Stipulated Injunction.

14  I declare under penalty of perjury under the laws of the United States of America that the
15 foregoing is true and correct to the best of my knowledge.  Executed on June 18, 2020 in San
16 Francisco, California.

_____
JENNIFER FRIEDENBACH

---

*Hastings College of the Law v. City and County of San Francisco;* **Case No. 4:20-cv-3033-JST**
**DECLARATION OF FRIEDENBACH ISO PROPOSED INTERVENORS' SUPPLEMENTAL BRIEF ISO THE MOTION FOR INTERVENTION**                                                          **4**