Lauren Hansen (CA BAR NO. 268417)
Melissa A. Morris (CA BAR NO. 233393)
PUBLIC INTEREST LAW PROJECT
449 15th St., Suite 301
Oakland, CA 94612-06001
Tel: (510) 891-9794
Fax: (510) 891-9727
Email: lhansen@pilpca.org

ATTORNEYS FOR PROPOSED INTERVENORS
HOSPITALITY HOUSE; COALITION ON
HOMELESSNESS; AND FAITHFUL FOOLS

Lili V. Graham (CA BAR NO. 284264)
Tiffany L. Nocon (CA BAR NO. 301547)
DISABILITY RIGHTS CALIFORNIA
350 S Bixel Street, Ste 290
Los Angeles, CA 90017-1418
Tel: (213) 213-8000
Fax: (213) 213-8001
Email: Lili.Graham@disabilityrightsca.org

ATTORNEYS FOR PROPOSED INTERVENORS
HOSPITALITY HOUSE; COALITION ON
HOMELESSNESS; AND FAITHFUL FOOLS

Michael David Keys
(CA BAR NO. 133815)
Jessica Berger (CA BAR NO. 319114)
BAY AREA LEGAL AID
1454 43rd Avenue
San Francisco, CA 94122
Tel: (415) 982-1300
Fax: (415) 982-4243
Email:   mkeys@baylegal.org

ATTORNEYS FOR PROPOSED
INTERVENORS COALITION ON
HOMELESSNESS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HASTINGS COLLEGE OF THE LAW, a public trust and institution of higher education duly organized under the laws and the Constitution of the State of California; FALLON VICTORIA, an individual; RENE DENIS, an individual; TENDERLOIN MERCHANTS AND PROPERTY ASSOCIATION, a business association; RANDY HUGHES, an individual; and KRISTEN VILLALOBOS, an individual,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a municipal entity,<br><br>　　　　　Defendant. | Case No. 4:20-cv-3033-JST<br><br>**DECLARATION OF SARAH MATTHIAS DENNISON IN SUPPORT OF PROPOSED INTERVENORS' SUPPLEMENTAL BRIEF IN SUPPORT OF THE MOTION FOR INTERVENTION**<br><br>Date:<br>Time:<br>Place: Courtroom 6, Second Floor<br>Judge: Hon. Jon S. Tigar<br><br>Complaint Filed: May 4, 2020<br>Trial Date: None Set |

I, SARAH MATTHIAS DENNISON (AKA Sam Dennison), declare:

1. I am the Co-Director of Faithful Fools, a non-profit organization and a Proposed Intervenor in *Hastings College of the Law, et al. v. City & County of San Francisco*: Case No.: 4:20-cv-03033-JST. I make this Declaration in support of Proposed Intervenors' Supplemental Brief.

2. The facts set forth below are known to me personally and are also based upon my review of the Proposed Intervenors' files in this case. I have first-hand knowledge of these facts. If called as a witness, I could and would testify competently, under oath, to such facts.

3. Faithful Fools is a live-work community organization based in the heart of the Tenderloin District at 234 Hyde Street in San Francisco, California.

4. The Stipulated Injunction raises two primary concerns for Faithful Fools and the interests of its unhoused clients: (1) it creates an environment where law enforcement will enforce the agreement and essentially treat homeless individuals in the Tenderloin like criminals, regardless of whether they committed crimes; (2) it lacks plans for ensuring relocated homeless residents remain connected to services, and (3) it commits to a zero tent policy in the Tenderloin but lacks plans for what happens to homeless individuals after the City ends hotel stays. These problems will displace and traumatize Tenderloin residents and in turn, hamper Faithful Fool's ability to serve them.

5. First, the City states it "will use enforcement measures for those who do not accept an offer of shelter or safe sleeping site to prevent re-encampment." Implementation of such a policy will directly and negatively impact the mental health and wellbeing of Faithful Fools clients. It is unclear what form enforcement measures will take, but most forms of enforcement induce trauma in an already vulnerable population. Enforcement should be reserved for criminal offenses only. If applied to the removal of tents, it effectively criminalizes the simple act of owning a tent for the purposes of seeking shelter in the pandemic. Faithful Fools' work is grounded in supporting people experiencing homelessness navigate the extremely complex process of getting into housing. We fear that "enforcement measures" will scatter and

**DECLARATION OF SARAH DENNISON ISO PROPOSED INTERVENORS' SUPPLEMENTAL BRIEF
ISO THE MOTION FOR INTERVENTION**   **1**

1 traumatize the people we support and will thereby reduce the number of people we can
2 successfully help house.

3     6.    In the last 20 years, Faithful Fools has successfully moved scores of people into
4 housing, the majority of whom have remained housed. I have personally supported a number of
5 individuals through the ever changing and highly confusing process of moving into housing from
6 the streets. There are barriers built into the process of getting housing that test even the most
7 capable individuals, and when one is compromised by any period of time living on the streets, it
8 can be extremely difficult get through it. We (Faithful Fools) work with homeless individuals by
9 first building stable trusting relationships, and then using that trust to keep a person on track
10 through to the end goal of housing. It can take years for a person who has experienced the deep
11 traumas of living on the streets to develop trust in an organization or agency. Unhoused
12 individuals who lack trustworthy relationships often look like they are resisting services when in
13 fact they are trying to ward off perceived threats. A person who comes to the streets from a
14 violent home or has experienced violence on the streets (which is almost everyone) may see
15 potential threats in any person of authority, including the police. Our role is to create trust and
16 consequently a path to housing.

17     7.    I have worked with minor children who have struggled to return to school after
18 one night on the streets with their family. They manifested trauma in behaviors that look self-
19 destructive (truancy, belligerence, drug use) but in fact were attempts to regain control over their
20 lives. I have also worked with adults who appear unable or unwilling to comply with court
21 ordered drug treatment or stay away orders. A 55 year-old unhoused African-American woman
22 with whom I regularly work is frequently arrested for warrants and petty drug crimes. She is
23 functionally illiterate and likely developmentally disabled. In one court ordered program, she
24 began remedial reading and managed to read several simple words on her own which prompted
25 dreams of getting off the streets. Her growing hope for a better future was ended when police
26 began regularly and repeatedly arresting her in attempts to force her into compliance. Each stint
27 in jail produced more trauma and eroded the little trust that she had in us or anyone else. We
28 have tried to get her into diversion programs, but because she has pending charges she can't

**DECLARATION OF SARAH DENNISON ISO PROPOSED INTERVENORS' SUPPLEMENTAL BRIEF ISO THE MOTION FOR INTERVENTION**     **2**

enter one. She was in jail when her husband overdosed and died. She was informed of his death in an off-hand manor by a sheriff deputy just before a shift change with no detail or offer of support. The chances of getting her into housing and out of drug trafficking are very small now and her own dreams of a better future are gone. For her and countless others, police involvement with clearing streets of tents is highly stressful and counterproductive.  These are not isolated cases. We strongly believe that if we are to succeed in getting people off the streets, into hotels or housing, we must keep police involvement to an absolute minimum.

8. This client's experience, and there are countless others like it, are one of the main reasons Faithful Fools believes the Stipulated Injunction in its current form is problematic. The current agreement is committed to increasing criminal enforcement against an already vulnerable and traumatized population. This approach will undermine many of the agreement's intended goals.

9. Second, the Stipulated Injunction as it is currently written does not contain any plans for how to make sure relocated individuals will have access to necessary mental health treatment and other essential services.  For people who have had housing their whole lives, it could be easy to overlook what it is like for children to sleep on the streets their entire lives and then have to adjust to living indoors.  When given access to treatment and services, people readjust to relocation.  But when deprived of treatment and services, people take twice as much time to readjust, lose trust, and lack control.  The Stipulated Injunction lacks any plans for addressing the mental health needs and trauma of abruptly transforming people's living environment.  Faithful Fools cannot support the Tenderloin's residents if their abrupt forced relocation leaves them unable to trust help offered or take control of their environment.  We understand that we are in a pandemic and that the shelter contemplated in the agreement is also not long-term housing, but temporary of an unknown duration.  The sleeping sites are also not adequate long-term shelter.  The agreement as it stands now aims to relocate a large number of unhoused residents, without connecting them to services, for a temporary duration where they will be forced to then relocate again. The plan needs to contain language that ensures people are

1 connected to the mental health services they will need during these temporary relocation
2 processes.

3       10.     Third, the Stipulated Injunction, as it's currently written, focuses on a goal of zero
4 tents after July 20, 2020, and is focused on removing tents and unhoused residents' personal
5 belongings in the Tenderloin down to zero without identifying long-term options for people.
6 Faithful Fools understand that some of these placements are temporary given the urgent needs of
7 unhoused people in the Tenderloin. However, the agreement as it stands now assumes that
8 reducing tents and reducing the presence of homeless individuals achieves the same goal. It
9 conflates the presence of tents with the presence of people who are unhoused—the two are not
10 identical. Many people are currently sleeping in the Tenderloin without tents, which is no
11 different than before the pandemic. The number of tents has increased because the City stopped
12 enforcing tent removal ordinances and non-profits provided tents to people discharged from
13 hospitals, jail, and shelters. The goal of zero tents does not require the City to provide housing to
14 every homeless individual and as a result, by focusing on the removal of tents, it will leave many
15 unhoused people without minimal shelter. To be clear, just because tents are gone does not mean
16 that there are fewer homeless people, only that they are sleeping on cement. We believe that the
17 most appropriate metric of success is not a tent count, but rather reductions in the number of
18 unhoused people, either through placement in hotels or housing, on the streets (and not the
19 number of tents). We are seeking to intervene in this case so harm is not created by reliance on
20 an inappropriate metric. We feel we must point out that the stated goal of using reasonable
21 efforts to achieve zero tents, without provisions describing where people are to go in a longer-
22 term way, is more of a distraction and seems focused on just displacing people from the
23 Tenderloin.

24       11.     Faithful Fools believes it has important insights into how the proposed Stipulated
25 Injunction can be improved.  In its current form, the Stipulated Injunction unravels years of
26 progress made in the Tenderloin community and provides an over-simplified attempt to remove
27 the appearance of homelessness by creating quotas of how many tents are permitted in a specific
28 area.

**DECLARATION OF SARAH DENNISON ISO PROPOSED INTERVENORS' SUPPLEMENTAL BRIEF ISO THE MOTION FOR INTERVENTION**    **4**

12. We have invested years of relationship building, community development, and policy development in the hopes of improving conditions on the streets—getting people housed, calming chaotic behaviors, and decreasing congestion on problematic corners. We see a need to create conditions where sidewalks are welcoming to everyone—from children to elders, the able-bodied youth walking home from school to wheelchair users on their way to work—but we also know that we are home to thousands of homeless residents and they too should be welcome, without sufficient safe and adequate shelter available, they have nowhere else to go. Yet the Stipulated Injunction as it is currently written is yet another example of all this work being undone by a well-intentioned effort that is grounded in the needs of only a segment of the community.

13. We, Faithful Fools and unhoused Tenderloin residents, need to have a say in this case's resolution, so that we can make a difference in the crisis that we are currently in. Without our participation, the proposed settlement is unlikely to succeed and worse yet is likely to cause harm that will be long-lasting. Unhoused people will still be in the neighborhood but with worsening conditions, because their tents will be gone, they may be displaced from services, or threatened with criminal sanctions. This will create more chaos, not less. Our housed neighbors will continue to suffer with congestion without hope of an effective response.  The Stipulated Injunction's reliance on law enforcement and the temporary removal of tents, with no plans for connecting people to services, may leave us in worse shape than before the pandemic began. We believe that if we are at the table with plaintiffs, a workable plan can emerge—one that will satisfy the needs of the many communities of the Tenderloin.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.   Executed on June 18, 2020 in San Francisco, California.

_____
SARAH MATTHIAS DENNISON

**DECLARATION OF SARAH DENNISON ISO PROPOSED INTERVENORS' SUPPLEMENTAL BRIEF ISO THE MOTION FOR INTERVENTION** **5**