DENNIS J. HERRERA, State Bar #139669
City Attorney
MEREDITH B. OSBORN, State Bar #250467
Chief Trial Deputy
JEREMY M. GOLDMAN, State Bar #218888
TARA M. STEELEY, State Bar #231775
RENÉE E. ROSENBLIT, State Bar #304983
RYAN STEVENS, State Bar #306409
Deputy City Attorneys
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
Telephone:    (415) 554-6762 [Goldman]
              (415) 554-4655 [Steeley]
              (415) 554-3853 [Rosenblit]
              (415) 554-3975 [Stevens]
Facsimile:    (415) 554-3837
E-Mail:       Jeremy.Goldman@sfcityatty.org
              Tara.Steeley@sfcityatty.org
              Renee.Rosenblit@sfcityatty.org
              Ryan.Stevens@sfcityatty.org

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HASTINGS COLLEGE OF THE LAW, a public trust and institution of higher education duly organized under the laws and the Constitution of the State of California; FALLON VICTORIA, an individual; RENE DENIS, an individual; TENDERLOIN MERCHANTS AND PROPERTY ASSOCIATION, a business association; RANDY HUGHES, an individual; and KRISTEN VILLALOBOS, an individual,<br><br>    Plaintiffs,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a municipal entity,<br><br>    Defendant. | Case No. 4:20-cv-3033-JST<br><br>**DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S STATEMENT OF NO POSITION ON MOTION FOR INTERVENTION**<br><br>Trial Date:    Not Set |

CASE NO. 3:20-cv-3033 JST

To address the urgent, dangerous and unacceptable conditions in the Tenderloin caused by the confluence of the COVD-19 emergency and the City's longstanding homelessness crisis, Plaintiffs and the City collectively spent hundreds of hours over the past month and a half working together to find solutions that will improve the living conditions of both housed and unhoused residents of the Tenderloin.  Through the tireless dedication of Magistrate Judge Corley who held eight settlement sessions (some of which lasted eight hours or more), the parties were able to bridge gaps that originally seemed unbridgeable, and find solutions to problems that often seem intractable.  The parties' negotiations culminated in the Stipulated Injunction, filed with the Court on June 12, 2020, *see* ECF No. 51 ("Stipulated Injunction"), in which the City agreed to provide hotel rooms or safer sleeping locations for the occupants of 70% of the tents currently on the sidewalks of the Tenderloin. The terms of the Stipulated Injunction represent a massive commitment of resources by the City, and reflect Plaintiffs' and the City's shared goal to improve living conditions in the Tenderloin for housed and unhoused residents alike.

Although the Proposed Intervenors were aware of this litigation and even admit that they knew settlement negotiations were proceeding at a rapid pace, see ECF No. 46, the Proposed Intervenors did not attempt to join the settlement discussions.  They waited until over a month after Plaintiffs filed their complaint and just days before the parties reached an agreement to even attempt to join this litigation.  And now, based purely on speculation about how the City will implement the agreement, the Proposed Intervenors have announced their opposition to the Stipulated Injunction and their desire to send the parties back to the drawing board so that they can be a part of "any negotiated settlement." Supp. Br. at 1.  The Proposed Intervenors declare that they now wish to "participate in the negotiation process," but they fail to recognize that the negotiations are already over.  Supp. Br. at 6.

Under Ninth Circuit authority, the Motion for Intervention is untimely.  *Orange County v. Air California*, 799 F.2d 535, 538 (9th Cir. 1986) (holding intervention untimely where parties already reached settlement agreement but the stipulated injunction had not yet been entered by the court; explaining that the fact that the parties had already reached an agreement "weigh[ed] heavily" against intervention); *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.*, 62 F.3d 1217, 1219 (9th Cir. 1995) (explaining that "parties who delay in attempting to intervene, and who end

up doing so only after the original parties have reached an acceptable settlement, should not be able, without good reason, to intervene when their intervention may well cause substantial prejudice to the original parties."). Further, given the Proposed Intervenors' expressed desire to destroy the agreement the parties and Magistrate Judge Corley worked so hard to achieve, intervention would certainly prejudice the parties. *Air California*, 799 F.2d at 538 (holding intervention that would "be the undoing" of proposed settlement agreement would "[c]learly. . . prejudice the parties involved"); *Empire Blue Cross & Blue Shield*, 62 F.3d at 1220 (holding that parties to litigation may be prejudiced where intervener seeks a "modification" that "would 'unravel' the original settlement").

      Nonetheless, despite the concerns expressed above, the City takes no position on the Motion for Intervention; the City welcomes the opportunity to work with the Proposed Intervenors to implement the Stipulated Injunction in a way that addresses their concerns, whether or not their Motion is granted. There is no doubt that the Proposed Intervenors have a long history of providing services to homeless persons in San Francisco, and deep ties to the community. The City hopes to benefit from their expertise and partner with the Proposed Intervenors as the City works to improve living conditions for both the housed and unhoused residents of the Tenderloin.

      While the City welcomes the Proposed Intervenors' involvement in the implementation of the Stipulated Injunction, the Proposed Intervenors have not demonstrated any reason why the Stipulated Injunction should not be entered by the Court. Proposed Intervenors have not identified any provision of the Stipulated Injunction that is unlawful or that would violate the rights of unhoused persons. Instead, Proposed Intervenors base their opposition on their speculation about how the City will implement the agreement. The Proposed Intervenors note that they have "questions" about the Stipulated Injunction, but instead of seeking answers to those questions, they offer objections to the agreement that are speculative at their best, and outright false at their worst. Supp. Br. at 1. They speculate that the City will fail to address the needs of unhoused persons with disabilities. Supp. Br. at 5. They predict that the City will not follow the law with respect to the "civil and constitutional rights" of the unhoused. Supp. Br. at 1. They leap to the conclusion that the City lacks plans or procedures for accomplishing the commitments in the Stipulated Injunction, simply because the Stipulated Injunction itself does repeat the City's already existing processes and procedures. They

fault the Stipulated Injunction for not spelling out how many hotel rooms or safe sleeping placements will be created and what the duration of those placements will be, even though those facts are currently unknowable and will depend on the duration of the COVID-19 emergency.  Supp. Br. at 5. They jump to the conclusion that the City will use "police enforcement" to "criminalize indigent, homeless people," although nothing in the Stipulated Injunction says so and the City does not intend to do so.  Supp. Br. at 5, 7.  They claim that the "proposed Stipulated Injunction encourages the unlawful seizure and destruction of people's property," but do not identify any provision that does so.  Supp. Br. at 7.  They worry that the "forced relocation of unsheltered individuals without provision of adequate shelter" could increase the spread of COVID-19, but the City agrees.  Supp. Br. at 9.  That is why the Stipulated Injunction describes the City's plan to reduce the number of tents on the street in the Tenderloin *by providing hotel rooms or safe sleeping sites* to the occupants of those tents.  They claim that the "Stipulated Injunction's stated goal is to rapidly remove all unhoused persons from the Tenderloin District's public spaces," Supp. Br. at 5, when actually the Stipulated Injunction's stated goal is to *provide shelter and safe sleeping sites for persons who are currently forced to live in tents on the sidewalk*.  ECF No. 51.[1]

In short, the Proposed Intervenors are shadowboxing against a phantom enemy.  They are opposing the City's genuine efforts to improve living conditions for both housed and unhoused persons in the Tenderloin based on pure speculation about what they fear the City might do, rather than giving the City the opportunity to better serve the Tenderloin while following the law.  The City respectfully requests that the Court approve the Stipulated Injunction regardless of how the Court rules on the Motion for Intervention.

---

[1] Proposed Intervenors even read some nefarious purpose into the City's laudible goal to provide sufficient services so that no one has to live in a tent on the sidewalk.  Supp. Br. at 1; Friedenbach Dec. ¶ 11 (speculating that, because of the "Stipulated Injunction's zero-tents goal," "unhoused Black Tenderloin residents are to be eliminated by police force.")

Dated: June 22, 2020

                        DENNIS J. HERRERA
                        City Attorney
                        MEREDITH B. OSBORN
                        Chief Trial Deputy
                        JEREMY M. GOLDMAN
                        TARA M. STEELEY
                        RENÉE E. ROSENBLIT
                        RYAN STEVENS
                        Deputy City Attorneys


                    By: <u>s/Tara M. Steeley</u>
                        TARA M. STEELEY

                        Attorneys for Defendant
                        CITY AND COUNTY OF SAN FRANCISCO