ABRE' CONNER (SBN 306024)
aconner@aclunc.org
WILLIAM S. FREEMAN (SBN 82002)
wfreeman@aclunc.org
ARNETA ROGERS (SBN 315455)
arogers@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

*Attorneys for Amicus Curiae American
Civil Liberties Union Foundation of
Northern California*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| HASTINGS COLLEGE OF THE LAW, public trust and institution of higher education duly organized under the laws and the Constitution of the State of California; FALLON VICTORIA, an individual; RENE DENIS, an individual; TENDERLOIN MERCHANTS AND PROPERTY ASSOCIATION, a business association; RANDY HUGHES, an individual; and KRISTEN VILLALOBOS, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, a municipal entity, <br><br> Defendants. | **CASE NO. 4:20-CV-03033-JST** <br><br> **BRIEF OF AMICUS CURIAE AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA IN SUPPORT OF THE MOTION FOR INTERVENTION** |

# TABLE OF CONTENTS

I.      INTRODUCTION..................................................................................................... 1

II.     IDENTITY AND INTEREST OF AMICUS ....................................................... 2

III.    ARGUMENT ............................................................................................................ 3

      A.   THE PROPOSED INJUNCTION LIKELY VIOLATES SEVERAL CONSTITUTIONAL

AMENDMENTS ....................................................................................................... 3

      B.   THE PERSPECTIVE AND VOICES OF BLACK PEOPLE AND BLACK TRANSGENDER,

GENDER VARIANT AND INTERSEX INDIVIDUALS ARE NOTICEABLY MISSING FROM THE EXISTING

PARTIES' PROPOSED RESOLUTION ....................................................................... 5

IV.    CONCLUSION ........................................................................................................ 8

CASE NO. 4:20-CV-03033 JST
BRIEF OF AMICUS CURIAE AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF
NORTHERN CALIFORNIA IN SUPPORT OF THE MOTION FOR INTERVENTION

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Lavan v. City of Los Angeles*,
693 F.3d 1022 (9th Cir. 2012) ................................................. 4

*Martin v. City of Boise*,
920 F.3d 584 (9th Cir. 2019) .................................................. 3

*Mathews v. Eldridge*,
424 U.S. 319 (1976)............................................................. 4

*Rochin v. California*,
342 U.S. 165 (1952)............................................................. 5

*SPECS Surface Nano Analysis GmbH v. Kose*,
2011 WL 2493722 (N.D. Cal. June 23, 2011) ........................................ 1

**RULES**

Fed. R. Civ. P. 19(a)(1)(B) ................................................. 1

I.    **INTRODUCTION**

Contrary to the allegations in the Complaint (ECF 1 at ¶¶ 4, 5), unhoused people living in the Tenderloin are neither a "blight," nor "an existential risk to [the] future" of other people who live and work there. They are human beings engaged in a daily struggle to survive, a struggle that is made even more difficult by the current pandemic. Yet the parties to this action ("Existing Parties") have asked this Court to determine the very contours of their right to peaceably exist, while simultaneously attempting to prevent their voices from being heard. For this reason, amicus ACLU Foundation of Northern California ("ACLU-NC") respectfully urges the Court to grant the Motion for Intervention of Hospitality House, Coalition on Homelessness, and Faithful Fools ("Proposed Intervenors").

The very individuals who stand to be most impacted by this case have thus far been given no opportunity to offer their views to this Court. And that the Existing Parties have how purported to reach a settlement that directly impacts these individuals makes the need for intervention particularly urgent. Black, transgender, gender variant, and intersex individuals are noticeably missing from the existing conversation. This proposed agreement will push the most vulnerable populations in the Tenderloin away from their residence and they have little to no voice on where they will go based on the proposed Injunction. In evaluating this case and before considering any proposed settlement, this Court should consider the perspective of the very individuals who are the direct targets of this case and of the proposed settlement.[1]

The Existing Parties have proposed changes that will likely violate individuals' procedural and substantive due process rights, in addition to Fourth and Eighth Amendment protections. Moreover, Black people's and Black transgender, gender variant, and intersex

---

[1] One could also argue that under Fed. R. Civ. P. 19(a)(1)(B), the Proposed Intervenors "*must* be joined" as parties because they are subject to service of process, their joinder will not deprive the Court of subject matter jurisdiction, and they "claim an interest relating to the subject of the action and [are] so situated that disposing of the action in [their] absence may … as a practical matter impair of impede [their] ability to protect the interest." *See SPECS Surface Nano Analysis GmbH v. Kose*, 2011 WL 2493722 *2 (N.D. Cal. June 23, 2011).

CASE NO. 4:20-CV-03033 JST
BRIEF OF AMICUS CURIAE AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF
NORTHERN CALIFORNIA IN SUPPORT OF THE MOTION FOR INTERVENTION

1  individuals' voices are noticeably missing from Existing Parties' framing although they are

2  likely to bear the brunt of the decisions made.

3  **II.    IDENTITY AND INTEREST OF AMICUS**

4      The ACLU Foundation of Northern California, founded in 1934 and based in San

5  Francisco, Fresno, and Sacramento, is an affiliate of the American Civil Liberties Union

6  ("ACLU"), a national, nonprofit, nonpartisan civil liberties organization with more than two

7  million members, activists, and supporters dedicated to the principles of liberty and equality

8  embodied in both the United States and California Constitutions and our nation's civil rights

9  laws. Since their founding, both the national ACLU and ACLU-NC have had an abiding interest

10  in the promotion of the guarantees of liberty and individual rights embodied in the federal and

11  state constitutions, including the right to due process guaranteed by the Fifth and Fourteenth

12  Amendments of the United States Constitution.

13      The national ACLU and ACLU-NC have long fought to protect and defend the civil and

14  human rights of people experiencing homelessness by opposing policies that treat unhoused

15  people as criminals and erect barriers to their ability to secure and maintain needed housing,

16  employment, and benefits. ACLU-NC has served as co-counsel for unhoused plaintiffs in similar

17  cases and secured settlements requiring that they be compensated for property that was lost or

18  destroyed by state and city employees during sweeps of areas where they lived. *See, e.g.*,

19  *Sanchez v. Caltrans*, No. RG16842117 (Cal. Super. Ct., County of Alameda, 2020); *Kincaid v.*

20  *City of Fresno*, No. 06-CV-1445 (E.D. Cal. 2008).

21      Recently, the ACLU-NC wrote a letter on behalf of the Coalition on Homelessness San

22  Francisco to demand that the City and County of San Francisco comply with local legislation

23  requiring the procurement of hotel and motel rooms for unhoused people as a critical public

24  health response to the COVID-19 pandemic, including in the Tenderloin.[2] Moreover, the national

25  

26      [2] ACLU-NC also works with the Transgender Gender-Variant & Intersex Justice Project

27  "TGIJP") to address harassment by employees for the San Francisco Department of Public Works against trans and gender variant sex workers in the Tenderloin.

28  
CASE NO. 4:20-cv-03033-JST
BRIEF OF AMICUS CURIAE AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF
NORTHERN CALIFORNIA IN SUPPORT OF THE MOTION FOR INTERVENTION

ACLU and ACLU-NC recently reached a settlement on behalf of Black plaintiffs with the City of San Francisco to address SFPD's discriminatory enforcement of drug laws against Black people in and around the Tenderloin. *See Cross v. City and County of San Francisco*, No. 3:18-cv-06097-EMC (N.D. Cal. 2020).

### III.   ARGUMENT

The undersigned amicus support the Motion for Intervention for several reasons, including the likely violations of constitutional rights, harms to transgender and gender variant individuals experiencing homelessness, and the missing voices of Black people in the Tenderloin, in addition to those advanced by the Proposed Intervenors themselves.

#### A.   The Proposed Injunction likely violates several constitutional amendments

First, as Proposed Intervenors note, under the Eighth Amendment, government cannot criminalize the act of living unsheltered in the absence of sufficient indoor shelter options. *Martin v. City of Boise*, 920 F.3d 584, 616-17 (9th Cir. 2019). As it stands, there are over 3,500 people experiencing homelessness in District 6, which includes the Tenderloin.[3] The potential infringement of this right by the Existing Parties is highlighted by the Stipulated Injunction ("SI," ECF 51), which contains several explicit but vaguely worded provisions that threaten the rights of unhoused persons. For example, while the proposed injunction states that the City will offer possibly 300 hotel rooms and "safe sleeping villages" outside the Tenderloin, it also threatens that the City will "discourage" people from erecting tents in the neighborhood and will "employ" unspecified "enforcement measures" to "prevent re-encampment." (SI at 2, 3). The maximum number of tents under this proposed stipulated injunction will be 75. These numbers are nowhere near enough to house the thousands of individuals who are not considered in this proposed stipulated injunction. Clearly, "enforcement measures" implies criminalization of those who may elect not to be "enforced." Considering *Martin*, any Court-sanctioned order that would

---

[3] Applied Survey Research, San Francisco Homeless Count & Survey Comprehensive Report (2019) at 12,
https://hsh.sfgov.org/wp-content/uploads/2020/01/2019HIRDReport_SanFrancisco_FinalDraft-1.pdf.

BRIEF OF AMICUS CURIAE AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA IN SUPPORT OF THE MOTION FOR INTERVENTION

permit such criminalization must, at the very least, ensure that people can actually be housed which the Stipulated Injunction does not clearly describe to ensure that the prescribing preconditions for such enforcement and the enforcement measures themselves meet constitutional muster. Indeed, it seems to contradict CDC guidance, where after providing people with individual housing options, the most protective policy is to leave encampments intact, instruct residents how to physically distance, and provide access to hygiene, sanitation, services, and healthcare.[4]

Second, persons experiencing homelessness have procedural due process rights to notice prior to being required to move themselves and their belongings from their places of encampment. "[I]dentification of the specific dictates of [procedural] due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, of any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The Proposed Injunction makes clear that no consideration whatsoever has been given to the due process rights of unhoused Tenderloin residents; to the contrary, the Existing Parties would have the Court summarily approve their request for unchecked power to determine those rights without the voices of the residents ever being heard.

Third, persons experiencing homelessness have a protected interest under the Fourth and Fourteenth Amendments to prevent public officials from unlawfully seizing or destroying their personal property. *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1030-33 (9th Cir. 2012). The

---

[4] U.S. Centers for Disease Control and Prevention, "Interim Guidance on People Experiencing Unsheltered Homelessness" (May 10, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/homeless-shelters/unsheltered-homelessness.html.

CASE NO. 4:20-cv-03033-JST
BRIEF OF AMICUS CURIAE AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF
NORTHERN CALIFORNIA IN SUPPORT OF THE MOTION FOR INTERVENTION

Stipulated Injunction would almost certainly require that the City to take some action with respect to at least some of the personal property belonging to people encamped in the Tenderloin, but does not even attempt to specify which belongings people may take with them, which must be stored, which would be discarded or destroyed.

Fourth, the Stipulated Injunction is sufficiently vague that there is a very real possibility that the parties would attempt to implement it in a way that would "shock the conscience" and thereby violate substantive due process. *Rochin v. California,* 342 U.S. 165 (1952). Forcing people to move during the course of the current pandemic has the potential to further disrupt the already difficult circumstances of people experiencing homelessness and may introduce additional risks of infection to members of a highly vulnerable population. Mitigation of these risks requires far more explicit safeguards than exist in the Stipulated Injunction.

**B.      The perspective and voices of Black people and Black Transgender, Gender Variant and Intersex Individuals are noticeably missing from the Existing Parties' proposed resolution**

Next, Black people, including Black transgender, gender variant and intersex (TGI) individuals, will likely bear the brunt of the impact of the joint stipulation. The Proposed Intervenors have a history of including Black people in their views and perspectives.[5] The percentage of Black residents in the Tenderloin District is nearly twice that of the average Black population across San Francisco.[6] Similarly, Latinx individuals also comprise a higher percentage of Tenderloin residents than of San Francisco as a whole.[7] Additionally, San Francisco's unhoused population is 37% Black.[8]

---

[5] For example, in 2018, BayLegal's clients were 76% Black, Latinx, and other people of color. https://baylegal.org/racial-injustice-and-our-work/.
[6] San Francisco Planning Department, San Francisco Neighborhoods Socio-Economic Profiles: American Community Survey 2010–2014 (2017) at 4, 78, https://default.sfplanning.org/publications_reports/SF_NGBD_SocioEconomic_Profiles/2010-2014_ACS_Profile_Neighborhoods_v3AH.pdf.
[7] *Id.*
[8] Applied Survey Research, San Francisco Homeless Count & Survey Comprehensive Report (2019) at 16, https://hsh.sfgov.org/wp-content/uploads/2020/01/2019HIRDReport_SanFrancisco_FinalDraft-1.pdf.

CASE NO. 4:20-cv-03033-JST
BRIEF OF AMICUS CURIAE AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA IN SUPPORT OF THE MOTION FOR INTERVENTION

Indeed, the Tenderloin has historically been and is currently home to a large and diverse community of TGI individuals. It accordingly recognized the world's first ever Transgender Cultural District in 2017. TGI people, particularly Black and other TGI people of color, experience significant barriers in society that have only been exacerbated by COVID-19. Being Black and TGI means a person is more likely to experience economic insecurity,[9] barriers to accessing healthcare,[10] and chronic homelessness[11] in San Francisco and throughout California. TGI people are also more likely than people in the general population to live with one or more disabilities.[12] Proposed Intervenors Hospitality House[13] and Coalition on Homelessness[14] have a history of representing the voices of people of color and representing the most marginalized within those communities.

And while the Existing parties' purpose is to represent Tenderloin businesses, there are few Black-owned businesses in the neighborhood due to several factors, including gentrification, redlining, and racism in housing and commercial leasing practices.[15] And due to systemic racism and high housing costs, Black people have continued to be pushed out of San Francisco.[16] In

---

[9] 2015 U.S. Transgender Survey-California State Report ("USTS CA Report"), National Center for Transgender Equality, https://www.transequality.org/sites/default/files/docs/usts/USTSCAStateReport%281017%29.pdf.

[10] USTS CA Report, supra, at p. 3. 33% of transgender survey respondents in California reported having a negative experience while trying to access health care in the preceding year alone, while 25% reported having a problem with insurance coverage for the health care they needed.

[11] USTS CA Report, supra, at p. 2. 11% of transgender survey respondents in California reported experiencing homelessness in the past year, while 30% reported they had been homeless at some time in their lives.

[12] The Report of the 2015 U.S. Transgender Survey, National Center for Transgender Equality, https://www.transequality.org/sites/default/files/docs/USTS-Full-Report-FINAL.PDF.

[13] Hospitality House, Theory of Change, "ensure that the principles of inclusiveness, equality for all, and unflinching solidarity with the LGBTQ community – and other historically oppressed and marginalized communities – guide our work consistent with our founding mission," https://www.hospitalityhouse.org/our-theory-of-change.html.

[14] Coalition on Homelessness, Punishing the Poorest: How the Criminalization of Homelessness Perpetuates Poverty in San Francisco, at p. 58 discussing trans people and the criminalization of homelessness, http://www.cohsf.org/Punishing.pdf.

[15] http://www.antievictionmappingproject.net/sfredlining.html; https://www.urbandisplacement.org/map/sf; https://projects.sfchronicle.com/2020/black-owned-restaurants/; https://bucketlisters.com/blog/268-50-black-owned-businesses-and-restaurants-in-san-francisco.

[16] https://www.urbandisplacement.org/sites/default/files/images/sf_final.pdf.

CASE NO. 4:20-cv-03033-JST
BRIEF OF AMICUS CURIAE AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF
NORTHERN CALIFORNIA IN SUPPORT OF THE MOTION FOR INTERVENTION

1  fact, between 2000 and 2010, the number of Black people in San Francisco fell by 19%.[17]

2  Indeed, low-income Black people have suffered the most from this push. Between 2000 and

3  2015, San Francisco lost at least 3,000 low-income Black families.[18] And the stipulated

4  injunction, as submitted to the Court, merely perpetuates and builds on this troubling trend, by

5  proposing to dislocate and potentially push from the City the very individuals who could most

6  benefit from the resources and support available in San Francisco and in the Tenderloin

7  specifically.

8      Moreover, the vague terms of the stipulated injunction do not ensure that people will be

9  able to properly social distance during this pandemic, which will likewise disproportionately

10  affect Black people. Racism has been considered a public health crisis by many cities across the

11  country.[19] Black people are more likely to contract and less likely to recover from COVID-19.

12  For example, for age group 45-54, Black people across the United States are six times more

13  likely to test positive for COVID-19 than white people.[20] And this is exacerbated because Black

14  people likewise have unequal access to COVID-19 testing, both because of racism within health

15  care and because of experiencing homelessness.[21] Additionally, the proposed stipulated

16  injunction seems to rely heavily on law enforcement to move people to live in new and

17  undisclosed locations. This will be in the hands of the same police department that has a history

18

19  ───────────────

20  [17] http://censusviewer.com/city/CA/San%20Francisco.
    [18] https://www.urbandisplacement.org/sites/default/files/images/sf_final.pdf.

21  [19] Christine Vestal, *Racism Is a Public Health Crisis, Say Cities and Counties*, Pew Charitable
    Trusts Stateline, June 15, 2020, https://www.pewtrusts.org/en/research-and-
    analysis/blogs/stateline/2020/06/15/racism-is-a-public-health-crisis-say-cities-and-counties.

22  [20] https://www.brookings.edu/blog/up-front/2020/06/16/race-gaps-in-covid-19-deaths-are-even-
    bigger-than-they-appear/.

23  [21] Amy Maxmen, *Coronavirus is Spreading Under the Radar in US Homeless Shelters*, Nature,
    May, 7 2020,  https://www.nature.com/articles/d41586-020-01389-3 ("By the time a person from

24  a shelter in San Francisco had been diagnosed with COVID-19 in April, for example, more than
    90 other residents and 10 people who worked there were already infected."); David R. Williams

25  & Lisa A. Cooper, *COVID-19 and Health Equity—A New Kind of "Herd Immunity"*, JAMA,
    May 11, 2020, https://jamanetwork.com/journals/jama/fullarticle/2766096; Christine Vestal,

26  *Racism Is a Public Health Crisis, Say Cities and Counties*, Pew Charitable Trusts Stateline, June

27  15, 2020, https://www.pewtrusts.org/en/research-and-analysis/blogs/stateline/2020/06/15/racism-
    is-a-public-health-crisis-say-cities-and-counties.

28
CASE NO. 4:20-cv-03033-JST
BRIEF OF AMICUS CURIAE AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF
NORTHERN CALIFORNIA IN SUPPORT OF THE MOTION FOR INTERVENTION

of targeting and profiling Black people in San Francisco, particularly the Tenderloin.[22] There is no basis on which to assume that SFPD will not be used nor that SFPD's troubling practices vis-à-vis the Black community will be any different in enforcing the proposed injunction.

## IV.     CONCLUSION

For the foregoing reasons, the Court should grant the Motion for Intervention.

Dated: June 24, 2020                                      Respectfully submitted,

/s/ Abre' Conner
Abre' Conner
William S. Freeman
Arneta Rogers
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA

---

[22] *U.S. v. Matthew Mumphrey*, No. 3:14-cr-00643-EMC, Docket number 119 (N.D.Cal. 2016) (Order Granting in Part and Denying in Part Defendant's Motion to Compel where the court found that SFPD selectively targets Black People).