1  Lauren Hansen (CA BAR NO. 268417)
   Melissa A. Morris (CA BAR NO. 233393)
2  PUBLIC INTEREST LAW PROJECT
   449 15th St., Suite 301
3  Oakland, CA 94612-06001
   Tel: (510) 891-9794
4  Fax: (510) 891-9727
   Email: lhansen@pilpca.org
5

6  ATTORNEYS FOR PROPOSED INTERVENORS
   HOSPITALITY HOUSE; COALITION ON
7  HOMELESSNESS; AND FAITHFUL FOOLS

8  Lili V. Graham (CA BAR NO. 284264)                Michael David Keys
   Tiffany L. Nocon (CA BAR NO. 301547)              (CA BAR NO. 133815)
9  DISABILITY RIGHTS CALIFORNIA                      Jessica Berger (CA BAR NO. 319114)
   350 S Bixel Street, Ste 290                       BAY AREA LEGAL AID
10 Los Angeles, CA 90017-1418                        1800 Market Street, 3rd Floor
   Tel: (213) 213-8000                               San Francisco, CA 94102
11 Fax: (213) 213-8001                               Tel: (415) 982-1300
   Email: Lili.Graham@disabilityrightsca.org         Fax: (415) 982-4243
12                                                   Email:  mkeys@baylegal.org
13 ATTORNEYS FOR PROPOSED INTERVENORS
   HOSPITALITY HOUSE; COALITION ON                   ATTORNEYS FOR PROPOSED
14 HOMELESSNESS; AND FAITHFUL FOOLS                  INTERVENORS COALITION ON
                                                     HOMELESSNESS
15

16
**UNITED STATES DISTRICT COURT**
17
**NORTHERN DISTRICT OF CALIFORNIA**
18

| | |
|---|---|
| 19  HASTINGS COLLEGE OF THE LAW, a public trust and institution of higher education duly organized under the laws and the Constitution of the State of California; FALLON VICTORIA, an individual; RENE DENIS, an individual; TENDERLOIN MERCHANTS AND PROPERTY ASSOCIATION, a business association; RANDY HUGHES, an individual; and KRISTEN VILLALOBOS, an individual, | Case No. 4:20-cv-3033-JST |
| 20 | **REPLY BRIEF IN SUPPORT OF PROPOSED INTERVENORS' MOTION FOR INTERVENTION** |
| 21 | |
| 22 | Date: |
| | Time: |
| 23 | Place: Courtroom 6, Second Floor |
|     Plaintiffs, | Judge: Hon. Jon S. Tigar |
| 24  v. | |
| 25 | Complaint Filed: May 4, 2020 |
|    CITY AND COUNTY OF SAN FRANCISCO, a municipal entity, | Trial Date: None Set |
| 26 | |
| 27    Defendant. | |
| 28 | |

---

*Hastings College of the Law v. City and County of San Francisco;* **Case No. 4:20-cv-3033-JST**
**Reply Brief In Support of Proposed Intervenors' Motion for Intervention**

## I. INTRODUCTION

Absent intervention, the interests of unsheltered persons will go unrepresented in one of the most dramatic efforts to reduce homelessness in the Tenderloin in recent history. The existing parties take no position on Proposed Intervenors' Motion, and thus, the motion is unopposed. In response to the questions raised by the City in its "Statement of No Position," Proposed Intervenors' submit this Reply Brief to address: (1) the timeliness of this motion; and (2) the role of Proposed Intervenors as a party to the case in light of the parties' proposed Stipulated Injunction. This Court should grant Hospitality House, the Coalition on Homelessness, and Faithful Fools' Motion for Intervention.

First, the intervention is timely. The City cites two cases to argue intervention is untimely. Both of those cases were pending for *years* before intervention was sought and are distinguishable from this case. Further, the City states that it welcomes the opportunity to work with Proposed Intervenors, acknowledging Proposed Intervenors' long history of serving persons experiencing homelessness and deep ties to the community. This acknowledgment supports Proposed Intervenors' argument that their intervention will not prejudice the litigation's existing parties—to the contrary, Proposed Intervenors have a constructive and beneficial role to play in the litigation and any settlement.

Second, Proposed Intervenors' involvement will help to ensure that a settlement of this litigation is drafted and implemented in a way that better protects unhoused people's rights, prevents legal violations, and most effectively furthers the parties' stated goal of ensuring that unsheltered Tenderloin residents have safe, viable alternatives to living in tents on public sidewalks. Proposed Intervenors do not want to go back to the drawing board, as the City claims. But the devil is in the details in agreements such as these. While the current agreement claims that the parties will respect unhoused persons rights, it does not identify what those rights are, nor does it include any procedures, guidelines, or other safeguards to ensure those rights are protected. The resulting harm is not speculative, but real and tangible. Since the agreement was executed by the parties, Proposed Intervenors have witnessed the harm occurring on the ground.

Proposed Intervenors continue to meet intervention requirements. Neither Plaintiffs nor the City offers any credible argument to the contrary. Accordingly, this Court should grant the Motion to Intervene so that Proposed Intervenors can be heard and can improve the current agreement, in turn ensuring that unhoused persons have a say in the outcome of this case that will deeply impact their lives.

## II.     ARGUMENT

### A.  Intervention Remains Timely, and Proposed Intervenors Meet the Requirements of Rule 24(a) and (b).

This Motion to Intervene remains timely for the reasons outlined in Proposed Intervenors' initial Motion and Supplemental Brief. *See* ECF-43 (Motion for Intervention) at 14:21-16:9; ECF-59 (Supplemental Brief) at 4:26-8:5. The City argues intervention is untimely, citing to two distinguishable cases. The City relies on *Orange County v. Air California*, a case where the existing parties were in "five long years of litigation" before the proposed intervenors sought intervention, where the ongoing negotiations were publicized, and where the intervention motion was filed a month after the proposed intervenors knew a settlement agreement had already been reached. *Orange County v. Air California*, 799 F.2d 535, 538 (9th Cir. 1986). This is plainly distinguishable from the motion currently before this Court. Here, intervention was sought before the existing parties reached an agreement.

In the second case that the City cites to, the intervenors had known about a pending matter for almost a year and a half; the existing parties had been engaged in "lengthy discovery" that led to a protective order sealing information; and the intervenors tried to intervene to access the sealed information. *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.*, 62 F.3d 1217, 1218-19 (9th Cir. 1995). Both of these cases are clearly distinguishable from the instant litigation. The facts in this case are simply not comparable.

Here, Proposed Intervenors notified the Plaintiffs and Defendant that they intended to intervene ten days before the Parties filed the Proposed Stipulated Injunction—a fact obscured by the City's brief. Proposed Intervenors contacted both the City and Plaintiffs on June 2, 2020, notifying them of their interest in this case and their intention to intervene. Declaration of Lauren

1  Hansen ISO Reply ("Hansen Decl.") at ¶3. This was 10 days before the parties filed a settlement
2  agreement on June 12, 2020. *See* ECF-39 (Joint Case Management Statement) at 3; ECF-51
3  (Stipulated Injunction). Thus, the current parties knew Proposed Intervenors had an interest in
4  this case nearly two weeks before they filed a settlement agreement, not days before the
5  agreement as the City misstates. *See* ECF-63 (City Statement of No Position) at 2:16-18. Then
6  Proposed Intervenors filed their motion on June 9, 2020, also before the proposed Stipulated
7  Injunction was filed. And, as the proposed Stipulated Injunction itself notes, the City's Board of
8  Supervisors has not yet approved its terms. *See* ECF-51 (Stipulated Injunction) at 9:8-17.
9  Proposed Intervenors filed their Motion to Intervene barely over a month after Plaintiffs had filed
10 their Complaint, and before the City had filed any responsive pleading, in stark contrast to the
11 timing of intervention in the *Air California* and *Janet Greeson's A Place For Us, Inc*.
12        Although the existing parties had notice that Proposed Intervenors had a substantial
13 interest in this case, and although the agreement that they were negotiating directly impacts the
14 lives of unhoused Tenderloin residents, the existing parties continued to negotiate the proposed
15 Stipulated Injunction without involving Proposed Intervenors. They also did not inform Proposed
16 Intervenors of their agreement. Hansen Decl., ¶¶8-10. Proposed Intervenors learned of the news
17 third-hand, through information about an upcoming press article. Hansen Decl., ¶9. The existing
18 parties created the circumstances they complain about now. The parties should not now be
19 permitted to claim prejudice when they created these circumstances. *See e.g. Smith v. L.A.*
20 *Unified Sch. Dist.,* 830 F.3d 843, 858 (9th Cir. 2016) ("existing parties cannot complain about
21 delay or prejudice caused by their own efforts to thwart the provision of meaningful notice to
22 affected parties", in the context of a class action)*.* This Motion to Intervene is, and remains,
23 timely. *See, e.g., U.S. v. City of Los Angeles*, 288 F.3d 391, 396-97 (9th Cir. 2002) (reversing
24 denial of intervention as a matter of right intervention when intervention was sought after
25 existing parties engaged in "difficult and complex negotiations" before filing a consent decree)*;*
26 *Smith v. L.A. Unified Sch. Dist*., 830 F.3d 843, 854 (9th Cir. 2016) (holding district court abused
27 its discretion by finding intervention untimely in a case where proposed intervenors filed to
28 intervene after existing parties reached a settlement agreement, and where intervention was

1  sought more than 70 days after intervenors learned that their interests were not being represented
2  in the litigation).
3        Finally, in its Statement of Position, the City claims Proposed Intervenors do not point to
4  any unlawful provision or violation of homeless people's rights in the text of the proposed
5  Stipulated Injunction. ECF-63 at 3:18-19. However, the City misstates the standard for
6  intervention. The question is whether the interests of unhoused persons will be impaired if not
7  they are not represented the case, and whether the existing parties adequately represent the
8  interests of unhoused residents for intervention. *See Donnelly v. Glickman*, 159 F.3d 405, 409
9  (9th Cir 1998). Neither the City nor Plaintiffs rebut any of the Proposed Intervenors' arguments
10  about the ways that they meet the requirements for intervention. *See* ECF-63; ECF-64 (Plaintiffs'
11  Response). As such, this Court should grant the unopposed Motion to Intervene.

12  **B.  The Unopposed Motion to Intervene Should Be Granted, and Intervenors Should**
13      **Have an Opportunity to Be Heard Before Any Stipulated Injunction Is Approved.**

14        No one disputes that the Proposed Intervenors have substantial experience and a history
15  of assisting unhoused persons in the community. Wilson Decl. ISO Motion for Intervention at
16  ¶¶3-14; Friedenbach Decl. ISO Motion for Intervention at ¶¶3-4, 6-16; Dennison Decl. ISO
17  Motion for Intervention at ¶¶4-6; ECF-63 (Statement of No Position) at 3:10-15 ("There is no
18  doubt that the Proposed Intervenors have a long history of providing services to homeless
19  persons in San Francisco, and deep ties to the community."). Based on their expertise, Proposed
20  Intervenors find that the proposed Stipulated Injunction lacks the necessary protections for
21  unhoused Tenderloin residents.
22        Although the proposed Stipulated Injunction recites that the rights of the homeless will be
23  respected, there is no mention of what those rights are or how they will be protected. ECF-51
24  (Stipulated Injunction) at 7:26-28. Because the existing parties say they will respect rights of
25  unhoused persons in their current agreement, it should be noncontroversial to add specific
26  language articulating what those rights are and safeguards to ensure their protection. The
27  proposed Stipulated Injunction's current language is insufficient to actually protect those rights
28  because it is silent as to what they are. *Id.*

*Hastings College of the Law v. City and County of San Francisco;* **Case No. 4:20-cv-3033-JST**
**PROPOSED INTERVENORS' REPLY ISO MOTION FOR INTERVENTION**                                    **4**

The current agreement implicates unhoused persons' rights and legal protections, specifically protections provided by the Eighth Amendment to the Constitution, as articulated by *Martin v. City of Boise*, 920 F.3d 584, 617 (9th Cir. 2019); by the Fourth and Fourteenth Amendments, as articulated by *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1031 (9th Cir. 2012); by Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and analogous state laws. The proposed Stipulated Injunction, as drafted, also contravenes the Centers for Disease Control and Prevention's guidance regarding unsheltered homelessness during COVID-19. A failure to include these protections creates a real risk of haphazard enforcement, violation of unhoused people's civil and constitutional rights, and severe harm to both individual and public health. For example, the current agreement aims to drastically reduce the number of tents in the Tenderloin and permanently reduce the number of tents and all other personal property "to zero." Yet, it does not explain where those tents will go, or how they will be reduced, or how residents' personal property will be handled. *See* ECF-51 (Stipulated Injunction) at 7:22-25; Evans Decl. ISO Supplemental Brief, ¶¶11-12, 21-25. The harm that results from such a vague agreement is not "based purely on speculation," as the City claims. *See* ECF-63 (City Statement of No Position) at 2:18. Concrete harm and constitutional violations have been occurring on the ground since the parties filed their proposed Stipulated Injunction. *See* Friedenbach Decl. ISO Supplemental Brief, ¶¶9, 13 (City required Tenderloin residents to forfeit their tents, failed to place them in hotel rooms, and did not return their tents); Evans Decl., ¶¶21-22, 24-25, 27 (City workers threw away walkers and tents without preserving the items for storage; required persons to limit property to just two bags; cut locks on tents evidently not abandoned); Declaration of Kelley Cutler ISO Reply, ¶12-15 (unhoused person threatened with misdemeanor if he did not accept safe sleeping site or move along). While the proposed Stipulated Injunction purports to respect the rights of the unhoused, its implementation has had the effect of facilitating violations of the constitutional protections articulated by *Lavan*. *See also Mitchell v. City of Los Angeles*, No. 2:16-cv-01750 (C.D. Cal. 2016); *Kincaid et al. v. City of Fresno*, No. 06-CV-1445-OWW (E.D. Cal. 2007).

1       On June 18, 2020, a Coalition on Homelessness employee recorded a video of a San
2  Francisco Police Department officer threatening a man with a misdemeanor if he did not accept a
3  placement in a safe sleeping village. Cutler Decl., ¶¶12-15. The person experiencing
4  homelessness was very agitated, and the officer ignored his repeated statements that he did not
5  feel safe going to the sleeping village. *Id.* ¶¶12, 15. Although this video was recorded in the
6  Castro neighborhood, the police officer references a court agreement as justification for requiring
7  the person's immediate removal from the place where he has been living. *Id.*, ¶15; Hansen Decl.,
8  ¶14. Counsel for Proposed Intervenors sent the video to counsel for the City, but he did not
9  respond. *Id.*, ¶16. This experience highlights the importance of including the voices of
10 unsheltered persons and their advocates in any resolution of this case—to prevent situations like
11 these from happening. Cutler Decl., ¶¶16-17; Hansen Decl., ¶16.
12      Proposed Intervenors are not "shadowboxing against a phantom enemy". ECF-63 (City
13 Statement of No Position) at 4:16. Collectively they have spent approximately 100 years working
14 on homeless issues, including housing in the Tenderloin, on behalf of and with unsheltered
15 residents. They very much appreciate the "enemy" is homelessness and that it is not "phantom."
16      The proposed Stipulated Injunction was reached without the input of the people most
17 affected by it; in its current form it lacks the necessary terms regarding important protections and
18 processes, and these gaps in the agreement cause substantial harm to unhoused persons. Other
19 litigation settlements addressing similar issues take a very different approach, e.g. *People's*
20 *Homeless Task Force*, case no: 2:18-cv-01027. *See* Hansen Decl., ¶13, Exh. A. There, Plaintiffs
21 challenged Orange County's removal of unhoused persons and their personal belongings from
22 the Santa Ana riverbed. The parties, including homeless representatives, negotiated the
23 agreement which contains recitals, definitions, and comprehensive procedures to ensure that
24 unhoused persons' rights are protected.
25      Proposed Intervenors recognize that the case was brought to address an acute situation in
26 the midst of a health pandemic. Proposed Intervenors are proposing the addition of the
27 protections to that the settlement's implementation does not cause harm to unhoused people. In
28 fact, Proposed Intervenors have drafted revised terms to provide to Judge Corley and the parties.

The City acknowledges that the litigation and/or settlement will benefit from Intervenors' presence. The City "welcomes the opportunity to work with the Proposed Intervenors…[and] hopes to benefit from their expertise." ECF-63 (City Statement of No Position) at 3:10-15. Based on their expertise, Proposed Intervenors seek to modify the agreement to ensure that necessary protections are included in an agreement that will deeply impact the lives of unhoused persons. *See also* Hansen Decl., ¶13 (counsel in this case negotiated the *People's Homeless Task Force* settlement). Proposed Intervenors agree with the City's goal of placing unhoused individuals in hotel rooms. But, the process of hotel placement is crucial in protecting the rights of unhoused individuals, especially those with disabilities.

### III.   CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully ask that this Court grant their Motion to Intervene and grant them full rights as parties to this case. Proposed Intervenors also ask that this Court require all parties to return to negotiation, not to start from the beginning, but to address the specific deficiencies in the proposed Stipulated Injunction, described herein and in Proposed Intervenors' Supplemental Brief filed on June 18, 2020.

DATED: June 24, 2020                    Respectfully submitted,

                                                      Lauren Hansen
                                                      PUBLIC INTEREST LAW PROJECT

                                                      Tiffany Nocon
                                                      DISABILITY RIGHTS CALIFORNIA

                                                      Mike Keys
                                                      BAY AREA LEGAL AID

                                                      By:    */s/ Lauren Hansen*
                                                                 Attorneys for Proposed Intervenors