Lauren Hansen (CA BAR NO. 268417)
Melissa A. Morris (CA BAR NO. 233393)
PUBLIC INTEREST LAW PROJECT
449 15th St., Suite 301
Oakland, CA 94612-06001
Tel: (510) 891-9794
Fax: (510) 891-9727
Email: lhansen@pilpca.org

ATTORNEYS FOR PROPOSED INTERVENORS HOSPITALITY HOUSE; COALITION ON HOMELESSNESS; AND FAITHFUL FOOLS

Lili V. Graham (CA BAR NO. 284264)
Tiffany L. Nocon (CA BAR NO. 301547)
DISABILITY RIGHTS CALIFORNIA
350 S Bixel Street, Ste 290
Los Angeles, CA 90017-1418
Tel: (213) 213-8000
Fax: (213) 213-8001
Email: Lili.Graham@disabilityrightsca.org

ATTORNEYS FOR PROPOSED INTERVENORS HOSPITALITY HOUSE; COALITION ON HOMELESSNESS; AND FAITHFUL FOOLS

Michael David Keys
(CA BAR NO. 133815)
Jessica Berger (CA BAR NO. 319114)
BAY AREA LEGAL AID
1454 43rd Avenue
San Francisco, CA 94122
Tel: (415) 982-1300
Fax: (415) 982-4243
Email: mkeys@baylegal.org

ATTORNEYS FOR PROPOSED INTERVENORS COALITION ON HOMELESSNESS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

HASTINGS COLLEGE OF THE LAW, a public trust and institution of higher education duly organized under the laws and the Constitution of the State of California; FALLON VICTORIA, an individual; RENE DENIS, an individual; TENDERLOIN MERCHANTS AND PROPERTY ASSOCIATION, a business association; RANDY HUGHES, an individual; and KRISTEN VILLALOBOS, an individual,

Plaintiffs,

v.

CITY AND COUNTY OF SAN FRANCISCO, a municipal entity,

Defendant.

**Case No. 4:20-cv-3033-JST**

**DECLARATION OF KELLEY CUTLER IN SUPPORT OF PROPOSED INTERVENORS' REPLY IN SUPPORT OF MOTION FOR INTERVENTION**

Date:
Time:
Place: Courtroom 6, Second Floor
Judge: Hon. Jon S. Tigar

Complaint Filed: May 4, 2020
Trial Date: None Set

I, Kelley Cutler, declare:

1. I am a resident of San Francisco, and work with homeless individuals. I make this Declaration in support of Proposed Intervenors' Reply in support of their Motion for Intervention.

2. The facts set forth below are known to me personally, and I have first-hand knowledge of these facts. If called as a witness, I could and would testify competently, under oath, to such facts.

3. I am employed as a Human Rights Organizer at the Coalition on Homelessness, which is located in the Tenderloin neighborhood of San Francisco, California.

4. I have been working with homeless individuals in the San Francisco community since 2002 and have experience working with various agencies and faith communities to help homeless individuals. My background is in social work with a strong commitment to initiating innovated and sustainable approaches to unite diverse groups in the community to better care for marginalized populations. Through my work, I build efforts toward seeking community support, key coalitions, and community partnerships to address the complex issues of homelessness. This includes organizing, leading, and completing comprehensive outreach strategies to help provide proper services to homeless individuals.

5. I currently work in the Human Rights Workgroup, which seeks universal human rights for poor and homeless individuals. We aim to do so by creating a standard in the community and in the City's policy to ensure dignity, respect, compassion, and equality.

6. I am a member of the Local Homeless Coordinating Board (LHCB), which works to ensure a unified homeless strategy. The LHCB serves as an advisory body to the Department of Homelessness and Supportive Housing.

7. Even prior to the pandemic, the ongoing housing crisis has made it very difficult for poor people, especially when homeless, to avoid receiving citations, being arrested, and/or being threatened with either of these enforcement actions. Before COVID-19, the shelters in the City were at capacity, people had no available shelter, and threats of prosecution of homeless individuals continued to escalate. I have seen homeless people ticketed for excess

property, camping, and loitering. Police constantly issue citations to people who cannot avoid these offenses when they live on the streets.

8. Since the coronavirus pandemic, we experienced a short respite from enforcement until last Thursday, June 18. The police came out in full force doing move along orders, coupled with City workers and their trash trucks.

9. In the Tenderloin, some people were offered hotel rooms but were provided no information about where they would go or for how long. People were confused. The paramedics and HOT were informing people that they had to limit their belongings to two trash bags. Police officers and DPW were on the scene, and I think that increased the pressure on people to make decisions rapidly and move quickly. I did not hear any inquiry by the police officers or the City workers about what these homeless people would need in order to successfully move somewhere else, such as disability appropriate housing for physical or mental health disabilities. It was very clear that by the end of the process that the block had to be cleared, and no one would be able to remain there. They put barricades up.

10. There has been confusion every day, and it seemed like the City was making up the procedure as it went along.

11. I have been working around the clock to help since the recent surge of enforcement. The police officers and the City workers do not understand how to work with individuals who have been severely traumatized, have health concerns, or cannot abruptly leave where they are living. Often times, the people I help have on-going health needs, including treatment and other health related services within a few blocks of where they live, including sidewalks or other unhoused sites. If these people are forced to move to a location that is outside of the area served by their existing providers, their services will be discontinued and any progress the person has achieved, will stop and often times the person experiences lapses in care.

12. On June 18th, I witnessed the criminal enforcement and lack of appropriate placement for a homeless gentleman. The gentleman was agitated. The police officer who

approached him first threatened him with a criminal misdemeanor if the man did not move to the directed safe sleeping spot.

13. He was not offered a hotel room. I recorded the interaction because I wanted to document the City's failed promises of protecting the rights of homeless individuals. Here is the link to the video: https://youtu.be/8mQEQ2gvMF4. At the bottom right of the video, you can click on the "cc" box to view the video with closed captioning. Attached as Exhibit A is a transcript of the video as provided by the closed captioning feature of youtube.com.

14. This particular video was taken in the Castro because the City is increasing enforcement in many areas of the City in the last few days, not just the Tenderloin. However, this interaction is representative of interactions that I have witnessed previously in the Tenderloin.

15. The police officers threatened the gentleman and at minute 2:10, the man explains that he does not feel safe at the safe sleeping site. The police officers do not offer any other place to stay even though the gentleman said he did not feel safe. The police officers do not ask him why he does not feel safe or ask if he has disabilities and needs alternative shelter options. In the video, the officer states that he is carrying out this enforcement and that it is okay because of a court agreement. You can hear that comment by the officer at minute 2:30.

16. The Director of Healthy Streets Operation Center (HSOC), Jeff Kositsky was standing right there during this whole interaction. He did not step in or try to stop what was happening. He came over to me after the interaction, and said that it was tough to watch. As a result, the man ended up being identified as vulnerable and placed in a hotel. While I was relieved to learn that this man was eventually appropriately placed, I'm discouraged by the confusion over the City's policies. Even if the people at the top of HSOC or other agencies are well meaning, enforcement and placement are not being implemented uniformly on the ground. I or someone else for the Coalition on Homelessness is not always present. These concerns do not always come to the attention of the Director of the program and those people are not being placed in hotel rooms. Instead they are threatened with a misdemeanor or moved along, without being assessed for an appropriate placement.

***Hastings College of the Law v. City and County of San Francisco;*** **Case No. 4:20-cv-3033-JST**
**DECLARATION OF KELLEY CUTLER ISO PROPOSED INTERVENORS' REPLY ISO MOTION FOR INTERVENTION**
**3**

17. I have witnessed these types of interactions, but many of the interactions go unrecorded, and I can't always bring them to the attention of the Director of the agency.

18. The parties in this case are just obsessed with the number of tents on the street. They are currently clearing specific blocks where there are a lot of tents. Folks are getting into hotels or a sanctioned encampment, but there are a limited number of spaces available. The whole goal of the settlement seems to be to reduce tents in the Tenderloin, but what the parties in the case don't seem to acknowledge in the settlement agreement is that the number of tents isn't the issue and shouldn't be the focus, it's the *people* in the tents and the lack of resources. If the City continues to focus on tent counts and getting rid of tents when there aren't enough alternatives, then it will be saying it wants people to have to sleep hard on the ground with no protection, during a global pandemic.

19. I am very concerned that the constitutional rights of the homeless individuals will be violated. These are just some examples of the lack of protection of homeless people's rights since the City started its mass campaign to just clear people from the streets of the Tenderloin as agreed upon by the people in the lawsuit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. Executed on June 24, 2020 in San Francisco, California.

Kelley Cutler

**EXHIBIT A**

Below is the transcribed closed captioning made available through youtube.com.

00:03
[Music]
00:15
[Music]
00:19
yes you are
00:20
that's exactly what's gonna happen all
00:23
these things belong to somebody
00:25
they're at work and if they're that work
00:26
where do they supposed to they can't get
00:28
off of work to come and take this move
00:29
their stuff candy okay so you let me
00:31
speak or not well I'm saying it loud
00:32
enough for everybody to hear so that way
00:34
these people understand and you need you
00:37
won't you won't accept anything else so
00:40
I'm gonna pack up all their stuff no I
00:44
will pack up all their stuff for them
00:45
you know movie I'm talking about you and
00:47
your answer might insult Adair okay I
00:57
understand what's going on but you're
00:59
not going to play listen again you're
01:02
not contemplating what I'm saying I'm
01:04
saying these people that work they can't
01:05
move their stuff so you're gonna take
01:07
their stuff and throw it away how does a
01:08
nice yes you just did you stand you can
01:10
arrest me for the rest we are not going

*Hastings College of the Law v. City and County of San Francisco;* **Case No. 4:20-cv-3033-JST**
**DECLARATION OF KELLEY CUTLER ISO PROPOSED INTERVENORS' REPLY ISO MOTION FOR INTERVENTION**
**5**

01:12
to so I'm asking you you're gonna arrest
01:17
me for going to some place for a
01:18
misdemeanor retire for nothing because
01:21
because I'm homeless
01:24
should be against the law you're not
01:30
saying anything so I'm not saying
01:32
because I'm letting you talk you're
01:33
saying the exact same thing over and
01:34
over again I have I've stopped for
01:38
minutes okay
01:49
sorry about that sir
01:55
they offered you a village spot yes or
01:57
no you know they said I could go here
01:59
they said I didn't have to move they
02:02
said I didn't have to move I don't feel
02:06
safe at the village spot okay I feel
02:08
safe here and I don't feel safe there so
02:15
you're gonna arrest me for not feeling
02:16
safe they're not let me talk again okay
02:19
please explain okay if there's a village
02:22
spot for you right and you don't go the
02:25
whole purpose of you being out here is
02:27
because dirty clothes it the mayor of
02:29
the city say hey you know what we want
02:30
to help you guys so we let you be
02:32
however by law the judges and the court
02:35
has said you know what you cannot move
02:36
them unless you have a spot for them

02:37
okay either hotel or a village spot a
02:40
safe site there's a spot available for
02:43
you right but I understand all that I
02:45
don't feel safe there about that do you
02:50
understand that I understand okay well
02:52
you're saying it's that's a safe spot
02:54
that's not a safe spot
02:57
it's go thank you nice this is we're not
04:01
gonna be so supportive a safe sleeping
04:03
sites if it's gonna be used and
04:04
threatened with misdemeanors for and and
04:06
the CDC recommendations are saying not
04:09
to be moving people and not like forcing
04:11
them into a camp if he doesn't feel safe
04:14
there
04:15
it's what misdemeanors are gonna get 640
04:17
70 for illegal lodging during a global
04:19
pandemic yeah no I understand that and
04:42
your sanity us personally us as a person
04:44
yeah because I'm a cop Yeah right what
04:49
you want to make everybody happy and
04:50
it's sometimes no I understand that
04:52
so yeah yelling at us right yeah okay
05:04
adequate and a professional so that
05:06
they're choosing it once we find them
05:07
shelter but that wasn't that that's
05:09
that's the wrong do that right there is
05:12
is not appropriate for everyone I'm

***Hastings College of the Law v. City and County of San Francisco;*** **Case No. 4:20-cv-3033-JST**
**DECLARATION OF KELLEY CUTLER ISO PROPOSED INTERVENORS' REPLY ISO MOTION FOR INTERVENTION**
**7**

05:15
saying let me let me ask you just one
05:17
question there's simple questions in
05:18
sentences the judges the city every bus
05:21
it is they're not following the CDC
05:23
guidelines they're not following their
05:25
own Department Public Health guidelines
05:26
I've got it in my bag
05:28
I'm trying make the points yeah they're
05:31
they're homeless Dana shelter right
05:33
that's okay we get it
05:34
however when the city finds them a place
05:38
whether it be a hotel a safe sleeping
05:39
side of villages you being offered a
05:41
hotel they should be saying one or the
05:43
other what about a hotel I don't think
05:47
I've hotel right now that was a sickness
05:49
like what my building has security okay
05:52
that's a system I've been there I've
05:53
been to all of them okay I've been all
05:55
of them on the local almost Coordinating
05:56
Board I'm with the Coalition on
05:58
homelessness I totally understand the
06:00
issues yeah see this we're trying to
06:02
find the most place where they can abide
06:04
by six foot they have to deaf there is a
06:06
smart dog yeah right there for the
06:08
openness of them so but he's saying he
06:10
doesn't feel safe there can't just let

***Hastings College of the Law v. City and County of San Francisco;* Case No. 4:20-cv-3033-JST**
**DECLARATION OF KELLEY CUTLER ISO PROPOSED INTERVENORS' REPLY ISO MOTION FOR INTERVENTION**
**8**

06:12
him do what they want
06:13
there's still laws on the book I
06:14
understand that so what you tell me if
06:16
you are a police officer would you do
06:18
what would you do what would you do with
06:20
that gentleman does I hear my kids up on
06:22
them
06:22
I understand the issues English and
06:25
assure but also right now
06:27
right now what what we're we're also
06:28
dealing with within the city okay you
06:31
know how hard it is to get anyone any
06:32
sources right now I know you know I do
06:34
seven year old one-legged man wheelchair
06:37
but what would you do in my position I
06:38
went I just want to know that would you
06:40
part of it part of it I would actually
06:42
push back when it comes to the city when
06:44
they're given orders because I know the
06:45
orders better that they're handed down
06:46
to yeah that's the thing listeners which
06:48
is the fingers no I know but I know it's
06:50
coming it's coming from it's coming from
06:52
higher-ups I know that it's following
06:54
the orders and that's what

***Hastings College of the Law v. City and County of San Francisco;*** **Case No. 4:20-cv-3033-JST**
**DECLARATION OF KELLEY CUTLER ISO PROPOSED INTERVENORS' REPLY ISO MOTION FOR INTERVENTION**
**9**