1
2
3
4
5
6
7
8
9
10
11
12
13

United States District Court
Northern District of California

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HASTINGS COLLEGE OF THE LAW, et al.,

Plaintiffs,

v.

CITY AND COUNTY OF SAN FRANCISCO,

Defendant.

Case No. 20-cv-03033-JST

**ORDER GRANTING MOTION TO INTERVENE**

Re: ECF No. 43

Before the Court is Hospitality House's, the Coalition on Homelessness's, and Faithful Fools's motion to intervene as plaintiffs.  ECF No. 43.  The Court will grant the motion.

## I.      BACKGROUND

The "Tenderloin" is an approximately 50-city-block neighborhood in downtown San Francisco.  ECF No. 1 ¶ 20.  "The Tenderloin is a culturally diverse community comprised of seniors, persons with disabilities, people of color, immigrants (documented and undocumented), individuals with low incomes, LGBTQ people, and families with children."  *Id.* ¶ 2.  "At present, more than 20,000 people are permanent residents of the Tenderloin, including 3,000 children."  *Id.* ¶ 26.  "The Tenderloin's residents consist primarily of low-income and working class individuals, senior citizens, disabled people, and families with children."  *Id.*

"On March 16, 2020, in response to the COVID-19 pandemic, Mayor London Breed directed San Francisco businesses to close and issued a citywide shelter-in-place order."  *Id.* ¶ 52.  Since the City enacted the emergency shelter-in-place ordinance, Tenderloin residents and business owners report that they have "witnessed a drastic change in the conditions of the streets and sidewalks of the Tenderloin."  *Id.* ¶¶ 43, 46, 48-50.  Because the homeless population in the

1    Tenderloin has no place in which to shelter, "[s]idewalks in the Tenderloin are now packed with

2    tents, some of which contain as many as six individuals." *Id.* ¶¶ 30, 52.  Moreover, "[t]he

3    pandemic has caused a devastating increase in unemployment, in San Francisco and throughout

4    the state and country," which has caused an increase in the homeless population in the Tenderloin.

5    *Id.* ¶ 54.

6         On May 4, 2020, Hastings College of Law ("Hastings"), Tenderloin Merchant and

7    Property Owners (the "TMA"),[1] and several Tenderloin business owners and residents

8    (collectively, "Plaintiffs") filed this action against the City and County of San Francisco (the

9    "City").  *Id.* ¶¶ 13-19.  Plaintiffs allege that "[t]he City's acts and omissions . . . that allow the

10   Tenderloin to serve as the City's repository for its homeless population . . . have created dire

11   consequences for the Tenderloin's residents and businesses, including Plaintiffs." *Id.* ¶ 58.  In

12   particular, they allege that the City's acts and omissions have caused "(a) an increased risk of

13   infection of COVID-19; (b) interference with [Plaintiffs'] property rights; (c) loss of their

14   business, educational, and other opportunities; (d) interference with their California constitutional

15   right to pursue happiness; (e) interference with their Federal Due Process rights; and

16   (f) interference with their Federal Equal Protection rights." *Id.*

17        "To address the urgent, dangerous and unacceptable conditions in the Tenderloin caused

18   by the confluence of the COVD-19 emergency and the City's longstanding homelessness crisis,

19   Plaintiffs and the City" engaged in eight settlement sessions during May and June in an attempt

20   "to find solutions that will improve the living conditions of both housed and unhoused residents of

21   the Tenderloin."  ECF No. 63 at 2.  On June 9, 2020, during these settlement negotiations, three

22   non-profit advocacy organizations moved to intervene in this action.  ECF No. 43.  These

23   organizations – Hospitality House, the Coalition on Homelessness, and Faithful Fools

24   (collectively, "Proposed Intervenors") – seek to intervene in this action "to ensure that unsheltered

25   Tenderloin residents have a voice in this lawsuit and that their legal interests are fully protected."

26   *Id.* at 7.

27

28

---

[1] The TMA "is an association of owners of businesses in the Tenderloin."  ECF No. 1 ¶ 16.

United States District Court
Northern District of California

1    On June 12, 2020, Plaintiffs and the City filed a proposed Stipulated Injunction, "in which

2 the City agreed to provide hotel rooms or safer sleeping locations for the occupants of 70% of the

3 tents currently on the sidewalks of the Tenderloin." ECF No. 63 at 2; ECF No. 51 at 5-9

4 (Stipulated Injunction). Thereafter, pursuant to Court order, Proposed Intervenors filed a

5 supplemental brief stating what effect, if any, the parties' settlement has on their motion to

6 intervene. ECF No. 59. On June 22, 2020, Plaintiffs and the City filed statements of non-

7 opposition to the motion to intervene. ECF Nos. 63, 64. Proposed Intervenors filed a reply on

8 June 24, 2020. ECF No. 66.

9 **II.     JURISDICTION**

10    This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

11 **III.    LEGAL STANDARD**

12    Federal Rule of Civil Procedure 24(a)(2) provides for intervention as a matter of right

13 where the potential intervenor "claims an interest relating to the property or transaction that is the

14 subject of the action, and is so situated that disposing of the action may as a practical matter

15 impair or impede the movant's ability to protect its interest, unless existing parties adequately

16 represent that interest." The Ninth Circuit has summarized the requirements for intervention as of

17 right under Rule 24(a)(2) as follows:

> (1) [T]he [applicant's] motion must be timely; (2) the applicant must
> have a "significantly protectable" interest relating to the property or
> transaction which is the subject of the action; (3) the applicant must
> be so situated that the disposition of the action may as a practical
> matter impair or impede its ability to protect that interest; and (4) the
> applicant's interest must be inadequately represented by the parties to
> the action.

22 *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (quoting

23 *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006)). Proposed

24 intervenors must satisfy all four criteria, and "[f]ailure to satisfy any one of the requirements is

25 fatal to the application." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir.

26 2009). In evaluating motions to intervene, "courts are guided primarily by practical and equitable

27 considerations, and the requirements for intervention are broadly interpreted in favor of

28 intervention." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). "Courts are

United States District Court
Northern District of California

3

1    to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed

2    complaint or answer in intervention, and declarations supporting the motion as true absent sham,

3    frivolity or other objections."  *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th

4    Cir. 2001).

5    **IV.    DISCUSSION**

6          **A.    Motion to Intervene**

7          Proposed Intervenors argue that they are entitled to intervene as a matter of right because:

8    (1) their motion was filed approximately one month after Plaintiffs filed their complaint and prior

9    to Defendant's filing of its initial responsive pleading, (2) "they have unhoused persons on their

10   staff and boards and directly provide services to homeless individuals," (3) "[t]hose experiencing

11   homelessness in the Tenderloin would most directly bear the effects of an adverse decision or

12   settlement adverse to their interests," and (4) "Plaintiffs' financial and other interests, are

13   materially different than those of unhoused persons."  ECF No. 43 at 15-16, 19-20.  The Court

14   agrees and finds that Proposed Intervenors are entitled to intervene in this action.

15         Proposed Intervenors filed the instant motion approximately one month after the initiation

16   of this action and shortly after Plaintiff Hastings refused to sign their proposed "pledge to protect

17   the rights of unhoused Tenderloin residents in the litigation."  *Id.* at 16; *U.S. v. Carpenter*, 298

18   F.3d 1122, 1124-25 (9th Cir. 2002) (finding intervention timely where the intervenors acted as

19   soon as they had notice that intervention may be necessary to protect their interests).  The Court

20   finds that the motion "comes at a reasonable stage in the proceedings, does not prejudice any other

21   party, did not involve a substantial delay, and is therefore timely for purposes of Rule 24."  *Estate

22   of Fuller v. Maxfield & Oberton Holdings, LLC*, No. 5:12-CV-02570-LHK, 2013 WL 2467931, at

23   *3 (N.D. Cal. June 7, 2013).  While the parties "take[] no position on the Motion for Intervention,"

24   the City has expressed concerns that the motion is untimely under Ninth Circuit authority.  ECF

25   No. 63 at 2-3; ECF No. 64 at 2.  In particular, the City cites *Orange County v. Air California*, 799

26   F.2d 535 (9th Cir. 1986) and *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For

27   Us, Inc.*, 62 F.3d 1217 (9th Cir. 1995) for the proposition that a motion to intervene is untimely

28   after the original parties have reached a settlement agreement.  ECF No. 63 at 2-3.  In *Orange*

United States District Court
Northern District of California

4

*County* and *Empire Blue Cross*, the settling parties engaged in lengthy litigation, and the proposed intervenor delayed filing a motion to intervene despite being aware of the litigation and/or settlement agreement. *Orange County*, 799 F.2d at 537-38 (denying motion to intervene where the existing parties had engaged in "five years of protracted litigation," the agreement "had been proceeded by extensive and well-publicized negotiations," and the motion to intervene was filed a month after the proposed intervenor knew a settlement had been reached); *Empire Blue Cross*, 62 F.3d at 1218, 1221 (denying motion to intervene where the parties engaged in "very lengthy discovery" prior to settling and the proposed intervenor "laid back purposefully and sought to save itself monetary contributions to the cost of discovery and [then] unfairly [sought] to get the advantage of that discovery" by intervening in the action). By contrast, Proposed Intervenors filed their motion approximately a month after Plaintiffs filed their complaint, before the City filed any responsive pleading, and before the parties reached an agreement. *See* ECF Nos. 43, 51. Proposed Intervenors neither unduly delayed their intervention motion nor "laid back purposefully, hoping to freeload upon the massive amounts of time . . . the other parties expended in pursuing" an agreement. *Empire Blue Cross*, 62 F.3d at 1220. Thus, the parties' settlement agreement does not render the motion to intervene untimely.

Proposed Intervenors have also "demonstrated a substantial interest in this litigation that is not adequately represented by the existing parties, and that is threatened by" any decision or settlement that fails to take account of the rights and interests of unsheltered Tenderloin residents. *California v. Bureau of Land Mgmt.*, Nos. 18-cv-00521-HSG, 18-cv-00524-HSG, 2018 WL 3439453, at *8 (N.D. Cal. July 17, 2018); ECF No. 43 at 19 ("Those experiencing homelessness in the Tenderloin would most directly bear the effects of an adverse decision or settlement adverse to their interests" because "Tenderloin residents are the underlying subjects of Plaintiffs' suit."). Moreover, the Court notes that the parties do not oppose Proposed Intervenors' substantive rationales for intervention. *See California v. Bureau of Land Mgmt.*, 2018 WL 3439453, at *8. The City agrees that "the Proposed Intervenors have a long history of providing services to homeless persons in San Francisco" and "welcomes the opportunity to work with the Proposed Intervenors to implement the Stipulated Injunction in a way that addresses their concerns." ECF

No. 63.  In analogous circumstances, other courts in this district have found that applicants "made a reasonable showing to satisfy the four-part test for granting intervention as of right."  *Shin v. Washington Mutual Bank, F.A.*, 18-cv-02143-YGR, 2018 WL 3392138, at *4 (N.D. Cal. July 12, 2018); *see Cytokinetics, Inc. v. Pharm-Olam Int'l, Ltd.*, No. C 14-05256 JSW, 2015 WL 13036925, at *1-2 (N.D. Cal. July 1, 2015) (granting unopposed motion to intervene under Rule 24(a)); *Carson v. Seaspan Corp.*, No. 19-cv-01551-JSC, 2019 WL 3254126, at *2 (N.D. Cal. July 19, 2019) (same); *Reilly v. MediaNews Group, Inc.*, No. C 06-04332 SI, 2006 WL 2092629, at *1-2 (N.D. Cal. July 27, 2006) (same).

### B.      Entry of Stipulated Injunction

Proposed Intervenors "ask that this Court require all parties to return to negotiation" so that Proposed Intervenors may "modify the agreement" and "ensure that a settlement of this litigation is drafted and implemented in a way that better protects unhoused people's rights."  ECF No. 66 at 2, 8.  The Court denies this request.

Proposed Intervenors express concerns that the parties' Stipulated Injunction "does not include adequate plans, procedures, or protections for unhoused residents," and, therefore, may be implemented using methods which "result in the unconstitutional violations of unhoused persons' rights."  ECF No. 59 at 7-8.  They also contend that "the Stipulated Injunction can be amended and strengthened to protect the rights of unhoused people to achieve the mutual goal of 'improving living conditions in the Tenderloin neighborhood, and of making the streets and sidewalks clear and safe for the use of persons in the Tenderloin, including residents, the unhoused, visitors, employees, employers, shoppers, and persons with disabilities' while ensuring that implementation of the settlement does not result in the unconstitutional violations of unhoused persons' rights."  ECF No. 59 at 7 (quoting ECF No. 51 at 5).  However, Proposed Intervenors do not identify any provision of the Stipulated Injunction that is unlawful or would violate the rights of unhoused persons.  Nor do they indicate that no agreement at all – the condition in which the parties would find themselves if the Court granted Proposed Intervenors' request – would be preferable to the Stipulated Injunction, which commits the City "to provide hotel rooms or safer sleeping locations for the occupants of 70% of the tents currently on the sidewalks of the

United States District Court
Northern District of California

Tenderloin."  ECF No. 63 at 2; ECF No. 51 at 8.

Given the "urgent, dangerous and unprecedented conditions" that the Stipulated Injunction seeks to improve, the Court will not freeze the status quo or delay the agreement between the original parties to the lawsuit to accommodate the intervenors.  ECF No. 63 at 2.  They will be free to attempt to modify or improve upon the original parties' settlement by negotiation or motion.  And, as recent events make clear, there are yet additional parties whose interests are at stake in the Tenderloin and who are affected by "the confluence of the COVD-19 emergency and the City's longstanding homelessness crisis."  *Id.*; *see* Alaina Lancaster, *Another Lawsuit Targets San Francisco Over 'Insufferable' Conditions in the Tenderloin Neighborhood*, The Recorder, June 26, 2020.  They too will wish to be heard.  And with each proposed alteration to the original parties' agreement comes "the possibility that modification [will] 'unravel' the original settlement."  *Empire Blue Cross*, 62 F.3d at 1220 (denying motion to intervene where intervention "would be jeopardizing a settlement, to the potential prejudice of all the parties concerned in the underlying action").  Accordingly, the Court denies the Proposed Intervenors' request to delay it approval of the Stipulated Injunction.

## CONCLUSION

For the foregoing reasons, the court grants Hospitality House's, the Coalition on Homelessness's, and Faithful Fools's motion to intervene and directs them to file their Complaint in Intervention within seven days of the issuance of this order.

**IT IS SO ORDERED.**

Dated:  June 30, 2020

_____
JON S. TIGAR
United States District Judge

7