# EXHIBIT B

JS-CAND 44 (Rev. 06/19)

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ERIN LEIGH MAIER, JASON REINDORF, NICK MEDINA, MONICA CALMET, SOUTH OF MARKET BUSINESS ASSOCIATION, 570 JESSIE LLC, SIERREC LLC dba MONTESACRO PINSERIA ROMANA, MEGALI SOUVLA INC. dba SOUVLA, DESIGN LLEE WHOA, LLC

## DEFENDANTS

CITY AND COUNTY OF SAN FRANCISCO, a municipal entity

**(b)** County of Residence of First Listed Plaintiff    San Francisco
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    San Francisco
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Zacks, Freedman & Patterson PC; 235 Montgomery St., Ste. 400, San Francisco, CA 94104; 415-956-8100; Andrew M. Zacks (SBN 147794); Sarah M.K. Hoffman (SBN 308568)

Attorneys *(If Known)*

City Attorney of San Francisco; City Hall, Room 234, 1 Dr. Carlton B. Goodlett Pl., San Francisco, CA 94102; 415-554-4700

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 | U.S. Government Plaintiff |
| ☐ 2 | U.S. Government Defendant |
| ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | | | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | **LABOR** | **PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayment Of Veteran's Benefits | 330 Federal Employers' Liability | 710 Fair Labor Standards Act | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | 720 Labor/Management Relations | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | 740 Railway Labor Act | 835 Patent—Abbreviated New Drug Application | 460 Deportation |
| | 350 Motor Vehicle | 751 Family and Medical Leave Act | 840 Trademark | 470 Racketeer Influenced & Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 355 Motor Vehicle Product Liability | 790 Other Labor Litigation | **SOCIAL SECURITY** | 480 Consumer Credit |
| 160 Stockholders' Suits | 360 Other Personal Injury | 791 Employee Retirement Income Security Act | 861 HIA (1395ff) | 485 Telephone Consumer Protection Act |
| 190 Other Contract | 362 Personal Injury -Medical Malpractice | **IMMIGRATION** | 862 Black Lung (923) | 490 Cable/Sat TV |
| 195 Contract Product Liability | **CIVIL RIGHTS** | 462 Naturalization Application | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/Exchange |
| 196 Franchise | 440 Other Civil Rights | 465 Other Immigration Actions | 864 SSID Title XVI | 890 Other Statutory Actions |
| **REAL PROPERTY** | 441 Voting | | 865 RSI (405(g)) | 891 Agricultural Acts |
| 210 Land Condemnation | 442 Employment | | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 220 Foreclosure | 443 Housing/Accommodations | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 445 Amer. w/Disabilities–Employment | | 871 IRS–Third Party 26 USC § 7609 | 896 Arbitration |
| 240 Torts to Land | 446 Amer. w/Disabilities–Other | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 448 Education | | | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | **PRISONER PETITIONS** | | | |
| | **HABEAS CORPUS** | | | |
| | 463 Alien Detainee | | | |
| | 510 Motions to Vacate Sentence | | | |
| | 530 General | | | |
| | 535 Death Penalty | | | |
| | **OTHER** | | | |
| | 540 Mandamus & Other | | | |
| | 550 Civil Rights | | | |
| | 555 Prison Condition | | | |
| | 560 Civil Detainee– Conditions of Confinement | | | |

**PERSONAL INJURY**
365 Personal Injury – Product Liability
367 Health Care/Pharmaceutical Personal Injury Product Liability
368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
370 Other Fraud
371 Truth in Lending
380 Other Personal Property Damage
385 Property Damage Product Liability

## V. ORIGIN *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court |
| ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened |
| ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation–Transfer |
| ☐ 8 Multidistrict Litigation–Direct File | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC § 1983 (see attached)

Brief description of cause:
Violation of Due Process/Takings (see attached)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, Fed. R. Civ. P.    DEMAND $     CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S), IF ANY *(See instructions)*:

JUDGE       DOCKET NUMBER

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)

*(Place an "X" in One Box Only)*    ☒ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE    ☐ EUREKA-MCKINLEYVILLE

DATE   07/16/2020      SIGNATURE OF ATTORNEY OF RECORD

## Causes of Action

1. Public Nuisance (Civil Code § 3479)
2. Private Nuisance (Civil Code § 3501)
3. Negligence
4. Violation of Due Process / Takings (42 U.S.C. § 1983; U.S. Const. Amend. V/XIV)
5. Inverse Condemnation (Cal. Const. art. I § 19)
6. Violation of Equal Protection (42 U.S.C. § 1983; U.S. Cons. Amend. V/XIV)
7. Violation of Title II of the Americans with Disabilities Act (42 U.S.C. §§ 12131 *et seq.*)
8. Violation of Section 504 of the Rehabilitation Act (29 U.S.C. §§ 794 *et seq.*)
9. Violation of California Disabled Persons Act (Civil Code § 54 *et seq.*)
10. Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

| | | |
|---|---|---|
| ERIN LEIGH MAHER, JASON REINDORP, NICK MEDINA, MONICA CALMET, SOUTH OF MARKET BUSINESS ASSOCIATION, 570 JESSIE LLC, SIERREC LLC dba MONTESACRO PINSERIA ROMANA, MEGALI SOUVLA INC. dba SOUVLA, DESIGN LIKE WHOA, LLC | ) ) ) ) ) ) | |
| *Plaintiff(s)* | ) ) | |
| v. | ) ) | Civil Action No.  4:20-cv-04771-KAW |
| CITY AND COUNTY OF SAN FRANCISCO, a municipal entity | ) ) ) | |
| *Defendant(s)* | ) ) ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  City and County of San Francisco, 1 Dr. Carlton B. Goodlett Pl., Room 200, San Francisco, CA 94102

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Andrew M. Zacks (SBN 147794)
Sarah M.K. Hoffman (SBN 308568)
Zacks, Freedman & Patterson, PC
235 Montgomery Street, Suite 400
San Francisco, CA 94104

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Susan Y. Soong

Date:  7/20/2020

_____
*Signature of Clerk or Deputy Clerk*

1  ANDREW M. ZACKS (SBN 147794)
2  SARAH M. K. HOFFMAN (SBN 308568)
   ZACKS, FREEDMAN & PATTERSON, PC
3  235 Montgomery Street, Suite 400
   San Francisco, CA 94104
4  Tel: (415) 956-8100
   Fax: (415) 288-9755
5  az@zfplaw.com
   sarah@zfplaw.com
6
   Attorneys for Plaintiffs:
7  Erin Leigh Maher, Jason Reindorp, Nick
   Medina, Monica Calmet, South Of Market
8  Business Association, 570 Jessie LLC,
   Sierrec LLC dba Montesacro Pinseria
9  Romana, Megali Souvla Inc. dba Souvla,
   Design Like Whoa, LLC
10

ZACKS, FREEDMAN & PATTERSON, PC
235 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94104

11          IN THE UNITED STATES DISTRICT COURT

12         FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

14 | ERIN LEIGH MAHER, JASON REINDORP,     Case Number:
   | NICK MEDINA, MONICA CALMET,
15 | SOUTH OF MARKET BUSINESS              **COMPLAINT FOR:**
   | ASSOCIATION, 570 JESSIE LLC, SIERREC
16 | LLC dba MONTESACRO PINSERIA           1. **Public Nuisance (Civil Code § 3479)**
   | ROMANA, MEGALI SOUVLA INC. dba        2. **Private Nuisance (Civil Code § 3501)**
17 | SOUVLA, DESIGN LIKE WHOA, LLC,        3. **Negligence**
   |                                       4. **Violation of Due Process / Takings**
18 |          Plaintiffs,                     **(42 U.S.C. § 1983; U.S. Const.**
   |                                          **Amend. V/XIV)**
19 |                                       5. **Inverse Condemnation (Cal. Const.**
   |     vs.                                  **art. I § 19)**
20 |                                       6. **Violation of Equal Protection (42**
   | CITY AND COUNTY OF SAN                   **U.S.C. § 1983; U.S. Const. Amend.**
21 | FRANCISCO, a municipal entity,           **V/XIV)**
   |                                       7. **Violation of Title II of the Americans**
22 |          Defendant.                      **with Disabilities Act (42 U.S.C. §§**
   |                                          **12131 *et seq.*)**
23 |                                       8. **Violation of Section 504 of the**
   |                                          **Rehabilitation Act (29 U.S.C. §§ 794**
24 |                                          ***et seq.*)**
   |                                       9. **Violation of California Disabled**
25 |                                          **Persons Act (Civil Code § 54 *et seq.*)**
   |                                      10. **Municipal Liability for**
26 |                                          **Unconstitutional Custom or Policy**
   |                                          **(42 U.S.C. § 1983)**
27
28 |                                       **DEMAND FOR JURY TRIAL**

                              COMPLAINT
                                 -1-

ZACKS, FREEDMAN & PATTERSON, PC
235 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94104

## I.  INTRODUCTION

1.      San Francisco's mid-Market neighborhood is in a state of crisis, precipitated by the City's pattern and practice of willful neglect.

2.      The mid-Market neighborhood is a culturally vibrant community, home to a diverse population, including immigrants, senior citizens, people with disabilities, and SRO residents. It is also a hub for technology and the arts, with a number of tech companies, theaters, and cultural resources located in mid-Market.

3.      However, mid-Market has also become home to tent encampments, rampant criminal activity, and antisocial behavior that should not be tolerated in any civilized society. Trash, drug paraphernalia, and human waste has been allowed to accumulate on the streets and sidewalks and left to fester.

4.      The City has created and perpetuated these conditions through its pattern and practice of tacitly treating mid-Market as a "containment zone" that bears the brunt of San Francisco's homelessness issues, and its failure to take action to address these issues.

5.      The City has displayed a consistent attitude of apathy and inaction in this neighborhood for decades. However, the situation has been exacerbated by the COVID-19 crisis. Permanent tent encampments have proliferated throughout mid-Market and the City has refused to take action to ensure the safety of the homeless population and residents of this neighborhood. Residents are unable to leave their homes without being threatened and put in danger of serious bodily harm. Small businesses that have operated in the mid-Market neighborhood for many years are facing a steep decline in customers and revenue due to the conditions in this area.

6.      Plaintiffs make the factual allegations and assert the legal claims herein in an effort to compel the City and County of San Francisco (the "City") to comply with its legal duties.

## II.  JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 42 U.S.C. § 1983; the Americans with Disabilities Act, 42 U.S.C. §§ 12131 et seq. (the "ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 et seq. ("Section 504"); and the Fifth and

ZACKS, FREEDMAN & PATTERSON, PC
235 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94104

Fourteenth Amendments of the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1367, 2201 & 2202.

8.  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, as they arise from the same case or controversy as Plaintiffs' federal claims.

9.  Plaintiffs seek only equitable and injunctive relief for their state law claims. Accordingly, Plaintiffs need not submit a compensation claim with any local public entity pursuant to the California Tort Claims Act, Cal. Gov't Code §§ 810 *et seq.*

10.  Venue is proper pursuant to 28 U.S.C. § 1391(a) in that all defendants reside in this judicial district and the events giving rise to the claims occurred in the Northern District of California.

### III.  INTRADISTRICT ASSIGNMENT

11.  A substantial part of the events or omissions which give rise to the claims asserted in this Complaint occurred in the City and County of San Francisco, and a substantial part of the property that is the subject of the action is located in the City and County of San Francisco. (Civil L.R. 3-2(c).)

### IV.  PARTIES

12.  Plaintiff ERIN LEIGH MAHER ("Maher") is an individual and a resident at the apartment building located at 570 Jessie Street. Maher uses a mobility scooter and is a protected individual under both the Americans with Disabilities Act and the California Disabled Persons Act.

13.  Plaintiff JASON REINDORP ("Reindorp") is an individual and a resident at the apartment building located at 570 Jessie Street.

14.  Plaintiff NICK MEDINA ("Medina") is an individual and a resident at the apartment building located at 570 Jessie Street.

15.  Plaintiff MONICA CALMET ("Calmet") is an individual and a resident at the apartment building located at 570 Jessie Street.

16.  Plaintiff SOUTH OF MARKET BUSINESS ASSOCIATION ("SomBa") is

nonprofit organization working to promote South of Market as a vital place to live, work, visit and do business. SomBa is located at 615 Seventh Street and mobilizes businesses, residents, community groups and government representatives to identify priorities, challenges and solutions to maintain a strong and vibrant community.

17.     Plaintiff 570 JESSIE LLC ("570 Jessie") is a California limited liability company doing business in San Francisco and the owner of the 47-unit apartment building located at 570 Jessie Street, San Francisco. 570 Jessie developed the building in 2017

18.     Plaintiff SIERREC LLC dba MONTESACRO PINSERIA ROMANA ("Montesacro") owns and operates Montesacro Pinseria Romana, a beloved locally-owned neighborhood restaurant that has been in operation since 2015 at 510 Stevenson St, San Francisco.

19.     Plaintiff MEGALI SOUVLA INC., dba Souvla ("Souvla") is a California S-Corporation doing business in San Francisco. Souvla owns and operates multiple locations of its modern Greek restaurant concept in neighborhoods throughout the city. Souvla has been in operation since 2014, and in addition to its restaurants, owns and operates Odos Souvla LLC (dba Souvla), its combination commissary/catering kitchen and delivery-only restaurant located at 532 Jessie Street. This specific location has been in operation since the start of 2016.

20.     Plaintiff DESIGN LIKE WHOA, LLC ("DLW") is a California limited liability company doing business in San Francisco. DLW is a women-led local business that sells customized apparel and accessories from its storefront at 531 Jessie Street.

21.     Defendant CITY AND COUNTY OF SAN FRANCISCO ("Defendant" or "City") is an incorporated municipality of the State of California.

## V.     STATEMENT OF FACTS

### A.  The Mid-Market Neighborhood

22.     The mid-Market neighborhood of San Francisco ("mid-Market") is an area bordered by Market Street, Fifth Street, Mission Street, and Van Ness Avenue, adjacent to the San Francisco Civic Center. This is an economically and culturally diverse neighborhood, home to both SRO hotels and new apartment buildings, to both large tech companies and small

ZACKS, FREEDMAN & PATTERSON, PC
235 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94104

ZACKS, FREEDMAN & PATTERSON, PC
235 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94104

neighborhood businesses. The mid-Market neighborhood is also the heart of San Francisco's arts scene, home to a number of theaters.

23.     Following the 1906 earthquake, mid-Market developed as a vibrant retail and theater hub, lit up with neon signs and bustling with activity.

24.     However, from the 1960s, the conditions and quality of life at mid-Market experienced a steep decline. The 1967 Market Street Beautification Act required the marquees and neon signs to be removed, and BART construction drove traffic and patronage away from mid-Market. Struggling stores and theaters closed down and were replaced with liquor stores, check-cashing companies, and fast food outlets. The proliferation of boarded-up storefronts and disused buildings blighted mid-Market and attracted transients and criminal activity. By 1985, local journalist Herb Caen dubbed mid-Market "le grande pissoir" due to its filthy sidewalks and "miserable streets."

25.     The decline of mid-Market has continued to the present day. In 2011 the City offered a tax break to incentives businesses to move to the area and boost its economic development. The City has also encouraged the development of apartment buildings in the area. However, the City's promotion of new development in mid-Market has not been matched with resources to promote safe and sanitary conditions in this neighborhood. Crime, refuse, and other undesirable conditions persist in mid-Market:



26. The city has abdicated its responsibility to provide housing, sanitation services, and healthcare for its most vulnerable residents.

**B. The Current Crisis**

27. While homelessness and crime have always been issues in mid-Market, by early 2020 these problems reached crisis levels. The situation in mid-Market has become exponentially worse and is causing serious harm to the health and welfare of all concerned.

28. Tent encampments, bicycle chop-shops, drug dealers, and illegal street vendors have proliferated on the sidewalks throughout mid-Market. For example, the City has allowed the 500 block of Jessie Street (at Sixth Street), to become a permanent encampment, with 12-16 tents completely blocking both sides of the sidewalk at all times. The occupants of the tents openly inject drugs, leave drug paraphernalia and litter strewn over the sidewalk, and defecate in public:





ZACKS, FREEDMAN & PATTERSON, PC
235 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94104

29.    Similarly, the City has allowed a permanent encampment of more than 30 tents on the 400 block of Stevenson Street, creating similar trash, drug, and sanitation problems:



30.    The behavior in this area is not limited to "quality of life" crimes; violence routinely breaks out, both among the campers and against local residents and workers, and bicycle chop shops are being openly operated. A resident of Jessie Street was bitten by a roving dog owned by one of the campers. On another occasion, several residents were threatened by a mentally unstable man wielding a hammer.

31.    Of equal concern, the tents and other personal effects have completely blocked access to public sidewalks so that pedestrians are forced to walk on the road. This presents a particular burden for citizens with disabilities, who cannot easily move out of the way of traffic:



ZACKS, FREEDMAN & PATTERSON, PC
235 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94104

32.     The squalid conditions in the mid-Market area are dangerous and completely unacceptable. Residents are afraid to leave their homes and employees do not feel safe coming to work. Small businesses that are already struggling due to COVID-19 are facing a precipitous drop in customers due to the homeless encampments on their doorstep.

33.     The City has allowed these conditions to persist with impunity. Residents' and business owners' complaints to the City have been met with canned email responses or simply ignored. Although the City has erected a "24/7 Pit Stop" (public toilet and needle disposal facility) on Jessie and Sixth Street, this has only made matters worse, by attracting more tent occupants and, on at least one occasion, leaking toxic liquid onto the street, where people are currently forced to walk due to the sidewalk obstructions.

34.     The City has in effect used mid-Market as a "containment zone" for homeless residents. While emergency calls and 311 complaints are responded to in wealthier, more rarified neighborhoods, the City's approach to the same conduct in mid-Market displays a pattern of apathy and neglect. 311 requests are routinely closed out despite nothing being done to address the complaint, and beat cops ignore criminal activity occurring right in front of them. Street and sidewalk cleaning occur infrequently, so that refuse and human bodily fluids are allowed to accumulate and fester on the public right-of-way, attracting rodents and other pests:



35.     With the recent COVID-19 pandemic, mid-Market is experiencing an immediate and dire public health crisis. The homeless population of mid-Market is unable to "shelter-in-

ZACKS, FREEDMAN & PATTERSON, PC
235 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94104

place" or practice social distancing, and is exempt from the shelter-in-place order. They do not have access to sanitation services and do not wear face coverings. However, the City has not found shelter for the homeless population or conducted wide-spread COVID-19 testing among this vulnerable group. The City's policy of neglect has put the homeless population and the residents and workers of mid-Market at greater risk of contracting COVID-19.

36.     On June 26, 2020, counsel for the Plaintiffs wrote to the City, informing it of these issues and demanding that the City take prompt remedial action. No appreciable changes occurred, and the conditions at mid-Market have, if anything, deteriorated further.

## C. Impact on Plaintiffs

37.     The Plaintiffs, as residents and business owners in mid-Market, are acutely impacted by the current conditions.

38.     Plaintiff Maher has lived at 570 Jessie Street since early 2018. Maher has a disability and uses a mobility scooter to get around. She currently cannot use the sidewalk to get to her home due to the tents that permanently block the sidewalk. Instead, she must drive her mobility scooter on the road in order to leave or enter her place of residence. As a single woman with a disability, Maher has concerns for her safety whenever she leaves her home, due to the conditions in mid-Market. Maher has been verbally abused by the occupants of the tent encampment and loiterers on Jessie Street, and has witnessed drug use, fights, and robberies occurring in broad daylight. On one occasion, a truck servicing the Pit Stop on Sixth and Jessie Street blocked the intersection, so that Maher was trapped on Jessie Street (which is not a through road), because both the road and sidewalks were obstructed.

39.     Reindorp has lived at 570 Jessie Street since January 2018. Reindorp has observed a drastic deterioration of the conditions in front of 570 Jessie Street over the past few months, with the number of tents and homeless occupants increasing dramatically. Reindorp has witnessed people injecting drugs in plain sight and fighting on the sidewalk. The tent occupants play loud music and have verbal altercations at all hours. Reindorp has been verbally abused and called a "faggot" while walking to his apartment. On one occasion he was advised by a Pit Stop attendant to avoid the "toxic" liquid leaking onto the street from the Pit Stop.

Reindorp has filed multiple 311 complaints and written to City agencies regarding the conditions at mid-Market. These complaints have been routinely ignored and summarily closed. Reindorp has observed a further deterioration of the conditions at Jessie Street since June 2020.

40. Medina has lived at 570 Jessie Street since 2019. His quality of life has been negatively impacted by the conditions at mid-Market. Medina has observed a significant reduction of the municipal services provided to this area, including but not limited to the cessation of regular street-cleaning. Medina has also filed multiple 311 complaints and has been similarly ignored by City agencies.

41. Calmet has lived at 570 Jessie Street since 2017 and has also witnessed a drastic deterioration of the conditions at mid-Market. As a woman living alone, she is concerned about her safety when she leaves her apartment or walks her dog in the area due to the threat of violence or bodily injury and the verbal harassment she faces. Indeed, one of her neighbors at 570 Jessie Street moved out because he was bitten by a roving dog owned by one of the tent occupants. On one occasion when walking her dog - on the road due to the sidewalk being blocked - Calmet was warned by a Pit Stop attendant to be careful of the liquid leaking from the Pit Stop because it was toxic. Calmet has made multiple complaints to City agencies and has also been ignored.

42. SomBa and its members have been significantly impacted by the conditions at mid-Market. Like many small businesses in San Francisco, SomBa's members have experienced a dramatic drop in customers and revenue due to the COVID-19 crisis. This has been exacerbated by the crime and other antisocial behavior on their doorsteps. The tent encampments and chop shops block physical access to local businesses, and the antisocial activity in this area discourages customers and employees from visiting them.

43. 570 Jessie developed the 47-unit apartment building at 570 Jessie Street in 2017. The City supported this project, and 570 Jessie reasonably relied on the City to provide safe and sanitary conditions in its vicinity and fulfill its municipal functions, including by undertaking regular street cleaning and keeping the sidewalk clear. As a result of the City's

ZACKS, FREEDMAN & PATTERSON, PC
235 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94104

ZACKS, FREEDMAN & PATTERSON, PC
235 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94104

failure to do so, residents have moved out of 570 Jessie Street and have specifically cited the homelessness and crime in the area as their reason for doing so.

44. Montesacro is a beloved neighborhood restaurant in mid-Market. After being forced to close due to the COVID-19 crisis, Montesacro recently reopened for pick-up orders and outdoor dining. Although Montesacro had a promising reopening thanks to its loyal customer base, the flow of customers precipitously dropped off due to the conditions on Montesacro's doorstep. Gianluca Legrottaglie, the proprietor of Montesacro, has witnessed a dramatic change in the conditions near Montesacro over the recent months. Tents block access to the restaurant, drugs are openly dealt and consumed outside its door, and parked vehicles are regularly broken into. On a number of occasions, Montesacro's garbage bins have been stolen and emptied onto the street. Both 911 calls and 311 requests are routinely ignored. If the conditions at mid-Market persist, Montesacro may be forced to close or relocate.

45. Souvla operates its combination commissary/catering kitchen and delivery-only restaurant located at 532 Jessie Street. This location has been in operation since the start of 2016. All of Souvla's locations were closed for the first 115 days of Shelter-In-Place due to COVID-19 and its various safety concerns. In Souvla's phased re-opening process, the commissary kitchen has become more essential than ever so that the company can centralize its operations and limit the amount of staff in their restaurants for safety and social distancing purposes. This kitchen is now the hub of the operation and an essential source of revenue for Souvla. However, the homeless encampments that line Jessie Street obstruct employees and delivery drivers and vehicles from accessing the premises. Souvla's employees, many of whom are women, are reluctant to return to work, specifically saying that they are scared to come to and/or leave work due to the dangerous conditions on its doorstep. The founder and CEO of Souvla has written to the Mayor's Office, the Director of Public Works, the District Supervisor and the local Police Captain outlining the street conditions and their impact on re-opening his restaurants. He was met with generic responses and excuses. If the street conditions on Jessie Street and in mid-Market persist, Souvla may be forced to close or relocate this kitchen after investing over $500,000 in improvements, and exit its lease of the premises.

ZACKS, FREEDMAN & PATTERSON, PC
235 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94104

46.     DLW is a female-led local business that sells customized apparel and accessories from 531 Jessie Street. DLW employees and customers are fearful for their safety and health due to the unsanitary, intimidating, and illegal behaviors of the occupants of the tent encampments. Furthermore, DLW has been unable to fully reopen due to these conditions. If the conditions at mid-Market persist, DLW may be forced to close or relocate.

### VI.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Public Nuisance**
**Civil Code § 3479**
**(All Plaintiffs against Defendant)**

47.     Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1 through 46 of this Complaint.

48.     Civil Code § 3479 defines a "nuisance" as:

> [a]nything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway. . . .

49.     Physical interference with the enjoyment of land is a nuisance, as is a condition which is a danger to the neighborhood. (*Buchanan v. Los Angeles County Flood Control Dist.* (1976) 56 Cal.App.3d 757, 768.) A public nuisance is the substantial and unreasonable interference with a public right. (*San Diego Gas & Elec. Co. v. Superior Court* (1996) 13 Cal. 4th 893, 938 .) A public entity is not immune from liability for nuisance. (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 936-937.

50.     In failing to maintain the public property under its control or to enforce local and state laws prohibiting nuisance activity, the City has permitted and facilitated a public nuisance. The conditions at mid-Market include the open and unregulated "illegal sale of controlled substances," are "indecent or offensive to the senses," and obstruct "the free use of property, so as to interfere with the comfortable enjoyment of life or property." Moreover, the City has

1    allowed and perpetuated the unlawful obstruction of the "free passage or use" of public

2    sidewalks.

3        51.    All Plaintiffs have had their enjoyment of their life and property substantially and

4    unreasonably interfered with, and had their free passage of public sidewalks obstructed. Each

5    Plaintiff has suffered and continues to be threatened with respect to his, her, or its health and

6    welfare, due to the persistent threat of disease and exposure to waste, trash, human bodily

7    fluids, and criminal behavior.

8        52.    Each Plaintiff has suffered specific injury in his, her, or its own right, and has not

9    consented to the City's conduct. The damage suffered by each Plaintiff is different in kind and

10   not merely in degree from that suffered by other members of the public. (*Koll-Irvine Center*

11   *Property Owners Assn. v. County of Orange* (1994) 24 Cal.App.4th 1036, 1040.)

**SECOND CLAIM FOR RELIEF**
**Private Nuisance**
**Civil Code §§ 3501 *et seq.***
**(All Plaintiffs against Defendant)**

15       53.    Plaintiffs incorporate herein by reference the allegations contained in Paragraphs

16   1 through 52 of this Complaint.

17       54.    Private nuisance is a civil wrong based on disturbance of rights in land. (*Venuto*

18   *v. Owens–Corning Fiberglas Corp.,* (1971) 22 Cal.App.3d 116, 124.)

19       55.    Each Plaintiff owns, leases, occupies, or otherwise controls all or a portion of the

20   home or business identified.  As outlined above, the City's actions and inactions have created

21   conditions and permitted conditions to exist that are harmful to the health, indecent and offensive

22   to the senses, obstruct the free passage of public sidewalks, and permits the open and illegal sale

23   of controlled substances.

24       56.    The City's conduct has been and is intentional and unreasonable, or unintentional

25   but negligent or reckless.  Alternatively, the condition permitted to exist was the result of

26   abnormally dangerous activity that substantially interfered with each Plaintiff's use or enjoyment

27   of his, her, or its land that would reasonably annoy or disturb an ordinary person.

28       57.    No Plaintiff consented to the City's conduct; each was harmed; the City's conduct

ZACKS, FREEDMAN & PATTERSON, PC
235 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94104

was a substantial factor in causing the harm; and the seriousness of the harm outweighs any public benefit of such conduct (which is none).

## THIRD CLAIM FOR RELIEF
### Negligence
### (All Plaintiffs against Defendant)

58.     Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1 through 57 of this Complaint.

59.     The City, through its agents and employees, has the sole right and responsibility to control, maintain, and keep the public right of way safe and sanitary, including sidewalks, roads, and public buildings, and to enact and enforce laws to preserve public health and safety. The City has a duty to maintain public areas in a manner that does not unreasonably interfere with the free passage or use by Plaintiffs and that addresses and alleviates conditions that are harmful to health or indecent or offensive to the senses, that create a fire hazard, or that permit crime to occur unabated including the illegal sale of controlled substances.

60.     In particular, the public is entitled to the free and unobstructed use of the entire streets and sidewalks. . . ." (*Vanderhurst v. Tholcke*, 113 Cal. 147, 152 (1896).) The City has a legal duty to keep its "communities' streets open and available for movement of people and property, the primary purpose to which the streets are dedicated." (*Schneider v. State of New Jersey, Town of Irvington*, 308 U.S. 147, 160 (1939).)

61.     The City, and its agents and employees, has breached its duty to all San Francisco residents, including and specifically to the Plaintiffs. The City's breach of its duties has caused each Plaintiff to suffer injury.

## FOURTH CLAIM FOR RELIEF
### Violation of Due Process / Takings
### 42 U.S.C. § 1983; U.S. Const. Amend. V/XIV
### (All Plaintiffs against Defendant)

62.     Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1 through 61 of this Complaint.

63.     The City has derogated from its legal duties to provide municipal services, safe and secure living conditions, and unimpeded access to public sidewalks in mid-Market. The City

ZACKS, FREEDMAN & PATTERSON, PC
235 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94104

ZACKS, FREEDMAN & PATTERSON, PC
235 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94104

has adopted a policy and practice of using the mid-Market area as a containment zone, allowing homeless residents and encampments to become concentrated in this neighborhood, while clearing such activity from more affluent neighborhoods. This practice and policy does not substantially advance a legitimate government interest.

64.     The City has denied its residents the due process of law and effected an uncompensated taking of property interests, in violation of the Fifth and Fourteenth Amendments of the United States Constitution.  The wretched conditions in mid-Market and immediate threat of COVID-19 infection endanger the health and lives of its residents and has deprived property owners and occupants of their liberty and use of their property, including the economically viable use of their properties.

65.     Moreover, by the acts and omissions described above, the City has affirmatively created or increased the risk that Plaintiffs would be exposed to dangerous conditions, which placed Plaintiffs specifically at risk, and Plaintiffs were harmed as a result. The City knew or should have known that its acts or omissions endangered Plaintiffs.

66.     Upon information and belief, this was done with deliberate intent and/or reckless disregard of Plaintiffs' rights.  Plaintiffs seek injunctive relief and the cost of attorneys' fees in bringing this action.

### FIFTH CLAIM FOR RELIEF
**Inverse Condemnation**
**Cal. Const. art. I § 19**
**(All Plaintiffs against Defendant)**

67.     Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1 through 66 of this Complaint.

68.     California Constitution, article I § 19(a) provides that "private property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner."

69.     That is, the California Constitution forbids state actors from *damaging* a property interest. By effectively designating and using mid-Market as a containment zone for homeless residents, the City has substantially burdened, limited, and/or damaged the Plaintiffs' property and business so as to constitute a regulatory taking, without providing compensation.

ZACKS, FREEDMAN & PATTERSON, PC
235 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94104

## SIXTH CLAIM FOR RELIEF
### Violation of Equal Protection
### 42 U.S.C. § 1983; U.S. Const. Amend. V/XIV
### (All Plaintiffs against Defendant)

70.     Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1 through 69 of this Complaint.

71.     By enforcing the law in some areas of San Francisco and declining to enforce the law in the mid-Market neighborhood, the City has arbitrarily and irrationally determined which neighborhoods must accept encampments on their doorsteps and bear the burden of homelessness and crime in San Francisco. The City has permitted such activity to be concentrated in ethnically diverse and less wealthy neighborhoods such as mid-Market, rather than in more affluent areas of the City. This violates the City's own procedures and both state and federal law, imposing a disproportionate burden on the mid-Market community, including Plaintiffs.

72.     Upon information and belief, the City acted with deliberate intent and/or reckless disregard of Plaintiffs' rights.  Plaintiffs seek injunctive relief and the cost of attorneys' fees in bringing this action.

## SEVENTH CLAIM FOR RELIEF
### Violation of Title II of the Americans with Disabilities Act
### 42 U.S.C. §§ 12131 *et seq.*
### (Plaintiff MAHER against Defendant)

73.     Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1 through 72 of this Complaint.

74.     The ADA compels public agencies such as the City to afford people with disabilities "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ." (42 U.S.C. § 12182(a).)

75.     Specifically, the ADA requires that "[a] public entity . . . maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part."

76.     A sidewalk is a facility that is subject to the access requirements of the ADA. The City must maintain public sidewalks so that people with mobility issues, including

ZACKS, FREEDMAN & PATTERSON, PC
235 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94104

wheelchair and mobility scooter users, can access the sidewalk. The Ninth Circuit has held that "maintaining public sidewalks is a normal function of a city" and therefore "maintaining their accessibility for individuals with disabilities therefore falls within the scope of Title II." (*Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002).)

77.    In order to comply with the ADA, a sidewalk must be at least 36 inches in width. (36 C.F.R. § 1191, app. D, § 403.5.1 ("the clear width of walking surfaces shall be 36 inches (915 mm) minimum.")

78.    It is not sufficient for the City to simply provide "accessible routes" if they are not maintained in a manner that enables individuals with disabilities to use them. If the sidewalk is obstructed so that it is neither "accessible to" nor "usable by" individuals with disabilities, it is non-compliant.

79.    Throughout the mid-Market neighborhood, the City has failed to maintain sidewalks so that they are readily accessible to and usable by persons with disabilities.

80.    This denial of access and discrimination is a direct result of the City's policy and practice of permitting encampments and tents to be established on public sidewalks in this area, and failing to adopt or implement procedures for clearing obstructions from the public right-of-way.

81.    Plaintiff Maher has been directly and proximately impacted by the aforementioned acts, including the City's deliberate disregard for Maher's federally-guaranteed rights under the ADA. Maher *cannot access her home via the sidewalk*. Instead, she is forced to navigate her mobility scooter on the road, putting her at risk of bodily injury or death every time she leaves her home. Maher has been subjected to indignity and emotional distress and has been deprived of her independence and access to public establishments.

82.    Maher is entitled to recover attorneys' fees and costs incurred in connection with this action pursuant to 42 U.S.C. § 12133 and 29 U.S.C. § 794a(b).

**EIGHTH CLAIM FOR RELIEF**
**Violation of Section 504 of the Rehabilitation Act**
**29 U.S.C. §§ 794 *et seq.***
**(Plaintiff MAHER against Defendant)**

83. Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1 through 82 of this Complaint.

84. Section 504 of the Rehabilitation Act of 1973 provides:

> [N]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

85. Plaintiff Maher is qualified to participate in the services, programs, or activities that are provided to individuals in the City. The City receives federal financial assistance and is thus subject to Section 504.

86. Upon information and belief, the City and its agents and employees have violated and continue to violate Section 504 of the Rehabilitation Act by excluding Maher from participation in, denying her the benefits of, and subjecting her to discrimination regarding the benefits and services involved in utilizing public sidewalks based solely on her disability.

87. Upon information and belief, said discrimination occurred with deliberate intent and/or reckless disregard of Maher's rights.

88. Maher seeks injunctive relief and the cost of attorneys' fees in bringing this action.

### NINTH CLAIM FOR RELIEF
**Violation of California Disabled Persons Act**
**Civil Code § 54 *et seq.***
**(All Plaintiffs against Defendant)**

89. Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1 through 88 of this Complaint.

90. California's Disabled Persons Act mirrors the ADA and requires that equal and full access to sidewalks be provided to individuals with disabilities. Specifically, the Act provides that:

> Individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, . . . , public facilities, and other public places.

91. As outlined above, Plaintiff Maher is an individual with disabilities as defined by the Disabled Persons Act, who is being denied full and free use of public sidewalks, by the

ZACKS, FREEDMAN & PATTERSON, PC
235 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94104

policies and practices of the City, including its failure regularly to maintain its sidewalks in a manner that permits mobility scooter users "full and free use" thereof.

**TENTH CLAIM FOR RELIEF**
**Municipal Liability for Unconstitutional Custom or Policy**
**42 U.S.C. § 1983**
**(All Plaintiffs against Defendant)**

92.     Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1 through 91 of this Complaint.

93.     On information and belief, the City and its agents and employees, with deliberate indifference, and conscious and reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiffs, engaged in the unconstitutional acts and omissions set forth above, all pursuant to policy, procedure, or customs held by the City.

94.     The acts and omissions of the City were known or should have been known to the policy makers responsible for that agency and occurred with deliberate indifference to the constitutional violations set forth above, and/or to the strong likelihood that constitutional rights would be violated as a result of its customs and/or policies.

95.     Plaintiffs seek injunctive relief, and the cost of attorneys' fees in bringing this action.

WHEREFORE, Plaintiff demands judgment against the City for the following:

**For All Claims:**

1.     Injunctive/equitable relief in a manner to be determined by law;

2.     For an award of attorneys' fees and costs as allowed by law; and

3.     For any other relief that the Court deems just and proper.

Dated: July 16, 2020

ZACKS, FREEDMAN & PATTERSON, PC

By:     Andrew M. Zacks
        Attorneys for Plaintiffs

ZACKS, FREEDMAN & PATTERSON, PC
235 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94104

1

## DEMAND FOR JURY TRIAL

2

3        Plaintiff demands trial by jury for all claims as stated herein.

4

5

6    Dated: July 16, 2020                    ZACKS, FREEDMAN & PATTERSON, PC

7

8                                            By:    Andrew M. Zacks
                                                    Attorneys for Plaintiffs
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ZACKS, FREEDMAN & PATTERSON, PC
235 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94104

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

### STANDING ORDER FOR
### MAGISTRATE JUDGE KANDIS A. WESTMORE
*(Revised May 9, 2019)*

Parties shall comply with the procedures in the Federal Rules of Civil or Criminal Procedure, the Northern District of California's Local Rules and General Orders, and this standing order, all of which are available at *http://www.cand.uscourts.gov*. The parties' failure to comply with any of the rules or orders may be grounds for monetary sanctions, dismissal, entry of judgment, or other appropriate sanctions.

## CALENDAR DATES AND SCHEDULING

1.  Criminal motions are heard on the first and third Thursdays of the month at 1:30 p.m., or during the regular criminal calendar when Judge Westmore is on criminal duty. Civil motions are also heard on the first and third Thursdays of the month at 1:30 p.m. Civil case management and status conferences are heard on Tuesdays at 1:30 p.m. Civil pretrial conferences are heard on Wednesdays at 2:00 p.m.

2.  Parties should notice motions (other than discovery motions) pursuant to Civil Local Rule 7-2. Parties need not reserve a hearing date, but should confirm the Court's availability at *http://www.cand.uscourts.gov/CEO/cfd.aspx?71BU*. The Court may reset hearing dates as the Court's calendar requires. For scheduling questions, please call Judge Westmore's courtroom deputy at (510) 637-3525.

## ALL REQUESTS MUST BE IN WRITING

3.  The Court does not grant relief over the telephone. All requests for relief must be filed in accordance with the local rules. Do not call the courtroom deputy or chambers to seek relief or legal advice, including information pertaining to the local rules.

## CONSENT CASES

4.  In civil cases randomly assigned to Judge Westmore for all purposes, the parties should file their written consent to the assignment of a United States Magistrate Judge for all purposes or their written declination of consent *as soon as possible*, and in no event later than the deadlines specified in Civil L.R. 73-1(a).

## CHAMBERS COPIES AND PROPOSED ORDERS

5.  Under Civil L.R. 5-1 and 5-2, parties must lodge an extra paper copy of any filing, with the exception of the written consent/declination to the assignment of a United States

Magistrate Judge. All chambers copies must be marked "Chambers Copy" and submitted to the Oakland Clerk's Office in an envelope clearly marked "Magistrate Judge Kandis Westmore," and include the case number on the envelope. All chambers copies of e-filed documents must include the running header created by the ECF System on each page. All exhibits must be clearly marked and tabbed. E-filed documents must be cited in all other documents as follows: Dkt. No.__ at ___. Chambers copies must be mailed or delivered to chambers according to the deadlines set forth in Civil Local Rule 5-1(e)(7).

      6.      Any party filing a dispositive motion shall email a copy of the motion in Word format (.doc or .docx) to *kawpo@cand.uscourts.gov*. This is in addition to the lodged, chambers copy.

      7.      Any stipulation or proposed order in a case subject to e-filing should be submitted by email to *kawpo@cand.uscourts.gov* in Word format (.doc or .docx) on the same day the document is e-filed. This address should only be used for this stated purpose unless otherwise directed by the Court.

## CIVIL CASE MANAGEMENT

      8.      No later than seven (7) days prior to the any scheduled case management or status conference, the parties shall file a Joint Case Management Statement in full compliance with the Northern District of California's General Standing Order for civil cases entitled "Contents of Joint Case Management Statement." The parties shall appropriately caption their filing to read: "Initial Joint Case Management Statement" or "Further Joint Case Management Statement" as appropriate.

      9.      Parties may not stipulate to continue a case management, status, or pretrial conference without Court approval. Each party shall be represented **in person** at the Case Management Conference by lead trial counsel (or a party if *pro se*), who shall be (1) prepared to address all of the matters referred to in the Northern District of California's General Standing Order on Joint Case Management Statements; and (2) have full authority to enter stipulations and make admissions pursuant to that order. Permission for a party to attend by telephone may be granted, in the Court's discretion, upon written request made at least two (2) weeks in advance of the hearing if the Court determines that good cause exists to excuse personal attendance, and that personal attendance is not needed in order to have an effective conference. (*See* Judge Westmore's Procedures for Telephonic Appearances.) The facts establishing good cause must be set forth in the request. Parties requesting permission to attend by telephone should consult the Court's Procedures for Telephonic Appearances, available at

*http://cand.uscourts.gov/kaworders*, including filing a proposed order that comports with the attached example.

10.     All motion hearings, case management, status and pretrial conferences are audio recorded.  They are not reported by a court reporter unless counsel requests a court reporter in advance.

## CIVIL DISCOVERY

11.     Parties shall propound disclosures and discovery in accordance with Federal Rules of Civil Procedure 26 through 37 and the corresponding Civil Local Rules for the Northern District of California.  A copy of the Local Rules is available at the Clerk's Office and at the Court's website *(http://www.cand.uscourts.gov)*.  No exceptions to the limitations established in the Federal and Local Rules shall be permitted except pursuant to stipulation of the parties or order of the Court.

12.     <u>Protective Orders:</u> If parties believe a protective order is necessary, they shall, where practicable, use one of the model stipulated protective orders (available at *http://cand.uscourts.gov/stipprotectorder*).  Parties shall file one of the following with their proposed protective order: (a) a declaration stating that the proposed order is identical to one of the model orders except for the addition of case-identifying information or the elimination of language denoted as optional; (b) a declaration explaining each modification to the model order, along with a redline version comparing the proposed protective order with the model order; or (c) a declaration explaining why use of one of the model orders is not practicable.

13.     <u>Meet and confer requirement for discovery disputes.</u> As an initial matter, the parties must comply with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery (available at *http://cand.uscourts.gov/professional_conduct*).  Prior to filing any discovery-related motion, lead trial counsel for all parties shall meet and confer **in person or telephonically**, if an in-person conference is not feasible, regarding the discovery dispute(s) in an effort to resolve these matter(s).  After attempting other means to confer on the issue(s) (i.e. letter, phone call, e-mail), any party may demand such a meeting on ten (10) business days' notice.  The location of the meeting will alternate with the first location selected by counsel for Plaintiff, the second by counsel for Defendant, etc.  If unable to resolve all disputes through this procedure, the party seeking Court intervention may file an appropriate motion or joint letter (*see* ¶ 13 below).  Upon receipt of the filing, the Court may order the parties to further meet and confer if the nature of the dispute is such that it should be resolved without court intervention.

3

14.     <u>Discovery disputes between the parties must be addressed in a joint letter.</u>  After meeting and conferring as set forth in ¶ 12 above, the parties shall draft and file a jointly signed letter within five (5) business days of the lead trial counsels' meet and confer session that contains the following:

    (a)   A cover page with the case caption and an attestation that the parties met and conferred <u>in person or telephonically</u> prior to filing the letter, have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery prior to filing the joint letter, as well as the signature of both parties or counsel;

    (b)   A section which sets forth the unresolved dispute and any pertinent factual background; and

    (c)   With respect to each issue relating to the unresolved dispute, a detailed summary of each party's final substantive position and their final proposed compromise on each issue, including relevant legal authority.

The parties shall file a separate joint letter for each discovery dispute (i.e. if the parties have disputes regarding specific interrogatories and requests for production, they must file two letters).  The joint letter shall not exceed five (5) pages, excluding the cover page, without leave of Court, and may not be accompanied by exhibits or affidavits other than exact copies of interrogatories, requests for production of documents and/or responses, privilege logs, and relevant deposition testimony.  Any attachments shall not exceed 12 pages.  The joint letter must be e-filed under the Civil Events category of "Motions and Related Filings>Motions--General>Discovery Letter Brief."  The joint letter must be in the following format to ensure that the parties are addressing the same dispute, and are doing so in a manner that facilitates the Court's resolution:

**A.**    **Request for Production No. 7**

    [Summarize the issue and reproduce the request.]

<u>Defendant's Position</u>

    [Defendant's position outlining why Plaintiff's response is deficient and the relief requested.]

<u>Plaintiff's Position</u>

    [Plaintiff's rationale as to why he fully responded to the request, etc.]

**B.**    **Request for Production No. 12**

    [Summarize the issue and reproduce the request.]

Defendant's Position

      [Defendant's position outlining why Plaintiff's response is deficient and the relief requested.]

Plaintiff's Position

      [Plaintiff's rationale as to why he fully responded to the request, etc.]

This format should be used for each dispute, and the parties shall attach the propounded discovery and the applicable responses as exhibits to the joint discovery letter. All exhibits must be clearly marked and tabbed. Upon receipt of the joint letter, the Court will determine what future proceedings are necessary.

      15.    In responding to requests for documents and materials under Fed. R. Civ. P. 34, all parties shall affirmatively state, in a written response served on all other parties, the full extent to which they will produce materials and shall, promptly after the production, confirm in writing that they have produced *all* such materials so described that are locatable after a diligent search of *all* locations at which such materials might plausibly exist. It shall not be sufficient to object and/or to state that "responsive" materials will be or have been produced.

      16.    To the maximum extent feasible, all party files and records should be retained and produced in their original form and sequence, including file folders, and the originals should remain available for inspection by any counsel on reasonable notice.

      17.    In the rare event that the parties are unable to meet and confer as directed above, or a moving party is unable to obtain the opposing party's portion of a joint letter after the meet and confer session, the moving party shall file a written request for a telephonic conference on the docket for the purpose of enforcing the Court's meet and confer requirement, or for the Court to fashion an alternative procedure. The written request shall include a declaration which states any attempt to meet and confer and/or obtain the joint letter, the reasons for the inability to comply with the standing order, and (if possible) three dates and times at which all parties are available for a telephonic conference. The moving party may attach exhibits to the declaration, but the declaration and exhibits combined may not exceed seven pages. The Court will not excuse a party from the requisite in-person or telephonic meeting unless good cause is shown.

      18.    In emergencies during discovery events (such as depositions), any party may, after exhausting good faith attempts to resolve disputed issues, seek judicial intervention pursuant to Civil L.R. 37-1(b) by contacting the Court through the courtroom deputy. If the Court is unavailable, the discovery event shall proceed with objections noted for the record.

19.     No motion for sanctions may be filed until after the moving party has complied with the requirements of paragraphs 13-17 above.  Motions for sanctions shall be filed separately, pursuant to Federal Rule 37 and Civil Local Rules 7 and 37-3.

20.     In the event that a discovery hearing is ordered, the Court has found that it is most efficient and beneficial for counsel to appear *in person*.  This provides the opportunity, where appropriate, to engage counsel in resolving aspects of the discovery dispute while remaining available to rule on any disputes that counsel are not able to resolve.  For this reason, the Court expects counsel to appear in person.  Permission for a party to attend by telephone may be granted, in the Court's discretion, upon written request made at least two (2) weeks in advance of the hearing should the Court determine that good cause exists to excuse personal attendance and that personal attendance is not needed in order to have an effective discovery hearing.  The facts establishing good cause must be set forth in the request.  Parties requesting permission to attend by telephone should consult the Court's Procedures for Telephonic Appearances, available at *http://cand.uscourts.gov/kaworders.*

### Privilege Logs

21.     If a party withholds information that is responsive to a discovery request by claiming that it is privileged or otherwise protected from discovery, that party shall ***promptly*** prepare and provide a privilege log that is sufficiently detailed and informative for the opposing party to assess whether a document's designation as privileged is justified.  *See* Fed.R.Civ.P. 26(b)(5).  The privilege log shall set forth the privilege relied upon and specify separately for each document or for each category of similarly situated documents:

> (a) The title and description of the document, including number of pages or Bates-number range;
>
> (b) The subject matter addressed in the document;
>
> (c) The identity and position of its author(s);
>
> (d) The identity and position of all addressees and recipients;
>
> (e) The date the document was prepared and, if different, the date(s) on which it was sent to or shared with persons other than its author(s);
>
> (f) The steps taken to ensure the confidentiality of the communication, including affirmation that no unauthorized persons have received the communication; and
>
> (g) The specific basis for the claim that the document is privileged or protected. Failure to furnish this information promptly may be deemed a waiver of the privilege or protection.

## COMMUNICATIONS WITH THE COURT

22.     Pursuant to Civil Local Rule 11-4(c), with the exception of communication with the courtroom deputy regarding scheduling, no party may contact the Court *ex parte* without prior notice to the opposing party.  All communications or questions to the Court shall be presented in writing, properly filed, and include a certification that all parties were served a copy of the written communication.

## MOTION PRACTICE

23.     The failure of the opposing party to file a memorandum of points and authorities in opposition to any motion shall constitute consent to the granting of the motion.

24.     The Court sometimes rules on the papers, issuing a written order and vacating the hearing.  If a written request for oral argument is filed before a ruling, stating that a lawyer of four or fewer years out of law school will conduct the oral argument (or at least the lion's share), then the Court will hear oral argument, believing that young lawyers need more opportunities for appearances than they usually receive.

## MOTIONS TO FILE UNDER SEAL

25.     Any party seeking to file a document under seal must comply with Civil Local Rule 79-5.  The motion shall include a statement by the moving party that it has reviewed and complied with that rule.  If the sole basis for the motion is that the opposing party, or a non-party, has designated the document "confidential," the designating party shall file a declaration identifying the appropriate legal standard, i.e., the good cause standard or the compelling reasons standard, and demonstrating why the document at issue meets the applicable legal standard.  The declaration shall be filed by the deadline specified in Civil Local Rule 79-5(e)(1).

        IT IS SO ORDERED.

Dated:  May 9, 2019

KANDIS A. WESTMORE
United States Magistrate Judge

# STANDING ORDER FOR ALL JUDGES
## OF THE NORTHERN DISTRICT OF CALIFORNIA
### CONTENTS OF JOINT CASE MANAGEMENT STATEMENT

All judges of the Northern District of California require identical information in Joint Case Management Statements filed pursuant to Civil Local Rule 16-9. The parties must include the following information in their statement which, except in unusually complex cases, should not exceed ten pages:

1.  <u>Jurisdiction and Service</u>: The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.

2.  <u>Facts</u>: A brief chronology of the facts and a statement of the principal factual issues in dispute.

3.  <u>Legal Issues</u>: A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.

4.  <u>Motions</u>: All prior and pending motions, their current status, and any anticipated motions.

5.  <u>Amendment of Pleadings</u>: The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.

6.  <u>Evidence Preservation</u>: A brief report certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. *See ESI Guidelines 2.01 and 2.02, and Checklist for ESI Meet and Confer.*

7.  <u>Disclosures</u>: Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26, and a description of the disclosures made.

8.  <u>Discovery</u>: Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, a brief report on whether the parties have considered entering into a stipulated e-discovery order, a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f), and any identified discovery disputes.

9.  <u>Class Actions</u>: If a class action, a proposal for how and when the class will be certified, and whether all attorneys of record for the parties have reviewed the Procedural Guidance for Class Action Settlements.

10. <u>Related Cases</u>: Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.

11. <u>Relief</u>: All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.

*Effective November 1, 2018*

12.  <u>Settlement and ADR</u>: Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.

13.  <u>Consent to Magistrate Judge For All Purposes</u>: Whether **all** parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment. ___ Yes ___ No

14.  <u>Other References</u>: Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15.  <u>Narrowing of Issues</u>: Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.

16.  <u>Expedited Trial Procedure</u>: Whether this is the type of case that can be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A. If all parties agree, they shall instead of this Statement, file an executed Agreement for Expedited Trial and a Joint Expedited Case Management Statement, in accordance with General Order No. 64 Attachments B and D.

17.  <u>Scheduling</u>: Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.

18.  <u>Trial</u>: Whether the case will be tried to a jury or to the court and the expected length of the trial.

19.  <u>Disclosure of Non-party Interested Entities or Persons</u>: Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding. In any proposed class, collective, or representative action, the required disclosure includes any person or entity that is funding the prosecution of any claim or counterclaim.

20.  <u>Professional Conduct</u>: Whether all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

21.  Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.

# United States District Court
# Northern District of California

## ECF Registration Information

Electronic Case Filing (ECF or "e-filing") is mandatory for all civil cases in this court. Please refer to Civil Local Rule 5-1 for the Court's rules pertaining to electronic filing. Effective August 19, 2013, e-filing of initiating documents (complaints; notices of removal) is allowed, but is not mandatory; all other documents must be e-filed in civil cases.

Parties who are representing themselves <u>pro se</u> (without attorney representation) are <u>not</u> required to e-file and, in fact, may e-file only with the permission of the assigned judge.

<u>Please review and attend to the following important notes and tasks:</u>

- Serve this ECF Registration Information Handout on all parties in the case along with the complaint or removal notice and the other documents generated by the court upon filing.

- If not already registered, each attorney in the case must register to become an e-filer at cand.uscourts.gov/ECF. Your ECF registration is valid for life in this district; please do not register more than once.

<u>IMPORTANT NOTICE:</u> by signing and submitting to the court a request for an ECF user id and password, you consent to entry of your email address into the court's electronic service registry for electronic service on you of all e-filed papers, pursuant to rules 77 and 5(b)(2)(d) of the Federal Rules of Civil Procedure.

- If you are a party and do not have an attorney and would like to e-file in the case, please visit cand.uscourts.gov/ECF/proseregistration for instructions and information. Unless and until the assigned judge has given you permission to e-file, you are required to file and serve papers in hard copy (paper) form.

- Access dockets and documents using your PACER (Public Access to Court Electronic Records) account. If your firm already has a PACER account, please use that account. It is not necessary to have individual PACER accounts for each user in your office. To set up an account, visit: pacer.gov or call (800) 676-6856.

ECF interactive tutorials, instructions for e-filing and other information are available at: cand.uscourts.gov/ECF.

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | | |
|---|---|---|
| ERIN LEIGH MAHER et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   3:20-cv-04771-KAW |
| CITY AND COUNTY OF SAN FRANCISCO | ) | |
| *Defendant* | ) | |

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To:  City Attorney for the City and County of San Francisco

   *(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

**Why are you getting this?**

   A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

   This is not a summons, or an official notice from the court.  It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver.  To avoid these expenses, you must return the signed waiver within   30   days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent.  Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy.  You may keep the other copy.

**What happens next?**

   If you return the signed waiver, I will file it with the court.  The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

   If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you.  And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

   Please read the enclosed statement about the duty to avoid unnecessary expenses.

   I certify that this request is being sent to you on the date below.

Date:   07/20/2020

*Signature of the attorney or unrepresented party*

Sarah M.K. Hoffman
*Printed name*

Zacks, Freedman & Patterson PC
235 Montgomery Street, Suite 400
San Francisco, CA 94104
*Address*

az@zfplaw.com / sarah@zfplaw.com
*E-mail address*

415-956-8100
*Telephone number*

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | | |
|---|---|---|
| ERIN LEIGH MAHER et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   3:20-CV-04771-KAW |
| CITY AND COUNTY OF SAN FRANCISCO | ) | |
| *Defendant* | ) | |

## WAIVER OF THE SERVICE OF SUMMONS

To:   Andrew M. Zacks & Sarah M.K. Hoffman
     *(Name of the plaintiff's attorney or unrepresented plaintiff)*

     I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

     I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

     I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

     I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____07/20/2020_____, the date when this request was sent (or 90 days if it was sent outside the United States).  If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date:  _____

_____             _____
                                            *Signature of the attorney or unrepresented party*

_____             _____
*Printed name of party waiving service of summons*                  *Printed name*

                                              _____
                                              *Address*

                                            _____
                                           *E-mail address*

                                            _____
                                           *Telephone number*

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

     Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint.  A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

     "Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

     If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

     If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.  By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.



# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT OF CASE
### <u>TO A UNITED STATES MAGISTRATE JUDGE FOR TRIAL</u>

Pursuant to General Order 44, the Assignment Plan of the United States District Court for the Northern District of California, this case has been randomly assigned to a Magistrate Judge.

Pursuant to 28 U.S.C. § 636(c), with written consent of all parties, a magistrate judge may conduct all proceedings in a case, including all pretrial and trial proceedings, entry of judgment and post-trial motions. Appeal will be directly to the United States Court of Appeals for the Ninth Circuit.

Attached is a form to complete to indicate whether you consent to proceed before the assigned magistrate judge or decline to proceed before the assigned magistrate judge. This form is also available from the Court's website: cand.uscourts.gov/civilforms. You are free to withhold consent without adverse consequences. If any party declines, the case will be reassigned to a district judge.

If you are the plaintiff or removing party in this case, you must file your consent/declination form within 14 days of receipt of this notice. Each other party must file its consent/declination form within 14 days of appearing in the case.

The plaintiff or removing party must serve a copy of this notice upon all other parties to this action.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIN LEIGH MAHER, JASON REINDORP, NICK MEDINA, MONICA CALMET, SOUTH OF MARKET BUSINESS ASSOCIATION, 570 JESSIE LLC, SIERREC LLC dba MONTESACRO PINSERIA ROMANA, MEGALI SOUVLA INC. dba SOUVLA, DESIGN LIKE WHOA, LLC<br>Plaintiff(s)<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a municipal entity<br>Defendant(s). | Case No. 3:20-cv-04771-KAW<br><br>CONSENT OR DECLINATION TO MAGISTRATE JUDGE JURISDICTION |

**INSTRUCTIONS:** Please indicate below by checking **one** of the two boxes whether you (if you are the party) or the party you represent (if you are an attorney in the case) choose(s) to consent or decline magistrate judge jurisdiction in this matter. Sign this form below your selection.

☐ **Consent to Magistrate Judge Jurisdiction**

In accordance with the provisions of 28 U.S.C. § 636(c), I voluntarily **consent** to have a United States magistrate judge conduct all further proceedings in this case, including trial and entry of final judgment. I understand that appeal from the judgment shall be taken directly to the United States Court of Appeals for the Ninth Circuit.

**OR**

☐ **Decline Magistrate Judge Jurisdiction**

In accordance with the provisions of 28 U.S.C. § 636(c), I **decline** to have a United States magistrate judge conduct all further proceedings in this case and I hereby request that this case be reassigned to a United States district judge.

DATE: _____, 20___          NAME: _____

                                        COUNSEL FOR
                                        (OR "PRO SE"): _____


                                        _____
                                                    *Signature*