Exhibit C

1  LATHAM & WATKINS LLP
   Alfred C. Pfeiffer, Jr., SBN 120965
2  505 Montgomery Street, Ste 2000
   San Francisco, CA 94111
3  Telephone: (415) 391-0600
   al.pfeiffer@lw.com
4
   LAWYERS' COMMITTEE FOR CIVIL
5  RIGHTS OF THE SAN FRANCISCO BAY AREA
   Zal K. Shroff, MJP 804620, *pro hac vice*
6  131 Steuart Street, Ste. 400
   San Francisco, CA 94105
7  Telephone: (415) 543-9444
   zshroff@lccrsf.org
8
   ACLU FOUNDATION OF NORTHERN
9  CALIFORNIA
   John Thomas H. Do, SBN 285075
10 39 Drumm Street
   San Francisco, CA 94111
11 Telephone: (415) 293-6333
   jdo@aclunc.org
12
   *Attorneys for Plaintiffs Coalition on Homelessness,*
13 *Toro Castaño, Sarah Cronk, Joshua Donohoe,*
   *Molique Frank, David Martinez, Teresa Sandoval,*
14 *Nathaniel Vaughn*

15 *Additional Counsel Appear on Signature Page*

16                    **UNITED STATES DISTRICT COURT**

17                  **NORTHERN DISTRICT OF CALIFORNIA**

18                           **OAKLAND DIVISION**

19

20 COALITION ON HOMELESSNESS, et al.,     CASE NO. 4:22-cv-05502-DMR

21           Plaintiffs,                   **PLAINTIFFS' OPPOSITION TO
                                           DEFENDANTS' ADMINISTRATIVE
22     v.                                  MOTION FOR CLARIFICATION OF
                                           PRELIMINARY INJUNCTION ORDER,
23 CITY AND COUNTY OF SAN FRANCISCO,       AND IN THE ALTERNATIVE FOR
   et al.,                                 EXPEDITED BRIEFING**
24
             Defendants.                   **Judge:**        The Hon. Donna M. Ryu
25

26

27

28

## I.     INTRODUCTION

The Court's Preliminary Injunction Order needs no clarification.  It unambiguously determined that homeless individuals in San Francisco are involuntarily homeless because the shelter system is short thousands of beds, essentially full, and effectively closed.  These individuals have no practical access to appropriate shelter, and accordingly, the injunction protects them from enforcement and threats of enforcement for sitting, lying, and sleeping in public.

Defendants' "administrative" motion for clarification (Dkt. No. 70) is just an improper motion for reconsideration of the merits.  But Defendants cannot show any new or materially different facts or law since the Court's decision.  They were aware of the *Hastings* injunction at the time of the Preliminary Injunction briefing but chose not to raise any alleged conflict.

In any event, the stipulated injunction in *Hastings* presents no conflict with the Court's Order.  It only requires the City to "make all reasonable efforts" towards a "goal" of "reducing the number of tents" in the Tenderloin.  Aspirational "reasonable efforts" do not include violating the Constitution or a Court order.  The *Hastings* stipulation only suggests that the City pursue enforcement measures against individuals who refuse COVID-19 specific shelter "if necessary to comply with this stipulated injunction," without requiring enforcement of the specific laws that this Court has prohibited.  Nor can the City show that doing so would be "necessary" to fulfill the stipulated injunction.  For instance, under the Court's Order, the City may still enforce health and safety laws and provide services to promote street access.

Defendants also concede that they already "briefed and argued a narrower interpretation of *Martin* and *Johnson*" on which their motion relies. Mot. at 5.  That is dispositive.  The Court heard and rejected Defendants' position.  The Court found that homeless San Franciscans do not have practical access to appropriate shelter other than through enforcement—and often not even then.  Nothing has changed that fact as Defendants have not taken steps to provide voluntary access to the City's shelters and have continued their sweep operations notwithstanding the preliminary injunction.  *See* Dkt. No. 76.  Their motion should be denied.

## II.     ARGUMENT

### A.     Defendants' Motion Is An Improper Motion For Reconsideration.

1      The Court should deny Defendants' request for clarification or expedited briefing, as both

2   are procedurally defective and wrong on the merits.  As a threshold matter, because the motion

3   seeks "substantive, rather than administrative, relief" it is not a proper motion under Civil L. R. 7-

4   11.  *See Affonso v. Metropolitan Life Ins. Co.*, 2011 WL 4101264, at *1 (N.D. Cal. Sept. 8, 2011).

5      More fundamentally, the Court's Order needs no clarification.  It clearly prohibits

6   Defendants "from enforcing or threatening to enforce [the enumerated] laws and ordinances to

7   prohibit involuntarily homeless individuals from sitting, lying, or sleeping on public property."

8   Dkt. No. 65 at 50.  The only qualification is that this prohibition is in effect "as long as there are

9   more homeless individuals in San Francisco than there are shelter beds available."  *Id*.  There are

10  otherwise no exceptions.  Indeed, Defendants acknowledged that they would comply with this

11  reading of the Court's injunction unless the Court provides otherwise.  Lee Decl. ¶ 3.

12      Given the clarity of the Court's Order, Defendants' motion can only be seen as a request

13  for reconsideration.  But they have not sought leave to do so, nor can they establish the required

14  new, material difference in fact or law that would justify reconsideration.  *See* L.R. 7-9.  There is

15  no question Defendants knew of the *Hastings* injunction—cited on the very first page of their

16  opposition to the preliminary injunction—and cannot now justify reconsideration based on it.  Dkt.

17  No. 45 at 1.  Nor do Defendants point to any new controlling law; they concede that they already

18  argued for a "narrower interpretation of *Martin* and *Johnson*" in their opposition.[1]  Mot. at 5.  They

19  also concede that the Court specifically considered their arguments and still entered its Order.

20

---

21  [1] Defendants again point to the order in *Fund for Empowerment v. City of Phoenix*, No. 22-cv-
    02041 (D. Ariz. Dec. 16, 2022), but the Court already rejected Defendants' attempt to rely on it.
22  Dkt. No. 65 at 41.  Regardless, that order undermines Defendants' position as it similarly enjoins
    enforcement of the enumerated laws "as long as there are more unsheltered individuals in Phoenix
23  than there are shelter beds available" because "there is not enough shelter space for every
    unsheltered person to choose whether to sleep or camp outside."  Dkt. No. 57-1 at 15, 19.  This
24  decision and the Court's Order are consistent with other courts.  *See, e.g*, *Warren v. City of Chico*,
25  2021 WL 2894648, at *2 (E.D. Cal. July 8, 2021) ("This Circuit has previously held that
    ordinances such as this are not enforceable, unless there is enough practically available shelter
26  within the City for all unhoused individuals.");  *Blake v. City of Grants Pass*, 2020 WL 4209227,
    at *7 (D. Or. July 22, 2020) (municipalities cannot punish protecting oneself "from the elements"
27  where it "has far more homeless people than 'practically available' shelter beds"), *aff'd in part,
    vacated in part, remanded sub nom. Johnson v. City of Grants Pass*, 50 F.4th 787, 797 (9th Cir.
28  2022) (affirming in relevant part the district court's injunction).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

PLFS.' OPP. TO DEFS.' ADMIN.
MOT. FOR CLARIFICATION
CASE NO. 4:22-CV-05502-DMR

Mot. at 5; Dkt. No. 65 at 41-42.  In sum, Defendants offer no basis for a motion for reconsideration.

**B.    No Conflict Exists With The *Hastings* Stipulated Injunction.**

Defendants' request for "clarification" is procedurally defective and unnecessary, and the inquiry should end there.  But Defendants' motion also fails on its merits.  There is no need to clarify the Court's Order to reconcile it with the *Hastings* stipulation, as no conflict between the two "make[s] compliance with both an impossibility."  *See Nat'l Union Fire. Ins. Co. of Pittsburgh, PA. v. Payless Shoesource, Inc.*, 2012 WL 3277222, at *9 n.4 (N.D. Cal. Aug. 9, 2012).

Under the *Hastings* stipulation, "[d]uring the COVID-19 emergency, the City will reduce the number of tents and other encamping materials . . . in the Tenderloin."  Dkt. No. 70-2 at 2.  Additionally, "the City will make all *reasonable* efforts to achieve the shared goal of *permanently reducing* the number of tents."  *Id.* at 3 (emphasis added).  First, it is unclear whether the cited *Hastings* provisions are still in effect, because the "COVID-19 emergency" has abated.  The City appears to have ended COVID-19 hotel and alternative sleeping site programs which are predicates to enforcement under *Hastings*.  Dkt. No. 45 at 4.  Second, Defendants' sweeps do not result in a permanent reduction in tents as unhoused individuals are simply displaced, not provided permanent shelter.  Finally, there are myriad ways to reduce tents in the Tenderloin that do not involve violating the Constitution or this Court's Order (which would not be "reasonable efforts").  In fact, consistent with this Court's Order, the *Hastings* stipulation mandates that "[a]ll parties shall respect the legal rights of the unhoused of the Tenderloin in all manners, including in relation to relocating and removing the unhoused."  Dkt. No. 70-2 at 3.

The *Hastings* stipulation also requires the City to offer unhoused people relocation to hotel rooms, safe sleeping placements, and certain off-street sites, but does not mandate enforcement against homeless individuals with nowhere else to go.  *Id.* at 2.  The *Hastings* stipulation only states that "*if necessary to comply with this stipulated injunction* the City will employ enforcement measures for those who do not accept an offer of shelter or safe sleeping sites to prevent re-encampment."  *Id.* at 3 (emphasis added).  Defendants do not explain how "enforcement" or violating this Court's Order is necessary to comply with the *Hastings* stipulation.  This Court's Order only enjoins enforcement of five specific statutes and ordinances: California Penal Code

1    sections 647(e), 370, and 372; and San Francisco Police Code sections 168 and 169. The Order

2    does not mandate that Defendants refrain from enforcing other laws. Nor does the *Hastings*

3    stipulation specifically require the City to enforce the particular ordinances the Court has enjoined

4    here. It strains credulity to think that—without briefing on *Martin*—the *Hastings* court would have

5    entered an injunction that so limited law enforcement's discretion. Under any interpretation of

6    this Court's Order, the City is not required to violate the stipulated injunction in *Hastings*.[2]

7        **C.**      **Defendants Purposefully Misinterpret the Order to Justify Their Conduct.**

8        Defendants' real goal is clear: To get this Court to revisit the scope of its Order to allow

9    Defendants to continue their unconstitutional practices.[3] In other words, Defendants wish to

10    continue the enforcement-first approach that was the very subject of Plaintiffs' preliminary

11    injunction motion. Dkt. No. 9 at 18-20. Defendants try to justify this by arguing that the definition

12    of an "involuntarily homeless individual" in the Court's Order should exclude any individuals that

13    have access to adequate temporary shelter and "choose not to use it." Dkt. No. 70 at 4-5. But this

14    is entirely incompatible with the Court's Order and reality of this case. As the Court thoroughly

15    discussed, ***unhoused*** San Franciscans have no practically available access to appropriate shelter

16    anywhere in the City, so they are involuntarily homeless. Perversely, the only real way an

17    unhoused person can even hope to receive a shelter bed is *after* Defendants begin to

18    unconstitutionally displace them. *See* Dkt. No. 65 at 41 ("[i]t is beyond dispute that homeless San

19    Franciscans have no voluntary 'option of sleeping indoors,' and as a practical matter 'cannot obtain

20    shelter'"); *id.* at 42 ("at this time, a homeless San Franciscan who wants a shelter bed has no avenue

21    to ask for one, much less get one"); 12/22/2022 Mot. Hr'g Tr. at 43:23-44:10 ("there's no way for

22

23    _____

24    [2] Given that the Court's Order bars unconstitutional conduct, conflict could only arise between the Court's Order and the *Hastings* stipulation if the latter were unconstitutional, and the Court is under no obligation to permit the City to continue unconstitutional conduct merely because of a

25    prior injunction. *See Doe v. Kelly*, 878 F.3d 710, 718 (9th Cir. 2017) ("the government suffers no harm from an injunction that merely ends unconstitutional practices and/or ensures that

26    constitutional standards are implemented.").

27    [3] During meet and confer, Defendants indicated that even if no conflict existed between the *Hastings* stipulation and the Court's Order, they would still request the broad relief sought in this

28    motion. Lee Decl. ¶ 4.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

PLFS.' OPP. TO DEFS.' ADMIN.
MOT. FOR CLARIFICATION
CASE NO. 4:22-CV-05502-DMR

1   a person to voluntarily try to access a bed at this point in San Francisco").[4]  Indeed, there is no

2   evidence that unhoused individuals turn down firm offers for shelter—the real issue is that offers,

3   even in the context of enforcement, are inadequate or not followed through on.  *See* Dkt. No. 65 at

4   15, 17-20, 22-23, 28.

5          It is for precisely this reason that it is immaterial whose interpretation of *Martin* is correct.

6   Dkt. No. 65 at 37-42 ("The Court need not decide whether Defendants' reading of *Martin* and

7   *Johnson* is correct, because their position lacks factual support.").[5]  The Court made clear that no

8   homeless San Franciscan has voluntary, practical access to shelter prior to a sweep or displacement

9   operation.  *Id.*  As such, Defendants' operations categorically violate the Court's Order.

10         The Court's Order does not leave Defendants without options.  The *Hastings* stipulation

11  provides some: ensure tents do not block traffic or doorways or make streets impassable.  Dkt. No.

12  70-2 at 4.  The City could also fill empty housing or hotel opportunities and open the shelter system

13  to ensure people have meaningful access to it.  Contrary to the myth that unhoused people do not

14  want services, there are already more than a thousand people on a waitlist and people who have

15  waited in line daily for a bed.  Dkt. No. 65 at 5.  But Defendants refuse to open the shelter system

16  to voluntary access likely because it will lay bare just how many unhoused individuals in San

17  Francisco want and need shelter but are having their access barred—effectively leading to the

18  result that this Court has already reached: Defendants' punishment scheme is unconstitutional.

19  **III.    CONCLUSION**

20         The Court should deny Defendants' request to clarify its Order and for additional briefing.

21  _____

22  [4] At the preliminary injunction hearing, the Court explicitly rejected Defendants' attempts to argue
    that belated offers of shelter incident to enforcement—when individuals had no genuine access to

23  shelter anywhere before being subject to an encampment closure—could be constitutional.  *Id.* at
    32:13-33:13 ("I think the City concedes this and, in fact, relied on this; that at this point . . . there's

24  no voluntary avenue to accessing a bed, that the only way to access a bed is if there's an
    enforcement process where one is offered, if available.").

25  [5] Defendants argue that *Johnson* supports their position because it allows for a "determin[ation] at
    the enforcement stage that a homeless individual has access to shelter," but they are wrong.  At

26  most, *Johnson* simply notes that police should verify the status of an individual before
    enforcement.  *Johnson*, 50 F. 4th at 805 n.23.  It does not mean that the government is free to try

27  and manufacture a change in an individual's involuntary status under threat of enforcement.
    Regardless, there is ample evidence that shelter offers are illusory and never actually materialize

28  even after sweep operations.  Dkt. No. 65 at 38-40.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

PLFS.' OPP. TO DEFS.' ADMIN.
MOT. FOR CLARIFICATION
CASE NO. 4:22-CV-05502-DMR

Dated: January 9, 2023

Respectfully submitted,

By: /s/ Alfred C. Pfeiffer, Jr.

LATHAM & WATKINS LLP
Alfred C. Pfeiffer, Jr., SBN 120965
Wesley Tiu, SBN 336580
Kevin Wu, SBN 337101
Tulin Gurer, SBN 303077
505 Montgomery Street, Ste 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
al.pfeiffer@lw.com
wesley.tiu@lw.com
kevin.wu@lw.com
tulin.gurer@lw.com

LATHAM & WATKINS LLP
Joseph H. Lee, SBN 248046
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
joseph.lee@lw.com

LATHAM & WATKINS LLP
Rachel Mitchell, SBN 344204
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
rachel.mitchell@lw.com

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY
AREA
Zal K. Shroff, MJP 804620, *pro hac vice*
Elisa Della-Piana, SBN 226462
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
zshroff@lccrsf.org
edellapiana@lccrsf.org

ACLU FOUNDATION OF NORTHERN
CALIFORNIA
John Thomas H. Do, SBN 285075
Brandon L. Greene, SBN 293783
39 Drumm Street

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

PLFS.' OPP. TO DEFS.' ADMIN.
MOT. FOR CLARIFICATION
CASE NO. 4:22-CV-05502-DMR

San Francisco, CA 94111
Telephone: (415) 293-6333
jdo@aclunc.org
bgreene@aclunc.org

*Attorneys for Plaintiffs*
*Coalition on Homelessness, Toro Castaño, Sarah*
*Cronk, Joshua Donohoe, Molique Frank, David*
*Martinez, Teresa Sandoval, Nathaniel Vaughn*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLFS.' OPP. TO DEFS.' ADMIN.
MOT. FOR CLARIFICATION
CASE NO. 4:22-CV-05502-DMR