1  Lauren Hansen (CA BAR NO. 268417)
   Melissa A. Morris (CA BAR NO. 233393)
2  PUBLIC INTEREST LAW PROJECT
   449 15th St., Suite 301
3  Oakland, CA 94612-06001
   Tel: (510) 891-9794
4  Fax: (510) 891-9727
   Email: lhansen@pilpca.org
5
6  Lili V. Graham (CA BAR NO. 284264)
   DISABILITY RIGHTS CALIFORNIA
7  350 S Bixel Street, Ste 290
   Los Angeles, CA 90017-1418
8  Tel: (213) 213-8000
   Fax: (213) 213-8001
9  Email: lili.graham@disabilityrightsca.org

10 **(Additional counsel on following page)**

11
12 Attorneys for INTERVENORS
   HOSPITALITY HOUSE; COALITION ON
13 HOMELESSNESS and FAITHFUL FOOLS

14

## UNITED STATES DISTRICT COURT

15

## NORTHERN DISTRICT OF CALIFORNIA

16

| | |
|---|---|
| COLLEGE OF THE LAW, SAN FRANCISCO, a public trust and institution of higher education duly organized under the laws and the Constitution of the State of California; FALLON VICTORIA, an individual; RENE DENIS, an individual; TENDERLOIN MERCHANTS AND PROPERTY ASSOCIATION, a business association; RANDY HUGHES, an individual; and KRISTEN VILLALOBOS, an individual,<br><br>       Plaintiffs,<br><br>       v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a municipal entity,<br><br>       Defendant. | **Case No. 4:20-cv-3033-JST**<br><br>**DECLARATION OF JENNIFER FRIEDENBACH IN SUPPORT OF INTERVENORS' RESPONSE TO DEFENDANT'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES ARE RELATED**<br><br><br>Action Filed: May 4, 2020 |

DocuSign Envelope ID: AE26E70E-8FB4-42BF-8A4D-4572794B9EF5

Michael David Keys (CA BAR NO. 133815)
BAY AREA LEGAL AID
1454 43rd Avenue
San Francisco, CA 94122
Tel: (415) 982-1300
Fax: (415) 982-4243
Email: mkeys@baylegal.org

**(Counsel for Intervenors continued from previous page)**

1   I, Jennifer Friedenbach, declare:

2       1.      I am the Executive Director of the Coalition on Homelessness ("COH"). COH is

3   an Intervenor in *UC SF Law, et al. v. City and County of San Francisco*: Case No.: 4:20-cv-

4   03033-JST.  I make this Declaration in opposition to Defendant's administrative motion to relate

5   this case to *Coalition on Homelessness et al. v. City and County of San Francisco*: Case No.: 22-

6   cv-05502-DMR.

7       2.      The facts set forth below are known to me personally, and I have first-hand

8   knowledge of these facts.  If called as a witness, I could and would testify competently, under

9   oath, to such facts.

10       3.      The Coalition on Homelessness organizes unhoused people and front-line service

11   providers to create permanent solutions to homelessness while working to protect the human

12   rights of those who remain on the streets of San Francisco. COH was founded over thirty years

13   ago when people experiencing homelessness joined with frontline service providers in response

14   to the lack of systemic solutions to homeless and the exclusion of homeless people in crafting

15   city policy that affects unhoused persons.

16       4.      Our advocacy agenda is shaped, framed, and prioritized based on the needs of

17   people experiencing homelessness. We regularly utilize media, public hearings, rallies, legal

18   action, letter writing campaigns, and other tactics to elevate the interests of unhoused San

19   Franciscans.

20       5.      COH is committed to supporting unhoused people moving into housing. Some of

21   our accomplishments include advocating for and securing thousands of housing subsidies and

22   units, passage of legislation that creates standards of care in San Francisco's shelter system

23   written with deep input from shelter residents, and the passage of a single standard of care for the

24   mental health system. Since 2018, due primarily to Prop C, which we wrote and put on the

25   ballot, over 3,000 additional housing units or rental subsidies have been added, over 6,000

26   households prevented from displacement and homelessness, almost 1,000 shelter beds have been

27   added, and 600 treatment beds.

28       6.      I have reviewed the declaration that Matthew Davis, an attorney for UC Law SF,

1  filed in this case on October 6, 2023, in which he says he heard from someone at the City and

2  other unnamed "sources" that COH "was allegedly instructing people camping on the Tenderloin's

3  streets and sidewalks to refuse the City's offers of shelter." This is not COH policy, and as far as I

4  know, this is not something we would instruct.

5         7.     The Coalition on Homelessness staff work regularly with unhoused individuals

6  and families to secure shelter on an almost daily basis. This occurs on outreach, in our office and

7  over the phone. During Healthy Street Operation Center (HSOC) operations in particular, part of

8  what I or my staff does when monitoring is find out from unhoused individuals what their needs

9  are, including shelter needs, and advocate for those needs with city outreach workers. Sometimes

10  my staff can in particular be helpful when it is an area of expertise that city workers may lack,

11  such as pregnant women placements which are outside of shelter bed assignments given to city

12  outreach workers. At other times, there may be a special accommodation that is needed for a

13  non-congregate room, which we then advocate for on-site with City outreach workers.

14         8.     I instruct COH staff and volunteers on "do's and don'ts".  One of the "don'ts" I

15  tell my staff is discourage people from accepting shelter. Other "don'ts" are things like telling

16  people to ignore police orders and interfering with private conversations City staff are having

17  with unhoused people, unless the unhoused person approves our presence.

18         9.     After the City and the Plaintiffs agreed to the Stipulated Injunction in this case,

19  the Coalition, Faithful Fools, and Hospitality House made many attempts to change the

20  Stipulated Injunction, as well as to make sure the City did not violate unhoused people's rights

21  when they were implementing it. This work included, not only the work that our attorneys did

22  with court filings and attempting to negotiate an agreement with the City's attorneys, but also

23  work that our organizations' staff and volunteers did to advocate to City staff, to connect

24  individual unsheltered Tenderloin residents with non-congregate shelter placements, and to

25  monitor the City's implementation of the Stipulated Injunction. Intervenors also tried to

26  negotiate a Memorandum of Understanding to reflect the community response to unsheltered

27  homelessness in the Tenderloin during the COVID-19 pandemic, but the City ultimately declined

28  to enter into the agreement.

DocuSign Envelope ID: AE26E70E-8FB4-42BF-8A4D-4572784B9EF5

10.   The City began implementing the terms of the Stipulated Injunction before it was approved by the Court. Every day, COH's staff and volunteers were out in the Tenderloin neighborhood communicating with City staff and unhoused people, trying to ensure that unsheltered individuals were appropriately placed into SIP hotels or other non-congregate shelter.

11.   Along with my staff, I regularly work with unsheltered individuals who have significant trauma, health concerns, and have trouble immediately leaving the place that they have been living. As the City was implementing the Stipulated Injunction, our staff were able to help unhoused people communicate their needs to City staff and police, and, as a result, to help them access Shelter-in-Place hotels, safe sleeping sites, and other housing options.

12.   One thing I noticed during implementation of the Stipulated Injunction was that, because the agreement only covered the Tenderloin Neighborhood, the City prioritized SIP hotel rooms for people in the Tenderloin, making them less available for unsheltered people in other neighborhoods of San Francisco.

13.   I was not aware of any recent dispute between UC Law SF—formerly UC Hastings—and the City about the Stipulated Injunction. The first I learned of any dispute was in September 2023 when COH's attorney, Lauren Hansen, let me know that a pre-settlement conference had been scheduled.

14.   As with our motion for intervention, COH feels strongly that unhoused people should have a seat at the table if the Plaintiffs and City are discussing enforcing the Stipulated Injunction in this case. COH was not allowed to participate in negotiation the original Stipulated Injunction, but we hope to ensure that the interests of unhoused people can be represented in any future agreement in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.  Executed on October 10, 2023 San Francisco, California.

J Friedenbach

Jennifer Friedenbach
*Executive Director*