MICHAEL A. KELLY, State Bar No. 71460
 MKelly@WalkupLawOffice.com
RICHARD H. SCHOENBERGER, State Bar No. 122190
 RSchoenberger@WalkupLawOffice.com
MATTHEW D. DAVIS, State Bar No. 141986
 MDavis@WalkupLawOffice.com
WALKUP, MELODIA, KELLY & SCHOENBERGER
650 California Street, 26th Floor
San Francisco, CA  94108
Telephone:  415-889-2919
Facsimile:  415-391-6965

SHANIN SPECTER, (Pennsylvania State Bar No. 40928)
(Pro Hac Vice Application Pending)
 shanin.specter@klinespecter.com
ALEX VAN DYKE (CA State Bar No. 340379)
 alex.vandyke@klinespecter.com
KLINE & SPECTER, P.C.
1525 Locust Street
Philadelphia, PA 19102
Telephone: 215-772-1000

Attorneys for All Plaintiffs

JOHN K. DIPAOLO, State Bar No. 321942
 dipaolojohn@uchastings.edu
General Counsel
Secretary to the Board of Directors
College of the Law, San Francisco
200 McAllister Street
San Francisco, CA  94102
Telephone:  415-565-4787
Facsimile:  415-565-4825

Attorney for Plaintiff
COLLEGE OF THE LAW, SAN FRANCISCO

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLEGE OF THE LAW, SAN FRANCISCO a public trust and institution of higher education duly organized under the laws and the Constitution of the State of California; FALLON VICTORIA, an individual; RENE DENIS, an individual; | Case No. 4:20-cv-03033-JST<br><br>**PLAINTIFFS' REQUEST FOR JUDICAL NOTICE**<br><br>**ASSIGNED FOR ALL PURPOSES TO THE HONORABLE JON S. TIGAR, COURTROOM 6** |

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

1

| | |
|---|---|
| TENDERLOIN MERCHANTS AND PROPERTY ASSOCIATION, a business association; RANDY HUGHES, an individual; and KRISTEN VILLALOBOS, an individual, | Date:    04/18/2024<br>Time:    2:00 p.m.<br><br>Action Filed:    05/04/2020<br>Trial Date:    (TBD) |

Plaintiffs,

v.

CITY AND COUNTY OF SAN
    FRANCISCO, a municipal entity,

Defendant.

Plaintiffs, College of the Law, San Francisco, Fallon Victoria, Rene Denis, Randy Hughes, and Kristen Villalobos and Tenderloin Merchants and Property Association, by and through their undersigned counsel, respectfully request that the Court take judicial notice of the Brief for Amici Curiae City and County of San Francisco and Mayor Breed in Support of Petitioner, *Grants Pass, OR v. Johnson*, which is attached hereto and also attached to Plaintiffs' Motion to Enforce Stipulated Injunction.  This amicus brief "is judicially noticeable because it is a court filing from another judicial proceeding." *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1207 (N.D. Cal. 2017); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 749, n. 6 (9th Cir. 2006) (holding that courts "may take judicial notice of court filings and other matters of public record.").

Dated:  March 14, 2024         WALKUP, MELODIA, KELLY & SCHOENBERGER

By:    _/S/ Matthew D. Davis_
    MICHAEL A. KELLY
    RICHARD H. SCHOENBERGER
    MATTHEW D. DAVIS
    Attorneys for All Plaintiffs

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

2

PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE - CASE NO. 4:20-cv-03033-JST

Dated:  March 14, 2024          KLINE & SPECTER, P.C.

                                By:   ___/S/ Shanin Specter___
                                      SHANIN SPECTER
                                      ALEX VAN DYKE
                                      Attorneys for All Plaintiffs


Dated:  March 14, 2024          COLLEGE OF THE LAW, SAN FRANCISCO

                                By:   ___/S/ John K. Dipaolo___
                                      JOHN K. DIPAOLO
                                      LAURA M. WILSON-YOUNGBLOOD
                                      Attorneys for Plaintiff College of the Law,
                                      San Francisco


## CERTIFICATE OF SERVICE

I, Matthew D. Davis, Esquire, hereby certify that I electronically filed the following document by using the CM/ECF system on March 14, 2024.

                                By:   ___/S/ Matthew D. Davis___
                                      MATTHEW D. DAVIS

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

3
PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE - CASE NO. 4:20-cv-03033-JST

# EXHIBIT A

**No. 23-175**

In The

# Supreme Court of the United States

———— ♦ ————

CITY OF GRANTS PASS, OREGON,

*Petitioner,*

v.

GLORIA JOHNSON AND JOHN LOGAN,
ON BEHALF OF THEMSELVES AND
ALL OTHERS SIMILARLY SITUATED,

*Respondents.*

———— ♦ ————

**On Petition For Writ Of Certiorari
To The United States Court Of Appeals
For The Ninth Circuit**

———— ♦ ————

**BRIEF FOR AMICI CURIAE CITY AND COUNTY
OF SAN FRANCISCO AND MAYOR BREED
IN SUPPORT OF PETITIONER**

———— ♦ ————

DAVID CHIU
  San Francisco
    City Attorney
JESSE C. SMITH
  Chief Assistant
    City Attorney
YVONNE R. MERÉ
  Chief Deputy
    City Attorney
TARA M. STEELEY
  Chief of
    Appellate Litigation
  *Counsel of Record*

MIGUEL A. GRADILLA
DAVID S. LOUK
  Deputy City Attorneys
CITY ATTORNEY'S OFFICE
City Hall Room 234
One Dr. Carlton B. Goodlett Pl.
San Francisco, CA 94102
Telephone: (415) 554-4655
Tara.Steeley@sfcityatty.org

*Attorneys for Amici Curiae
  City and County of
  San Francisco and
  Mayor London Breed*

COCKLE LEGAL BRIEFS (800) 225-6964
WWW.COCKLELEGALBRIEFS.COM

i

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................. iii

INTEREST OF AMICI CURIAE ......................... 1

SUMMARY OF ARGUMENT ............................. 2

ARGUMENT ....................................... 7

I.   San Francisco's compassionate efforts to address the homelessness crisis have been severely hamstrung by the decision below ............................................ 7

    A.   San Francisco devotes substantial resources to its services-first approach to the homelessness crisis ................... 7

    B.   Like many jurisdictions in the Ninth Circuit, San Francisco has been harmed by the consequences of the decision below ...................................... 8

II.  The Ninth Circuit's determination that the dissent in *Powell* controls the lawfulness of ordinances prohibiting sitting, sleeping, and lying on public property should be summarily reversed or vacated and remanded ...................................... 12

    A.   The panel decision, as well as *Martin*, misapply *Powell*, violating the *Marks* Rule ...................................... 13

        1.   Neither *Robinson* nor *Powell* clearly provide support for the decision below ...................................... 13

ii

TABLE OF CONTENTS – Continued

Page

2. The decision below misapplies *Marks* and erroneously interprets *Powell* .... 15

B. Other circuits have correctly rejected the Ninth Circuit's erroneous dissent-as-precedent application of *Marks* ...... 19

III. The decision below has led to significant confusion in its application ....................... 20

IV. This Court should grant the petition to summarily reverse or vacate and remand the panel decision below ........................... 24

CONCLUSION.................................................... 25

iii

TABLE OF AUTHORITIES

Page

CASES

*Alaska* v. *Wright*,
  141 S. Ct. 1467 (2021) .............................................25

*City of Escondido, Cal.* v. *Emmons*,
  139 S. Ct. 500 (2019) ..............................................24

*Coal. on Homelessness* v. *City &*
  *Cnty. of San Francisco*,
  No. 22-CV-05502-DMR, 2022 WL 17905114
  (ND Cal. Dec. 23, 2022) ......................... 1, 10, 22, 23

*Fund for Empowerment* v. *City of Phoenix*,
  No. CV-22-02041-PHX-GMS, ___ F. Supp. 3d
  ___, 2022 WL 18213522 (D Ariz. Dec. 16, 2022) ........11

*Gibson* v. *Am. Cyanamid Company*,
  760 F. 3d 600 (CA7 2014) .................................19, 20

*Gregg* v. *Georgia*,
  428 U. S. 153 (1976) ............................................6, 16

*Johnson* v. *Bd. of Educ. of City of Chicago*,
  457 U. S. 52 (1982) .................................................25

*Johnson* v. *City of Grants Pass*,
  50 F. 4th 787 (CA9 2022) ...................................9, 10

*Johnson* v. *City of Grants Pass*,
  72 F. 4th 868 (CA9 2023) .......4, 10, 12, 16, 18, 21, 22

*Kernan* v. *Cuero*,
  583 U. S. 1 (2017) ..................................................25

*King* v. *Palmer*,
  950 F. 2d 771 (CADC 1991) ....................................19

iv

TABLE OF AUTHORITIES – Continued

Page

*Kisela* v. *Hughes*,
    138 S. Ct. 1148 (2018) ..............................................25

*Marks* v. *United States*,
    430 U. S. 188 (1977) ........2, 5, 6, 12, 13, 15-21, 24, 26

*Martin* v. *City of Boise*,
    920 F. 3d 584 (CA9 2019)....... 4, 5, 8-10, 12, 13, 15-19,
    ...................................................................... 21, 22, 24

*Pakdel* v. *City and County of San Francisco*,
    141 S. Ct. 2226 (2021) ..............................................25

*Powell* v. *Texas*,
    392 U. S. 514 (1968) ................. 2, 5, 12-17, 20, 21, 24

*Randall* v. *Sorrell*,
    548 U. S. 230 (2006) ................................................25

*Rivas-Villegas* v. *Cortesluna*,
    595 U. S. 1 (2021) ....................................................24

*Robinson* v. *California*,
    370 U. S. 660 (1962) ....................................13-15, 17

*Sausalito/Marin Cnty. Chapter of Cal.
    Homeless Union* v. *City of Sausalito*,
    No. 21-cv-01143-EMC,
    2021 WL 5889370 (ND Cal. Dec. 13, 2021) ............11

*Schweiker* v. *Hansen*,
    450 U. S. 785 (1981) ................................................24

*Shinn* v. *Kayer*,
    141 S. Ct. 517 (2020) ..............................................25

*Thompson* v. *Hebdon*,
    140 S. Ct. 348 (2019) ..............................................25

v

TABLE OF AUTHORITIES – Continued

Page

*Trop* v. *Dulles*,
 356 U. S. 86 (1958) ....................................................4

*United States* v. *Anderson*,
 771 F. 3d 1064 (CA8 2014) ......................................20

*United States* v. *Davis*,
 825 F. 3d 1014 (CA9 2016)......................... 16, 17, 26

*United States* v. *Epps*,
 707 F. 3d 337 (CADC 2013) .................................19

*United States* v. *Robison*,
 505 F. 3d 1208 (CA11 2007) ....................................20

*Warren* v. *City of Chico*,
 No. 2:21-CV-00640-MCE-DMC,
 2021 WL 2894648 (ED Cal. July 8, 2021) ..............11

*Wills* v. *City of Monterey*,
 617 F. Supp. 3d 1107 (ND Cal. 2022) ....................11

CONSTITUTIONAL PROVISIONS

U. S. Const., amend. VIII ...................................3, 13-17

OTHER REFERENCES

Administrative Motion for Clarification, *Coal.*
 *on Homelessness, et al.* v. *City and County of*
 *San Francisco et al.,* ND Cal. 4:22CV05502,
 ECF No. 70 (Jan. 3, 2023) .......................................10

vi

TABLE OF AUTHORITIES – Continued

Page

Minute Entry, *Coal. on Homelessness et al.* v. *City and County of San Francisco et al.*, ND Cal. 4:22CV05502, ECF No. 84 (Jan. 12, 2023) .............10

Order Denying CCSF's Motion to Modify Prelim. Injunction*, Coal. On Homelessness, et al.* v. *City and County of San Francisco, et al.,* 9th Cir. 23-15087, ECF No. 88 (Sept. 5, 2023) .............23

Richard C. Chen, *Summary Dispositions as Precedent*, 61 Wm. & Mary L. Rev. 691 (2020) .......24

1

### INTEREST OF AMICI CURIAE[1]

Amici curiae City and County of San Francisco ("San Francisco" or the "City") and Mayor London Breed have experienced firsthand the harms that the decision below in *City of Grants Pass* v. *Johnson, et al.* has caused. Like so many other cities across the country, San Francisco is wrestling with an overwhelming homelessness crisis. The City has responded by devoting billions of dollars in funds and resources to assist persons experiencing homelessness, leading with shelter and social services, not criminal citations. Historically, San Francisco has balanced its commitment to a compassionate, services-first approach with its responsibilities to ensure that sidewalks and public spaces are safe and accessible for all residents, visitors, and local businesses.

Since December 2022, a district court's application of the challenged decision has undermined the City's balanced effort to provide services to persons experiencing homelessness while also protecting the health, safety, and welfare of all its residents. See *Coal. on Homelessness* v. *City & Cnty. of San Francisco*, No. 22-CV-05502-DMR, 2022 WL 17905114 (ND Cal. Dec. 23, 2022). Because the district court has enjoined it from enforcing several state and local laws in reliance on the panel opinion below, the City has been unable to

---

[1] No counsel for any party authored this brief, in whole or in part. No person or entity other than amici contributed monetarily to its preparation or submission. Ten days prior to the due date to file this brief, counsel of record for all parties received notice of amici's intention to file.

2

implement the considered policy decisions of its Mayor and local legislature; unable to enforce the will of San Francisco voters; unable to allow conscientious City employees to do their jobs; and unable to protect its public spaces. The result is that San Francisco's homelessness crisis has only seemed to worsen.

The injunction entered against San Francisco, like numerous others issued against municipalities within the Ninth Circuit, has resulted in confusion and a lack of judicially administrable standards. San Francisco thus has a substantial interest in the question of whether the Ninth Circuit's decision below comports with this Court's precedents.

———————◆———————

## SUMMARY OF ARGUMENT

This Court should grant Petitioner's writ of certiorari to summarily reverse or vacate and remand the panel decision below. Although summary disposition is uncommon, it is appropriate where, as here, the decision below clearly contravenes this Court's precedents and stands as an outlier among lower courts applying those precedents. The Ninth Circuit disregarded this Court's instructions in *Marks* v. *United States*, 430 U. S. 188 (1977), in contrast to numerous other circuits that have correctly applied *Marks*. The decision below is based on a fundamental misreading of this Court's fractured decision in *Powell* v. *Texas*, 392 U. S. 514 (1968), in contravention of *Marks*. The decision below has made it needlessly more difficult for San Francisco

3

to address its ongoing homelessness crisis and to provide services, including shelter, to persons experiencing homelessness.

San Francisco pursues a compassionate, services-first approach to its homelessness crisis. In recent years, San Francisco has spent billions of dollars providing shelter and housing to persons experiencing homelessness, including over $672 million during the past fiscal year. But the City cannot feasibly provide shelter for everyone: San Francisco would need an additional $1.45 billion to shelter everyone experiencing homelessness within the City. Combined, this expenditure would total more than a third of San Francisco's general fund budget, which is simply unrealistic. And that enormous sum does not account for the cost of the services San Francisco would need to provide to many of those individuals to support a successful transition to more permanent shelter or housing, including treatment for the mental health and substance use disorders that often afflict persons experiencing homelessness.

San Francisco's inability to provide shelter to all such individuals does not warrant courts restricting the City's ability to maintain the safety and accessibility of its public spaces. San Francisco recognizes that it makes no sense to criminalize an individual resident who in fact has no place to sleep overnight other than on a public street or sidewalk. And in some circumstances, criminal prohibitions on homelessness may run afoul of the Eighth Amendment, which "must draw its meaning from the evolving standards of decency

4

that mark the progress of a maturing society." *Trop* v. *Dulles*, 356 U. S. 86, 101 (1958). But that is not the issue here.

Following *Martin* v. *City of Boise*, 920 F. 3d 584 (CA9 2019), and the decision below in *Johnson* v. *City of Grants Pass* (hereinafter "*Johnson II*"), 72 F. 4th 868, 890 (CA9 2023), the U. S. District Court for the Northern District of California has adopted rulings based on the Ninth Circuit's misapplication of this Court's precedent. These rulings have severely constrained San Francisco's ability to enforce its laws – limiting public camping and sleeping at certain times and in certain public spaces – until the City has enough shelter capacity for every resident experiencing homelessness. San Francisco uses enforcement of its laws prohibiting camping and sleeping at designated times and in certain (but by no means all) public spaces as a tool to encourage individuals experiencing homelessness to accept services and to help ensure safe and accessible sidewalks and public spaces. By restricting San Francisco from enforcing its laws that preserve public spaces for the use of all City residents, the district court has made it more difficult to provide services to persons experiencing homelessness.

This judicial intervention has led to painful results. The sad fact is that thousands of persons experiencing homelessness sleep on San Francisco streets in sleeping bags, tents, and makeshift structures. Many of them refuse offers of services and shelter. These encampments block sidewalks, prevent employees from cleaning public thoroughfares, and create health and

5

safety risks. Local businesses, residents, and visitors also need to use these same public spaces, but frequently cannot. Often, encampments exist just outside of apartment buildings, schools, senior centers, and other community buildings, forcing families with children, persons with disabilities, and older community members to navigate them. Even worse, the City's poorest and most vulnerable neighborhoods are often those wrestling hardest with the formidable challenges that encampments present. Without the ability to fully enforce its laws during the injunction, San Francisco has seen over half of its offers of shelter and services rejected by unhoused individuals, who often cite the district court's order for their justification to permanently occupy and block public sidewalks.

San Francisco's recent difficulties in addressing this homelessness crisis stem significantly from the Ninth Circuit's misapplication of *Powell*. The Ninth Circuit "glean[ed]" *Powell*'s holding by melding together the views of the dissenting justices and dicta in Justice White's concurrence in the judgment to conclude that *Powell* "compel[s]" a holding. *Martin*, 920 F. 3d, at 616. But that purported holding is precisely the *opposite* of this Court's actual decision in *Powell*. The decision below, by treating *Martin* as controlling law, solidifies the error of elevating the *dissenting* opinion in *Powell* to the status of controlling law, in violation of *Marks*.

Rather, *Marks* instructs lower courts that, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as

6

that position taken by those Members *who concurred in the judgments* on the narrowest grounds.'" 430 U. S., at 193 (quoting *Gregg* v. *Georgia*, 428 U. S. 153, 169 n. 15 (1976) (plurality opinion) (emphasis added)). The Ninth Circuit violated *Marks* both by relying on the views of the Justices who joined the dissenting opinion – an approach numerous other Circuits have rightly rejected – and by resting its holding on an opinion that did not concur in the judgment on the narrowest grounds. Both errors merit summary correction.

The Ninth Circuit's fundamentally flawed legal analysis has wreaked practical havoc in courts and on the ground in municipalities across the Ninth Circuit, including in San Francisco. Precisely because the panel majority's decision below rests on a non-existent foundation, lower courts – and even the Ninth Circuit – have struggled to apply the contested holding. These courts have given little guidance to cities faced with the challenges of addressing the evolving homelessness crises. San Francisco's experience is compelling but not unique; it is exemplary of the problem numerous municipalities in the Ninth Circuit now face.

The Ninth Circuit's underlying legal error is straightforward, and so summary disposition of the panel decision is warranted. Summarily reversing, or in the alternative vacating and remanding, the decision below would expeditiously and appropriately provide the immediate relief sought to both Petitioner and amici, while leaving the other complex issues

7

presented in the Petition to be developed by the lower courts in the appropriate course.

————————◆————————

## ARGUMENT

### I.  San Francisco's compassionate efforts to address the homelessness crisis have been severely hamstrung by the decision below.

The homelessness crisis defies ready solutions. Over the years, San Francisco voters and its legislative body have enacted laws reflecting the City's considered judgment and policy choices about how to address the homelessness crisis. By restricting San Francisco's ability to enforce those laws, judicial intervention has thwarted both the City's ability to provide services to persons experiencing homelessness and its ability to protect the health, safety, and welfare needs of its residents as a whole.

### A.  San Francisco devotes substantial resources to its services-first approach to the homelessness crisis.

In addressing the homelessness crisis, San Francisco has deliberately taken a compassionate approach, by leading with social services, including shelter. The City's Department of Homelessness and Supportive Housing ("HSH") is dedicated exclusively to confronting the challenge of homelessness. Through HSH and the work of other departments, San Francisco works each and every day to:

8

- Assess the needs of its residents experiencing homelessness;

- Conduct outreach to connect people to shelter and services;

- Creatively address problems such as offering one-time grants to potentially prevent homelessness by, for example, paying rent;

- Place people in supportive housing that sometimes includes, for example, job training programs on site; and

- Transition people from temporary supportive to permanent subsidized housing.

San Francisco deploys many tools and substantial resources to address the needs of people experiencing homelessness.

## B. Like many jurisdictions in the Ninth Circuit, San Francisco has been harmed by the consequences of the decision below.

Despite this compassionate approach, San Francisco has been stymied by the controlling effects of the decision below. In September 2022, seven named plaintiffs, alongside an organization that advocates for the unhoused, sued San Francisco alleging, among other things, that the City had violated *Martin* and the decision below by enforcing state and local laws in the

9

course of conducting encampment resolutions.[2] The City's goals of formal encampment resolutions include conducting outreach to individuals; offering services and housing; removing hazardous or abandoned tents, structures, and vehicles; and cleaning and securing sites after individuals have relocated. Nonetheless, relying on the Ninth Circuit's decision below, alongside *Martin*, Plaintiffs contended that San Francisco cannot enforce generally applicable laws against persons sitting, sleeping, or lying in public spaces in the course of conducting encampment resolutions unless San Francisco could provide housing for all persons experiencing homelessness in San Francisco.

A day after Plaintiffs filed suit, the Ninth Circuit entered the original panel decision below, which affirmed both the certification of a class of all "involuntarily homeless persons" and a permanent injunction against Petitioner's enforcement of ordinances relating to sitting, sleeping, and lying. *Johnson* v. *City of Grants Pass (hereinafter "Johnson I")*, 50 F. 4th 787, 798 (CA9 2022). The panel majority held that under a "formula" it derived from *Martin*, a "government cannot prosecute homeless people for sleeping in public if there 'is a greater number of homeless individuals in [a

---

[2] As used in this brief, "encampment resolutions" refers to any instances where City workers engage with persons experiencing homelessness to provide them services and address health and safety concerns presented by camping on public spaces. This includes, but is not limited to, formal operations undertaken by City departments, such as the Healthy Street Outreach Center effort.

10

jurisdiction] than the number of available' shelter spaces." *Id.*, at 795 (quoting *Martin*, 920 F. 3d, at 617).

Drawing on that decision, on December 23, 2022, the district court issued a preliminary injunction against San Francisco, prohibiting it from enforcing six state and local laws. In so doing, the court relied in substantial part on what has come to be known as the involuntary homelessness "formula." The preliminary injunction provided that San Francisco could not enforce or threaten to enforce state and local laws prohibiting sitting, sleeping, or lying against individuals who were "involuntarily homeless" – without defining that term. The injunction "remain[s] effective as long as there are more homeless individuals in San Francisco than there are shelter beds available." *Coal. on Homelessness*, 2022 WL 17905114, at *28. San Francisco sought clarification about the definition of "involuntarily homeless," but the district court declined to provide any.[3]

Although the Ninth Circuit, in denying rehearing en banc by a vote of 14 to 13, amended and superseded the original panel decision below (*Johnson I*) to remove any express reference to a "formula," *Johnson II*, 72 F. 4th, at 938 (Smith, J., dissenting from the denial of rehearing en banc), the Ninth Circuit's formula-like analysis first introduced in *Martin* continues to serve

---

[3] See *Coal. on Homelessness et al.* v. *City and Cnty. of San Francisco et al.*, 4:22-CV-05502, Administrative Motion for Clarification, ECF No. 70 (Jan. 3, 2023); *id.*, Minute Order, ECF No. 84 (Jan. 12, 2023) (denying administrative motion for clarification).

11

as the foundation for the injunctions entered against both Petitioner and amici. Further, the revised panel decision did nothing to clarify who bears the burden of establishing voluntary versus involuntary homelessness, or how officials can determine voluntariness on the ground and in the course of interactions with persons experiencing homelessness. Unsurprisingly, City workers' interactions with people experiencing homelessness are complex. Some unhoused people work with outreach workers to complete housing assessments, some refuse to engage at all, and some do not even provide their names. Others sometimes may be under the influence of substances and unable to interact with workers. In short, conditions on the ground make it difficult for workers to determine whether someone has declined an offer of shelter, let alone document every interaction.

The end result has been confusion about the legal landscape that applies not only to San Francisco's efforts to address the street homelessness crisis and encampment resolutions, but to jurisdictions across the Ninth Circuit, who have been subject to substantial and intrusive judicial intervention.[4]

---

[4] See, *e.g.*, Brief of Petitioner 8–9; *Warren* v. *City of Chico*, No. 2:21-CV-00640-MCE-DMC, 2021 WL 2894648 (ED Cal. July 8, 2021); *Sausalito/Marin Cnty. Chapter of Cal. Homeless Union* v. *City of Sausalito*, No. 21-cv-01143-EMC, 2021 WL 5889370 (ND Cal. Dec. 13, 2021); *Wills* v. *City of Monterey*, 617 F. Supp. 3d 1107 (ND Cal. 2022); *Fund for Empowerment* v. *City of Phoenix*, No. CV-22-02041-PHX-GMS, ___ F. Supp. 3d ___, 2022 WL 18213522 (D Ariz. Dec. 16, 2022).

12

## II. The Ninth Circuit's determination that the dissent in *Powell* controls the lawfulness of ordinances prohibiting sitting, sleeping, and lying on public property should be summarily reversed or vacated and remanded.

While an uncommon remedy, summary disposition is warranted of the panel majority's decision. That decision extends *Martin*'s central holding that "the Cruel and Unusual Punishment clause 'prohibits the imposition of criminal penalties for sitting, sleeping, or lying outside on public property for homeless individuals who cannot obtain shelter.'" *Johnson II*, 72 F. 4th, at 890 (quoting *Martin*, 920 F. 3d, at 616).

Although *Martin* claimed to apply this Court's precedents, its holding rests on a fundamental misapplication of *Marks*, and an erroneous interpretation of *Powell*. The panel decision below not only adopted both of these errors, but extended them. Because the decision below rests solely on a clearly erroneous understanding of this Court's precedents – and it does so despite numerous other circuits having recognized the error of such an approach – summary reversal, or vacatur and remand in the alternative, is appropriate. Such disposition will expediently and efficiently grant the relief both Petitioner and amici seek.

13

**A. The panel decision, as well as *Martin*, misapply *Powell*, violating the *Marks* Rule.**

As Petitioner briefly discusses, see Brief of Petitioner 4, 19–21, 27–28, both the Ninth Circuit's decision in *Martin*, and the panel majority's decision below, announce a new constitutional principle they claim is "compelled" from reasoning in the *dissenting* opinion in *Powell*. *Martin*, 920 F. 3d, at 616. Such an approach turns the holding of *Powell* on its head and is fundamentally at odds with *Marks*.

**1. Neither *Robinson* nor *Powell* clearly provide support for the decision below.**

Both *Martin* and the decision below purport to rely on this Court's decisions in *Robinson* v. *California* and *Powell*, but neither of those decisions supports the Ninth Circuit's decision below.

In *Robinson* v. *California*, this Court considered the constitutionality of a law prohibiting any person from being "addicted to the use of narcotics." 370 U. S. 660, n. 1 (1962). Over dissents from Justices Clark and White, this Court held that the Eighth Amendment forbids punishing the *status* of being a drug addict, even if prosecutions for individual *acts* of using drugs are permissible. *Robinson* emphasized that the statute in question did not punish a person for "the use of narcotics, for their purchase, sale or possession, or for antisocial or disorderly behavior resulting from their

14

administration." *Id.*, at 666. Rather, this Court reasoned that because "narcotic addiction is an illness," a person could be imprisoned by the State "even though he has never touched any narcotic drug within the State or been guilty of any irregular behavior there," and such a punishment would be cruel and unusual. *Id.*, at 667.

A half decade later, in *Powell*, a splintered plurality of this Court explained how to distinguish between status-based and conduct-based criminal prohibitions. *Powell*, 392 U. S., at 517–518 (plurality opinion). Powell had been convicted of public intoxication, and he asserted on appeal that, because he was afflicted with the disease of chronic alcoholism, he could not help appearing in public while drunk. He therefore argued that under the logic of *Robinson*, punishing him for public intoxication would violate the Eighth Amendment. *Id.*, at 517.

This Court disagreed, affirming the defendant's conviction. No opinion garnered a majority, but Justice Marshall, writing for a four-Justice plurality, rejected conflating the act of being drunk in public with the status of being an alcoholic. The plurality held that after *Robinson*, criminal penalties do not violate the Eighth Amendment where "the accused has committed some act, [and] has engaged in some behavior, which society has an interest in preventing." *Powell*, 392 U. S., at 533 (plurality opinion). The statute in question was constitutional, it reasoned, because the prohibition did not seek "to punish a mere status," but to impose a "criminal sanction for public behavior which may create

15

substantial health and safety hazards, both for [the defendant] and for members of the general public." *Id.*, at 532.

As with the public intoxication prohibition in *Powell*, San Francisco's laws that prohibit camping, sleeping, and lying at certain times and in certain locations do not punish status, but instead regulate conduct. Nonetheless, San Francisco has been enjoined from enforcing those laws based on the Ninth Circuit's misinterpretation of *Powell*.

### 2. The decision below misapplies *Marks* and erroneously interprets *Powell*.

In *Martin*, the Ninth Circuit considered the application of *Powell* in the context of criminal penalties for sleeping or lying on public property. To invent a precedent where none existed, the *Martin* panel pointed to the opinion of "four dissenting Justices" who argued, albeit unsuccessfully, that "criminal penalties may not be inflicted upon a person for being in a condition he is powerless to change." *Martin*, 920 F. 3d, at 616 (quoting *Powell*, 392 U. S., at 567 (Fortas, J., dissenting)). The *Martin* panel contended the dissent "adopted a position consistent with that taken by Justice White" in his concurrence in the judgment, and so it concluded that "five Justices gleaned from *Robinson* the principle" that "*compels* the conclusion that the Eighth Amendment prohibits the imposition of criminal penalties for sitting, sleeping, or lying outside on public

16

property for homeless individuals who cannot obtain shelter." *Id.*, at 616 (emphasis added).

The panel decision below merits summary disposition, because its Eighth Amendment holding relies solely on this flawed and outcome-determinative misapplication of this Court's precedents. See *Johnson II*, 72 F. 4th, at 875 n. 3 (describing *Martin*'s holding as "controlling law in the Ninth Circuit, to which we are required to adhere"). *Martin* turned *Powell* on its head, transforming the reasoning of the *dissent* into controlling precedent. But in cases like *Powell* – a fractured 4-1-4 decision – this Court's instructions in *Marks* guide any analysis. *Marks* counsels precisely against finding Supreme Court precedent from dissent-plus-concurrence-dicta. Rather, it holds that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members *who concurred in the judgments* on the narrowest grounds.'" *Marks*, 430 U. S., at 193 (plurality opinion) (emphasis added) (quoting *Gregg*, 428 U. S., at 169 n. 15).

*Martin* disregarded this standard in "compel[ing] a conclusion" derived instead from the four dissenting Justices in *Powell*. *Martin*, 920 F. 3d, at 616. In so doing, *Martin* and the panel decision below further solidify the Ninth Circuit's recent and aberrant practice of misapplying the *Marks* rule. Several years before *Martin*, in *United States* v. *Davis*, 825 F. 3d 1014 (CA9 2016), an en banc panel of the Ninth Circuit declined to adopt this Court's instruction in *Marks*. Although it

17

acknowledged *Marks*'s instruction "to consider the opinions *only* of 'those Members who concurred in the judgments on the narrowest grounds' when deriving a rule from a fractured Supreme Court decision," *id.*, at 1024 (quoting *Marks*, 430 U. S., at 193) (emphasis added), *Davis* pointed to a handful of decisions where courts arguably "considered dissenting opinions when interpreting fragmented Supreme Court decisions." *Davis*, 825 F. 3d, at 1024. On this basis, the Ninth Circuit en banc panel "assum[ed] but [did] not decide that dissenting opinions may be considered in a *Marks* analysis." *Id.*, at 1025.

*Martin* and the panel decision below went beyond merely assuming dissenting opinions may be *considered*: their holdings *ratified* the dissenting Justices' reasoning as controlling precedent. But lower courts applying fractured decisions should look only to the views of Justices *concurring* in the judgment, and then apply only the holding of the position concurring in the judgment on the narrowest grounds, if one exists. To the degree any such opinion exists in *Powell*, that opinion was *not* the opinion of Justice White.[5]

---

[5] Perhaps because he dissented in *Robinson*, Justice White's concurrence in the judgment in *Powell* seemed as much aimed at highlighting difficulties stemming from the application of *Robinson* as in setting out circumstances in which conduct-based prohibitions might violate the Eighth Amendment. While Justice White held open the possibility that some *hypothetical* conviction under the statute in question *might* violate the Eighth Amendment under the majority's rule in *Robinson*, he did so in *dicta*, and seemingly to explain his disagreement with the majority's Eighth Amendment holding in *Robinson*. 392 U. S., at 548–549

18

Rather, as Petitioner notes, see Brief of Petitioner 27–28, to the extent any opinion should control the lower courts, it is either Justice Marshall's plurality opinion[6] or Justice Black's concurrence,[7] both of which anticipated the challenges courts would face in determining when involuntary conduct rises to the level of status. Similarly, as San Francisco discusses in Part III, *infra*, following *Martin* and *Johnson II*, courts and municipalities in the Ninth Circuit have struggled mightily in determining whether (and on what documented basis) unhoused individuals may be considered voluntarily versus involuntarily homeless.

_____

(White, J., concurring in the result). Justice White's dicta contained in a concurrence in the judgment therefore does not – and under *Marks* cannot – serve as controlling precedent. *Marks*, 430 U. S., at 193.

[6] Justice Marshall's plurality opinion recognized courts would be ill-suited to the "task" of distinguishing between those who merely committed crimes and those who have a compulsion to do so. *Powell*, 392 U. S., at 536 (plurality opinion). Such inquiries would expand the "scope and content" of "a constitutional doctrine of criminal responsibility" and demand that the Court become, "under the aegis of the Cruel and Unusual Punishment Clause, the ultimate arbiter of standards of criminal responsibility." *Id.*, at 533–534.

[7] Justice Black anticipated that adopting the dissent's position would "significantly limit the States in their efforts to deal with a widespread and important social problem" and "tightly restrict state power to deal with a wide variety of other harmful conduct." *Powell*, 392 U. S., at 537 (Black, J., concurring).

19

### B. Other circuits have correctly rejected the Ninth Circuit's erroneous dissent-as-precedent application of *Marks*.

*Martin*'s dissent-as-precedent approach, ratified by the panel majority below, stands in stark contrast to a number of other Circuits, including the Seventh, Eighth, Eleventh, and D.C. Circuits, each of which has properly recognized the limits articulated by *Marks*.

**D.C. Circuit:** An en banc panel of the D.C. Circuit first recognized in *King* v. *Palmer* that it was not "free to combine a dissent with a concurrence to form a *Marks* majority." 950 F. 2d 771, 783 (CADC 1991). Rather, "when there is no explicit majority agreement on all the analytically necessary portions of a Supreme Court opinion. . . . the application of *Marks* will not yield a majority holding" at all. *Id.*, at 784. The D.C. Circuit later elaborated further that " 'all the analytically necessary portions of a Supreme Court opinion' must overlap in rationale in order for a controlling opinion to be discerned pursuant to *Marks*; if no such common rationale exists the Supreme Court precedent is to be read only for its persuasive force." *United States* v. *Epps*, 707 F. 3d 337, 349 (CADC 2013) (quoting *King*, 950 F. 2d, at 784).

**Seventh Circuit:** In *Gibson* v. *American Cyanamid Company*, 760 F. 3d 600, 620 (CA7 2014), the Seventh Circuit reversed a district court decision that reasoned that a single Justice in concurrence plus "four *dissenting* Justices" "combined for a majority of the Court" for a given proposition (emphasis in

20

original). The Seventh Circuit rightly rejected this approach, because "under *Marks*, the positions of those Justices who *dissented* from the judgment are not counted in trying to discern a governing holding from divided opinions." *Id.*

**Eighth Circuit:** The Eighth Circuit, in *United States* v. *Anderson*, 771 F. 3d 1064, 1069 n. 2 (CA8 2014), similarly refused to "read the conglomeration of the dissenting opinion of four Justices combined with the concurring opinion of the Chief Justice to constitute binding precedent," given *Marks*.

**Eleventh Circuit:** Last, in *United States* v. *Robison*, 505 F. 3d 1208, 1221 (CA11 2007), the Eleventh Circuit bluntly acknowledged that "*Marks* does *not* direct lower courts interpreting fractured Supreme Court decisions to consider the positions of those who dissented."

Each of those Circuits, unlike the Ninth, has properly applied *Marks*, and limited any application of Supreme Court precedents to opinions concurring in the judgment. The Ninth Circuit erred below, and its decision warrants summary reversal, or vacatur in the alternative, on this straightforward basis.

## III. The decision below has led to significant confusion in its application.

Premised on an unfounded extension of *Powell*, the Ninth Circuit held that "'so long as there is a greater number of homeless individuals in [a

21

jurisdiction] than the number of available beds [in shelters]', [a] jurisdiction cannot prosecute homeless individuals for 'involuntarily sitting, lying, and sleeping in public'." *Martin*, 920 F. 3d, at 617. This holding rests on the premise that, for unhoused individuals, sitting, sleeping, or lying outside on public property "is involuntary and inseparable from status." *Id.*, at 617. But none of the opinions constituting the majority in *Powell* – the only opinions that may possibly be considered a "holding" under *Marks* – even hinted at the possibility that a prohibition on involuntary conduct could rise to the level of a constitutional violation outside the narrow context of physiological compulsions related to drug and alcohol disorders. See 392 U. S., at 526 (plurality opinion); *id.*, at 537–540 (Black, J., concurring); *id.*, at 548–554 (White, J., concurring in the result). Given this limitation, it is unsurprising that *Martin*'s holding has led to grave difficulties in its application both at the Ninth Circuit and in the district courts, because no concurring opinion in *Powell* can support the holding of the panel majority below.

Although the revised panel decision in *Johnson II* no longer *expressly* refers to *Martin*'s limiting principle as a "formula," *Martin*'s formula-like reasoning remains controlling law, and the holding of the decision below remains that it is unconstitutional to impose sanctions against "involuntarily homeless persons for sleeping in public." *Johnson II*, 72 F. 4th, at 877. That holding continues to confound courts and municipalities in the Ninth Circuit – including in the litigation involving San Francisco.

22

In particular, confusion abounds concerning when unhoused individuals may be considered "voluntarily" versus "involuntarily" homeless. In entering the preliminary injunction against San Francisco, the district court appeared to apply the "formula approach" to determining whether homelessness is voluntary, and declined to consider the City's position that *Martin* and the original panel decision below "permit[ted] an inquiry beyond [this] basic equation." *Coal. on Homelessness*, 2022 WL 17905114, at *23. Nor did the district court allow for a fact-specific inquiry concerning whether, in particular circumstances, an individual may be considered voluntarily homeless. *Id.*, at *23–24. The district court also relied on the formula for the scope of the preliminary injunction's duration: the order states that it remains in place "as long as there are more homeless individuals in San Francisco than there are shelter beds available." *Id.*, at *28.

Crucially, the court's injunction does not define its term "involuntarily homeless,"[8] nor whether plaintiffs or San Francisco must meet the burden to establish voluntary or involuntary homelessness. The revised panel decision below provides insufficient guidance as well: it not only expressly declined to "decide who would bear such a burden," but it conceded that lower courts had been left to each take their own stab at addressing this critical issue. *Johnson II*, 72 F. 4th, at 894

---

[8] As noted, San Francisco sought clarity from the district court as to the definition of involuntarily homeless, which the court declined to provide. See *supra* note 3 and accompanying text.

23

nn. 32-33 (citing cases). Petitioner and amici have been given little direction about how to legally define or establish voluntariness generally, let alone on a case-by-case basis. Though San Francisco sought similar binding guidance from the Ninth Circuit, the court to date has not provided it, declining to do so by pointing to a definition of "involuntarily homeless" provided by the parties when asked for one, *sua sponte*, at oral argument.[9] Not only is the basis for the enforceability of this ad hoc definition unclear, the Ninth Circuit's approach leaves each municipality to struggle to comply with the law on a lawsuit-by-lawsuit, case-by-case basis.

The decision below also raises immense administrability challenges for municipalities like San Francisco. Because an individual's status as being voluntarily or involuntarily homeless may change by the day, it remains unclear what documentation must be provided – and by whom – to establish compliance with the injunction when reaching encampment resolutions with every individual person experiencing homelessness. Nor is it judicially administrable for courts to supervise each of the countless interactions that occur each day between a member of the City's staff and such

---

[9] In a minute order, the Ninth Circuit panel denied San Francisco's motion to modify the preliminary injunction on the basis that "the parties agree that a person is not involuntarily homeless if they have declined a specific offer of available shelter or otherwise have access to such shelter or the means to obtain it." Order Denying CCSF's Motion to Modify Prelim. Injunction, *Coal. on Homelessness et al.* v. *City and Cnty. of San Francisco, et al.*, No. 23-15087, ECF No. 88 (Sept. 5, 2023).

24

persons. Yet municipalities in the Ninth Circuit have no choice but to struggle to comply under threat of court sanction.

### IV. This Court should grant the petition to summarily reverse or vacate and remand the panel decision below.

As this brief evidences, the homelessness crisis is challenging and complex. But the legal error below is not. The decision below, like *Martin*, straightforwardly conflicts with this Court's instructions in *Marks* for applying 4-1-4 decisions, and it rests on a flawed and erroneous interpretation of *Powell*.

Summary disposition is usually reserved for instances where, as here, the decision below is clearly in error, the facts are undisputed, and the law in question is well settled. *Schweiker* v. *Hansen*, 450 U. S. 785, 791 (1981) (Marshall, J., dissenting). The issue presented here is "important but not complex," and thus appropriately resolved in a summary disposition. Richard C. Chen, *Summary Dispositions as Precedent*, 61 Wm. & Mary L. Rev. 691, 699 (2020).

Summary reversal will efficiently and expeditiously address the needs of Petitioner, amici, and numerous other municipalities in the Ninth Circuit. Notably, this Court has recently and frequently summarily reversed outlier decisions arising out of the Circuit below. See, *e.g.*, *Rivas-Villegas* v. *Cortesluna*, 142 S. Ct. 4 (2021); *City of Escondido, Cal.* v. *Emmons*,

25

139 S. Ct. 500 (2019); *Kisela* v. *Hughes*, 138 S. Ct. 1148 (2018); *Kernan* v. *Cuero*, 583 U. S. 1 (2017).

In the alternative, this Court has also frequently granted to vacate erroneous decisions out of the Ninth Circuit, remanding with instructions to properly apply its precedents. See, *e.g.*, *Alaska* v. *Wright*, 141 S. Ct. 1467 (2021); *Pakdel* v. *City & Cnty. of San Francisco, California*, 141 S. Ct. 2226 (2021); *Shinn* v. *Kayer*, 141 S. Ct. 517 (2020).

In particular, this Court has granted, vacated, and remanded so that the Ninth Circuit can properly apply precedent derived from a 4-1-4 plurality decision, the precise circumstances at issue here. *E.g.*, *Thompson* v. *Hebdon*, 140 S. Ct. 348 (2019) (granting, vacating, and remanding to reconsider holding of plurality opinion in *Randall* v. *Sorrell*, 548 U. S. 230 (2006)). And it has also done so in order for a constitutional challenge to properly develop in the courts below. *E.g.*, *Johnson* v. *Bd. of Educ. of City of Chicago*, 457 U. S. 52, 53 (1982) (granting, vacating, and remanding for "subsequent development" and "further consideration" in the lower courts of a constitutional challenge).

————◆————

## CONCLUSION

This Court should grant Petitioner's writ of certiorari to summarily reverse or vacate and remand the panel decision below, and in so doing clarify that the Ninth Circuit's acknowledged practice of not just "assum[ing]" but deciding "that dissenting opinions may

26

be considered in a *Marks* analysis," *Davis*, 825 F. 3d, at 1025, contravenes what this Court said in *Marks*: that only opinions concurring in the judgment may be considered. The many other important issues raised in the Petition may then be appropriately adjudicated by the lower courts in the first instance.

Respectfully submitted,

DAVID CHIU
  San Francisco City Attorney
JESSE C. SMITH
  Chief Assistant City Attorney
YVONNE R. MERÉ
  Chief Deputy City Attorney
TARA M. STEELEY
  Chief of Appellate Litigation
  *Counsel of Record*
MIGUEL A. GRADILLA
DAVID S. LOUK
  Deputy City Attorneys
CITY ATTORNEY'S OFFICE
City Hall Room 234
One Dr. Carlton B. Goodlett Pl.
San Francisco, CA 94102
Telephone: (415) 554-4655
Tara.Steeley@sfcityatty.org

*Attorneys for Amici Curiae*
  *City and County of*
  *San Francisco and*
  *Mayor London Breed*