LAW OFFICES OF

## WALKUP, MELODIA, KELLY & SCHOENBERGER

A PROFESSIONAL CORPORATION

650 CALIFORNIA STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94108-2615
T: (415) 981-7210 · F: (415) 391-6965

MICHAEL A. KELLY (State Bar #71460)
mkelly@walkuplawoffice.com
RICHARD H. SCHOENBERGER (State Bar #122190)
rschoenberger@walkuplawoffice.com
MATTHEW D. DAVIS (State Bar #141986)
mdavis@walkuplawoffice.com
ASHCON MINOIEFAR (State Bar #347583)
aminoiefar@walkuplawoffice.com

SHANIN SPECTOR (Pennsylvania State Bar No. 40928)
(Pro Hac Vice Application Pending)
shanin.specter@klinespecter.com
ALEX VAN DYKE (CA State Bar No. 340379)
alex.vandyke@klinespecter.com
KLINE & SPECTER, P.C.
1525 Locust Street
Philadelphia, PA 19102
Telephone: (215) 772-1000
Facsimile: (215) 772-1359

**ATTORNEYS FOR ALL PLAINTIFFS**

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE ROE, an individual; MARY ROE, an individual; SUSAN ROE, an individual; JOHN ROE, an individual; BARBARA ROE, an individual; PHOENIX HOTEL SF, LLC, a California limited liability company; FUNKY FUN, LLC, a California limited liability company; and 2930 EL CAMINO, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a California public entity,<br><br>Defendants. | Case No. 3:24-cv-01562-DMR<br><br>**DECLARATION OF MATTHEW D. DAVIS IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED** |

I, Matthew D. Davis, declare as follows:

1.      I am an attorney duly admitted to practice before this Court.  I am a partner with Walkup, Melodia, Kelly & Schoenberger, attorneys of record for All Plaintiffs.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.  I make this declaration based in support of Plaintiffs Administrative Motion to Consider Whether Cases Should Be Related.

2.      Attached hereto as **Exhibit A** is a true and correct copy of the complaint *Jane Roe, et al. v. City and County of San Francisco*, (Case No. 3:24-cv-01562-DMR), ("*Jane Roe*"), filed on March 14, 2024.

3.      I communicated with the San Francisco City Attorney's office about whether the City would join or oppose the motion. That office informed me that it would have to review the motion before a decision could be made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 14th day of March, 2024, at San Francisco, California.


By:      */S/ Matthew D. Davis*
MATTHEW D. DAVIS

EXHIBIT A

LAW OFFICES OF

**WALKUP, MELODIA, KELLY & SCHOENBERGER**
A PROFESSIONAL CORPORATION

650 CALIFORNIA STREET, 26ᵗʰ FLOOR
SAN FRANCISCO, CALIFORNIA 94108-2615
T: (415) 981-7210 · F: (415) 391-6965

MICHAEL A. KELLY (Ca. State Bar #71460)
mkelly@walkuplawoffice.com
RICHARD H. SCHOENBERGER (Ca. State Bar #122190)
rschoenberger@walkuplawoffice.com
MATTHEW D. DAVIS (Ca. State Bar #141986)
mdavis@walkuplawoffice.com
ASHCON MINOIEFAR (Ca. State Bar #347583)
aminoiefar@walkuplawoffice.com

SHANIN SPECTER, (Pennsylvania State Bar No. 40928)
 shanin.specter@klinespecter.com
 (Pro Hac Vice Application Pending)
ALEX VAN DYKE (Ca. State Bar No. 340379)
 Alex.VanDyke@klinespecter.com
KLINE & SPECTER, P.C.
1525 Locust Street
Philadelphia, PA 19102
Telephone: (215) 772-1000
Facsimile:  (215) 772-1359

**ATTORNEYS FOR ALL PLAINTIFFS**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE ROE, an individual; MARY ROE, an individual; SUSAN ROE, an individual; JOHN ROE, an individual; BARBARA ROE, an individual; PHOENIX HOTEL SF, LLC, a California limited liability company; FUNKY FUN, LLC, a California limited liability company; and 2930 EL CAMINO, LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, a California public entity, <br><br> Defendant. | Case No. <br><br> **COMPLAINT FOR INJUNCTIVE AND EQUITABLE RELIEF** |

# I. INTRODUCTION

1. The Tenderloin neighborhood lies in the heart of San Francisco, bounded on the north by Geary Street, on the east by Mason Street, on the south by Market Street, and on the west by Polk Street.

2. The Tenderloin has been a downtown residential community since shortly after the California Gold Rush in 1849. It was among the first districts in San Francisco to be integrated, and to this day remains culturally, racially, economically, and ethnically diverse.

3. Many families call the Tenderloin their home. Over 3,000 children live there, more per capita than almost any other district in San Francisco.

4. Living in the Tenderloin is affordable compared to other San Francisco neighborhoods. Many residents work in the service industry and earn low, hourly wages. Many are disabled or are senior citizens who must get by on fixed incomes.

5. The Tenderloin has also been a place where entrepreneurs with little capital, from the hardworking owner of a sandwich shop to the operator of a boutique hotel, can start a business.

6. Plaintiffs are residents of and stakeholders in the Tenderloin. Today, they and others who live, go to school, work or run a business in that district face an existential crisis caused by defendant City and County of San Francisco's treatment of their neighborhood as a "containment zone" for narcotic activities. For years, the *de facto* policy of the City has been to corral and confine illegal drug dealing and usage, and the associated injurious behaviors, to the Tenderloin. The City tries to keep such crimes and nuisances out of other San Francisco neighborhoods by "containing" them in the Tenderloin.

7. The City's acts and omissions have harmed and damaged each plaintiff by causing the public sidewalks and spaces around their homes and businesses to become dangerous, impassable and unsanitary. However, plaintiffs do not seek to recover money damages from the City in this lawsuit. Rather, they bring this action

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF

to stop the City from treating the Tenderloin as a containment zone. Plaintiffs sue to force the City to comply with its responsibility to ensure that their neighborhood's sidewalks and public spaces are clean, safe and accessible, and to treat them and their neighbors fairly and equitably.

8.   While plaintiffs are currently unaware of any writing that formally codifies the City's containment zone policy, it is undisputable that for years the City has known that drug dealers brazenly sell narcotics on the streets and sidewalks in the Tenderloin. Similarly, for years the City has allowed individuals to openly buy and use narcotics in the Tenderloin, and to remain, under the obvious influence of drugs, on the sidewalks and public spaces of the neighborhood.

9.   Over the past approximate six years, fentanyl and other potent, highly addictive, and deadly synthetic opiates have come to dominate the narcotics market in the Tenderloin.[1] Fentanyl's "effects include extreme happiness, drowsiness, nausea, confusion, constipation, sedation, tolerance, addiction, respiratory depression and arrest, unconsciousness, coma, and death…. People addicted to fentanyl who stop using it can have severe withdrawal symptoms that begin as early as a few hours after the drug was last taken. These symptoms include: muscle and bone pain; sleep problems; diarrhea and vomiting; cold flashes with goose bumps; uncontrollable leg movements; [and] severe cravings. These symptoms can be extremely uncomfortable…."[2] Fentanyl addicts engage in "compulsive drug seeking and use despite adverse consequences,"[3] such as refusing treatment, losing employment, alienating and breaking contact with family and friends, living on the streets,

---

[1] https://www.sfchronicle.com/projects/san-francisco-drug-overdose-deaths/#:~:text=In%20recent%20years%2C%20that%20epidemic,to%20address%20the%20escalating%20epidemic.
[2] https://nida.nih.gov/publications/drugfacts/fentanyl
[3] See https://nida.nih.gov/publications/drugs-brains-behavior-science-addiction/drug-misuse-addiction#:~:text=Addiction%20is%20defined%20as%20a,stress%2C%20and%20self%2Dcontrol.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF

1   ignoring personal hygiene, and resorting to crime to support their habit.

2       10.    The City's *de facto* containment zone policy effectively herds fentanyl

3   users into the Tenderloin, where they can easily buy fentanyl and openly get high.[4]

4   Once there, they quickly learn that the City and others will provide "support" if they

5   live on that neighborhood's streets, with some organizations going so far as to deliver

6   drug kits to their sidewalk encampments. As a foreseeable consequence of their

7   disease, fentanyl addicts opt to live on the Tenderloin's sidewalks, as opposed to, for

8   example, undergoing treatment in a structured residential setting.

9       11.    Addicts living on the Tenderloin's streets foreseeably support their habit

10  by stealing (*e.g.*, shoplifting, car break-ins, burglaries, robberies) and hawking the

11  stolen merchandise on the sidewalks. As their disease progresses, their mental and

12  physical health declines, resulting in them acting erratically, ignoring serious

13  medical problems (*e.g.*, open sores at injection sites), rummaging through trash,

14  discarding garbage on the sidewalk around them, going partially clothed, and

15  defecating in public.

16      12.    Those who deal fentanyl and other deadly narcotics know that the City

17  treats the Tenderloin as a containment zone. They thus flock to the neighborhood

18  and blatantly sell drugs to the addicts living on the sidewalks. The City knows that

19  the fentanyl dealers who operate in the Tenderloin belong to competing gangs, and

20  that they use intimidation, threats and violence to protect their market.

21      13.    Drug dealers not only sell narcotics to the addicts who the City allows to

22  live on the sidewalks, but they take advantage of the City's attitude about the

23  Tenderloin in other ways. For example, to avoid law enforcement consequences,

24  dealers recruit addicts to stash narcotics in their encampments, and to function as

25  go-betweens in drug transactions.

26      14.    There is no therapeutic benefit to, and nothing compassionate about,

27  ───────────────

28  [4] Even more pernicious illegal narcotics are emerging. See, *e.g.*,
https://www.dea.gov/alert/dea-reports-widespread-threat-fentanyl-mixed-xylazine

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

1  allowing and enabling someone in the throes of addiction to deteriorate on the

2  Tenderloin's streets. But it does render the sidewalks and other public spaces in the

3  neighborhood unsanitary, unsafe and inaccessible, causing great harm to the

4  residents, local businesses and visitors.

5     15.    The City nevertheless prefers that people in the grip of addiction stay on

6  the streets of the Tenderloin rather than go to other San Francisco districts, even

7  though the City knows that those it herds to Tenderloin will: (a) openly inject and

8  smoke narcotics in front of children, seniors and others; (b) roam the neighborhood

9  while intoxicated or undergoing withdrawal; (c) block passage of the sidewalks with

10  encampments, bulky items and illegal street vending; (d) commit crimes to support

11  their habit; and (e) produce garbage, used drug paraphernalia, and human waste

12  that will befoul the area.

13     16.    As part of its containment zone policy, the City permits throngs of

14  people to gather on the Tenderloin's sidewalks, where they freely sell, buy, and use

15  illegal narcotics, fight, commit thefts, and hawk stolen goods.[5] The image below

16  shows a McAllister Street sidewalk shortly after midnight.

17
18
19
20
21
22
23
24
25
26



27

28  _____

[5] See https://sfstandard.com/2024/03/07/san-francisco-kids-selling-drugs-stolen-goods/

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

17.     The City has allowed what is seen above to become the rule, not the exception, in the Tenderloin. It is inconceivable that the City would tolerate such late-night turmoil in Pacific Heights, the Inner Sunset, Alamo Square, Bernal Heights, or Telegraph Hill.

18.     Foreseeably, the City's containment zone policy has led to violence in the public spaces of the Tenderloin. There have been drug-related murders, stabbings and gun battles on the streets and sidewalks.

19.     In sum, the City-owned public walkways and spaces in the Tenderloin are dangerous, unsanitary and no longer open and accessible to plaintiffs and other members of the public. The consequences of the containment zone policy to the residents of and stakeholders in the Tenderloin have been devastating and constitute a violation of their dignity and fundamental civil rights. This is a state-created danger. It is both a public and a private nuisance. It has deprived plaintiffs of equal protection of the law and of fundamental liberty interests protected by the United States and California Constitutions. And it has deprived disabled people, included two plaintiffs in this suit, of the full and equal use of the Tenderloin's sidewalks and public spaces.

## II. JURISDICTION AND VENUE

20.     Plaintiffs assert the claims herein pursuant to 42 U.S.C. § 1983; the Americans with Disabilities Act, 42 U.S.C. §§ 12131 et seq. (the "ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 et seq. ("Section 504"); and the Fifth and Fourteenth Amendments of the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1367, 2201 & 2202.

21.     This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, as they arise from the same case or controversy as plaintiffs' federal claims.

22.     Plaintiffs only seek equitable and injunctive relief for their state law claims. Accordingly, plaintiffs need not submit a claim with any local public entity

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

6

COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF

1  pursuant to the California Tort Claims Act, California Government Code §§ 810 *et*

2  *seq.*

3          23.     The acts and omissions complained of herein occurred in the Northern

4  District of California. Accordingly, pursuant to 28 U.S.C. § 1391, venue is proper in

5  this Judicial District.

### III. INTRADISTRICT ASSIGNMENT

7          24.     The events or omissions that give rise to the claims asserted herein

8  occurred within the City and County of San Francisco, and the property that is the

9  subject of this action is situated in the City and County of San Francisco.

### IV. THE PARTIES

**A.      Plaintiff Jane Roe**

12         25.     Plaintiff Jane Roe is a pseudonym and not her real name. Submitted

13  with this complaint is an application for an order permitting her to use a pseudonym

14  to protect her safety and the safety of her family.

15         26.     Jane Roe works full-time as a housekeeper. She is married. Her

16  husband works full-time as a cook. Both are immigrants. Neither speaks much

17  English. They have two daughters, ages 9 and 5. The family lives in an apartment on

18  Ellis Street, between Hyde and Larkin, in the center of the Tenderloin. They share

19  the apartment with another family with young children.

20         27.     Open-air drug deals occur on the sidewalk in front of Jane Roe's

21  apartment building. She describes the drug-dealing as happening "all day, every

22  day." Those involved in narcotics sales block the entrance to her building. The image

23  below shows a typical scene, including blatant drug transactions.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

7

COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF



28. When Jane Roe enters or leaves her apartment, she encounters drug dealers, users openly injecting or smoking narcotics, and people lying on the sidewalk who appear unconscious or dead.

29. On one occasion, a person in front of Jane Roe's building threatened to cut her throat. On other occasions, people threatened her with knives and hammers.

30. People gathered in front of the family's apartment building sometimes start smokey bonfires, using things like old tires, trash, or discarded furniture as fuel. One of Jane Roe's daughters has severe asthma and cannot tolerate smoke. Jane Roe has politely asked people in front of the building not to burn things for the sake of her daughter's health. They responded by threatening to kill her. The City does nothing to stop the sidewalk fires.

31. Encampments and bulky items block the sidewalk in front of Jane Roe's apartment. Habitants of the encampments keep unleashed dogs that bark and growl at Jane Roe and her family when they pass. Displays of stolen goods for sale block the sidewalk. Trash and biohazards, such as used syringes and feces, litter the area.

1    She and her husband and daughters must step into the busy street to bypass these

2    hazards, dangers and obstacles.

3        32.    The images below depict typical conditions that Jane Doe and her family

4    encounter when they go outside.





LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

9
COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF





33.    A mass shooting, believed to be drug related, that left one person dead

COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

and four injured recently happened near Jane Doe's home.[6] She rarely sees uniformed members of the San Francisco Police Department on foot patrol in the neighborhood. When she has seen SFPD officers, she has asked for help with the people who have taken over the sidewalks. In response, officers have told her that there is nothing they can do because, "the City gives them more protection than you."

34. As an example of how the City treats the Tenderloin as a containment zone, the City recently decided to enforce the laws that prohibit illegal street vending in the Mission neighborhood.[7] The City has not done the same in the Tenderloin. Foreseeably, illegal street vending increased in the Tenderloin after the City's crackdown in the Mission.

35. Every school day morning, Jane Roe escorts her daughters to the bus stop and then rides with them to their school. She does the same thing in reverse in the afternoon. She is terrified for her daughters' safety each time she makes the trip. Her girls can never be outside unless accompanied by her or her husband.

36. When Jane Roe ventures out of her apartment, either alone or with family, she "is really scared because when I walk, I am always afraid something bad will happen to us." She and her husband are not high wage earners. She says, "I really wish my daughters could grow up in a better place, which does not have so much corruption, drugs, bad people. It is a frustration I have every day. We don't have enough money to move."

## B. Plaintiff Susan Roe

37. Plaintiff Susan Roe is a pseudonym and not her real name. Submitted with this complaint is an application for an order permitting her to use a pseudonym to protect her personal safety.

38. Susan Roe lives in a residence on Eddy Street, between Jones and

---

[6] https://www.ktvu.com/news/tenderloin-shooting-leaves-1-dead-four-injured
[7] https://www.axios.com/local/san-francisco/2024/02/08/sf-illegal-vending-ban-law-when-extended

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

1  Leavenworth, in the Tenderloin. She is elderly. She is disabled. She depends on a

2  walker to ambulate.

3     39.    The sidewalks and public spaces in Susan Roe's neighborhood are

4  impassable and inaccessible to her. Encampments and bulky items, such as duffle

5  bags, shopping carts and disassembled bicycles, obstruct the sidewalks.

6     40.    Large crowds also block the sidewalks around Susan Roe's residence.

7  People in these crowds openly smoke and inject drugs, scream and act erratically.

8  She attends community events and receives services at a senior center on Turk

9  Street. These events and services are important to her. However, she dreads going to

10 the center because intimidating crowds block a corner where she must cross the

11 street. She must also be on the lookout for and navigate around excrement, used

12 syringes, vomit and garbage. These obstacles make it impossible for her to use the

13 sidewalk. She instead walks in the busy street, which is dangerous.

14 **C.    Plaintiff Mary Roe**

15    41.    Plaintiff Mary Roe is a pseudonym and not her real name. Submitted

16 with this complaint is an application for an order permitting her to use a pseudonym

17 to protect her personal safety.

18    42.    Mary Roe, a native of San Francisco, is a senior citizen and the mother

19 of grown children. She works as a counselor. She has pulmonary and spinal

20 conditions that make it difficult for her to walk. She lives in the Tenderloin, in an

21 apartment on Turk Street, between Jones and Leavenworth. She laments, "My

22 neighborhood has become disgusting and dangerous."

23    43.    Crowds of drug dealers and users block the sidewalks around Mary

24 Roe's apartment building. Encampments, stolen goods for sale, carts, disassembled

25 bicycles, and other bulky items also obstruct passage. When she ventures outside,

26 she has no choice but to jaywalk, which is especially dangerous because her age and

27 medical conditions make it difficult for her to avoid moving vehicles.

28    44.    Mary Roe sees people inject and smoke narcotics on the sidewalk. She

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

12

COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF

1   must avoid people who scream and act erratically, or who are partially clothed or

2   completely naked. She sees people defecate in public. The sidewalks around her home

3   are littered with garbage, human waste, and used drug paraphernalia. There have

4   been so many overdoses that she often wonders whether a person lying prostrate on

5   the sidewalk is dead rather than merely passed out. In sum, whenever she ventures

6   outside, she is always afraid and frequently mortified.

7        45.    There is a storefront on Mary Roe's block occupied by an organization

8   that purports to provide a "community building program." People affiliated with that

9   organization hand out fentanyl drug kits, *e.g.*, packets with foil, tubes and smoking

10   devices, on the sidewalk in front of the storefront. Crowds gather when these

11   handouts occur. When the people finish distributing the kits, they retreat inside the

12   storefront, locking the doors behind them. Chaos then ensues. People ingest drugs,

13   become intoxicated and act erratically. Mary Roe has observed other citizens try to

14   discourage people from ingesting narcotics on the sidewalk, only to have people

15   affiliated with the organization come out of the storefront and intercede, proclaiming

16   that people have the right to use drugs in public. The City knows that this

17   organization and other groups hand out fentanyl kits and encourage illegal drug use

18   in public spaces in the Tenderloin. The City would not tolerate such arrogant and

19   reckless conduct in other neighborhoods, but because the City has decided to treat

20   the Tenderloin as a containment zone, it does nothing to discourage such activity

21   despite the harm it causes to Tenderloin residents and stakeholders.

22        46.    Around the corner from Mary Roe's apartment, on the 200 block of

23   Leavenworth Street, are three markets that stay open all night. People gather in

24   front of these markets, especially after dark. They completely block the sidewalk

25   while selling, buying and using drugs and hawking stolen items. The same thing

26   happens near many other markets in the Tenderloin. The City would not tolerate

27   such nuisances around markets elsewhere, but because the City treats the

28   Tenderloin as a containment zone, the City does little to nothing in response.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

13

COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF

D.   **Plaintiff John Roe**

47.   Plaintiff John Roe is a pseudonym and not his real name. Submitted with this complaint is an application for an order permitting him to use a pseudonym to protect his personal safety.

48.   Plaintiff John Roe, born in South America, has resided in the United States for over 15 years. He is in his late 50s. He is a behavioral health worker. About four years ago he and his husband purchased a home near the corner of Turk and Larkin Streets in the Tenderloin.

49.   The conditions around his home "logistically and emotionally" affect and drain John Doe. Drug deals happen around his residence at all hours. Dealers dress a specific way and obviously belong to gangs. They are intimidating. He sees people on the sidewalk inject drugs. People light fires in front of his home. He hears people in the throes of drug-induced psychotic episodes scream. The medical examiner's van recently blocked his driveway to pick up the corpse of someone who overdosed. The images below show what he regularly encounters in front of home:



LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

14
COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

15
COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF



50.   John Roe sometimes hears gunshots. The drug-related violence leaves him fearful and in despair. He sees biological hazards and garbage "everywhere" on the sidewalks and streets. He recently encountered someone defecating in his doorway. When he asked that person to leave, the man threatened him.

51.   John Roe cannot walk on the sidewalks around his home because drug dealers and addicts gather and block passage. Encampments and stolen goods displayed for sale also make the sidewalks impassable. He must step into the street to bypass these dangers and obstacles.

52.   John Doe regularly reports the problems around his home to the City, which rarely responds. Despite the constant open-air crime, John Roe seldom sees members of the SFPD on foot patrol in his neighborhood.

### E.   Plaintiff Barbara Roe

53.   Plaintiff Barbara Roe is a pseudonym and not her real name. Submitted with this complaint is an application for an order permitting her to use a pseudonym to protect her personal safety.

54.   In 2020, Barbara Roe and her husband purchased a condominium in a

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

16

COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF

1   multi-unit building on McAllister Street in the Tenderloin.

2       55.     Large crowds gather in front of and around Barbara Roe's building

3   every night. The typical after-dark crowd ranges from seventy to over one hundred

4   people. Those in the crowd openly sell, inject and smoke drugs, and hawk stolen

5   items.

6       56.     Barbara Roe finds it "difficult and scary" to navigate through the crowds

7   around her residence. People under the influence block the door to her building.

8   When she politely asks them to move so that she can pass, she fears that they will

9   attack her. Recently, one of her neighbors was attacked and injured at the entrance

10  to their building and had to go to the emergency room to receive stitches. There are

11  bonfires on the sidewalk. The smoke sometimes triggers her building's fire alarm,

12  forcing her and her neighbors to evacuate into the threatening crowd.

13      57.     Barbara Roe must step into the busy street to bypass the sidewalk

14  obstacles near her building. The images below show typical nighttime conditions in

15  front of her building and on nearby sidewalks.



LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

17

COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF







LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210





**F.     The Phoenix Hotel Plaintiffs**

58.     Plaintiff Phoenix Hotel SF, LLC is a California limited liability company in good standing.

59.     A hotel has been in operation at 601 Eddy Street in the Tenderloin since the 1960s. In 1987, an affiliate of plaintiff Phoenix Hotel SF, LLC acquired a leasehold interest in the property, and renovated and converted it into the "Phoenix Hotel." The Phoenix Hotel has since become a San Francisco landmark and an iconic institution in the Tenderloin. The entrance to the Phoenix Hotel is on Eddy Street. Larkin Street borders the eastern side of the hotel property.

60.     Beginning in 2011, plaintiff Phoenix Hotel SF, LLC took over the leasehold interest and operations of the Phoenix Hotel.

61.     Plaintiff Funky Fun, LLC is a California limited liability company in good standing. In 2011, it opened a restaurant and bar within the Phoenix Hotel commonly known as "Chambers Eat + Drink" or the Chambers restaurant.

62.     Plaintiffs Phoenix Hotel SF, LLC and Funky Fun, LLC are hereafter referred to in the collective as the "Phoenix Hotel Plaintiffs."

63.     The principals of the Phoenix Hotel Plaintiffs care deeply about the Tenderloin. Since taking over the hotel and restaurant, the Phoenix Hotel Plaintiffs have been committed to improving and promoting the neighborhood.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

64.     From 1987 through 2019 at the hotel, and from 2011 through 2019 at the restaurant, business was vibrant. Operations brought many visitors to the Tenderloin and put the neighborhood in a favorable light. Guests of the hotel included famous musicians, artists and celebrities. People from all over the world dined at the Chambers restaurant and gave it rave reviews. The Phoenix Hotel Plaintiffs employed an average of about 50 people during this time, providing them with good jobs in the hospitality industry. The Phoenix Hotel Plaintiffs were proud of the employment, business, energy, goodwill and excitement that they brought to the Tenderloin.

65.     The pandemic of 2020 caused the restaurant to shut down completely and the hotel to scale back operations. The Phoenix Hotel Plaintiffs, however, were determined to survive and continue operations in the Tenderloin when the pandemic passed. However, conditions around the Phoenix Hotel have changed and worsened considerably since 2019.

66.     Because the City treats the Tenderloin as a containment zone, people who appear to be gang members now openly sell fentanyl and other potent drugs around the Phoenix Hotel. People freely inject and smoke and ingest drugs on the sidewalks around the property.

67.     The Phoenix Hotel Plaintiffs must comply with the Americans with Disabilities Act and other laws that mandate that their facilities be open and accessible to those with disabilities, *e.g.*, patrons who use a wheelchair. However, crowds of hostile people selling and using narcotics block passage of the sidewalks abutting the hotel. Encampments, garbage and biological hazards make it difficult or impossible for even able-bodied guests and patrons to navigate on the public walkways around the hotel. The images below depict typical conditions.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

20
COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF



68.   The conditions around the Phoenix Hotel scare prospective hotel guests and restaurant patrons. Current business has plummeted as a result, down by about two-thirds compared to 2011 to 2019. Below are excerpts from recent emails and social media reviews:

"The neighborhood is sort of shocking & sad - I have traveled the world & spent significant time in SF many years ago - SF is like a war zone these days - The Tenderloin needs to be cleaned up - at least around the hotel so guests feel safe upon arrival & walking out of the hotel."

****

"I wanted to give you a little update as we've just spoken to the client and unfortunately they have decided that they won't be going ahead with Chambers [restaurant] on this occasion. They thought the venue was great but there were concerns raised by the leadership team about the safety of the surrounding area so unfortunately they've had to discount it as a dinner venue."

****

"It's truly just the surroundings that ruin it for the place. Other than that it was a great stay. Sadly the people loitering on the street - doing drugs & burning something were VERY off putting. I generally am comfortable with street people but this was extreme. I know you can't change the neighborhood but I am hesitant to write a review because of that."

****

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

22

COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF

"Good: Hotel was beautiful clean and accommodating
Bad: Location was horrible, homeless everywhere, didn't
feel safe walking off the hotel parking lot."

****

"Know it's a difficult situation but the homeless and drug
dealers on the street corner would probably dissuade me
from booking at the Phoenix again. Love the staff, vibe but
just don't feel safe walking out of the hotel."

****

"This hotel is in a terrible neighborhood. Going out
anywhere was a challenge due to MANY drugged out
individuals carpeting the sidewalk along with thick litter.
I'm glad I survived."

69.     The average number of people employed by the Phoenix Hotel Plaintiffs has dropped to about 20 because of the downturn in business. It is difficult for the Phoenix Hotel Plaintiffs to retain existing employees and to hire new ones. When a hotel employee recently asked a trespasser to leave the parking lot, the man struck the employee on the head with an object. The restaurant has been unable to recruit a qualified chef because the neighborhood conditions deter applicants.

70.     The lease for the Phoenix Hotel ends in September 2025. Had the conditions in the Tenderloin in general and around the hotel in particular not deteriorated, then the Phoenix Hotel Plaintiffs would have renewed the lease. They want to continue to do business in the Tenderloin. They want to provide good jobs. They want to continue to improve and promote the neighborhood. However, renewing a lease is a long-term commitment that requires a reinvestment in the property and a good-faith belief that customers will patronize the business in the future. The current conditions around the hotel have caused the Phoenix Hotel Plaintiffs to decline to renew the lease.

## G.     The Best Western Plaintiff

71.     Plaintiff 2930 El Camino, LLC, a California limited liability company in good standing, has an ownership interest in real property located at 700 Eddy Street, on the northwest corner of Polk Stret, in the Tenderloin. The back of the property

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

23

COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF

borders Willow Street. Plaintiff 2930 El Camino, LLC operates a short-term hotel at this location that is commonly known as the "Best Western Road Coach Inn." Plaintiff 2930 El Camino, LLC is hereafter referred to as the "Best Western Plaintiff."

72.     The City's containment zone policy has caused horrific conditions on the sidewalks and public spaces around the Best Western Road Coach Inn. Narcotic transactions happen around the hotel at all hours. Addicts live in unsanitary sidewalk encampments next to the hotel. Hotel staff regularly clean and hose down the sidewalks abutting the hotel, but they are quickly re-littered with excrement, used syringes and garbage. The image below show trespassers ingesting drugs in the parking lot of the hotel, which is open to the street.



73.     The Best Western Plaintiff must comply with the Americans with Disabilities Act and other laws that mandate that its facilities be open and accessible to those with disabilities, *e.g.*, patrons who use a wheelchair. However, the sidewalks around the hotel are inaccessible to guests. The images below show typical conditions

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

24
COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF

1    on the Polk Street side of the hotel:





74.    Despite the efforts and hard work of hotel employees, the conditions on the sidewalks mortify and scare guests. Here are some recent online reviews:

"The staff is amazing & work really hard to make their guests comfortable. That being said; if your room is near the alley you get to listen to screaming all night and smell the outside toilet. Every morning the staff has to pressure wash the poo off the driveway and sidewalk. The smell doesn't go away. It's a great hotel. It would be amazing in another location and where guests felt safe."

****

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

25
COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF

"Sirens every 20 minutes, homeless and drugs were on all streets surrounding the hotel. Trash on all the sidewalks, as well as people, sleeping and living there."

\*\*\*\*

"Typical Best Western but the area is terrible. Lots of homeless, drugged people. Walking is not recommended."

\*\*\*\*

"There's a lot of noise from homeless people at night, hard to sleep and unsafe to walk at night."

75.    An example of how the City treats the Tenderloin as a containment zone occurred on August 31, 2023, when "activists" made a public show of setting up tents on Willow Street and inviting addicts to come there to collect drug paraphernalia and ingest fentanyl. The images below show what took place:



Source: https://sfstandard.com/2023/08/31/san-francisco-activists-pop-up-safe-drug-use-site/



LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

Source: https://www.sfchronicle.com/opinion/article/san-francisco-tenderloin-drug-prevention-site-18314454.php



Source: https://www.sfchronicle.com/opinion/article/san-francisco-tenderloin-drug-prevention-site-18314454.php

76.     As one news site reported, "At the renegade safe-consumption site, [the reporter] witnessed several people using drugs under the tent while many others lined up to obtain fresh materials to consume their drugs with."[8]

77.     Operating a narcotics ingestion site, such as the one on Willow Street, is a crime under California law, punishable by up to one year in jail.[9] Federal law makes it a *felony*, punishable by imprisonment up to 20 years, to be involved in the operation of a site like the one on Willow Street.[10]

78.     The illegal narcotics ingestion site on Willow Street operated only a few hundred feet from the Tenderloin Community Elementary School. Seniors and low-income families with young children live nearby. The site operated in the middle of restaurants and shops in the "Little Saigon" subdistrict of the Tenderloin.  These businesses were already struggling to stay open in the face of deplorable conditions caused by the City's treatment of area as a containment zone.[11]

_____

[8] https://sfstandard.com/2023/08/31/san-francisco-activists-pop-up-safe-drug-use-site/
[9] California Health & Safety Code §§ 11365, 11366.
[10] 21 U.S.C. § 856. "The statute forbids opening and maintaining any place for visitors to come use drugs." *United States v. Safehouse*, 985 F.3d 225, 243 (3rd Cir. 2021) (declaring that a nonprofit that intentionally opens its facility to visitors it knows will use drugs there violates 21 U.S.C.A. § 856).
[11] https://sfstandard.com/2024/01/22/san-francisco-little-saigon-homeless-center/

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

79.     The City does nothing to discourage such outrageous, disrespectful and harmful conduct from happening in the Tenderloin. To the contrary, a news report quoted a member of the San Francisco Board of Supervisors as praising those who ran the Willow Street site.[12] An employee of a nonprofit that receives hundreds of millions of dollars in funding from the City may have helped set up and operate the site.[13] That those who operated the site had the temerity to block a public sidewalk in the Tenderloin, and publicly proclaim their participation in criminal narcotics activity, comes as no surprise given the City's attitude about the Tenderloin. The City itself previously opened a "wellness hub" in the neighborhood that, in fact, operated  as a "supervised" narcotics consumption site in violation of state and federal law.[14]

## H.     Defendant City and County of San Francisco

80.     Defendant City and County of San Francisco is a municipal entity existing under the laws of the State of California, with the capacity to sue and be sued.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of Title II of the Americans with Disabilities Act
42 U.S.C. §§ 12131 *et seq.*
(Plaintiffs Mary Roe and Susan Roe)**

81.     Plaintiffs Mary Roe and Susan Roe re-allege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 80 of this Complaint as though set forth fully herein.

---

[12] https://abc7news.com/overdose-awareness-day-2023-san-francisco-tenderloin-safe-injection-sites-pop-up-site/13723380/
[13] See https://www.sfchronicle.com/opinion/article/san-francisco-tenderloin-drug-prevention-site-18314454.php; https://www.sfchronicle.com/bayarea/article/nonprofit-ceo-contract-pay-18667516.php
[14] See https://www.cbsnews.com/sanfrancisco/news/tenderloin-center-safe-injection-site-closure-advocates-sf-supervisors-push-back-mayor-breed-sfdph/

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28
COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF

82.    The ADA provides that people with disabilities be afforded "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation…."[15] Further, the ADA ensures that transportation facilities are constructed to a set of standards that ensures accessibility for the disabled. Sidewalks are the most common element of transportation infrastructure, yet if they are not accessible, they pose great challenges and dangers to anyone in a wheelchair, dependent on a walker, or who has other mobility restrictions.

83.    Sidewalks are subject to the access requirements of Title II of the ADA and § 504 of the Rehabilitation Act.[16] Accordingly, sidewalk width requirements ensure that sidewalks are accessible for use by wheelchair-bound individuals.

84.    The minimum width for an ADA-compliant sidewalk is 36 inches.[17] "A public entity shall maintain an operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part."[18]

85.    Throughout the Tenderloin, the City fails to uphold its obligations to maintain clear and accessible sidewalks and public rights-of-way for its disabled residents and visitors, resulting in regular violations of the Americans with Disabilities Act. These ADA violations are obvious and known to the City both through its own inspections and various reports to the City of blocked sidewalks due to illegal sidewalk vending, crowds engaged in narcotics activities, encampments, piles of garbage, bicycle "chop shops," and similar obstructions. The City and its

---

[15] 42 U.S.C. § 12182(a).

[16] *Willits v. City of Los Angeles*, 925 F. Supp. 2d 1089, 1093 (C.D. Cal. 2013) ("Any public sidewalk over which the City of Los Angeles has responsibility to inspect and notify property owners of repair needs is a 'program, service, or activity' within the meaning of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.").

[17] 36 C.F.R. § 1191, app. D, § 403.5.1 ("the clear width of walking surfaces shall be 36 inches (915 mm) minimum").

[18] 28 C.F.R. § 35.133(a).

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

1   agents and employees have failed and continue to fail to provide reasonable

2   accommodations for disabled persons using public sidewalks in the Tenderloin.

3       86.    The City is obligated to operate the "service, program, or activity" "so

4   that..., when viewed in its entirety, it is readily accessible to and useable by

5   individuals with disabilities."[19] Yet when "viewed in its entirety" public rights-of-way

6   are not provided by the City to be "readily accessible to and useable" by individuals

7   bound to wheelchairs and assistive walking devices.

8       87.    The discrimination and denial of access to the City's rights-of-way for

9   persons with disabilities in the Tenderloin is the direct result of the City's policies

10  and practices of tolerating: (a) crowds blocking sidewalks while selling, buying and

11  ingesting narcotics; (b) widespread illegal sidewalk vending; (c) encampments; (d)

12  garbage and biohazards accumulating on the sidewalks; and (d) activities such as the

13  operation of a stolen bicycle chop shops that block the sidewalks. The City has failed

14  to adopt or implement any adequate procedures for regularly inspecting and

15  maintaining the pedestrian rights-of-way clear of these obstructions.

16      88.    As a direct and proximate result of the aforementioned acts, including

17  but not limited to The City's deliberate indifference to the violation of plaintiffs Mary

18  Roe's and Susan Roe's federally protected rights, and these plaintiffs have suffered

19  pain, humiliation, hardship, anxiety, indignity, and severe mental and emotional

20  anguish. This deprives these plaintiffs' of their independence and prevents them from

21  accessing the services and benefits of public establishments.

22      89.    Pursuant to 42 U.S.C. § 12133 and 29 U.S.C. § 794a(b), plaintiffs Mary

23  Roe and Susan Roe are entitled to recover reasonable attorneys' fees and costs

24  incurred in bringing this action.

25      ///

26      ///

27

28

---

[19] 28 C.F.R. § 35.150(a).

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

**SECOND CLAIM FOR RELIEF**
**Violation of Section 504 of the Rehabilitation Act**
**29 U.S.C. §§ 794 *et seq.***
**(Plaintiffs Mary Roe and Susan Roe)**

90.     Plaintiffs Mary Roe and Susan Roe re-allege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 80 of this Complaint as though set forth fully herein.

91.     Section 504 of the Rehabilitation Act of 1973 provides in relevant part:

> [N]o otherwise qualified individual with a disability …
> shall, solely by reason of his or her disability, be excluded
> from the participation in, be denied the benefits of, or be
> subjected to discrimination under any program or activity
> receiving Federal financial assistance….[20]

92.     Plaintiffs Mary Roe and Susan Roe are otherwise qualified to participate in the services, programs, or activities that are provided to individuals in the City. The City is a recipient of federal financial assistance and therefore subject to Section 504. The City and its agents and employees have violated and continue to violate Section 504 of the Rehabilitation Act by excluding plaintiffs Mary Roe and Susan Roe from participation in, denying them the benefits of, and subjecting them to discrimination regarding the benefits and services involved in utilizing public rights-of-way based solely on their disability.

93.     Upon information and belief, said discrimination occurred with deliberate intent and/or reckless disregard of plaintiffs Mary Roe's and Susan Roe's rights. These plaintiffs seek injunctive relief and the cost of attorneys' fees in bringing this action.

**THIRD CLAIM FOR RELIEF**
**Violation of California Disabled Persons Act**
**California Civil Code §§ 54 *et seq.***
**(Plaintiffs Mary Roe and Susan Roe)**

94.     Plaintiffs Mary Roe and Susan Roe re-allege and incorporate herein by

---

[20] 29 U.S.C. § 794(a).

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

31

COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF

1  this reference each and every allegation set forth in Paragraphs 1 through 80 of this

2  Complaint as though set forth fully herein.

3       95.   California's Disabled Persons Act codifies requirements that ensure

4  equal and full access to individuals with disabilities. That Act provides, in part:

5       Individuals with disabilities or medical conditions have the
     same right as the general public to the full and free use of

6       the streets, highways, sidewalks, walkways, public
     buildings, medical facilities, including hospitals, clinics,

7       and physicians' offices, public facilities, and other public
     places.[21]

8  Further,

9       Individuals with disabilities shall be entitled to full and
     equal access, as other members of the general public, to

10       accommodations, advantages, facilities, medical facilities,
     including hospitals, clinics, and physicians' offices . . . and

11       other places to which the general public is invited, subject
     only to the conditions and limitations established by law, or

12       state or federal regulation, and applicable alike to all
     persons.[22]

13

14       96.   Plaintiffs Mary Roe and Susan Roe seek injunctive relief and the cost of

15  attorneys' fees in bringing this action.

16  **FOURTH CLAIM FOR RELIEF**
**Public Nuisance**

17  **California Civil Code §§ 3490 *et seq.***
**(All Plaintiffs)**

18

19       97.   All plaintiffs re-allege and incorporate herein by this reference each and

20  every allegation set forth in Paragraphs 1 through 80 of this Complaint as though set

21  forth fully herein.

22       98.   California has defined nuisance as:

23       Anything which is injurious to health, including, but not
     limited to, the illegal sale of controlled substances, or is

24       indecent or offensive to the senses, or an obstruction to the
     free use of property, so as to interfere with the comfortable

25       enjoyment of life or property, or unlawfully obstructs the
     free passage or use, in the customary manner, of,... any

26

27  ───────────────

28  [21] Cal. Civ. Code § 54(a).
[22] Cal. Civ. Code § 54.1(a)(1).

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

32

1    public park, square, street, or highway, is a nuisance.[23]

2        99.    The nuisance statute "is an expression of the Legislature's public policy

3    against public nuisances, and it is plainly aimed at protecting the public from the

4    hazards created by public nuisances."[24] In addition to health and safety hazards, "[a]

5    reduction in property values caused by activities on a neighboring piece of land, and

6    an assault on the senses by noise, dust, and odors, are just the kinds of harm that

7    common law suits to abate a nuisance are designed to redress."[25] A public nuisance is

8    the substantial and unreasonable interference with a public right.[26]

9        100.    As described above, the City, by its failure to maintain the public

10    property under its control and to enforce the laws requiring the same, is perpetuating

11    and facilitating a public nuisance.

12        101.    All plaintiffs have experienced a substantial and unreasonable

13    interference with the enjoyment of their property, whether that be an apartment, a

14    home, or commercial property, and with their right of free passage and use; each has

15    suffered and continues to be threatened with respect to his, her, or its health and

16    welfare, by reason of the crowds blocking sidewalks and public spaces while engaged

17    in illegal narcotic activities and other dangerous and injurious conduct, illegal street

18    vending, the presence of encampments, trash, human waste, biohazards and other

19    nuisances on the sidewalks and public spaces outside their homes and businesses.

20        102.    Each plaintiff has been damaged in his, her, or its own right, in a

21    manner specially injurious to himself, herself, or itself. No plaintiff consented to the

22    City's conduct.

23        103.    Plaintiffs seek injunctive relief and the cost of attorneys' fees in bringing

24    this action.

25

26    _____
     [23] Cal. Civ. Code § 3479.

27    [24] *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 136 (2017).
     [25] *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 505
     (7th Cir. 1996).

28    [26] *San Diego Gas & Elec. Co. v. Superior Court*, 13 Cal. 4th 893, 938 (1996).

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

## FIFTH CLAIM FOR RELIEF
### Private Nuisance
### California Civil Code §§ 3501 *et seq.*
### (All Plaintiffs)

104.   All plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 80 of this Complaint as though set forth fully herein.

105.   Each plaintiff owns, leases, occupies, or otherwise controls all of a portion of the home or business identified. The City's actions and inactions have created conditions or permitted conditions to exist that are harmful to the health, are indecent and offensive to the senses, obstruct the free passage and use of public parks, squares, streets, highway, and sidewalks, permit unlawful sales and consumption of illicit narcotics, illegal street vending, and constitute a fire hazard, as described *supra*.

106.   The City's conduct has been and is intentional and unreasonable, or unintentional but negligent or reckless. Alternatively, the conditions permitted to exist were the result of abnormally dangerous activity that substantially interfered with each plaintiff's use or enjoyment of his, her, or its land that would reasonably annoy or disturb an ordinary person. No plaintiff consented to the City's conduct; each was harmed; the City's conduct was a substantial factor in causing the harm; and the seriousness of the harm outweighs any public benefit of such conduct.

107.   Plaintiffs seek no monetary damages hereunder and assert this cause of action for the purpose of obtaining equitable and injunctive relief only. Accordingly, the City is not entitled to any claim of immunity, pursuant to California Government Code § 814.

## SIXTH CLAIM FOR RELIEF
### Violation of Due Process
### 42 U.S.C. § 1983; U.S. Const. Amend. V/XIV
### (All Plaintiffs)

108.   All plaintiffs re-allege and incorporate herein by this reference each and

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF

1  every allegation set forth in Paragraphs 1 through 80 of this Complaint as though set
2  forth fully herein.

3      109.   The City, by abdicating its duties under the law to ensure safe and
4  secure living conditions in the Tenderloin, has denied residents and visitors due
5  process of law as guaranteed by the Fifth and Fourteenth Amendments of the United
6  States Constitution. The dangerous and squalid conditions of the public walkways
7  and spaces in the Tenderloin have denied plaintiffs and other residents and
8  stakeholders of their unimpeded liberty and use of their property. The City allowed
9  conditions to fester that threaten their safety, health and lives.

10      110.   Upon information and belief, this was done with deliberate intent and/or
11  reckless disregard of plaintiffs' rights. Plaintiffs seek injunctive relief and the cost of
12  attorneys' fees in bringing this action.

**SEVENTH CLAIM FOR RELIEF**
**Violation of Equal Protection**
**42 U.S.C. § 1983; U.S. Const. Amend. V/XIV**
**(All Plaintiffs)**

16      111.   All plaintiffs re-allege and incorporate herein by this reference each and
17  every allegation set forth in Paragraphs 1 through 80 of this Complaint as though set
18  forth fully herein.

19      112.   The City, by enforcing the laws in some areas and declining to enforce
20  those laws in the Tenderloin, has arbitrarily determined where illicit narcotics
21  activities can occur, where crowds of persons engaged in illegal activities can gather,
22  where sidewalk encampments may or may not be located, and what communities
23  should be affected, without following its own procedures and in violation of both state
24  and federal law. This has placed a disproportionate burden on persons and
25  businesses in the Tenderloin, over those in other neighborhoods.

26      113.   Upon information and belief, this was done with deliberate intent and/or
27  reckless disregard of plaintiffs' rights.

28      114.   Plaintiffs seek injunctive relief and the cost of attorneys' fees in bringing

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

1    this action.

2                        **EIGHTH CLAIM FOR RELIEF**
3           **Violation of Due Process Clause, State-Created Danger Doctrine**
                    **42 U.S.C. § 1983; U.S. Const. Amend. XIV**
4                                **(All Plaintiffs)**

5           115.    All plaintiffs re-allege and incorporate herein by this reference each and
6    every allegation set forth in Paragraphs 1 through 80 of this Complaint as though set
7    forth fully herein.

8           116.    By the acts and omissions described above, the City has affirmatively
9    created or increased the risk that plaintiffs would be exposed to dangerous
10   conditions, which placed plaintiffs specifically at risk, and plaintiffs were harmed as
11   a result.

12          117.    The City knew or should have known that its acts or omissions
13   specifically endangered plaintiffs, and the City was deliberately indifferent thereto.

14          118.    Plaintiffs seek injunctive relief and the cost of attorneys' fees in bringing
15   this action.

16                        **NINTH CLAIM FOR RELIEF**
17                                   **Negligence**
                                  **(All Plaintiffs)**

18
19          119.    All plaintiffs re-allege and incorporate herein by this reference each and
20   every allegation set forth in Paragraphs 1 through 80 of this Complaint as though set
     forth fully herein.

21
22          120.    The City, by and through its agents and employees, has the sole right
23   and responsibility to control, maintain, and keep safe and clean the public and
     public-right-of-way areas in San Francisco, including parks, sidewalks, streets, and
24   public buildings, and to make and enforce laws assuring the public health and safety
25   thereof for its citizens and their guests. Among other things, the City has the duty to
26   maintain these areas in a manner that does not unreasonably interfere with the free
27   passage or use by plaintiffs and that addresses and alleviates conditions that are

28

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF

1  harmful to health or indecent or offensive to the senses, that create a fire hazard, or

2  that permit crime to occur unabated including the illegal sale narcotics.

3      121.   As controlling law makes clear, "The public is entitled to the free and

4  unobstructed use of the entire streets and sidewalks...."[27] Indeed, municipalities

5  "have the duty to keep their communities' streets open and available for movement of

6  people and property, the primary purpose to which the streets are dedicated."[28]

7      122.   The City and its agents have breached their duty to the Tenderloin's

8  citizens, including and specifically to plaintiffs, and each plaintiff has suffered as a

9  result. The bases of this claim for relief include the conduct, acts, and omissions of

10  individual responsible City officials, based on the theory of *respondeat superior*.

11      123.   Plaintiffs seek no monetary damages hereunder and make this claim for

12  only equitable and injunctive relief. Accordingly, the City is not entitled to any claim

13  of immunity, pursuant to California Government Code § 814.

### TENTH CLAIM FOR RELIEF
**Deprivation of the Guarantee of Safety and the Pursuit of Happiness**
**California Constitution, Article I, § 1**
**(All Plaintiffs)**

17      124.   All plaintiffs re-allege and incorporate herein by this reference each and

18  every allegation set forth in Paragraphs 1 through 80 of this Complaint as though set

19  forth fully herein.

20      125.   California Constitution, Article I § 1 provides:

> All people are by nature free and independent and have
> inalienable rights. Among these are enjoying and defending
> life and liberty, acquiring, possessing, and protecting
> property, and pursuing and obtaining safety, happiness,
> and privacy.

24      126.   The actions by the City have limited, damaged, and/or burdened

25  plaintiffs' constitutionally guaranteed inalienable rights, including plaintiffs' rights

---

27  [27] *Vanderhurst v. Tholcke*, 113 Cal. 147, 152 (1896).

28  [28] *Schneider v. State of New Jersey, Town of Irvington*, 308 U.S. 147, 160, 60 S. Ct. 146, 150 (1939).

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

37
COMPLAINT FOR INJUNCTIVE & EQUITABLE RELIEF

to enjoy and defend their life and liberty; to acquire, possess, and protect their property; and to pursue and obtain safety, happiness, and privacy.

127.  Plaintiffs seek no monetary damages hereunder and submit this claim for only equitable and injunctive relief. Accordingly, the City is not entitled to any claim of immunity, pursuant to California Government Code § 814.

## VII. DEMAND FOR JUDGMENT

WHEREFORE, plaintiffs pray for judgment against defendant and County of San Francisco, as follows:

1.  Injunctive/equitable relief in a manner to be determined by law;

2.  An award of costs of suit, including attorneys' fees, as permitted by law; and

3.  Such other and further relief as this Court deems just and proper.

Dated: March 14, 2024                WALKUP, MELODIA, KELLY & SCHOENBERGER

KLINE + SPECTER

By: _____

MICHAEL A. KELLY
RICHARD H. SCHOENBERGER
MATTHEW D. DAVIS
ASHCON MINOIEFAR

SHANIN SPECTER
ALEX VAN DYKE

Attorneys for Plaintiffs

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210