Lauren Hansen (CA BAR NO. 268417)
Melissa A. Morris (CA BAR NO. 233393)
PUBLIC INTEREST LAW PROJECT
449 15th St., Suite 301
Oakland, CA 94612-06001
Tel: (510) 891-9794
Fax: (510) 891-9727
Email: lhansen@pilpca.org

Lili V. Graham (CA BAR NO. 284264)
DISABILITY RIGHTS CALIFORNIA
350 S Bixel Street, Ste 290
Los Angeles, CA 90017-1418
Tel: (213) 213-8000
Fax: (213) 213-8001
Email: Lili.Graham@disabilityrightsca.org

ATTORNEYS FOR PROPOSED INTERVENORS
HOSPITALITY HOUSE; COALITION ON
HOMELESSNESS; AND FAITHFUL FOOLS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COLLEGE OF THE LAW, SAN FRANCISCO a public trust and institution of higher education duly organized under the laws and the Constitution of the State of California; FALLON VICTORIA, an individual; RENE DENIS, an individual; TENDERLOIN MERCHANTS AND PROPERTY ASSOCIATION, a business association; RANDY HUGHES, an individual; and KRISTEN VILLALOBOS, an individual,<br><br>          Plaintiffs,<br>     v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a municipal entity,<br>          Defendant. | Case No. 4:20-cv-03033-JST<br><br>**INTERVENORS' RESPONSE TO PLAINTIFFS' MOTION TO ENFORCE STIPULATED INJUNCTION**<br><br>Action Filed: May 4, 2020<br><br>Action Closed: Oct. 7, 2020<br><br>**ASSIGNED FOR ALL PURPOSES TO THE HONORABLE JON S. TIGAR, COURTROOM 6**<br><br>Date: 05/23/2024<br>Time: 2:00 p.m.<br><br>Action Filed: 05/04/2020<br>Trial Date: (TBD) |

1 | Michael David Keys (CA BAR NO. 133815)
BAY AREA LEGAL AID
2 | 1800 Market Street, 3rd Floor
San Francisco, CA 94102
3 | Tel: (415) 982-1300
Fax: (415) 982-4243
4 | Email:   mkeys@baylegal.org

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................ 4

II.  FACTUAL AND PROCEDURAL BACKGROUND ..................................................... 4

III. ARGUMENT .................................................................................................................. 7

    A.   The Court Should Deny Plaintiffs' Motion to Enforce the Stipulated Injunction Because They Did Not Provide Sufficient Evidence to Prove that Defendant Is Not Complying with the Injunction. .......................................................................................................... 7

    B.   The City Has Complied with All of the Substantive Terms in the Injunction, and the Provisions Plaintiffs Are Trying to Enforce Are So Vague as to Be Unenforceable. ................................................................. 8

    C.   The *Coalition* Injunction and the Plaintiffs' Injunction Do Not Conflict. .................................................................................................................. 10

    D.   If the Court Issues an Order Requiring the City to Remedy Any Violations of the Injunction, It Should Include the City Making Additional Shelter Options Available to Unhoused People. ............................... 12

IV.  CONCLUSION .............................................................................................................. 12

## I. INTRODUCTION

This matter has been dismissed for over three and a half years, and Plaintiffs now complain that the City is not making all "reasonable efforts…to permanently [reduce] the number of tents, along with all other encamping materials and related personal property, to zero" because there are now allegedly 71 tents in the neighborhood, compared with the purported 22 when the Parties dismissed this case. Notably, Plaintiffs offer scant evidence that the City is violating the injunction; they have not even described the standard they believe the City should adhere to in order to comply. The material terms of the injunction had been fulfilled at the conclusion of the declared COVID-19 emergency; and, to the extent there are any remaining provisions, they are too vague to be enforceable in a post-COVID-19 environment. The Plaintiffs also wrongly conflate the preliminary injunction ruling in *Coalition on Homelessness, et al. v. City and County of San Francisco, et al.* (case no. 22-cv-05502-DMR, 2022) with this case. The injunction has run its course, and Intervenors' respectfully request that the Court deny Plaintiffs' motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On May 4, 2020, at the height of the COVID-19 pandemic, Plaintiffs filed suit against the City and County of San Francisco (City) alleging causes of action complaining about the unhoused population in the Tenderloin, the number of tents present on City sidewalks, and narcotics sales and use. ECF No. 1. Three organizations that serve unhoused people—Hospitality House, Coalition on Homelessness, and Faithful Fools promptly sought leave to intervene in the lawsuit to ensure that the needs and perspectives of unhoused Tenderloin residents would be represented in any decisions that were made in the case—whether decisions made by the Court or decisions made by the parties via settlement. ECF No. 43.

Intervenors include nonprofit grassroots and service organizations that engage directly with unhoused individuals living in the Tenderloin. ECF Nos. 43-2, 43-3, 43-4. All have well over 80 years of experience of serving unhoused Tenderloin residents. *Id.* Hospitality House has a long history developing peer-based and culturally appropriate programs for the communities they serve. ECF No. 43-2, ¶¶6-15. Its mission is to build community strength by advocating for

policies and rendering services which foster self-sufficiency and cultural enrichment. *Id.*, ¶¶8-10. Faithful Fools is a nonprofit dedicating to meeting unhoused people where they are through programming in the arts, education, and advocacy. ECF No. 43-3, ¶¶2-4. The Coalition on Homelessness (COH) is a non-profit organization that organizes unhoused people and front-line service providers to create permanent solutions to homelessness. ECF No. 43-4, ¶¶3-13. These organizations intervened due to the concerns that the interests of unhoused individuals were being disregarded amidst the City's failure to provide sufficient housing, shelter, and services. ECF No. 43-2, ¶¶21-29; ECF No. 43-3, ¶¶12-14; ECF No. 43-4, ¶¶14-25. Their particular concern extended to the settlement negotiations that would resolve the fate of unhoused people in the Tenderloin, absent any input from the unhoused community. *Id.*; ECF No. 43-3, ¶36. They moved to intervene on June 9, 2020. ECF No. 43. Settlement negotiations between Plaintiffs and the City continued, and although Intervenors tried to join those settlement negotiations, the other parties denied them access to a seat at the table. ECF No. 59; ECF No. 59-1, ¶¶3-5; ECF No. 59-2, ¶14; ECF 59-3, ¶¶ 9-11, 13.

Three days later, Plaintiffs and the City filed a Joint Request for Entry of Stipulated Injunction. ECF No. 51. After supplemental briefing by the parties, the Court granted intervention and also approved the stipulated injunction. ECF Nos. 69, 71. In its order, the Court stated that Intervenors "will be free to attempt to modify or improve upon the original parties' settlement by negotiation or motion." ECF No. 69 at 7.

The City received pandemic-era funding from the federal government and used it in part to comply with the injunction by moving unhoused people into Shelter-In-Place hotels and safe sleeping sites. Friedenbach Decl. at ¶¶12, 18; Wilson Decl. at ¶8; Dennison Decl., ¶9. Intervenors worked daily with City staff to ensure that unhoused people were placed in shelter that was appropriate for their needs, including ensuring that the City made reasonable accommodations for people with disabilities. Wilson Decl. at ¶¶8-9; Friedenbach Decl. at ¶¶12-13; Dennison Decl. at ¶¶9-11. As of July 10, 2020, the City had reduced the tent count by 70%. ECF No. 75 at 2. It offered alternative sleeping options to 546 people within the Tenderloin. *Id.* 472 people were relocated to hotels, 81 to safe sleeping sites, and 10 were placed in shelters. *Id.*

On September 29, 2020, all of the parties—Plaintiffs, Defendant, and Intervenors, agreed to dismiss the lawsuit. The COVID-19 state of emergency was still in effect, and pursuant to the terms of the stipulated injunction and F.R.C.P. Rule 41(a)(2), the Court retained continuing jurisdiction to enforce the terms of the injunction. ECF No. 98-99. The Court administratively closed the case on October 7, 2020. The case has remained closed for the past three-and-a-half years with no substantive activity until this motion.

Since then, the City has continued to clear tents and remove unhoused people from the Tenderloin. Friedenbach Decl., ¶8, 11; Wilson Decl., ¶¶13-14. It scheduled and conducted enforcement actions in the Tenderloin, throughout the past three-and-a-half years, and as recently as April 17, 2024. *Id.* It announced that it will enforce the laws against purportedly "voluntarily homeless" individuals. Hansen Decl., ¶7, Exh. 1. It has a written policy that allows for enforcement under certain conditions. Hansen Decl., ¶8, Exh. 2. In fact, the City has conducted dozens of encampment resolutions in recent months, including cleaning and clearing the area around the Dreamforce Conference. Friedenbach Decl., ¶¶8, 11; Hansen Decl., ¶¶9-10, Exh. 3. In her State of the City speech, Mayor Breed touted these efforts, stating that the "the City has helped more than 1,500 people into shelter from encampments, and the number of tents on City streets is down 37% in the last six months, which is at the lowest levels since before 2018." Hansen Decl., ¶10, Exh. 4. Despite these efforts, there are still many people experiencing homelessness in San Francisco. Wilson Decl., ¶¶6-7; Friedenbach Decl., ¶14; Dennison Decl., ¶15. In the most recent Point-in-Time count, at least 7,754 people are experiencing homelessness, 4,397 living unsheltered. Hansen Decl., ¶11, Exh. 5 at 19. In the Tenderloin, 3,324 people are unhoused, 1,723 of which are unsheltered. *Id.* at 20.

On September 8, 2023, Intervenors' counsel received notice from the court scheduling a pre-settlement conference. ECF No. 102. Intervenors met with Plaintiffs and Defendant on October 2, and November 15, but reached no resolution. Hansen Decl., ¶¶4-6. Four months later, on March 14, 2024, Plaintiffs filed this Motion to Enforce the Stipulated Injunction.

//
//

### III. ARGUMENT

**A. The Court Should Deny Plaintiffs' Motion to Enforce the Stipulated Injunction Because They Did Not Provide Sufficient Evidence to Prove that Defendant Is Not Complying with the Injunction.**

Plaintiffs' evidence in support of this motion is thin, at best. Plaintiffs provide just two pieces of evidence in support of this motion: a declaration from the College of Law San Francisco's Chief Operating Officer citing the number of tents that are allegedly in the Tenderloin Neighborhood and a City data dashboard that purportedly shows the number of open shelter options available to unhoused people. Mtn. at 1:25-2:13. As explained further below, both numbers are neither reliable snapshots nor sufficient evidence to prove that the City is violating the injunction.

Plaintiffs state that where a party is subject to an injunction and the movant demonstrates *prima facie* evidence of non-compliance, the district court is empowered to enforce the injunction, and cites *Armstrong v. Brown*, 857 F. Supp. 2d 919, 950-51 (N.D. Cal. 2012). Mtn. at 10:2-6. In *Armstrong*, inmates with disabilities moved to enforce a longstanding class action consent decree mandating that state prison officials track and accommodate the needs of prisoners with disabilities, ensure access to a grievance procedure, and carry out a revised plan to which the State had previously agreed. *Armstrong*, 857 F. Supp. 2d 919, 923-24. Far from the two-paragraph assertion of violations in this motion, the *Armstrong* Plaintiffs "submitted substantial evidence, including more than sixty declarations from class members, demonstrating that class members in jails throughout the State are injured and are denied access to housing, programs, and services because of Defendants' failure to accommodate their disabilities." *Id.* at 931. The Court then went on to summarize the "overwhelming and disturbing" evidence, describing other data and reports provided by the Plaintiffs that showed that the State was not meeting its obligations under the consent decree. *Id.* at 931-33.

In this case, the College of Law's Chief Operating Officer Ms. Bailard stated that between May 2020 and August 2021, the College of Law "acquired tent and makeshift shelter counts from the Tenderloin Community Benefits District, which received the information from

Urban Alchemy." Bailard Decl. at ¶3. She states that when the action was filed there were 448 tents in the Tenderloin Neighborhood. *Id.* at ¶4. She goes on to say that in February 2024, the College of Law partnered with Urban Alchemy to conduct a new tent count, and cites 71 total tents and makeshift shelters, or 16% of the original number when Plaintiffs filed suit. *Id.* at ¶6. She provides no other support for this motion—no documentation, no report, no pictures, no non-hearsay statements, nothing else that shows a violation of the provision of the injunction indicating that the City will make "reasonable efforts" to reduce the number of tents to zero.

Plaintiffs' "a-ha moment," intended to provide *prima facie* evidence to support their motion, is pointing to the City's data dashboard, which changes and is updated daily, that ostensibly shows that there are open shelter beds that the City can offer to unhoused people in the Tenderloin Neighborhood. First, these shelter beds are intended to be available to *all* unhoused people in the City, not just those in the vicinity of the College of Law. Hansen Decl., ¶12, Exh. 6 at 1. Second, the numbers are by their own admission not an accurate indicator of available beds, and whether they are actually accessible for individuals, including people with disabilities. The site has various disclaimers, including that "many unoccupied units are **not immediately available for placement**." *Id.* at 2 (emphasis in original). This could be for a variety of reasons, including that the individual unit may need repair or maintenance, referrals may be limited by provider capacity, beds might be temporarily held to support other initiatives, may not be accessible or that they might be reserved for particular populations other than those in the Tenderloin, like those receiving benefits under San Francisco's County Adult Assistance Program. *Id.* Plaintiffs rely on this dashboard to make a conclusory announcement: "[t]hus, the City is in breach of its obligations under the Stipulated Injunction to make all reasonable efforts and take associated measures to achieve clear sidewalks in the Tenderloin." Mtn. at 6:11-13. In fact, there is currently a waitlist for shelter in the City and far more unhoused people than shelter beds. Friedenbach Decl., ¶14; Wilson Decl., ¶7; Exh. 5 at 19. The Court should deny the Plaintiffs' motion because Plaintiffs have not proved that the City has violated the injunction.

**B. The City Has Complied with All of the Substantive Terms in the Injunction, and the Provisions Plaintiffs Are Trying to Enforce Are So Vague as to Be Unenforceable.**

The City has complied with all material terms of the injunction. In their motion, Plaintiffs appear to dispute the City's compliance with its obligation to "make *all* reasonable efforts to achieve the shared goal of permanently reducing the number of tents, along with all other encamping materials and related personal property, to zero." Mtn. at 1:4-2:3; ECF No. 71 at 3. In addition, Plaintiffs cite to the following provisions:

- "*[D]iscourage* additional people from erecting tents in the neighborhood."
- "*[T]ake action* to prevent re-encampment."
- "*[E]mploy* enforcement measures for those who do not accept an offer of shelter or safe sleeping sites to prevent re-encampment."

(Emphasis added.) But this language is too vague to be unenforceable in the context of the end of the declaration of the COVID-19 emergency. The hotel rooms made possible by federal funds during the emergency are no longer available. What may have been reasonable then is not possible now. And notably, the injunction fails to define or set forward any parameters as to what City actions are "reasonable" what the City will do to "discourage" unhoused people from erecting tents, what "actions" the City will take to prevent re-encampment, or what the City will do to "employ" enforcement measures. The injunction also lacks any explicit language that the shelter offered must be actually available appropriate for a person's individual needs, and accessible to people with disabilities.

Section II of the stipulated injunction, the section that includes the bulk of the terms, indicates that it applies "During the COVID-19 emergency," but the City's declared state of emergency related to COVID-19 expired on February 28, 2023. ECF No. 71 at 2. The injunction was timebound to the duration of the declared state of emergency and its terms expired with the declared state of emergency on February 28, 2023. If any further proof of the temporal limitation of the injunction were needed, it can be found in the dispute resolution provision in Section VI, which refers to the "unprecedented" "current crisis."

The only provision of the injunction that could survive the expiration of the COVID-19 emergency is Section VII, which consists of a declaration that "[t]he parties agree to work together to improve living conditions in the Tenderloin neighborhood for the long term." The

parties' purported dispute does not appear to be in any way related to a claimed breach of this provision.

### C. The *Coalition* Injunction and the Plaintiffs' Injunction Do Not Conflict.

Plaintiffs acknowledge that the City is currently bound by the preliminary injunction issued by Judge Ryu and affirmed in part by the Ninth Circuit in *Coalition on Homelessness v. City and County of San Francisco* (*COH v. SF*). *Coal. on Homelessness v. City & Cnty. of San Francisco,* 647 F. Supp. 3d 806, 842 (N.D. Cal. 2022), *aff'd in part, remanded in part*, No. 23-15087, 2024 WL 125340 (9th Cir. Jan. 11, 2024), and *aff'd*, 90 F. 4th 975 (9th Cir. 2024). Mtn. at 2-4. That injunction enjoins the City "from enforcing or threatening to enforce, or using California Penal Code section 148(a) to enforce or threaten to enforce, the following laws and ordinances to prohibit involuntarily homeless individuals from sitting, lying, or sleeping on public property:

- California Penal Code section 647(e)
- California Penal Code section 370
- California Penal Code section 372
- San Francisco Police Code section 168
- San Francisco Police Code section 169

*Id.* at 842. In a published opinion, the Ninth Circuit affirmed the preliminary injunction. As set forth in the unpublished memorandum cited by Plaintiffs, the Ninth Circuit also remanded the matter to the district court to ensure the "preliminary injunction applies only to the City's enforcement of the enjoined laws as to the involuntarily homeless" and to confirm that the injunction prohibits verbal threats to enforce the subject ordinances. *Coal. on Homelessness v. City & Cnty. of San Francisco,* No. 23-15087 (9th Cir. Jan. 11, 2024), 2024 WL 125340 *1; *see also* Mtn. at 3. The Ninth Circuit left the entirety of the injunction in place pending further proceedings at the district court level *Coal. on Homelessness v. City & Cnty. of San Francisco,* 2024 WL 125340 at *2.

Plaintiffs also concede, at least in places, that no substantive conflict exists between the stipulated injunction in this case and the *COH v. SF* preliminary injunction. *See* Mtn. at 4-7; *see*

*also* UC College of Law, Amicus Br. at 6-9, (Ninth Cir. No. 23-15087, Dkt. No. 17-2 at 10-12. Indeed, the notion that the stipulated injunction and the preliminary injunction in *COH v. SF* somehow conflict with each other is a phantasm that the City has raised multiple times in multiple fora without success. *See, e.g., Coal. on Homelessness v. City & Cnty. of San Francisco*, Case No. 22-cv-05502-DMR (N.D. Cal. Apr. 3, 2023), 2023 WL 2775156 (noting denial administrative motion to clarify preliminary injunction where City had asserted it was "subject to conflicting obligations" in this case and the *COH v. SF* injunction); City of San Francisco's Administrative Motion to Relate Cases, ECF No. 116 at 3-4 (denied at ECF No. 121); And there is no way the two could conflict. The portion of the stipulated injunction at issue in this motion says that "the City will make all *reasonable efforts* to achieve the shared goal of permanently reducing the number of tents, along with all other encamping materials and related personal property, to zero." ECF No. 71 at 3 (emphasis added). Reasonable efforts, presumably, do not include efforts that would break the law or violate a court order. The injunction goes on to say: "All parties shall respect the legal rights of the unhoused of the Tenderloin in all manners, including in relation to relocating and removing the unhoused, the tents, the other encamping materials and other personal property." *Ibid.* The *COH v. SF* injunction does not command anything to the contrary; rather, it compels the City to follow the law as set forth in controlling Ninth Circuit precedent and the City's own policies. *See Coal. on Homelessness v. City & Cty. of San Francisco*, 90 F.4th 975, 979 (noting that although the petition for certiorari in *Johnson v. City of Grants Pass,* 72 F.4th 868, 876 (9th Cir. 2023), cert. granted 144 S. Ct. 679 (U.S. Jan., 12, 2024) (No. 23-175)*,* was pending, that the Ninth Circuit "remain[s] bound by *Martin* and *Johnson*, as does the district court."). The injunction understands "reasonable efforts" to be those that "respect the rights of the unhoused. . ." and the *COH v. SF* injunction prohibits the City from violating unhoused individuals' rights. Therefore, any action that would violate the *COH v. SF* injunction would not reasonable for purposes of the injunction in this case.

      Plaintiffs argue that Judge Ryu lacks authority to countermand the prior orders of this Court, but the converse is also true. *See* Mtn. at 8; *see also United States v. Feathers*, Case No. 14-CR-00531-LHK (N.D. Cal. Dec. 19, 2016), 2016 WL 7337518 *8. To the extent Plaintiffs

request the Court to order the City to take action that would violate the *COH v. SF* injunction—e.g., taking enforcement action against individuals based on the unfounded assumption that they have refused shelter or banishing involuntarily unsheltered Tenderloin residents to other parts of the City under threat of citation or arrest—the Court should decline to do so.

**D. If the Court Issues an Order Requiring the City to Remedy Any Violations of the Injunction, It Should Include the City Making Additional Shelter Options Available to Unhoused People.**

As stated previously, Intervenors' position is that the portions of the stipulated injunction that comprise Plaintiffs' motion have run their course and are no longer enforceable. If the Court does find that a remedy is needed, it should be one with a focus of ensuring that everyone who wants and needs shelter has access to it, not with displacing unsheltered individuals from the immediate vicinity of the College of the Law to beaches, plazas, or other parts of the City where they will continue to live unsheltered and with even less support than they currently have. *See* Mtn. at 11:2-11; Wilson Decl., ¶¶10-18; Friedenbach Decl., ¶¶7-10, 15-18, 19-20; Dennison Decl. ¶¶7-15. Citations, arrests, move-along orders, clean-ups, and "resolutions" do not reduce unsheltered homelessness because they do not address individuals' underlying need for housing and shelter. Of the various activities that the City has taken, the only ones that actually reduce unsheltered homelessness are the ones that involve the provision of housing and shelter.

**IV. CONCLUSION**

For the preceding reasons, Intervenors respectfully request that the Court deny Plaintiffs' motion.

DATED: April 18, 2024                    Respectfully submitted,

                                      PUBLIC INTEREST LAW PROJECT
                                      DISABILITY RIGHTS CALIFORNIA
                                      BAY AREA LEGAL AID

                                      By: _____
                                          LAUREN HANSEN
                                          Attorneys for Intervenors