Lauren Hansen (CA BAR NO. 268417)
Melissa A. Morris (CA BAR NO. 233393)
PUBLIC INTEREST LAW PROJECT
449 15th St., Suite 301
Oakland, CA 94612-06001
Tel: (510) 891-9794
Fax: (510) 891-9727
Email: lhansen@pilpca.org

Lili V. Graham (CA BAR NO. 284264)
DISABILITY RIGHTS CALIFORNIA
350 S Bixel Street, Ste 290
Los Angeles, CA 90017-1418
Tel: (213) 213-8000
Fax: (213) 213-8001
Email: lili.graham@disabilityrightsca.org

**(Additional counsel on following page)**

Attorneys for INTERVENORS
HOSPITALITY HOUSE, COALITION ON
HOMELESSNESS, and FAITHFUL FOOLS

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLEGE OF THE LAW, SAN FRANCISCO, a public trust and institution of higher education duly organized under the laws and the Constitution of the State of California; FALLON VICTORIA, an individual; RENE DENIS, an individual; TENDERLOIN MERCHANTS AND PROPERTY ASSOCIATION, a business association; RANDY HUGHES, an individual; and KRISTEN VILLALOBOS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a municipal entity,<br><br>Defendant. | Case No. 4:20-cv-3033-JST<br><br>**DECLARATION OF JOSEPH T. WILSON IN SUPPORT OF INTERVENORS' OPOSITION TO PLAINTIFFS' MOTION TO ENFORCE STIPULATED INJUNCTION**<br><br>**ASSIGNED FOR ALL PURPOSES TO THE HONORABLE JON S. TIGAR, COURTROOM 6**<br><br>Date: 05/23/2024<br>Time: 2:00 p.m.<br><br>Action Filed: 05/04/2020<br>TRIAL DATE: (TBD) |

Case No. 4:20-cv-3033-JST
DECL OF J. WILSON ISO INTVS' RESP TO PLTFS' MTN TO ENFORCE STIP INJUNCTION         1

1  Michael David Keys (CA BAR NO. 133815)
2  BAY AREA LEGAL AID
   1800 Market Street, 3rd Floor
3  San Francisco, CA 94102
   Tel: (415) 982-1300
4  Fax: (415) 982-4243
   Email: mkeys@baylegal.org
5
6  **(Counsel for Intervenors continued from previous page)**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 4:20-cv-3033-JST
**DECL OF J. WILSON ISO INTVS' RESP TO PLTFS' MTN TO ENFORCE STIP INJUNCTION**          2

I, Joseph T. Wilson, declare:

1. I am the Executive Director of Hospitality House, a non-profit organization, and an Intervenor in *Hastings College of the Law, et al. v. City & County of San Francisco*: Case No.: 4:20-cv-03033-JST. I make this Declaration in support of Intervenors' Opposition to Plaintiffs' Motion to Enforce the Stipulated Injunction.

2. The facts set forth below are known to me personally. I have first-hand knowledge of these facts. If called as a witness, I could and would testify competently, under oath, to such facts.

3. Hospitality House, located in San Francisco's Tenderloin Neighborhood, Sixth Street Corridor, and Mid-Market area, has a mission to build community strength by advocating for policies and rendering services which foster self-sufficiency and cultural enrichment.

4. Through six diverse programs: Community Arts Program, Community Building Program, Employment Program, Shelter Program, Sixth Street Self-Help Center, and Tenderloin Self-Help Center, we serve thousands of San Franciscans, including the unhoused, many who have disabilities, and other low-income individuals. Hospitality House takes a trauma-informed approach to its services that ensure unhoused individuals are not further harmed and reduces obstacles to help them become rehoused.

5. The University of California College of the Law filing seems to solely focus on bringing the number of homeless encampments and tents in the Tenderloin neighborhood to zero. In the motion to enforce the injunction, there is no concern for the rights of the unhoused community or mention of the City's obligation to provide services and housing. The root of the problem, which is not addressed in the filing, is the lack of services and housing for the Tenderloin community, not the number of tents.

6. Based on our experience working in the community, even if there has been a marginal increase of tents on the streets, it is related to the loss of the Shelter in Place hotel program, which helped many become permanently housed, and the ongoing need for more affordable, accessible housing options.

7. There are far more unhoused people living in the City (including the Tenderloin)

than there are available shelter beds. My understanding is that the City has a waitlist for shelters. In addition, contrary to the perception that unhoused people choose to stay unhoused, it has been our experience at Hospitality House that people will accept offers of a shelter bed when they are made available and accessible.

8. Hospitality House used its own funding to initially operate a Shelter in Place program and, with City support, moved nearly ninety percent of our residents into permanent supportive housing, with some moving into market-rate housing. The City also provided Shelter In Place hotel rooms to people during the pandemic, in part to comply with the Stipulated Injunction.

9. During the process of placing residents in more permanent housing, we prioritized placing them in a cohort to preserve the community that had been built when they lived on the streets, in addition to wraparound services. For example, we placed a cohort of twenty people into permanent supportive housing. We have learned over the years the importance of allowing community to follow people where they land, including in shelter settings.

10. The University proposes pushing people out of the Tenderloin district and into other areas like the beaches and plazas where there is little to no support. This only deepens the problem by cutting people off from their community support, makes it harder for individuals to access services, and makes connecting these individuals with housing more difficult.

11. In our experience, the lack or loss of community can perpetuate separation and deepens poverty and homelessness. When Hospitality House placed people in cohorts, it allowed them the space and time to take their necessary belongings like medication, clothing, and important documents, to build and transition their lives from the street to hotels, and ultimately, to permanent housing.

12. The enforcement of this Injunction and a zero-tent policy runs counter to preserving community, addressing needs of those experiencing homelessness and ending homelessness. At Hospitality House, we recognize that society is a communal experience, and the community helps us arrive at long-term solutions for poverty and homelessness.

13. With the City's current policy of a short notice followed by sweeps, it is in direct

opposition to the trauma-informed approach that reduces harm and obstacles to help people become rehoused. When the City clears tents, we see an increase in the number of individuals needing more services, not less. When you use a humane approach with supportive services, like Hospitality House, this can reduce the obstacles for people to access community and housing.

14. Clearing tents may make it easier for the City, business leaders, and policymakers to ignore the reality on the street. Removing tents simply erases the visual evidence that we do not have enough affordable housing but does not address the greater need and the harm of removal of tents for people who have nowhere to go.

15. This issue is not new; it takes planning and long-term planning to address the needs of homelessness. It is further disheartening to witness our public institutions, like the University of California College of Law, San Francisco, which holds itself out as "cultivating a diverse, equitable and inclusive community," as stated on their website, acting against the very community it teaches in. Instead of promoting their own private interests over that of the public's, the University should be involved in identifying permanent solutions to this housing crisis.

16. The focus should be on sustainable solutions rather than short-term enforcement approaches that are ineffective. These approaches fail to address the needs of the most vulnerable individuals who have borne the brunt of the City's inadequate homeless system and the lack of accessible, affordable housing.

17. Equating every solution with law enforcement response is backwards and does not create long term solutions. There are broader definitions for public safety than enforcement such as housing, health care, and employment. We have the capacity to build community centers, childcare facilities, libraries, etc. in communities and that is public safety and investing in the public interest. This approach also allows people to be in communal spaces in their own community.

18. Based on my past experiences, the University's efforts to demand enforcement of the Injunction will likely lead to more police involvement and sweeps and cause more harm instead of approaching the needs of the unhoused with providing wrap around services like

1  Hospitality House's tried and true services.

2       I declare under penalty of perjury under the laws of the United States of America that the
3  foregoing is true and correct to the best of my knowledge. Executed on April 17, 2024, San
4  Francisco, California.

5

6

7                                                         */s/ Joseph T. Wilson*
8                                                        Joseph T. Wilson
                                                      *Executive Director, Hospitality House*