1   MICHAEL A. KELLY, State Bar No. 71460
    MKelly@WalkupLawOffice.com
2   RICHARD H. SCHOENBERGER, State Bar No. 122190
    RSchoenberger@WalkupLawOffice.com
3   MATTHEW D. DAVIS, State Bar No. 141986
    MDavis@WalkupLawOffice.com
4   ASHCON MINOIEFAR, State Bar No. 347583
    AMinoiefar@WalkupLawOffice.com
5   WALKUP, MELODIA, KELLY & SCHOENBERGER
    650 California Street, 26th Floor
6   San Francisco, CA  94108
    Telephone:  415-889-2919
7   Facsimile:  415-391-6965

8   SHANIN SPECTER, (Pennsylvania State Bar No. 40928
    shanin.specter@klinespecter.com
9   (Admitted Pro Hac Vice)
    ALEX VAN DYKE (CA State Bar No. 340379)
10  alex.vandyke@klinespecter.com
    KLINE & SPECTER, P.C.
11  1525 Locust Street
    Philadelphia, PA 19102
12  Telephone: 215-772-1000

13  Attorneys for All Plaintiffs

14
    JOHN K. DIPAOLO, State Bar No. 321942
15  dipaolojohn@uchastings.edu
    General Counsel
16  Secretary to the Board of Directors
    College of the Law, San Francisco
17  200 McAllister Street
    San Francisco, CA  94102
18  Telephone:  415-565-4787
    Facsimile:  415-565-4825
19
    Attorney for Plaintiff
20  COLLEGE OF THE LAW, SAN FRANCISCO

21

22                UNITED STATES DISTRICT COURT

23              NORTHERN DISTRICT OF CALIFORNIA

24             SAN FRANCISCO/OAKLAND DIVISION

25

| | |
|---|---|
| 26  COLLEGE OF THE LAW, SAN FRANCISCO a public trust and institution of higher education duly organized under the laws and the | Case No. 4:20-cv-03033-JST |
| 27 | **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO ENFORCE STIPULATED INJUNCTION** |
| 28 | |

---

1   Constitution of the State of
        California;
2   FALLON VICTORIA, an individual;
    RENE DENIS, an individual;
3   TENDERLOIN MERCHANTS AND
        PROPERTY ASSOCIATION, a
4   business association;
    RANDY HUGHES, an individual; and
5   KRISTEN VILLALOBOS, an
        individual,
6
                        Plaintiffs,
7
            v.
8
    CITY AND COUNTY OF SAN
9       FRANCISCO, a municipal entity,
10                      Defendant.
11

12      ///

13      ///

14      ///

15      ///

**ASSIGNED FOR ALL PURPOSES TO
THE HONORABLE JON S. TIGAR,
COURTROOM 6**

Date:      May 23, 2024
Time:      2:00 p.m.
Judge:     Hon. Jon S. Tigar
Courtroom 6, 2nd Floor
           1301 Clay Street, Oakland

Action Filed:      05/04/2020
Trial Date:        (None set yet)

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

PLAINTIFFS' REPLY BRIEF ISO MOTION TO ENFORCE STIPULATED INJUNCTION - CASE
NO. 4:20-cv-03033-JST

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ...................................................................................................... 2

A.    The "all reasonable efforts" provision is still in effect. ......................... 2

1.    The plain terms of the Stipulated Injunction establish that the "all
reasonable efforts" provision is still in effect. ........................................... 3

2.    Respondents' argument creates illogical superfluity. .............................. 4

3.    The parties to the agreement understood that the "all reasonable
efforts" provision was intended as a "long term goal." ............................ 5

B.    The "all reasonable efforts" provision is enforceable. .......................... 6

C.    The City has breached the "all reasonable efforts" provision ................. 7

1.    The City is not making all reasonable efforts to permanently reduce
the tent count to zero. .................................................................................. 7

2.    Even the City's own declarants do not claim that the City is making
"all reasonable efforts" when individuals refuse offers of shelter. ............ 10

D.    Judge Ryu's order does not prevent the City from complying with the
Stipulated Injunction. ............................................................................... 11

E.    In the alternative, Plaintiffs request to depose the City's declarants. ................. 12

III.  CONCLUSION .................................................................................................... 13

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Small Bus. League v. United States Dep't of Def.*, No. C 18-01979 WHA, 2019 WL 4416613, at *3 (N.D. Cal. Sept. 15, 2019) ................................................................... 13

*BJB Elec. LP v. Bridgelux, Inc.*, No. 22-CV-01886-RS, 2023 WL 6851989, at *2 (N.D. Cal. Oct. 16, 2023) ............................................................................................................. 5

*Carl Zeiss Meditec v. Topcon Medical Systems*, No. 19-CV-04162-SBA, 2022 WL 2356987 (N.D. Cal. June 30, 2022) ............................................................................... 12

*Childers v. United States*, 841 F. Supp. 1001 (D. Mont. 1993), *aff'd*, 40 F.3d 973 (9th Cir. 1994), *as amended* (Jan. 17, 1995) ........................................................................... 7

*Coal. on Homelessness v. City & Cnty. of San Francisco*, No. 23-15087, 2024 WL 125340, at *1 (9th Cir. Jan. 11, 2024) .................................................................................... 11

*Congdon v. Chapman*, 63 Cal. 357 (1883) ................................................................................ 7

*Hampton Tree Farms, Inc. v. Yeutter*, 956 F.2d 869 (9th Cir. 1992) ....................................... 12

*Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 40, 442 P.2d 641 (1968) .......................................................................................................... 5

*Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. v. California*, 813 F.3d 1155 (9th Cir. 2015) ..................................................................................................... 4

*Samica Enterprises, LLC v. Mail Boxes Etc. USA, Inc.*, 637 F. Supp. 2d 712 (C.D. Cal. 2008) ............................................................................................................................... 7

*Telebrands Corp. v. VindEx Sols. LLC*, No. 21-CV-00898-BLF, 2021 WL 6332530, at *5 (N.D. Cal. Mar. 11, 2021) ........................................................................................... 13

*Temple v. Guardsmark LLC*, No. C 09-02124 SI, 2011 WL 723611, at *3 (N.D. Cal. Feb. 22, 2011) .................................................................................................................... 13

*United States v. Arnette*, No. 2:08-CR-00166-KJM-1, 2022 WL 2292217, at *3 (E.D. Cal. June 24, 2022) ............................................................................................................. 7

*United States v. Montgomery Gloval Advisors V LLC*, No. C 04-00733 EDL, 2005 WL 2249092, at *3 (N.D. Cal. Aug. 1, 2005) ...................................................................... 7

*United States v. United Mine Workers of Am.*, 330 U.S. 258, 295, 67 S. Ct. 677, 696, 91 L. Ed. 884 (1947) ............................................................................................................. 12

## STATUTES

*Cf.* C.D. Cal. R. 7–8 .................................................................................................................. 13

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

ii

1

Fed. R. Civ. P. 26(b)(1)...........................................................................................................13

2

3

**OTHER AUTHORITIES**

4

Kenneth A. Adams, Interpreting and Drafting *Efforts* Provisions: From Unreason to
     Reason, 74 The Bus. Lawyer 677, American Bar Association (2019). ...........................6

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

PLAINTIFFS' REPLY BRIEF ISO MOTION TO ENFORCE STIPULATED INJUNCTION - CASE
NO. 4:20-cv-03033-JST

## I.       INTRODUCTION

In order to settle a lawsuit brought by Plaintiffs, the City and County of San Francisco ("the City") agreed to enter into a Stipulated Injunction. ECF #71. The City promised, among other things, to make all reasonable efforts to permanently reduce the number of tents in the Tenderloin neighborhood to zero. The City's Board of Supervisors reviewed and approved the Stipulated Injunction. The Court then conformed the City's promises into an Order. The City has not kept its end of the bargain, so Plaintiffs moved to enforce the Stipulated Injunction. The City, as well as Intervenor the Coalition on Homelessness ("COH"), oppose the motion. They contend that the City either cannot or does not have to keep its promises. None of Respondents' contentions has merit.

*First*, Respondents argue that the relevant provisions of the Stipulated Injunction expired when Mayor Breed lifted the COVID-19 emergency. This is incorrect. While some of the provisions of the Stipulated Injunction were specifically tailored to COVID-19 and have since expired, the provisions relevant to this motion remain in effect. The City and COH's strained reinterpretation of the Stipulated Injunction is belied by the plain terms of the parties' agreement and by the City's own words when it drafted the key provision at issue.

*Second*, Respondents argue that even if the Stipulated Injunction is still in effect, the City has fully complied with it. To support this argument, Respondents filed a slew of declarations regarding the City's efforts to address the homelessness crisis. Respondents argue that the City cannot be expected to craft a "one-size-fits-all" solution to homelessness, which is a "complex and dynamic issue." ECF #137 (City's Brief) at 2. But Plaintiffs are not asking the City to broadly solve San Francisco's homelessness crisis. The question here is much narrower: is the City making all reasonable efforts to permanently reduce the number of tents in the Tenderloin to zero? That the City funds programs to combat homelessness in San Francisco more generally does not satisfy the standard. There are reasonable steps the City is not taking to reduce the number of tents in the Tenderloin—a single neighborhood encompassing just 50 square blocks. For example, it is undisputed that right now, there are more shelter spaces available than there are tents in the Tenderloin, yet the City is not taking the reasonable step of relocating unhoused persons to shelter.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

PF'S REPLY BRIEF ISO MTN TO ENFORCE STIP. INJUNCTION - CASE NO. 4:20-cv-03033-JST

1   The City's failure to do so is a breach of the Stipulated Injunction.

2   *Third*, COH (but not the City) argues that the Stipulated Injunction is too vague to be

3   enforced because it contains the words "all reasonable efforts." ECF # 136 (COH's Brief) at 9.

4   This phrase is ubiquitous in contracts, statutes, regulations, and court orders, all of which are

5   routinely enforced. The COH provides no support for the proposition that "all reasonable efforts"

6   clauses are unenforceably vague. The argument should be rejected.

7   *Fourth*, Respondents argue that Judge Ryu's order in *Coalition on Homelessness* prevents

8   the City from taking more decisive action to fulfill its contractual obligations. But Judge Ryu's

9   order was vacated in relevant part on appeal. As narrowed by the Ninth Circuit, Judge Ryu's order

10  does not prevent the City from keeping its promises to Plaintiffs.

11  ## II.    ARGUMENT

12  Plaintiffs' Motion seeks enforcement of several related provisions of the Stipulated

13  Injunction, all of which are contained in Section II and are intended to deal with the proliferation

14  of tents in the neighborhood. As discussed below, the City initially implemented policies aimed at

15  accomplishing these goals by, among other things, relocating homeless individuals encamped in

16  the Tenderloin to shelter spaces or other alternative locations. The City then discontinued these

17  policies, in breach of the Stipulated Injunction, and the number of tents predictably increased.

18  Because Respondents only address the "all reasonable efforts" provision in their briefs, this

19  Reply Brief focuses on that provision. But to avoid any doubt: Plaintiffs seek enforcement of the

20  provisions identified in their opening brief, and Plaintiffs' arguments apply to each. Namely, each

21  of these provisions is still in effect, and the City has breached each provision by discontinuing

22  policies specifically intended to address the proliferation of tents in the neighborhood.

23  ### A.    The "all reasonable efforts" provision is still in effect.

24  The City and COH both argue that Section II of the Stipulated Injunction expired when

25  Mayor Breed terminated the COVID-19 emergency. This is only partially true. Section II does

26  contain some provisions that were temporally limited to the COVID-19 emergency. But Plaintiffs

27  are not seeking to enforce any of these provisions, and the provisions Plaintiffs do seek to enforce

28  are still in effect.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

2

PF'S REPLY BRIEF ISO MTN TO ENFORCE STIP. INJUNCTION - CASE NO. 4:20-cv-03033-JST

1. **The plain terms of the Stipulated Injunction establish that the "all reasonable efforts" provision is still in effect.**

Section II of the Stipulated Injunction addresses the City's obligations related to tent removal. Its first paragraph provides that "[d]uring the COVID-19 emergency," the City must take the certain specific steps to reduce the number of tents and other encamping materials in the Tenderloin, including (1) "offer[ing] shelter-in-place hotel rooms" to unhoused individuals, (2) "establish[ing] safe sleeping villages" which comply with San Francisco Department of Public Health guidelines, and (3) "mak[ing] available some off-street sites in the Tenderloin (such as parking lots) to which tents can be moved." ECF #71 at 3.

Plaintiffs agree that these provisions expired when Mayor Breed terminated the COVID-19 emergency because they are headed by the limiting phrase, "During the COVID-19 emergency." Plaintiffs did not invoke any of these provisions in their Motion. However, in its fourth paragraph, Section II provides: "After July 20, 2020, the City will make all reasonable efforts to achieve the shared goal of ***permanently*** reducing the number of tents, along with all other encamping materials and related personal property, to zero." *Id.* at 3 (emphasis added).

Read together, the plain meaning of these provisions is that the City agreed to implement certain measures specific to the COVID-19 emergency, as well as a broader set of measures aimed at a permanent elimination of all tents.[1] The temporary measures included making hotel rooms and parking lots (which were vacant during the pandemic) available for use by homeless individuals at heightened risk of COVID and creating "safe sleeping villages" where homeless individuals could safely congregate in accordance with the Department of Public Health's social distancing guidelines in effect at that time. *Id.* Each of these measures was specifically tailored to the exigencies of the pandemic. While these measures made sense in the context of the pandemic, which both "exacerbated" the problem and limited the City's ability to address it, the agreement

---

[1] Respondents also quote Section VII of the Stipulated Injunction, which provides that "[a]fter the COVID-19 emergency . . . [t]he parties agree to work together to improve living conditions in the Tenderloin neighborhood." ECF #71 at 5. This section is not at issue in this Motion; Plaintiffs are only seeking to enforce provisions specifically related to tent removal, which are contained in Section II. Respondents' references to Section VII serve only to reinforce that the Stipulated Injunction contains provisions that did not expire with the COVID-19 emergency.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

provides that once the COVID-19 emergency had ended, the City would have additional options at its disposal. *Id.* at 2. So, the parties agreed to a flexible approach going forward whereby the City is not required to implement any specific measure but must instead "make all reasonable efforts to achieve the shared goal of permanently reducing the number of tents . . . to zero." *Id.* at 3.

In its Brief, the City quotes extensively from the provisions related to hotel rooms, parking lots and safe sleeping sites to suggest that because these are COVID-specific measures, the "all reasonable efforts" provision must also be limited to the COVID-19 emergency. ECF #136 (COH's Brief) at 12–13. But the fact that Section II begins by identifying specific measures the City would take to address tents in the Tenderloin "[d]uring the COVID-19 emergency" does not limit the City's obligations to make all reasonable efforts to permanently achieve zero tents articulated later in Section II.

### 2.     Respondents' argument creates illogical superfluity.

Respondents' argument should also be rejected because it would render some of Section II's provisions superfluous and nonsensical. *See Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. v. California*, 813 F.3d 1155, 1171 (9th Cir. 2015) ("An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable.") Respondents argue that the Stipulated Injunction required the City to take certain measures during the COVID-19 emergency related to hotel rooms, parking lots, and safe sleeping sites, but then separately provided that the City must take "all reasonable measures"—which would include the more specific provisions and thus render them superfluous. Plaintiffs' reading, by contrast, gives effect to all provisions of the agreement: during the COVID-19 emergency, the City was obligated to take specifically enumerated steps to reduce the number of tents and encampments in the neighborhood, and going forward, the City is obligated to make all reasonable efforts to permanently reduce the number of tents to zero.[2]

---

[2] Respondents' newfound understanding of the "all reasonable efforts" provision defies logic in other ways. For example, they say that the provision "bifurcates the as-then-unknown COVID-19 emergency timeframe into (1) pre-July 20, 2020, and (2) July 20, 2020, until the end of the emergency." Yet Respondents fail to recognize that when the Stipulated Injunction was signed, no one knew that the "as-then-unknown COVID-19 emergency timeframe" would in fact extend past

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

### 3.   The parties to the agreement understood that the "all reasonable efforts" provision was intended as a "long term goal."

The "all reasonable efforts" provision, by its plain terms, did not expire with the COVID-19 emergency. Because the provision is *not* ambiguous, the Court need not consider extrinsic evidence when interpreting it. However, to the extent the Court does find the provision susceptible to multiple meanings, the Court may rely on extrinsic evidence to interpret it. *BJB Elec. LP v. Bridgelux, Inc.*, No. 22-CV-01886-RS, 2023 WL 6851989, at *2 (N.D. Cal. Oct. 16, 2023) ("Where a contract is ambiguous, extrinsic evidence is admissible when evidence is proffered to 'prove a meaning' to which the contract language is 'reasonably susceptible.'") (quoting *Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 40, 442 P.2d 641, 646 (1968)).

Here, contemporaneous statements by the drafting parties further demonstrate that Plaintiffs' interpretation of the provision is the *correct* one. The "all reasonable efforts" provision was inserted by the City to supplement its COVID-specific tent removal commitments (which expired on July 20, 2020) by also making a "long term" commitment. When the City's lead attorney in the settlement negotiations, Ryan Stevens, presented that language to Plaintiffs by email dated June 9, 2020, he explained that that "all reasonable efforts" provision was "language discussed by [Chief of Staff to the Mayor] Sean [Elsbernd] and [UC Law SF Chancellor & Dean] David [Faigman] regarding the City's long term goal of no tents in SF." *See* Exs. 1 & 2 to Davis Dec. (Email dated June 9, 2020 and attachment). Inserting "until the end of the COVID-19 emergency" into the "all reasonable efforts" provision, as the City urges, would be wholly inconsistent with the City's prior representation that this language was added to address the "long term goal" of reaching zero tents, as a counterpoint to Section II's COVID-limited provisions.

The City's current proposed reading of the provision would also be inconsistent with the

---

July 20, 2020. It is easy to forget how unprecedented even three months of emergency was at that time (SF's lockdown had begun in mid-March 2020). Because no one knew on June 20, 2020 whether the emergency ended before or after July 20, 2020, that date could not have been intended to "bifurcate" the COVID emergency. Rather, that date stated plainly when the "all reasonable efforts" provision would take effect in a manner that could be applied whether the emergency ended in two weeks or in two-and-a-half years.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

*other* language that Mr. Stevens said the City had inserted for the same purpose. That language, in Section I, reads as follows: "Ultimately the City's goal is to be able to provide sufficient access to shelters and navigation centers so that no *resident* of San Francisco must resort to sleeping in a tent on the street. The City is committed to making all reasonable efforts to achieve this goal." Like the "all reasonable efforts" provision in Section II, this statement in Section I does not provide that these efforts will stop when the pandemic ends. In fact, the quoted language in Section I follows a sentence that reads, "Once the COVID-19 crisis has passed to a significant degree, the parties will re-engage negotiations." Thus, the Section I statement clearly indicates a commitment to make all reasonable efforts during a time period that would extend past the end of the emergency. The City cannot credibly argue that the almost identical language in Section II, inserted at the same time as that in Section I to address the same "long term goal," should be read to include an unwritten termination with the end of the COVID-19 emergency.

**B.      The "all reasonable efforts" provision is enforceable.**

COH argues that the "all reasonable efforts" provision is "too vague to be unenforceable [sic]" unless it is temporally limited. ECF # 136 at 9. Notably, the City does not advance this argument in its brief. Given that neither of the actual parties to the agreement contend that the provision is too vague to be enforced, the Court may disregard COH's argument.

In any event, COH is mistaken. There is nothing vague about permanently reducing the number of tents in the Tenderloin neighborhood to zero—this is a concrete and measurable objective. As for the phrase "all reasonable efforts," "[c]ontracts often feature obligations expressed using *efforts* standards—*best efforts*, *reasonable efforts*, *commercially reasonable efforts*, and other variants." Kenneth A. Adams, <u>Interpreting and Drafting *Efforts* Provisions: From Unreason to Reason</u>, 74 The Bus. Lawyer 677, American Bar Association (2019). Whether a party has made all reasonable efforts "is a function of the circumstances," but that does not render the provision unenforceable. *Id.* To the contrary, courts routinely enforce "all reasonable efforts" clauses appearing in contracts, statutes, regulations, and court orders—regardless of whether the

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

6
PF'S REPLY BRIEF ISO MTN TO ENFORCE STIP. INJUNCTION - CASE NO. 4:20-cv-03033-JST

1  provision is temporally limited.[3]

2      **C.**    **The City has breached the "all reasonable efforts" provision.**

3          **1.**    **The City is not making all reasonable efforts to permanently reduce the tent count to zero.**

4        "All reasonable efforts" means what it says: the City must make ***all*** efforts that are

5  reasonable to permanently reduce the number of tents in the Tenderloin to zero.[4] Plaintiffs agree,

6  of course, that the City is not required to make unreasonable efforts. But so long as there is more

7  the City could reasonably be doing to reduce the number of tents in the Tenderloin, the City is in

8  breach of the Stipulated Injunction.

9        In determining whether a measure is reasonable, the Court must consider the City's

10  "ability and means at its disposal," as well as Plaintiffs' "justifiable expectations." *Samica* 637 F.

11  Supp. 2d at 717. Currently, the City is not making all reasonable efforts to reduce the number of

12  tents in the Tenderloin to zero in light of its ability, the means at its disposal, and Plaintiffs'

13  justifiable expectations. Respondents both filed 11 declarations related to the City's anti-

14  homelessness policies, but the following key facts remain undisputed:

15  1.   There are currently over 300 unused shelter spaces available for housing homeless people. ECF
16       #137-12 (Murphy Decl., Ex. A). Respondents note that not all of these 300 shelter spaces are
17       available for "immediate placement," and that if 100% of the shelter spaces were filled, the City
18       could no longer make additional offers of shelter. ECF #137 at 19–20. This is a statistical sleight
19       of hand. According to the City's own publicly available numbers, there are six times as many
      available shelter spaces as there are tents in the Tenderloin. ECF #137-12; ECF #137-1 (Cohen
      Decl.) ¶¶ 19–22. In other words, the City could offer a bed to every unhoused person encamped

20
21  _____

[3] *See, e.g.*, *Congdon v. Chapman*, 63 Cal. 357, 359 (1883) (construing contractual "all reasonable
22  efforts" provision); *Samica Enterprises, LLC v. Mail Boxes Etc. USA, Inc.*, 637 F. Supp. 2d 712,
717 (C.D. Cal. 2008) (construing contractual "best efforts" provision); *United States v. Arnette*,
23  No. 2:08-CR-00166-KJM-1, 2022 WL 2292217, at *3 (E.D. Cal. June 24, 2022) (construing
statute requiring the Attorney General to "continue periodically to exert all reasonable efforts" to
24  ensure that states provide appropriate care for mentally ill inmates); *Childers v. United States*, 841
F. Supp. 1001, 1010 (D. Mont. 1993), *aff'd*, 40 F.3d 973 (9th Cir. 1994), *as amended* (Jan. 17,
25  1995) (construing regulation requiring the Park Service to take "all reasonable efforts" to alleviate
hazards within national parks); *United States v. Montgomery Gloval Advisors V LLC*, No. C 04-
26  00733 EDL, 2005 WL 2249092, at *3 (N.D. Cal. Aug. 1, 2005). (ordering litigant to "make in
good faith all reasonable efforts" to obtain documents from third parties).
[4] The City never claims that it is making *all* reasonable efforts to reduce the tents to zero in the
27  Tenderloin. Rather, when the City discusses its actual efforts to date in Section II, it merely asserts
that it made *reasonable* efforts. It begins by stating, "Even if Section II of the Injunction remained
28  in effect, San Francisco's efforts to address homelessness in the City generally, and the Tenderloin
specifically, are reasonable…." ECF #137 at 14. It states again further down the page, "San
Francisco has used and continues to use 'reasonable efforts' to reduce the tent count." *Id.*

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

in the Tenderloin with room to spare. That not all of these 300 shelter spaces are available for *immediate* placement does not change this analysis.

2.  The City previously prioritized access to temporary shelter spaces for Tenderloin residents, but no longer does so. ECF #137-12; ECF #71 (Stipulated Injunction) at 3.

3.  The City previously implemented policies specifically aimed at reducing the number of tents in the Tenderloin. This includes the SIP program, which made additional temporary shelter spaces available and prioritized access for homeless individuals in the Tenderloin. ECF #137-1 ¶¶ 19–22. It also includes a policy by which the City relocated homeless individuals from the Tenderloin to "safe sleeping villages" in other neighborhoods. ECF #137 at 4.

4.  The City has since ended these programs.  ECF #137-1 ¶¶ 19–22. After the programs ended, the City did not divert any of the freed-up resources to fund new programs specifically aimed at reducing the number of tents in the Tenderloin.

5.  Because of the termination of these programs, there are currently 1,063 fewer shelter spaces available to homeless individuals than there were in 2021. ECF #137-1 ¶ 9.

6.  The number of tents in the Tenderloin significantly decreased when the City implemented the programs described above, and significantly increased when it discontinued them. According to the City's own official tent count, the number of tents in the neighborhood decreased from 214 in April 2020 to 16 in October 2020. Following the programs' termination, it has tripled to 48 tents. ECF #137-2 (Dodge Decl.) ¶¶ 22, 24.[5]

The above facts demonstrate that in the months following the Court's order entering the Stipulated Injunction, the City successfully reduced the number of tents in the Tenderloin. The City then ceased many of the measures designed to fulfill its obligations to Plaintiffs, and the number of tents predictably multiplied.

Notably, Respondents do not identify a single current policy or program that is specifically aimed at reducing the number of tents in the Tenderloin. Instead, Respondents point to the City's programs generally "designed to support those experiencing homelessness" or "at risk of becoming homeless." ECF #137 at 5–10. Many of these programs were already in place before this lawsuit was filed, and none is focused on reducing the number of tents in the Tenderloin. *Id.* When the City agreed to the Stipulated Injunction, it obliged itself to make all reasonable efforts to fulfill the specific promise it made to Plaintiffs and this Court, not just to continue funding

---

[5] Plaintiffs recently commissioned their own tent count which identified 71 tents and encampments. ECF #126-1 (Bailard Decl.) ¶ 7.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

8

PF'S REPLY BRIEF ISO MTN TO ENFORCE STIP. INJUNCTION - CASE NO. 4:20-cv-03033-JST

1    programs that address homelessness generally.

2           In its brief, the City argues that "Plaintiffs [have not] identified what other similarly

3    situated cities and counties have done to reduce the number of people living in tents in their

4    jurisdictions." ECF #137 at 1. Plaintiffs are aware of only one other city that entered into a legally

5    binding agreement to reduce the number of tents in a specific neighborhood. That city, Los

6    Angeles, settled a similar lawsuit brought by residents of Skid Row by agreeing to build 9,700

7    additional shelter spaces and take additional remedial measures, at a combined cost of $1.53

8    billion. *See* Ex. A (*LA Alliance for Human Rights* Complaint); Ex. B (*LA Alliance for Human*

9    *Rights* Settlement Agreement). Respondents do not and cannot argue that the City has committed

10   anywhere near this level of resources to complying with the Stipulated Injunction. Moreover, the

11   City need look no further than its own previous efforts and results—after agreeing to the

12   Stipulated Injunction, the City successfully removed nearly every tent from the Tenderloin very

13   quickly, only to unlawfully cease these efforts and watch as the tent count multiplied.

14          The City notes that in April 2020 it implemented the Shelter-in-Place ("SIP") program to

15   "provide temporary non-congregate shelter for people experiencing homelessness who were most

16   vulnerable to COVID-19." ECF # 137 at 9. The City discontinued the program in December 2022,

17   purportedly because it was "not a program San Francisco could credibly be expected to fund

18   absent significant federal support after the end of the pandemic." ECF #137-1 ¶¶ 21-22. But after

19   the SIP program ended, the City did not divert *any* of the freed-up resources to new policies aimed

20   specifically at reducing the number of tents in the Tenderloin. Thus, the SIP program demonstrates

21   only that the City has substantial means at its disposal that it could be using to fulfill its specific

22   promises to Plaintiffs and address the backsliding in the Tenderloin, but has chosen not to do so.

23   Furthermore, the City is a taxing authority with a $14.6 billion annual budget. *See* Ex. 5 to Davis

24   Dec. (CCSF Annual Budget, Fiscal Year 2024). The City cannot seriously contend that it would

25   not be within "all reasonable efforts" to find, raise, or reallocate the money necessary to meet their

26   obligations here to keep a small section of San Francisco free of tents.

27          In sum, the City previously implemented policies specifically aimed at fulfilling its

28   obligations to Plaintiffs under the Stipulated Injunction, and those policies were working. Then the

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

9

PF'S REPLY BRIEF ISO MTN TO ENFORCE STIP. INJUNCTION - CASE NO. 4:20-cv-03033-JST

City discontinued those policies, and the number of tents tripled. This Court should order the City to resume full compliance with the Stipulated Injunction, either by reinstituting the policies described above, or by devoting the same level of resources to new policies specifically designed to reduce the number of tents in the Tenderloin.

### 2. Even the City's own declarants do not claim that the City is making "all reasonable efforts" when individuals refuse offers of shelter.

The Stipulated Injunction mandates that "if necessary to comply with this stipulated injunction the City will employ enforcement measures for those who do not accept an offer of shelter or safe sleeping sites to prevent re-encampment." ECF #71 at 3. And as Plaintiffs' opening brief observed, the City claims it cannot enforce the laws to redress sidewalk encampments because of a ruling issued by Judge Magistrate Ryu in another case. ECF #126 at 4-5.

The City's opposition brief and supporting declarations describe the resources the City devotes to homelessness issues, ECF #137 at 5-10, but is silent on the issue of whether the City employs enforcement measures against those who refuse shelter. Nor does the City say what it does to prevent re-encampment. To the contrary, the City's declarants all either state or imply that they provide services to homeless individuals encamped in the Tenderloin who refuse offers of shelter, and do not require those individuals to relocate outside the neighborhood.[6] Five City declarants conclude their declaration with a near identical, carefully-crafted sentence that implies the City allows people to continue to camp on the Tenderloin's sidewalks if they refuse shelter. Each states that the declarant "believe[s]" the City makes reasonable efforts to ensure that "every person **who wants to accept shelter** . . . is able to do so." ECF #137-1 at ¶ 23.; #137-2 at ¶ 26; #137-6 at ¶ 10; #137-9 at ¶ 15;  and #137-10 at ¶ 10 (emphasis added).

The City argues that Judge Ryu's order enjoins it from enforcing or threatening to enforce five laws against those who refuse shelter. ECF # 137 at 23:7-19. As Plaintiffs showed in their

---

[6] *See* ECF #137-9 at ¶¶ 6-12 (stating that the City's "Street Medicine team" provides services to individuals "who are currently rejecting shelter"); ECF #137-10 at ¶¶ 4-8 (silent on whether the "Best Neighborhood Program" requires individuals to accept shelter or otherwise relocate); ECF #137-6 at ¶¶ 4-9 (same for "Night Navigator" program); ECF # 137-8 at ¶¶ 8-13 (same for "Joint Field Operations"); ECF #137-2 at ¶ 3. (same for "Healthy Streets Operations Center").

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

opening brief, however, the Ninth Circuit cleared the way for the City to enforce these laws against the "voluntarily homeless," e.g., those who reject an offer of shelter. The City proffers a confusing SFPD bulletin, drafted in response to Judge Ryu's order and the Ninth Circuit ruling, which says nothing about enforcement of these laws against the voluntarily homeless. ECF #137-15 at Ex. B. The City provides no declaration from a member of the SFPD or anyone else who avers that the City is enforcing these laws against the voluntarily homeless in the Tenderloin.[7]

In sum, the City provides no evidence that it is employing enforcement measures against those who refuse shelter, as required by the Stipulated Injunction. The City instead offers evidence that it provides services to people encamped on the Tenderloin's sidewalks who refuse to relocate.

**D.     Judge Ryu's order does not prevent the City from complying with the Stipulated Injunction.**

The City argues that "[t]he conduct Plaintiffs suggest is flatly enjoined unless or until Judge Ryu modifies the injunction" issued in Coalition on Homelessness (the "COH Injunction") and that "'reasonable efforts' does not include violating court orders." ECF #137 (City's Brief) at 23. This argument fails for two reasons. First, there are reasonable measures the City could take to reduce the number of tents in the Tenderloin that no one disputes would be permitted under the COH Injunction. This includes offering the City's currently available shelter spaces to homeless individuals encamped in the Tenderloin and, if necessary, building additional shelter spaces.

*Second*, the City could take other reasonable measures, such as relocating individuals who refuse an offer of shelter to locations outside the Tenderloin. The City argues that these measures are "flatly enjoined" by the COH Injunction. But as explained in Plaintiffs' opening brief, the *COH* Injunction explicitly states that it applies only to the "involuntarily homeless." *Coal. on Homelessness v. City & Cnty. of San Francisco*, No. 23-15087, 2024 WL 125340, at *1 (9th Cir. Jan. 11, 2024) (emphasis added). The Ninth Circuit clarified on appeal that individuals are not

---

[7] Plaintiffs object to the City's request for judicial notice of a purported spreadsheet of SFPD data. ECF #137-13 at Ex. C. Tellingly, while the City submits 8 declarations in support of its opposition, it does not offer a declarant to authenticate this document, let alone explain it. The document is not judicially noticeable because it is neither something that "is generally known within the trial court's territorial jurisdiction," nor can it be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

PF'S REPLY BRIEF ISO MTN TO ENFORCE STIP. INJUNCTION - CASE NO. 4:20-cv-03033-JST

involuntarily homeless if they have "refused a specific offer of available shelter" and vacated the injunction to the extent it was intended to apply to these individuals. *Id.* The City recently admitted in a press release that the Ninth Circuit's "clarification allowed San Francisco to once again enforce the enjoined laws when its offers of shelter are refused." *See* Request for Judicial Notice and Ex. 4 to Davis Dec. (06/02/24 Press Release, CCSF).

The City's brief largely ignores the Ninth Circuit's clarification—and contradicts its own public statements. The City now argues that it must comply with the vacated portions of Judge Ryu's Order "unless or until Judge Ryu modifies the injunction." ECF #137 at 23. This is incorrect. "[O]nce an injunction in a civil case has been invalidated, rights granted under the injunction no longer exist and cannot be enforced." *Hampton Tree Farms, Inc. v. Yeutter*, 956 F.2d 869, 871 (9th Cir. 1992).[8] Thus, the City need not wait for Judge Ryu to modify her order before taking enforcement against individuals who refuse offers of shelter. And to reiterate, it is undisputed that the *COH* Injunction in no way prevents the City from taking other reasonable measures such as offering currently unoccupied shelter spaces to homeless individuals encamped in the Tenderloin or building, renting, or otherwise acquiring additional shelter spaces.

**E.     In the alternative, Plaintiffs request to depose the City's declarants.**

Should the Court find it helpful in resolving the motion, Plaintiffs respectfully request the opportunity to depose the City's declarants, as well as Chief of Police Tom Scott, who signed the police bulletin that the City attached to its brief. The City offered this evidence in an attempt to show that the City's various anti-homelessness policies satisfy the "all reasonable efforts" provision of the Stipulated Injunction.

As discussed *supra*, the declarations and police bulletin describe the City's efforts to provide shelter to individuals who ask for it, but they are silent on whether the City does anything to remove individuals encamped in the Tenderloin who refuse its offers of shelter. Deposing the

---

[8] *See also United States v. United Mine Workers of Am.*, 330 U.S. 258, 295, 67 S. Ct. 677, 696, 91 L. Ed. 884 (1947) ("The right to remedial relief falls with an injunction which events prove was erroneously issued."); *Carl Zeiss Meditec v. Topcon Medical Systems*, No. 19-CV-04162-SBA, 2022 WL 2356987 (N.D. Cal. June 30, 2022) (holding that a party cannot be held in contempt for violating an injunction that was subsequently vacated in part on appeal).

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

declarants is therefore warranted to test the "[v]ague statements and discrepancies" that appear in the City's carefully crafted declarations. *Am. Small Bus. League v. United States Dep't of Def.*, No. C 18-01979 WHA, 2019 WL 4416613, at *3 (N.D. Cal. Sept. 15, 2019) (granting plaintiff's request to depose defendants' declarants before ruling on a motion for summary judgment).

Plaintiffs conferred with the City on this issue, but the City refused to make these individuals available for deposition. Davis Decl. at Ex. 3. The Court should compel these individuals to appear for limited depositions regarding the City's policies and procedures described in their declarations. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case").[9]

## III.    CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion to Enforce the Stipulated Injunction.


Dated:  May 9, 2024                                   WALKUP, MELODIA, KELLY & SCHOENBERGER


                                                      By: _____
                                                          MICHAEL A. KELLY
                                                          RICHARD H. SCHOENBERGER
                                                          MATTHEW D. DAVIS
                                                          ASHCON MINOIEFAR
                                                          Attorneys for All Plaintiffs

---

[9] *See also Telebrands Corp. v. VindEx Sols. LLC*, No. 21-CV-00898-BLF, 2021 WL 6332530, at *5 (N.D. Cal. Mar. 11, 2021) (granting plaintiff's request to "depose any and all declarants who filed declarations in connection with this Preliminary Injunction"); *Temple v. Guardsmark LLC*, No. C 09-02124 SI, 2011 WL 723611, at *3 (N.D. Cal. Feb. 22, 2011) (noting that a moving party is permitted "to depose the declarants [proffered by the non-moving party] to test their assertions"); *Cf.* C.D. Cal. R. 7–8 ("[T]he Court may, in its discretion, require or allow oral examination of any declarant or any other witness").

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

1

## PROOF OF SERVICE

2

**Hastings v. City and County San Francisco**
**USDC-Northern California Case No. 4:20-cv-3033-JST**

3

4        At the time of service, I was over 18 years of age and not a party to this action.  I am
employed in the county where the mailing took place,  My business address is 650 California
Street, 26th Floor, City and County of San Francisco, CA 94108-2615.

5

6        On the date set forth below, I caused to be served true copies of the following document(s)
described as

7   •    **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO ENFORCE**
         **STIPULATED INJUNCTION**

8

9   •    **DECLARATION OF MATTHEW D. DAVIS IN SUPPORT OF PLAINTIFFS'**
         **REPLY BRIEF RE MOTION TO ENFORCE**

10  •    **PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF REPLY**
         **BRIEF RE MOTION TO ENFORCE STIPULATED INJUNCTION (ECF. No. 126)**

11

12       to:

13  Shanin Specter, Esq.                      **Co-Counsel for All Plaintiffs**
    (Pennsylvania State Bar No. 40928)        (and related case USDC-Northern CA
14  (Admitted Pro Hac Vice)                   case #4:24-cv-01562-JST)
    Alex Van Dyke, Esq.
15  KLINE & SPECTER, P.C.                     Office: (215) 772-1000
    1525 Locust Street                        Facsimile:  (215) 772-1359
16  Philadelphia, PA 19102                    shanin.specter@klinespecter.com
                                              alex.vandyke@klinespecter.com
17

18  John K. Dipaolo, Esq.                     **Counsel for Plaintiff College of the**
    General Counsel                           **Law, San Francisco**
19  Secretary to the Board of Directors
    College of the Law, San Francisco         Telephone:  (415) 565-4787
20  200 McAllister Street                     Facsimile:  (415) 565-4825
    San Francisco, CA  94102                  dipaolojohn@uchastings.edu
21

22

23

24

25

26

27

28

LAW OFFICES OF
Walkup, Melodia, Kelly
& Schoenberger
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

1

| | | |
|---|---|---|
| 1 | David Chiu, City Attorney<br>Wayne Snodgrass, Esq. | **Attorneys for Defendant City and County of San Francisco** |
| 2 | Tara M. Steeley, Esq.<br>John H. George, Esq. | (and related case USDC-Northern CA case #4:24-cv-01562-JST) |
| 3 | Kaitlyn Murphy, Esq.<br>1390 Market Street, Sixth Floor | |
| 4 | San Francisco, CA 94102-4682 | Snodgrass Direct: (415) 554-4675<br>Steeley Direct: (415) 554-4655 |
| 5 | | George Direct: (415) 554-4223<br>George Facsimile: (415) 437-4644<br>Murphy Direct: (415) 554-6762 |
| 6 | | Facsimile: (415) 554-4699<br>wayne.snodgrass@sfcityatty.org |
| 7 | | Tara.Steeley@sfcityatty.org<br>john.george@sfcityatty.org, |
| 8 | | kaitlyn.murphy@sfcityatty.org<br>anita.murdock@sfcityatty.org |
| 9 | | celena.sepulveda@sfcityatty.org<br>sophia.garcia@sfcityatty.org, |
| 10 | | winnie.fong@sfcityatty.org |
| 11 | | |
| 12 | Yvonne R. Mere, Chief Deputy City Attorney<br>San Francisco Attorney's Office | Mere Direct: (415) 554-4700<br>Mere Facsimile: (415) 554-4757 |
| 13 | City Hall, Room 234<br>1 Dr. Carlton B. Goodlett Place<br>San Francisco, CA 94102-4682 | Yvonne.Mere@sfcityatty.org |
| 14 | | |
| 15 | Lauren Hansen, Esq.<br>Melissa A. Morris, Esq. | **Counsel for Proposed Intervenors Hospitality House; coalition on Homelessness; and Faithful Fools** |
| 16 | Public Interest Law Project<br>449 15th Street, Suite 301 | |
| 17 | Oakland, CA 94612-06001 | Office: (510) 891-9794<br>Fax: (510) 891-9727 |
| 18 | | lhansen@pilpca.org<br>mmorris@pilpca.org |
| 19 | | |
| 20 | Lili V. Graham, Esq.<br>Tiffany L. Nocon, Esq. | **Counsel for Proposed Intervenors Hospitality House; coalition on Homelessness; and Faithful Fools** |
| 21 | Disability Rights California<br>350 S. Bixel Street Suite 290 | |
| 22 | Los Angeles, CA 90017-1418 | Office: (213) 213-8000<br>Fax: (213) 213-8001 |
| 23 | | lili.graham@disabilityrightsca.org<br>tiffany.nocon@disabilityrightsca.org |
| 24 | Michael David Keys, Esq.<br>Jessica Berger, Esq. | **Counsel for Proposed Intervenors Hospitality House; coalition on Homelessness; and Faithful Fools** |
| 25 | Bay Area Legal Aid<br>1454 43rd Avenue | |
| 26 | San Francisco, CA 94122 | Office: (415) 982-1300<br>Fax: (415) 982-4243 |
| 27 | | mkeys@baylegal.org<br>jberger@baylegal.org |
| 28 | | |

LAW OFFICES OF<br>WALKUP, MELODIA, KELLY<br>& SCHOENBERGER<br>A PROFESSIONAL CORPORATION<br>650 CALIFORNIA STREET<br>26TH FLOOR<br>SAN FRANCISCO, CA  94108<br>(415) 981-7210

PF'S REPLY BRIEF ISO MTN TO ENFORCE STIP. INJUNCTION - CASE NO. 4:20-cv-03033-JST

William S. Freeman, Esq.
John Thomas H. Do, Esq.
ACLU Foundation of Northern California
39 Drumm Street
San Francisco, CA 94111

**Counsel for Amicus Curiae (ACLU Foundation of Northern California)**

(415) 621-2943
wfreeman@aclunc.org
jdo@aclune.org

    **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

    Executed on May 9, 2024, at San Francisco, California.

_____
Kirsten Benzien