MICHAEL A. KELLY, State Bar No. 71460
MKelly@WalkupLawOffice.com
RICHARD H. SCHOENBERGER, State Bar No. 122190
RSchoenberger@WalkupLawOffice.com
MATTHEW D. DAVIS, State Bar No. 141986
MDavis@WalkupLawOffice.com
ASHCON MINOIEFAR, State Bar No. 347583
AMinoiefar@WalkupLawOffice.com
WALKUP, MELODIA, KELLY & SCHOENBERGER
650 California Street, 26th Floor
San Francisco, CA  94108
Telephone:  415-889-2919
Facsimile:  415-391-6965

SHANIN SPECTER, (Pennsylvania State Bar No. 40928)
(Pro Hac Vice Application Pending)
shanin.specter@klinespecter.com
ALEX VAN DYKE (CA State Bar No. 340379)
alex.vandyke@klinespecter.com
KLINE & SPECTER, P.C.
1525 Locust Street
Philadelphia, PA 19102
Telephone: 215-772-1000

Attorneys for All Plaintiffs


JOHN K. DIPAOLO, State Bar No. 321942
dipaolojohn@uchastings.edu
General Counsel
Secretary to the Board of Directors
College of the Law, San Francisco
200 McAllister Street
San Francisco, CA  94102
Telephone:  415-565-4787
Facsimile:  415-565-4825

Attorney for Plaintiff
COLLEGE OF THE LAW, SAN FRANCISCO

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| COLLEGE OF THE LAW, SAN FRANCISCO a public trust and institution of higher education duly organized under the laws and the Constitution of the State of California; | Case No. 4:20-cv-03033-JST<br><br>**DECLARATION OF MATTHEW D. DAVIS IN SUPPORT OF PLAINTIFFS' REPLY BRIEF RE MOTION TO ENFORCE** |

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

1

DECLARATION OF DAVIS ISO REPLY - CASE NO. 4:20-cv-03033-JST

1  FALLON VICTORIA, an individual;
RENE DENIS, an individual;
2  TENDERLOIN MERCHANTS AND
       PROPERTY ASSOCIATION, a
3      business association;
RANDY HUGHES, an individual; and
4  KRISTEN VILLALOBOS, an individual,

5                          Plaintiffs,

6      v.

7  CITY AND COUNTY OF SAN
       FRANCISCO, a municipal entity,
8
                          Defendant.
9

**STIPULATED INJUNCTION (ECF. No. 126)**

**ASSIGNED FOR ALL PURPOSES TO THE HONORABLE JON S. TIGAR, COURTROOM 6**

Date:    May 23, 2024
Time:    2:00 p.m.
Judge:   Hon. Jon S. Tigar
Courtroom 6, 2nd Floor
              1301 Clay Street, Oakland

Action Filed:      05/04/2020
Trial Date:        (None set yet)

10

11        I, Matthew D. Davis, declare as follows:

12        1.      I am an attorney duly admitted to practice before this Court.  I am a

13  partner with Walkup, Melodia, Kelly & Schoenberger, attorneys of record for All

14  Plaintiffs.  I have personal knowledge of the facts set forth herein, and if called as a

15  witness, I could and would competently testify thereto.

16        2.      I have been one of the lead attorneys working on this matter since it

17  was filed in 2020. I served as the contact attorney on plaintiffs' side during all

18  discussions about case resolution with the City and County of San Francisco (CCSF).

19  In 2020, the lead contact attorney for CCSF was Deputy City Attorney Ryan Stevens.

20        3.      There were also resolution discussions that took place directly between

21  two representatives of the clients, with the approval of the lawyers. On behalf of

22  plaintiffs, David Faigman, Dean and Chancellor of UC Law SF (then called "Hastings

23  College of the Law"), spoke with Sean Elsbernd, Chief of Staff to Mayor London

24  Breed, who was the defense client representative. I was aware that these two men

25  had resolutions discussions, including in or about the first week of June 2020.

26        4.      Attached hereto as **Exhibit 1** is a true and correct copy of an email that

27  I received from Mr. Stevens on June 9, 2020. He attached a Word document to that

28  email, a true and correct copy of which is attached as **Exhibit 2**. The yellow

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

1    highlighting in **Exhibit 2** was in the original document that Mr. Stevens emailed to

2    me on June 9, 2020.

3         5.     In the body of the June 9, 2020 email, Mr. Stevens wrote, referring to

4    discussions between our client representatives:

5             Revised settlement offer attached. Not a lot of room or time

6             left here so hopefully you guys can agree to this.

7             We highlighted the language discussed by Sean [Elsbernd]
             and David [Faigman] regarding the City's long term goal of

8             no tents in SF. That language added in two separate
            places.

9         6.     On April 25, 2024, after reviewing CCSF's opposition to plaintiffs'

10    motion to enforce the stipulated injunction in this case, I sent an email to members of

11    the San Francisco City Attorney's office. In that email I told them that because the

12    opposition included so many declarations and proffered evidence, that plaintiffs

13    wanted to depose six CCSF employees before plaintiffs submitted a reply. Deputy

14    City Attorney John George replied that same day and asked for any authority that

15    provided a right to take the depositions. The next morning, April 26, I emailed a

16    reply. On April 29, Mr. George responded by email and informed me that CCSF

17    would not voluntarily produce the deponents. A true and correct copy of this email

18    string is attached as **Exhibit 3**.

19         7.     Attached hereto as **Exhibit 4** is a true and correct copy of a press

20    release that I downloaded on May 8, 2024, at https://www.sf.gov/news/san-franciscos-

21    april-tent-count-number-tents-and-structures-city-streets-hits-new-low.

22         8.     Attached hereto as **Exhibit 5** is a true and correct copy of a document

23    that I downloaded on May 9, 2024, at https://www.sf.gov/budget-announcement.

24         I declare under penalty of perjury under the laws of the United States of

25    America that the foregoing is true and correct to the best of my knowledge.

26    ///

27    ///

28    ///

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

3

DECLARATION OF DAVIS ISO REPLY - CASE NO. 4:20-cv-03033-JST

1    Executed on this 9th day of May, 2024, at San Francisco, California.

2

3

4    _____
     Matthew D. Davis

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

4

DECLARATION OF DAVIS ISO REPLY - CASE NO. 4:20-cv-03033-JST

# EXHIBIT 1

| | |
|---|---|
| **From:** | Stevens, Ryan (CAT) |
| **To:** | Matthew D. Davis |
| **Cc:** | Steeley, Tara (CAT); Goldman, Jeremy (CAT); Rosenblit, Renee (CAT) |
| **Subject:** | Revised Settlement Offer |
| **Date:** | Tuesday, June 9, 2020 2:58:34 PM |
| **Attachments:** | Final Confidential Settlement Proposal 6.9.20.docx |

Matt-

Revised settlement offer attached.  Not a lot of room or time left here so hopefully you guys can agree to this.

We highlighted the language discussed by Sean and David regarding the City's long term goal of no tents in SF. That language added in two separate places.

Best,
Ryan


**Ryan C. Stevens**
Deputy City Attorney
Office of City Attorney Dennis Herrera
(415) 554-3975 Direct
www.sfcityattorney.org

# EXHIBIT 2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HASTINGS COLLEGE OF THE
   LAW, a public trust and
   institution of higher education
   duly organized under the laws
   and the Constitution of the
   State of California;
FALLON VICTORIA, an
   individual;
RENE DENIS, an individual;
TENDERLOIN MERCHANTS
   AND PROPERTY
   ASSOCIATION, a business
   association;
RANDY HUGHES, an individual;
   and
KRISTEN VILLALOBOS, an
   individual,

                Plaintiffs,

    v.

CITY AND COUNTY OF SAN
   FRANCISCO, a municipal
   entity,

                Defendant.

Case No. 4:20-cv-03033-JST

**STIPULATED PRELIMINARY INJUNCTION**

The undersigned parties stipulate as follows:

SECTION I.  The parties share the goal of improving living conditions in the Tenderloin neighborhood, and of making the streets and sidewalks clear and safe for the use of persons in the Tenderloin, including residents, visitors, employees, employers, shoppers, and persons with disabilities.  The parties wish to help businesses and all persons in the Tenderloin thrive and enjoy the safety and

1  opportunity that are expected in any San Francisco Neighborhood. The problems

2  facing the Tenderloin are substantial and are not easily solved and have been

3  exacerbated by the COVID-19 crisis.  As the parties recognize that the COVID-19

4  crisis creates additional challenges to improving the Tenderloin neighborhood, this

5  preliminary injunction is intended to address the current situation.  Once the

6  COVID-19 crisis has passed to a significant degree, the parties will re-engage

7  negotiations.  Ultimately the City's goal is to be able to provide sufficient access to

8  shelters and navigation centers so that no resident of San Francisco must resort to

9  sleeping in a tent on the street.  The City is committed to making all reasonable

10  efforts to achieve this goal.

11     SECTION II.   During the COVID-19 emergency, the City will reduce the

12  number of tents and other encamping materials and related personal property on

13  sidewalks and streets in the Tenderloin by offering alternatives to people living in

14  those tents including the following:

15        First, the City will offer shelter-in-place hotel rooms to people

16        facing heightened health risks from COVID-19.  The City estimates that

17        approximately thirty-percent of people currently living in tents in the

18        Tenderloin will be eligible for an SIP hotel room.  To ensure that rooms

19        are available for all eligible people currently in the Tenderloin, the City

20        will prioritize access to hotel rooms for unsheltered persons currently

21        living in the Tenderloin.

22        Second, the City will establish safe sleeping villages outside the

23        Tenderloin to which people can relocate.  Safe sleeping villages are

24        staffed areas that offer access to social services, restrooms, garbage

25        service, power, water, and hand sanitizer.  The City will ensure that

26        safe sleeping villages comply with and are maintained consistent with

27        guidelines from the San Francisco Department of Public Health.

28        Third, the City will make available some off-street sites in the

1     Tenderloin (such as parking lots) to which tents can be moved so they

2     are no longer on sidewalks or streets or blocking sidewalks or entrances

3     to businesses and homes.  The City agrees that this option will only be

4     available for a maximum of 50-70 tents because of existing structures in

5     the Tenderloin.  These off-street sites will be permanently removed

6     within three months after the end of the COVID-19 emergency, defined

7     as the time the Mayor lifts the emergency declaration.

8     Because the implementation of this stipulated preliminary injunction may

9  have the effect of encouraging additional people to come to the Tenderloin in the hope

10  of securing a hotel room or placement at a safe sleeping site, during this process the

11  City will discourage additional people from erecting tents in the neighborhood.  The

12  City intends to continue to assist unsheltered persons in other areas of the City.

13     The parties recognize that it will take time to make additional sites available

14  in and out of the Tenderloin.  The City is hopeful that most people offered an

15  alternative location will be willing to accept it, but if necessary to comply with this

16  stipulated preliminary injunction the City will employ enforcement measures for

17  those who do not accept an offer of shelter or safe sleeping sites to prevent re-

18  encampment.

19     The City agrees that it shall cause seventy percent (70%) of the number of

20  tents as counted on June 5, 2020 to be removed along with all other encamping

21  materials and related personal property, and their occupants relocated to a hotel

22  room, safe sleeping site, off-street sites, or other placement by July 20, 2020.  The

23  City will take action to prevent re-encampment.  After July 20, 2020, the City will

24  make all reasonable efforts to achieve the shared goal of reducing the tent population

25  by 100%.  For the duration of this agreement, if the tent count in the Tenderloin rises

26  above 115, the parties are required to appear before Judge Corley to engage in the

27  dispute resolution procedures outlined in Section VI of this agreement..

28     All parties shall respect the legal rights of the unhoused of the Tenderloin in

3

1 all manners, including in relation to relocating and removing the unhoused, the
2 tents, the other encamping materials and other personal property.

3     SECTION III. The City will continue to offer COVID-19 testing in the
4 Tenderloin. The facility will offer free testing to all persons in the Tenderloin. The
5 City shall reach out to unhoused people to offer such testing. A mobile testing facility
6 may eventually have to be relocated to other areas of the City, but the City will also
7 work to establish a long-term testing site in the Tenderloin.

8     SECTION IV. During the time when the City is working toward removing at
9 least 70% of the tents from the Tenderloin as described above, it will advise
10 unsheltered persons in the Tenderloin of the following requirements:

11     · Tents and structures cannot block a doorway, exit, fire escape or come
12       within 5 feet of a fire hydrant.

13     · Tents and structures cannot make sidewalks impassable or impede traffic.

14     While the City does not believe it can feasibly enforce these requirements
15 immediately and universally throughout the Tenderloin, it will increase its
16 enforcement efforts as the total number of tents is reduced and tents can more
17 readily be relocated. In addition, the City will discourage persons from erecting tents
18 within 6 feet of a doorway to a business, residence or transit stop.

19     SECTION V. Narcotic sales and trafficking law violations shall be enforced by
20 the SFPD consistently across the City.

21     SECTION VI. The parties recognize that the current crisis is unprecedented.
22 The Parties agree that if either party believes the other party to be in breach of the
23 stipulated preliminary injunction, the parties will meet and confer within one
24 business day of a dispute being raised. If the parties are unable to reach a
25 resolution, the dispute will be submitted to Magistrate Judge Corley who will hold a
26 settlement conference within 2 business days of receiving notice of a dispute. If
27 Magistrate Judge Corley is unable to negotiate a resolution, the dispute will be
28 submitted to Judge Tigar. Judge Tigar will remain able to consult with Judge Corley

1   under the parameters agreed to by the parties at the first Case Management
2   Conference.

3        SECTION VII.  After the COVID-19 emergency, the City will have options to
4   help improve living conditions in the Tenderloin neighborhood that currently are not
5   available due to constraints caused by the pandemic.  The parties agree to re-initiate
6   dispute resolution negotiations with Judge Corley once the COVID-19 emergency
7   ends so that the parties can continue to work together to improve living conditions in
8   the Tenderloin neighborhood for the long term.

9        SECTION VIII: Plaintiffs agree to seek no attorneys' fees for work done up to
10  June 8, 2020. Other than as stated herein, no party is waiving any rights, claims or
11  defenses by entering this stipulated injunction.  The litigation, including discovery, is
12  stayed during the course of this agreement, which lasts until the end of the COVID-
13  19 emergency.

14       SECTION IX: The City will immediately begin fulfilling the terms of this
15  agreement.  This agreement, however, is ultimately subject to approval by the Board
16  of Supervisors.

# EXHIBIT 3

| | |
|---|---|
| **From:** | George, John (CAT) |
| **To:** | Matthew D. Davis; Lakritz, Tom (CAT); Murphy, Kaitlyn (CAT); Mere, Yvonne (CAT); Steeley, Tara (CAT) |
| **Subject:** | RE: UC Law SF (Hastings) matter |
| **Date:** | Monday, April 29, 2024 4:53:42 PM |
| **Attachments:** | image004.png |

Hi Matt,

Thank you for providing an explanation of the basis to depose the individuals identified in your earlier email (some of whom did not submit a declaration).  As your email acknowledges, there is no specific federal or local rule compelling the depositions you seek.  We do not intend to voluntarily produce the people you have identified for depositions.

Thanks,
John



**John H. George**
Deputy City Attorney
Office of City Attorney David Chiu
(415) 554-4223 Direct
www.sfcityattorney.org

---

**From:** Matthew D. Davis <mdavis@WalkupLawOffice.com>
**Sent:** Friday, April 26, 2024 9:47 AM
**To:** George, John (CAT) <John.George@sfcityatty.org>; Lakritz, Tom (CAT) <Tom.Lakritz@sfcityatty.org>; Murphy, Kaitlyn (CAT) <Kaitlyn.Murphy@sfcityatty.org>; Mere, Yvonne (CAT) <Yvonne.Mere@sfcityatty.org>; Steeley, Tara (CAT) <Tara.Steeley@sfcityatty.org>
**Subject:** RE: UC Law SF (Hastings) matter

Hi John,

Thanks for the prompt response.

The procedure and posture of this case is unique, and our situation may be a unicorn.

The court entered a stipulated injunction in 2020, without any discovery. The SI dismissed the case, but the court retained "continuing jurisdiction to enforce this injunction." (ECF 71, Sec. VIII.) Discovery was not open following the entry of the SI. The SI required the parties had

to go through the settlement conference process before bringing the motion to enforce the SI. (Id. Sec. VI.) The settlement process failed, and thus plaintiffs filed the motion.

The City's opposition proffers quite a bit of evidence (through eight declarations and a request for judicial notice) in support of the disputed issue of whether the City is making "all reasonable efforts to achieve the shared goal of permanently reducing the number of tents, along with all other encamping materials and related personal property, to zero." I have not found any cases or FRCP on point. But due process and fundamental fairness support the proposition that plaintiffs should be allowed to take limited discovery relating to the City's proffered evidence. A local rule from the U.S. District Court for the Eastern District of California does authorize depositions in situations such as this. It says:

> L.R. 7-8  Presence of Declarants - Civil Cases.  On motions for and orders to show cause re preliminary injunctions, motions to be relieved from default and other motions where an issue of fact is to be determined (e.g., civil contempt, but excluding motions contesting venue and personal jurisdiction), **not later than fourteen (14)  days prior to the hearing, a party desiring to cross-examine any declarant who is not beyond the subpoena power of the Court and who is reasonably available to the party offering the declaration may serve by hand (or facsimile or by electronic filing) and file a notice of request to cross-examine such declarant.**  If the party offering the declaration disputes that the declarant is within the subpoena power of the Court and reasonably available to the offering party, such party shall serve and file an objection to the notice of request to cross-examine not later than eleven (11) days prior to the hearing.  The offering party shall be under no obligation to produce the declarant unless the Court has

granted the request to cross-examine by written order not later than three (3) days prior to the hearing. No declaration of a declarant with respect to whom such a request has been granted shall be considered unless such declarant is personally present and available at the hearing for such cross-examination as the Court may permit. **The Court may, in the alternative, order that the crossexamination be done by deposition taken on two (2) days' notice with the transcript being lodged five (5) days prior to the hearing.** The Court may impose sanctions pursuant to these Local Rules against any party or counsel who requests the presence of any declarant without a good-faith intention to cross-examine the declarant. [Bold added]

While there is no similar local rule in the Northern District, the principals nevertheless apply.

We are happy to have a call to discuss or consider any counterproposal by your team.

Take care.



Matthew D. Davis, Esq.
Shareholder

WALKUP, MELODIA
KELLY + SCHOENBERGER

415-981-7210 | 650 California Street, 26th Fl.
walkuplawoffice.com | San Francisco, CA 94108

Super Lawyers

American Board
of Trial Advocates

**From:** George, John (CAT) <John.George@sfcityatty.org>
**Sent:** Thursday, April 25, 2024 4:25 PM

**To:** Matthew D. Davis <mdavis@WalkupLawOffice.com>; Lakritz, Tom (CAT) <Tom.Lakritz@sfcityatty.org>; Murphy, Kaitlyn (CAT) <Kaitlyn.Murphy@sfcityatty.org>; Mere, Yvonne (CAT) <Yvonne.Mere@sfcityatty.org>
**Cc:** Steeley, Tara (CAT) <Tara.Steeley@sfcityatty.org>
**Subject:** RE: UC Law SF (Hastings) matter

Hi Matt,

Please include Tara Steely in addition to those of us you initially emailed.

What authority do you contend provides a right to depose the people you have listed below? The case has been dismissed and closed since October 2020 (ECF No. 99) and the stipulated injunction does not permit depositions or any other discovery.

Thanks,
John

 **John H. George**
Deputy City Attorney
Office of City Attorney David Chiu
(415) 554-4223 Direct
www.sfcityattorney.org

**From:** Matthew D. Davis <mdavis@WalkupLawOffice.com>
**Sent:** Thursday, April 25, 2024 2:48 PM
**To:** George, John (CAT) <John.George@sfcityatty.org>; Lakritz, Tom (CAT) <Tom.Lakritz@sfcityatty.org>; Murphy, Kaitlyn (CAT) <Kaitlyn.Murphy@sfcityatty.org>; Mere, Yvonne (CAT) <Yvonne.Mere@sfcityatty.org>
**Subject:** UC Law SF (Hastings) matter

Greetings All,

Let me know who else should be on this list for email communications about the UC Law SF (Hastings) case.

The City's opposition includes many declarations and proffered evidence. We would like to depose the following declarants/City employees before we submit our reply:

Sam Dodge.

Marsha Cohen.

Krista Gaetta.

Mark Mazza.

SFPD Chief Scott (signer of the SFPD Department Notice, Ex. B to RFN).

SFPD Captain of Tenderloin Station Sergio Chin.

We will be focused with our questioning, and assuming forthright testimony, we expect each deposition to last two to four hours.

Our opposition is due May 9. We can start taking the depositions as soon as early next week, but need to hear both your views about the depositions and your availability. An extension of the hearing date and briefing schedule probably makes sense. If we cannot reach an agreement, then our side may need to seek relief from Judge Tigar.

I am free to discuss after 7 pm tonight, or most of the day tomorrow. Best to try me on my cell, 415-235-1353.

Thanks.

Matthew D. Davis, Esq.
Shareholder


WALKUP, MELODIA
KELLY + SCHOENBERGER

**415-981-7210** | 650 California Street, 26th Fl.
walkuplawoffice.com | San Francisco, CA 94108

 

# EXHIBIT 4

English    Español    中文    Filipino



Menu

**News**

# San Francisco's April Tent Count: Number of Tents And Structures On City Streets Hits New Low

Quarterly tent count reveals 41% reduction in tents and structures since July 2024 has the lowest average tent count rate of any year since the City started quarterly counts

**May 06, 2024**

**San Francisco, CA** – Today Mayor London N. Breed announced that the City's latest quarterly tent count dropped again, hitting a new five-year low. The two quarterly counts conducted so far in 2024 show sustained progress in

5/8/24, 1:01 PM
Case 4:22-cv-03033-JST Document 139-1 Filed 05/09/24 Page 22 of 33
San Francisco's April Tent Count: Number of Tents And Structures on City Streets Hits New Low | San Francisco

helping people off the streets and keeping neighborhoods cleaner.

The count conducted at the end of April found 360 tents and structures across the City – a 41% reduction from 609 in July 2023, which was the last count before the U.S Court for the Ninth Circuit issued a clarification around how San Francisco was able to enforce certain laws under its injunction.

### Key Tent Count Stats from April Count

- Of the 360 tents and structures counted, 182 were tents and 178 were structures.
- There were only 9 encampments of 5 or more tents/structures citywide.
- There were no encampments of 10+ tents/structures at the time of the count. This does not mean larger encampments do not pop.  However, when larger encampments do occur, City staff can quickly begin outreach and work to resolve them.
- The average tent count rate (across two counts) in 2024 is the lowest annual rate of any year since the City started doing tent counts in 2018.

The sustained reduction is a result of increased efforts to offer people shelter and housing and clean up encampments citywide. This work is led by the Healthy Streets Operations Center (HSOC), a multi-agency team that conducts daily encampment operations by leading with offers of shelter and services. Since the start of 2024, HSOC has placed 460 people directly from encampments into shelter as part of their citywide operations.

San Francisco's Department of Homelessness and Supportive Housing has also added new shelter beds and filled hundreds of vacant units in permanent supportive housing, bringing its vacancy rate down to the target of 7.1%. This target rate accounts for unit turnover in the City's Permanent Supportive Housing portfolio, which is the largest in the Bay Area and second highest per capita in the country.

"Our encampment teams and outreach workers are working tirelessly to go out and help bring people into shelter and clean up encampments," **said Mayor London Breed.** "We are continuing to use all of the resources we have and working to add more, but there is a lot more to do. We will be relentless in our efforts to help people into safer, supportive

5/8/24, 1:01 PM
San Francisco's April Tent Count Number of Tents and Structures on City Streets Hits New Low | San Francisco

Case 4:23-cv-03033-JST Document 139-1 Filed 05/09/24 Page 23 of 33

facilities, and make our neighborhoods cleaner and healthier for everyone. I want to thank our outreach workers across all of our agencies for their commitment to getting people help. This is not easy work, but it is making a difference."

"HSOC's work to connect people living in encampments and vehicles with shelter and housing is very difficult, yet this dedicated team representing numerous City agencies remains undeterred in its mission to help our unsheltered residents come indoors," **said Mary Ellen Carroll, Executive Director of the Department of Emergency Management.** "This reduction in people living in tents on our San Francisco streets is a testament to HSOC's commitment and determination to help unsheltered neighbors transition from the street into a shelter, which makes our city's public spaces safer for everyone."

In September, the Ninth Circuit Court of Appeals issued a clarification, which stated that people who refuse offers of shelter do not meet the definition of "involuntarily homeless," and thus, the federal preliminary injunction order does not apply to them. The clarification allowed San Francisco to once again enforce the enjoined laws when its offers of shelter are refused. Prior to that clarification, the City had been constrained in what laws could be enforced due to the federal injunction. Since that clarification, the City has seen this sustained reduction in tents and structure as part of its tent count.

## 2024 Average Tent Count Rate Lowest Since Counts Started

San Francisco's average tent count rate in 2024 is the lowest annual rate of any year since the city started doing tent counts back in 2018. HSOC was launched at the beginning of 2018, which is when the City began to do more systematic counting of encampments and tents.

## HSOC Encampment Outreach Stats

HSOC is a collaboration between the Department of Emergency Management, Public Works, Homelessness and Supportive Housing, the Police Department, the Fire Department, and the Department of Public Health.

In 2024, San Francisco encampment outreach teams have conducted 242 operations as part of the Healthy Streets Operation Center. In those operations outreach workers made 1530 encounters with individuals. Of the 1530 encounters as part of these operations in 2024:

- 460 times offers of shelter were accepted (30%)
- 924 times offers of shelters were refused (60%)
- 145 times the individual was already sheltered/housed (10%)

It's important to note that this is the number of encounters, not the number of individuals. An individual can be encountered across multiple operations. For example, if an operation takes place on Willow Street and an individual refuses services in January, the team might return to the same area in February and encounter the individual again.

**Departments**

Office of the Mayor

Department of Emergency Management

San Francisco's April tent count: Number of tents and structures on city streets hits new low | San Francisco

Was this page helpful?   **Yes**   **No**                    Report something wrong with this page

**Jobs with the City**

**Contact us**

**About this website**

Disclaimer

Privacy policy

City and County
of San Francisco

# EXHIBIT 5

English     Español     中文     Filipino

 SF.GOV

Menu

# Budget Announcement

Back to top



# Mayor London Breed Announces Proposed Budget

On May 31, 2023, Mayor Breed announced her budget for the City and County of San Francisco at City Hall in the North Light Court.

**Read Proposed Budget**

# Mayor Breed's Budget Priorities

Mayor Breed to Prioritize Police Staffing and Public Safety in Upcoming Budget

Mayor Breed Announces Budget Investments for Behavioral Health Efforts

Mayor Breed Announces Budget Investments to Address Homelessness

Back to top



Budget announcement | San Francisco

# Watch Mayor Breed Deliver Budget Announcement

**Mayor's Budget Speech**

## About

Mayor London N. Breed today delivered a balanced Budget that maintains essential services for the City, building on her top priorities while closing a significant deficit.

The annual $14.6 billion for FY 2023-24 and $14.6 billion for FY 2024-25 will focus on continuing to maintain and deliver investments focused on the City's biggest challenges, to include public priorities such as clean and safe streets, restoring San Francisco's Downtown and economy, homelessness and behavioral health, and strengthening coordination and efficiency of government.

The Mayor's proposed budget makes investments in:

- Public Safety

- Homelessness

- Public Health, including Behavioral Health

**Back to top**

- Economic Recovery of downtown and small businesses

- Children, youth, and families

- Community and Climate

- Good Government

Press Release

# Departments

[Office of the Mayor](Office of the Mayor)

Was this page helpful?    **Yes**    **No**                    Report something wrong with this page

**Jobs with the City**

**Contact us**

**About this website**

**Back to top**

Disclaimer

Privacy policy

City and County
of San Francisco

Back to top